IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

JBS USA, LLC d/b/a JBS SWIFT & COMPANY,

    Defendant.

**DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(b)(1), 12(b)(6), 12(b)(7) and 19**

Defendant JBS USA, LLC f/k/a JBS Swift & Company ("JBS"), through its attorneys and pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 12(b)(7) and 19, moves to dismiss the Complaint, with prejudice. JBS moves to dismiss all claims in the Complaint.[1]

## INTRODUCTION

The United Food and Commercial Workers, Local No. 7 ("Union") is the exclusive bargaining representative for employees at JBS's Greeley, Colorado plant. Compl. ¶ 12. Except for a curt mention in its Complaint at paragraph 12, the Equal Employment Opportunity Commission ("EEOC") fails to acknowledge or address the integral role that the Union played in the unfolding of events which form the heart of this lawsuit. The EEOC also ignores the necessary role the Union and the collective bargaining agreement ("CBA") must play in the proposed remedies.

---

[1] JBS acknowledges this Court's Practice Standards concerning Motions to Dismiss and has respectfully attempted to comply with them, but the nature of the arguments set forth herein do not lend themselves well to application of the Practice Standard set forth in Section F.2.a.i.

The EEOC's failure to join the Union in this action is not surprising, however, because the EEOC neglected to name the Union in its Commissioner's charge or include the Union in any conciliation proceedings. As a result, the EEOC did not exhaust its administrative remedies against the Union, did not engage in a meaningful conciliation with JBS, and this Court should not excuse its failure to comply with jurisdictional prerequisites to suit. Joinder of the Union in this lawsuit is not feasible as the Court does not have subject-matter jurisdiction over the Union. See Fed. R. Civ. P. 19(b). There are no extraordinary circumstances that warrant forgiveness of the EEOC's failure to follow Congress's mandate for administrative exhaustion and/or failure to conduct good faith conciliation, particularly considering the EEOC's role as administrator of the very administrative process. Without the Union as a party, JBS will be severely prejudiced and dismissal is appropriate.

## ARGUMENT

### I.    Rule 19's Framework

Rule 19 of the Federal Rules of Civil Procedure governs compulsory party joinder. In deciding whether a person is indispensable under Rule 19(b), the Court applies a three-part analysis. See Citizen Potawatomi Nation v. Nation, 248 F.3d 993, 997 (10th Cir. 2001).[2] First, the Court determines under Rule 19(a) whether the party is a required party. A required party:

---

[2] As of December 1, 2007, Rule 19 no longer refers to "necessary" or "indispensable" parties. Instead, it refers to "persons required to be joined if feasible" and persons in whose absence, if they cannot be joined, the action should not proceed. The 2007 amendments to the civil rules were merely stylistic; "[t]he language of Rule 19 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only." Former Rule 19(b) described the conclusion that an action should be dismissed for inability to join a Rule 19(a) party by carrying forward traditional terminology: "the absent person being thus regarded as indispensable." "Indispensable" was used only to express a conclusion reached

> "[i]s a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction, must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Fed. R. Civ. P. 19(a)(1). Second, if a person is required, the Court must determine whether joinder is feasible, *i.e.*, whether the person is subject to service of process and whether joinder will deprive the Court of subject matter jurisdiction. Id. Third, the Court must determine if the absent party is "indispensible." Id. A defendant can satisfy its burden of demonstrating a party is indispensible with "affidavits of persons having knowledge of the interest as well as other relevant extra-pleading evidence," and such evidence does not convert the motion into one for summary judgment. Citizen Potawatomi Nation, 248 F.3d at 997, citing, Martin v. Local 147, Int'l Bro. of Painters, 775 F. Supp. 235, 236-37 (N.D. Ill. 1991).

## II. The Union Is A Required Party Because The EEOC's Requested Relief Involves Mandatory Bargaining Topics, The Union's Participation, And/Or Alteration Of The CBA.

### A. The EEOC's Requested Relief.

In its Complaint, the EEOC requests a permanent injunction, enjoining JBS and "all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race, national origin or religion or retaliates against employees in violation of Title VII." Compl., Prayer for Relief, ¶ A, p. 12. The EEOC also requests the Court to order backpay, reinstatement and/or frontpay, and to "[o]rder Defendant to

---

by applying the tests of Rule 19(b) but was discarded as redundant. Fed. R. Civ. P. 19 advisory committee's note (2007).

3

institute and carry out policies, practices, and programs which provide equal employment opportunities for Somali individuals, Muslim, and employees who engage in protected activity and which eradicate the effects of its past and present unlawful employment practices." Compl., Prayer for Relief, ¶ B, p. 12.

### B. Requested Injunctive Relief In The Form Of Policies, Practices and Programs Involves Mandatory Subjects of Bargaining, Alteration to the CBA, and Is Asserted Directly Against The Union.

Although the EEOC does not describe what specific policies, practices and programs it seeks to have JBS institute, most policies and programs are considered mandatory subjects of bargaining and cannot be implemented outside the context of collective bargaining. Indeed, the National Labor Relations Act compels collective bargaining with respect to mandatory subjects of bargaining, and JBS could be subject to an unfair labor charge if it does not bargain over proposed policies and procedures. 29 U.S.C. § 158(a)(5). See, e.g., Vincent Indus. Plastics v. NLRB, 209 F.3d 727 (D.C. Cir. 2000) (changes in attendance policy, working hours, work duties, and time-keeping method were mandatory subjects).[3] Thus, the EEOC's request that JBS institute new programs, policies and procedures will necessarily require the Union's participation in the lawsuit because the requested remedies are mandatory subjects of bargaining.

In addition, the Union is a required party because the EEOC's requested injunctive relief will lead to alterations to the CBA. Numerous courts agree that where relief could alter the collective bargaining agreement, joinder of a union is proper. See, e.g., Forsberg v. Pacific N.W.

---

[3] See also, Cotter & Co., 331 NLRB 787 (2000) (new work rules were mandatory subjects); WWOR-TV Inc., 330 NLRB 1265 (2000) (new terms and conditions of employment were mandatory subjects); Traction Wholesale Ctr., 328 NLRB 1058 (1999)( change in lunch time "punch in and out" policy were mandatory); United Refining Co., 327 NLRB 795 (1999) (change in wage rates, cafeteria privileges, sick privileges and seniority systems were mandatory subjects); Littler's Inc., 317 NLRB 1079 (1995) (complying with changed bankruptcy code was not a defense for failure to comply with CBA provisions or re-bargain over subject).

4

Bell Tel. Co., 623 F. Supp. 117, 120 (D. Or. 1985); aff'd, 840 F.2d 1409 (9th Cir. 1988) (finding union a required party in an action asserting discriminatory wages on the basis of sex in violation of Title VII and the EPA).[4]  Any significant new "program" would be memorialized in the CBA, and any addition to the CBA is an alteration to the existing agreement.[5]  The EEOC itself has recently acknowledged the importance of joining a Union when application of the CBA's language and alterations to the CBA are at issue.  See EEOC v. U.S. Steel Corp., 2:10-cv-01284-NBF (W.D. Pa. 2010), Complaint attached as Ex. B (challenging a unionized employer's alcohol-testing policy and joining the union "because it is an essential party to the collective bargaining agreement").

Moreover, the EEOC's request for a permanent injunction enjoining "Defendant, its officers, successors, assigns, and all persons *in active concert or participation* with it . . ." (emphasis added), highlights the fact that the EEOC seeks to enjoin the Union directly, as an entity "in active concert or participation with" JBS.  See Rose v. Simms, 1995 U.S. Dist. LEXIS 17686, *9 (S.D.N.Y. Nov. 29, 1995) ("Courts are most likely to rule that complete relief may not

---

[4] See also, Ware v. City of Buffalo, 186 F. Supp. 2d 324, 330 (W.D.N.Y. 2001) (holding relief sought by plaintiff could not be afforded in the absence of the union because plaintiff sought a judgment affecting the terms of the CBA); McCooe v. Town of Manchester, 101 F.R.D. 339, 341 (D. Conn. 1984) (finding union required party); Grogg v. General Motors Corp., 72 F.R.D. 523, 533 (S.D.N.Y. 1976) (holding union's presence was necessary for complete relief in Title VII lawsuit because the contracts to which they were signators were affected by the action); Lynch v. Sperry Rand Corp., 62 F.R.D. 78, 86 (S.D.N.Y. 1973) (unions were indispensible where litigation sought to rewrite part of the CBA).

[5] Current programs such as the Multi-Cultural Educational Trust Fund, Art. 34, the Safety Steering Committee, Art. 3, the Retirement Program, Art. 28, the Group Health Plan, Art. 31, New Member Orientation, Art. 32, and the Clothing/Equipment Committee, Art. 15, are examples of programs that have already been memorialized in the CBA.  See Affidavit of Eric Ray, Ex. A, Att.1.

be accorded among the parties present in circumstances where the absent party plays a significant role in the provision of some form of injunctive relief.").

### C.     Reinstatement Of Aggrieved Individuals Necessarily Requires The Union.

The EEOC also seeks reinstatement of "aggrieved individuals."  Compl., Prayer For Relief, ¶ C, p. 12.  Reinstatement at a unionized employer is not a simple remedy.  It requires application of the CBA's seniority provisions and consideration of job and wage classifications, which are outlined in the Appendix of the CBA.  In the contract, seniority is "established on the basis of continuous service with the Company and shall accumulate from the last date of hire."  (Ex. A, Att. 1, Art. 9.)  "Layoff, recall from layoff, vacations, and promotions, provided the employee has the ability to perform the work, shall be based on seniority."  (Id.)  Reasons such as voluntary resignations and discharge for cause are reasons that employees can forfeit their seniority.  (Id.)

Although the EEOC refrains from using the word "seniority" in its Complaint, issues of how the aggrieved individuals' seniority should be enacted, and how it affects seniority rights of those still employed, are critical to any reinstatement remedy in a unionized setting.  Neither JBS nor the EEOC can provide the "aggrieved individuals" with seniority rights or certain wage classifications without the Union's cooperation and consent.  See Sillman v. GMG, Inc., 2008 U.S. Dist. LEXIS 24898, * 5 (E.D. Mo. Mar. 27, 2008) (finding request for "additional relief as this Court may deem just and proper" was reinstatement request and union had to be joined because reinstatement impacted seniority practices); Adams v. Delta Air Lines, 1997 U.S. Dist. LEXIS 201, *3 (S.D.N.Y. Jan. 13, 1997) (union joined because of reinstatement request).

Furthermore, it is likely the Union will be very concerned with preserving and balancing their current members' seniority rights and job classifications with any reinstated employees'

6

rights.  Without the Union, the members who are not considered "aggrieved individuals" and who are still working at JBS will have no representation to protect their seniority rights.  If the Union is not joined, the Union's own bargaining power is left vulnerable and impaired.  <u>See</u> <u>NLRB v. C&C Plywood Corp.</u>, 385 U.S. 421, 430 n.15 (1967) (finding that in a case rejecting an employer's unilateral institution of a premium pay plan, "the real injury in this case is to the union's status as bargaining representative").  Proceeding with this litigation in the absence of the Union would deprive the Union of its ability to protect its important interest as a bargaining party and the important interest of its members who are not alleged aggrieved individuals in this case.

### D. Requested Religious Accommodations Necessarily Require The Union.

Although the EEOC does not specify what types of religious accommodations it seeks, the events of Ramadan 2008 make it clear that the requested accommodations will involve breaks, meal times, and prayer times.  <u>See</u> Compl. ¶¶ 26-43.  Indeed, the EEOC asserts that on September 2, 2008, a large number of Muslim employees requested that the meal break be moved from 9:15 p.m. to 7:30 p.m., so they could "pray in accordance with the requirements of their religion and break their fast within fifteen minutes of sunset."  Compl. ¶ 29.  The Complaint further alleges that employees were allowed to take their break at 7:30 the next two days, but on September 5 and thereafter, the break was moved to 8:00 p.m. or later.  Compl. ¶¶ 30-31.  The EEOC, however, omits other critical events that occurred during the first week of September 2008, which establish that the Union is a required party in this litigation.

Indeed, more than two years ago, on October 27, 2008, JBS provided the EEOC with information alerting it (if it was not already aware) of the Union's substantial involvement and required participation in the administrative process.  <u>See</u> Ex. C, "Factual Background" portion of

7

position statement.⁶  For example, the EEOC was placed on notice of the following:  (1) on September 3 (the day after a large number of Muslim employees walked off the job at 7:30), Union Steward Juan Carlos Gonzalez met with Muslim employees, and approximately two hundred non-Muslim employees refused to report to work unless JBS agreed to change the meal break back to the regularly scheduled time of 9:15 p.m.; (2) on September 4, Union Steward Juan Carlos Gonzalez told JBS's Assistant Human Resources Manager he had been instructed by his Union superiors not to participate in discussions with employees related to the break issue; (3) on September 5, Union leaders Fernando Rodriguez and Juan Perea met with non-Muslim representatives, but did not participate in the meetings with Muslim representatives, despite being expressly invited to do so by JBS's plant manager; (4) the Union agreed to communicate to its members that they needed to return to work or JBS would consider their actions a work stoppage; (5) JBS management repeatedly met with Union leaders and Muslim representatives to discuss issues of unauthorized breaks, work stoppages and the termination of employment of those who participated in an unauthorized work stoppage.⁷  Id.

In addition, over 180 Somali Muslim employees filed grievances claiming that various events occurring during Ramadan 2008, including employee suspensions and terminations, and alleged discrimination and harassment, violated the terms of the CBA, and the Union itself filed

---

⁶ See Martinez v. City & County of Denver, 2010 U.S. Dist. LEXIS 71094, *3 (D. Colo. Mar. 31, 2010) (court may take judicial notice of administrative records).

⁷ The CBA contains a "no-strike clause."  Article 8, Section 1 states, "[d]uring the term of this Agreement, there shall be no strike, stoppage, picketing, honoring of any picket line, sympathy strike, slowdown, deliberate withholding of production or suspension of work on the part of the Union, its members, or any individual covered by this Agreement for any reason whatsoever." (Ex. A, Att. 1, p. 8).  Article 8, Section 2 provides, "The Company shall have the right to determine the discipline given an employee or employees for breach of this Article.  The severity of the discipline imposed for such violation shall not be subject to arbitration[.]"  (Id.)

8

a number of grievances on behalf of all affected members claiming that changes in break times violated the contract.  (Affidavit of Eric Ray, Ex. A, ¶¶ 3-6.)  As of September 2010, the Union has indicated that several of these grievances remain active, and none of these grievances filed in September 2008 has been formally withdrawn or resolved.  (Id. at ¶¶ 7-8.)

As illustrated above, the Union was intimately involved in this dispute from the outset, and there are considerable competing interests between Muslim and non-Muslim employees.  Any religious accommodation relief for Muslim employees will significantly impact non-Muslim employees (and could result in major discord at the plant).  As the exclusive bargaining representative of all employees and the possessor of the duty of fair representation, the Union's involvement is critical so it can balance and effectively represent these competing interests and work to diminish any resulting labor unrest.  See C&C Plywood, 385 U.S. at 430 n.15.

It is also likely that any ordered change to break times as a prayer accommodation will not comply with the current language of the CBA, which mandates:  "[e]mployees must receive a 15-minute rest period approximately half way through the first portion of their shift, but in no event will it be taken earlier than one and one half (1½) hours from the start of the shift nor later than three (3) hours from the start of the shift."  (Ex. A, Att. 1, Art. 25).  Also, employees must receive a 30-minute meal period "at approximately half way through the employee's scheduled work day."  (Id.).  Accordingly, if any ordered relief regarding break time (such as a sunset prayer time) varies from the language in the CBA, joinder of the Union is required.  See Ware, 186 F. Supp. 2d at 330 (relief sought by plaintiff could not be afforded in the absence of the union because plaintiff sought a judgment affecting terms of the CBA).

9

      E.      **Without The Union, JBS Risks Multiple or Inconsistent Obligations.**

If the Union is not made a party to this lawsuit, JBS could be put in the untenable position of being subject to a Court order that conflicts with existing provisions of the CBA and/or requires JBS unilaterally to implement programs that are mandatory subjects of bargaining. Proceeding without joining the Union unfairly subjects JBS to inconsistent obligations, rendering the Union a required party. See Fed. R. Civ. P. 19(a)(1)(B)(ii); Forsberg, 623 F. Supp. at 122 (holding union indispensible because proceeding in the union's absence could subject employer to inconsistent obligations).

**III.**    **BECAUSE JOINDER IS NOT FEASIBLE AND EQUITY DOES NOT WARRANT CONTINUATION OF THIS CASE, DISMISSAL IS APPROPRIATE.**

      A.      **Joinder Of The Union Is Not Feasible Because The EEOC Did Not Administratively Exhaust the Union .**

Under federal law, a charge must be filed against a party before an action may be commenced against that party. 42 U.S.C. 2000e-5(f)(1). In the Tenth Circuit, the filing of a discrimination charge with an administrative agency is a jurisdictional prerequisite to filing a Title VII discrimination suit in federal court. See Logsdon v. Turbines, Inc., 2010 U.S. App. LEXIS 21639, **4-5 (10th Cir. Oct. 20, 2010).

In this case, despite the facts that the Union was a known and direct participant in the events of Ramadan 2008, and that nearly 200 employees filed grievances with the Union concerning such events, the EEOC inexplicably chose not to name the Union as a Respondent in its Commissioner's charge, nor did any of the Charging Parties listed in the Complaint name the Union as a Respondent. Compl. ¶ 8 and Ex. D, Commissioner's Charge.

10

The EEOC's decision not to name the Union as a Respondent is confounding because the EEOC could have asserted the Union breached its duty of fair representation, especially in light of its refusal to meet with Muslim employees and its failure to communicate with them.  (Exs. A & C.)  See Cole v. Central Park Systems, Inc., 2010 U.S. Dist. LEXIS 99173, **21-22 (E.D.N.Y. Sept. 20, 2010) (dismissing claim against union because of failure to exhaust administrative remedy); Oparaji v. United Fed'n of Teachers, 418 F. Supp. 2d 139, 146 (E.D.N.Y. 2006) (noting Title VII claims are cognizable against union defendants, but only where a plaintiff can establish a breach of duty of fair representation); Vaca v. Sipes, 386 U.S. 171, 177 (1967) (establishing that claim requires a showing that union failed to discharge its duties in good faith, with honesty and without hostility or discrimination).

The EEOC also ignored Fed. R. Civ. P. 19(c) and did not plead the reasons for nonjoinder.  Under 19(c), a party asserting a claim for relief, must state:  the name, if known, of any person who is required to be joined if feasible but is not joined; and (2) the reasons for not joining that person.  As the Union is a required party (see above), and as the EEOC did not plead facts concerning non-joinder, the Court can assume that the EEOC was concerned that the Union's joinder would be jurisdictionally improper.  See William Chris Trucks & Equip. Brokers v. First Canadian Bank, 98 F.R.D. 584, 586 (E.D. Ill. 1983) ("Failure to comply with Rule 19(c) has been found to be sufficient grounds for a determination that an individual 'cannot be made a party' within the meaning of Rule 19(b)."); Stevens v. Loomis, 334 F.2d 775, 776 n.1 (1st Cir. 1964) ("We are engaged in a lawsuit, not in a poker game, and if plaintiff chooses not to recite the facts about the other beneficiaries under these circumstances particularly where she was

11

obligated to do so by [Fed. R. Civ. P. 19(c),] we will assume that there are other beneficiaries who, if joined, would destroy diversity.")

### B. No Exception Is Applicable That Would Allow The Union To Be Joined When The EEOC Did Not Name It In The Administrative Charge.

There are exceptional circumstances where courts have joined parties who were not administratively exhausted, but no exceptional circumstances exist here. To determine whether a party that is not named in an administrative charge should be joined, courts consider:

> (1) could the unnamed party's role be ascertained at the time of the EEOC charge; (2) whether the interests of the named and unnamed parties are so similar that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceeds resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented that it can be represented through the named party.

Romero v. Union Pac. R.R., 615 F.2d 1303, 1312 (10th Cir. 1980).

Considering these factors, the EEOC has had knowledge of the Union's involvement in this dispute from the outset, and they have known about the need to involve the Union in the requested remedy. See Ex. C. Second, there is no identity of interest between the Union and JBS, so there was a clear need to include the Union in the administrative proceeding. Indeed, courts agree that employers and unions often occupy adversarial roles and cannot be considered as having an identity of interest. See Vital v. Interfaith Med. Ctr., 168 F.3d 615, 618 (2d Cir. 1999) (dismissing Title VII claims against union absent prior notice, finding no identity of interest between union and employer). Third, the Union's absence from the EEOC proceedings prejudiced it from being able to help craft an agreeable settlement and prejudiced JBS from the same. Fourth, the Union has not represented (nor would it) that it can be represented through JBS. Therefore, in light of the application of the Romero factors, it is clear that no exceptional

12

circumstances exist warranting circumvention of the administrative exhaustion requirement. See 42 U.S.C. § 2000e-5(f)(1).[8]

The EEOC's failure to administratively exhaust and/or join the Union from the outset is especially egregious because the EEOC is charged with handling the administrative stage of discrimination complaints. Clearly, "[i]t cannot be said that the EEOC is either unversed in the technicalities of pleading or the jurisdictional requirements of the Act . . . ." EEOC v. Local 798, 1985 U.S. Dist. LEXIS 12500, \*\*10-12 (N.D. Okla. Dec. 20, 1985).

In EEOC v. Local 798, the EEOC sought a permanent injunction against a union and "minor and ancillary injunctive relief" from an association and contractor companies. The association and contractor companies moved to dismiss because the EEOC had not filed an administrative charge against them. (Id.) In applying the Romero factors,[9] the court found there was no reason to allow joinder of the non-exhausted association and contractors and expressly rejected the EEOC's argument that joinder of non-exhausted parties would be appropriate because it was only seeking "minor and ancillary relief." (Id.) The court found that when seeking a permanent injunction and reforming a collective bargaining agreement, "[s]uch relief must be characterized as more than merely minor and ancillary." (Id. at \*11.) The court granted

---

[8] This situation is wholly inapposite to situations where courts have allowed joinder of a party even though the EEOC could not state a direct cause of action against that party. See, e.g., Sierra Club v. Hodel, 848 F.2d 1068, 1077 (10th Cir. 1988) (allowing joinder of a county even though plaintiff could not sue county directly); EEOC v. Peabody Western Coal Co., 610 F.3d 1070, 1086-90 (9th Cir. 2010) (addressing EEOC's statutory preclusion from filing suit against Secretary of the Interior). Here, the EEOC *could* have named the Union in the administrative charge and then named the Union in this suit. There is absolutely no legal bar (such as statutory exclusion, etc.) that would have precluded the EEOC from including the Union in the administrative stage.

[9] The court noted that it was unsure if the factors in Romero should even be applied to an action where the charge and complaint are brought solely by the EEOC, but applied the Romero factors nonetheless. (Id.)

13

the dismissal, distinguishing cases where parties had been joined (despite lack of administrative exhaustion) when a layperson (not the EEOC) was the charging party. (Id.) The court further found that Rule 19 did not permit the EEOC to join a party not named in the EEOC charge. (Id.)

Like the situation in EEOC v. Local 798, the EEOC has been involved in this case from the beginning, and it should not be permitted to avoid statutory prerequisites. As a recent federal court has stated:

> The government, like its citizens, must follow the law. The EEOC must respect Title VII's administrative scheme and follow the clearly delineated paths to justice that Congress has created. Seeking shortcuts to these paths does nothing more than undermine their valuable function and erode the meaning of the rights they are designed to protect. It is no less good morals and good law that the Government should turn square corners in dealing with the people than that the people should turn square corners in dealing with their government.

EEOC v. CRST Van Expedited, Inc., 2009 U.S. Dist. LEXIS 71396, * 19 (N.D. Iowa Aug. 13, 2009). Further, Rule 19 does not trump Congress's mandate because the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).[10]

Any argument by the EEOC that the Union may be joined merely for relief purposes (similar to its argument in Local 798), should also be rejected. The circumstances presented here are wholly distinguishable from cases where unions are joined only for purposes of effectuating relief and their role is limited to the relief stage. See, e.g., Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 399 (1982). Here, the EEOC not only seeks relief directly against the Union as "an entity in active concert or participation with" JBS, it also seeks relief that

---

[10] Notably, even when the EEOC is not involved, mere representation by counsel has convinced courts that no exception to administrative exhaustion should be allowed. See, e.g., Crosten v. Kamauf, 932 F. Supp. 676, 682 (D. Md. 1996) (court aided in its conclusion that no exception to naming requirement was justified when plaintiff was represented by counsel during entire administrative process); Bonner v. Guccione, 68 FEP 47, 50 (S.D.N.Y. 1995) (finding significant fact that plaintiff was represented by counsel at the time EEOC complaint was filed).

14

necessarily requires the Union.  Moreover, the Union's actions during Ramadan 2008, such as its participation (and non-participation) in meetings and its communication (and non-communication) with its members, are inextricably intertwined in and material to these proceedings.  Indeed, the Union and its members filed nearly 200 grievances concerning the events underlying this case.  (Ex. A, ¶¶ 3-6.)  Yet the EEOC inexplicably failed to provide the Union with notice and an opportunity to respond, or an opportunity to participate in conciliation efforts.  The Union has played an integral role in this dispute from day one, and would play a significant role in this litigation, well before any relief is contemplated, so it cannot merely sit on the sidelines until the final play.

### C. Equitable Considerations Demonstrate This Case Should Not Proceed Without the Union.

The Union's absence in this case will be irreparably prejudicial to JBS.  If a party who is required to be joined if feasible cannot be joined, the court:

> Must determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensible.  The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

As discussed above, JBS would be put in the untenable position of being subject to conflicting obligations, conflicting interests (without the exclusive bargaining agent helping to manage the interests of other employees such as non-Muslims), and exposure to unfair labor charges for unilateral changes on mandatory subjects of bargaining.  This proverbial "rock and a

15

hard place" is not news to the EEOC.  The EEOC is, and has been, well aware of the Union's involvement in the facts of this dispute, as well as the necessity for the Union's involvement in implementing many of the remedies proposed in the Complaint.

Although dismissal is a serious ramification, as the Northern District of Iowa recently recognized:

> Although dozens of potentially meritorious [] claims may now never see the inside of a courtroom, to rule to the contrary would work a greater evil insofar as it would permit the EEOC to perfect an end-run around Title VII's integrated, multistep enforcement procedure.  It would ratify a 'sue first, ask questions later' litigation strategy on the part of the EEOC, which would be anathema to Congressional intent.  The Court cannot ignore the law as it is written by Congress.

EEOC v. CRST Van Expedited, Inc., 2009 U.S. Dist. LEXIS 71396, *19 (N.D. Iowa Aug. 13, 2009); see also EEOC v. Cintas Corp., 2010 U.S. Dist. LEXIS 99050, **30-31 (E.D. Mich., Sept. 20, 2010) (noting dismissal severe, but appropriate, because prior to filing a 706 action, the EEOC did not engage in a "multistep enforcement procedure" mandated by Title VII").

### V. DISMISSAL IS ALSO WARRANTED BECAUSE THE UNION'S ABSENCE RENDERED CONCILIATION EFFORTS FUTILE.

Conciliation is a condition precedent for the EEOC to sue, and:

> If after investigation, the Commission determines there is reasonable cause to believe that the charge [of discrimination] is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion.

42 U.S.C. § 2000e-5(b).

To satisfy the requirement of conciliation, the EEOC must (1) outline to the employer the reasonable cause for its belief that Title VII has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer.  EEOC v. Asplundh Tree Expert Co., 340 F.3d 1256, 1259 (11th Cir.

16

2003), citing EEOC v. Klingler Elec. Corp., 636 F.2d 104, 107 (5th Cir. 1981).  "In evaluating whether the EEOC has adequately fulfilled this statutory requirement, 'the fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances.'" Asplundh Tree, 340 F.3d at 1259.  The EEOC's efforts should be considered sufficient if it made a sincere and reasonable attempt to negotiate by providing the party with an "adequate opportunity to respond to all charges and negotiate possible settlements." EEOC v. One Bratenahl Place Condominium Ass'n., 644 F. Supp. 218, 221 (N.D. Ohio 1986), quoting Marshall v. Hartford Fire Ins. Co., 78 F.R.D. 97, 107 (D.C. Conn. 1978).

Here, the EEOC did not satisfy elements two or three of its duty to conciliate.  Specifically, the EEOC demanded remedies that were impossible for JBS to perform without the Union's involvement, and did not respond reasonably or flexibly to JBS's position from the outset that the Union played an integral role in both the facts and any resolution of this dispute.  See Ex. E (August 27, 2009 Conciliation Letter) and Ex. C; Asplundh Tree, 340 F.3d 1250 (noting that the EEOC asked for reinstatement that was impossible because the project had ended).  In fact, as the events of Ramadan 2008 demonstrate (such as the non-Muslims' refusal to work after the Company attempted to accommodate the Muslims' request for a 7:30 p.m. break time), the EEOC's failure to include the Union rendered the conciliation efforts futile because the Union, representing the interests of all of its members, was and is a necessary and indispensable party to any negotiations for a remedy/settlement.

The EEOC played fast and loose with its own administrative process.  By not including the Union in the administrative process or conciliation efforts, the EEOC foreclosed any meaningful opportunity for a resolution.  Accordingly, dismissal is warranted.  See EEOC v.

17

Bloomberg, 2010 U.S. Dist. LEXIS 113798, \*\*31-41 (S.D.N.Y. Oct. 25, 2010) (dismissing retaliation claim for failure to conciliate in good faith); EEOC v. Klinger, 636 F.2d at107 (dismissal based on failure to conciliate in good faith); EEOC v. Agro Distribution LLC, 2009 U.S. App. LEXIS 959, No. 07-60447, * 12 (5th Cir. 2009) ("Under these facts, dismissing the case and awarding attorney's fees for the failure to conciliate would not have constituted an abuse of discretion."); EEOC v. Pierce Packing Co., 669 F.3d 605, 609 (9th Cir. 1982)(if EEOC fails to conciliate in good faith, dismissal is warranted).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant JBS respectfully requests that Plaintiff's Complaint be dismissed in its entirety, with prejudice. JBS further requests that it be awarded its costs and reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated this 1st day of November, 2010.

        Respectfully submitted,

*s/ Heather Fox Vickles*
W.V. Siebert
Heather Fox Vickles
SHERMAN & HOWARD L.L.C.
633 17th Street, Suite 3000
Denver, CO  80202
303-297-2900 / Fax:  303-298-0940
Email:  BSiebert@shermanhoward.com
Email:  HVickles@shermanhoward.com

18

        Raymond M. Deeny
        SHERMAN & HOWARD L.L.C.
        90 South Cascade Avenue, Suite 1500
        Colorado Springs, CO  80903
        719-475-2440 / Fax:  719-653-4576
        Email:  RDeeny@shermanhoward.com

        Attorneys for Defendant JBS USA, LLC


## CERTIFICATE OF SERVICE (CM/ECF)

    I hereby certify that on this 1st day of November, 2010, I electronically filed the foregoing **MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

    Rita.Kittle@eeoc.gov
    Stephanie.struble@eeoc.gov


        *s/ Lynn Zola Howell*