## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

      Plaintiff,

Maryan Abdulle, Rahma Arr, Abdirhishid Hussein, Faysal Ibrahim, Abdirasak Issa, Raawi Sahal

      Plaintiffs/Intervenors

      v.

JBS USA, LLC d/b/a JBS SWIFT & COMPANY

      Defendant.

---

## COMPLAINT IN INTERVENTION and JURY DEMAND

---

### I.      NATURE OF THE ACTION

This is an action brought to remedy unlawful employment practices, including harassment and discrimination on the basis of race, color, national origin and religion, failure to accommodate religion, and retaliation, including discipline for complaints of unlawful employment practices and complaints for failure to accommodate religion. Such practices are in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and 42 U.S.C. § 1981.

Plaintiffs/Intervenors are Black, Somali, and Muslim. Each is a former or current

employee of Defendant's Greeley, Colorado, facility.  Each Plaintiff/Intervenor was affected by discriminatory practices of Defendant.  The Plaintiffs/Intervenors are Maryan Abdulle, Rahma Arr, Abdirashid Hussein, Faysal Ibrahim, Abdirasak Issa, and Raawi Sahal.   As alleged with greater particularity below, Plaintiff/Intervenors contend that Defendant engaged in a pattern or practice of harassment and discrimination on the basis of race, color, national origin and religion by allowing racial, ethnic and religious harassment in the workplace, and by treating Plaintiffs/Intervenors differently in the terms and conditions of their employment, including by disciplining and/or discharging Plaintiffs/Intervenors because of their race, color, national origin, religion and/or in retaliation for complaints of Defendant's unlawful employment practices and/or complaints for failure to accommodate religion.

Plaintiffs/Intervenors, by and through their counsel, having been permitted to intervene in this action, complain against the Defendant as follows:

## II.        JURISDICTION AND VENUE

1.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2.   This action is authorized and instituted pursuant to §§ 704, 706(f)(1), (f)(3), and 707 of Title VII, 42 U.S.C. §§ 2000e-3, 2000e-5(f)(1) and (3), 2000e-6, § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and 42 U.S.C. § 1981.

3.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed within the jurisdictional boundaries of the United States District Court for the District of Colorado.

4.  Plaintiffs/Intervenors Maryan Abdulle, Rahma Arr, Abdirashid Hussein, Abdirasak Issa and Raawi Sahal timely filed class-based Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on behalf of themselves and others similarly situated.

5.  Although Plaintiff/Intervenor Faysal Ibrahim did not file a Charge of Discrimination, all procedural prerequisites for filing this suit have been met, as Plaintiff Ibrahim is covered by the class-based charges in accordance with the Single Filing Rule.  Under this doctrine, if one plaintiff has filed a timely EEOC administrative complaint, then other individuals with claims arising out of similar discriminatory treatment in the same time frame need not satisfy the filing requirement.  *Foster v. Ruhrpumpen, Inc.,* 365 F.3d 1191 (10th Cir. 2004); *Thiessen v. General Elec. Corp.*, 267 F.3d 1095, 1110 (10th Cir. 2001)("the purpose behind the single filing rule is that it would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC").

### III.   PARTIES

6.  Maryan Abdulle, Rahma Arr, Abdirashid Hussein, Faysal Ibrahim, Abidrasak Issa, and Raawi Sahal ("Plaintiffs/Intervenors"), were at relevant times, residents of the State of Colorado.

7.  Defendant JBS USA, L.L.C., is a Delaware limited liability company.

8.  At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of 42 U.S.C. §§ 2000e(b), (g) and (h), and 42 U.S.C. § 1981.

9.  At all relevant times, Defendant was/is the employer of Plaintiffs/Intervenors within the meaning of Title VII and 42 U.S.C. § 1981.

## IV.    GENERAL ALLEGATIONS

10. More than thirty (30) days prior to the institution of this lawsuit, Maryan Abdulle, Rahma Arr, Abdirashid Hussein, Abdirasak Issa and Raawi Sahal, current and former employees of Defendant, filed class-based Charges of Discrimination with the EEOC on behalf of themselves and other similarly situated employees, alleging violations of Title VII by Defendant.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

12. Plaintiffs/Intervenors are Black, Muslim immigrants from Somalia.

13. Plaintiffs/Intervenors and other similarly aggrieved individuals are currently or were formerly employed by Defendant at its plant in Greeley, CO ("the Facility").

14. United Food and Commercial Workers Local #7 ("Union") is the exclusive bargaining representative for employees at Defendant's plant in Greeley, Colorado.

15. Throughout their employment, Plaintiffs/Intervenors were and continue to be subjected to discrimination and a hostile work environment because of their race (Black), color (Black), national origin (Somali), and/or religion (Muslim).

16. According to the Muslim religion, Muslims must pray five (5) times a day according to the Muslim prayer calendar.

17. Throughout their employment, Plaintiffs/Intervenors were denied and continue to be denied the ability to pray.

18. Muslim employees at the Facility were harassed and continue to be harassed when they prayed or attempted to pray during scheduled breaks.

19. Muslim employees at the Facility were harassed and continue to be harassed when they prayed or attempted to pray during their bathroom breaks.

20. Muslim employees' requests to pray during bathroom breaks were and continue to be denied.

21. Plaintiffs/Intervenors were and continue to be subjected to harassing comments on the basis of their race (Black), color (Black), national origin (Somali), and and/or religion (Muslim).

22. Managers, supervisors, and other employees regularly threw and throw blood, meat, fat, and/or bones at Plaintiffs/Intervenors.

23. Plaintiffs/Intervenors were and are regularly verbally harassed with names and phrases such as "Nigger," "Monkey," "Fucking ugly African," "Black African," "Ho," and "Saddam Hussein."

24. There was and is offensive anti-Somali, anti-Muslim and anti-Black graffiti present in the restrooms. For example, employees saw graffiti such as "Fucking Somali," "Fucking Africans," "Hey fucking Africans, go back to Africa," "Fuck the Muslims," and "America is not for you," "Disgusting Somalis," and "Somalis are lazy and weak."

25. Plaintiffs/Intervenors were and continue to be offended by the above comments and actions.

26. Plaintiffs/Intervenors were and are discriminatorily denied restroom breaks and breaks to get a drink of water.

27.  Plaintiffs/Intervenors were and are discriminatorily denied access to proper medical care for injuries/illnesses.

28.  Plaintiffs/Intervenors were and are not properly treated for work-related injuries.

29.  Plaintiffs/Intervenors were paid less than other employees, including not being given the requisite qualification pay increase that other employees received, given the pay increase later than other employees, and not receiving overtime.

30.  Plaintiffs/ Intervenors complained to the Defendant about the harassment based on race, color, national origin and/or religion, but Defendant failed to adequately address and correct the hostile work environment.

31.  Plaintiffs/Intervenors were retaliated against for complaining about harassment, discrimination and failure to accommodate their Muslim religion.

32.  Plaintiffs/Intervenors were disciplined and continue to be disciplined more harshly than non-Somali and non-Muslim employees, or were disciplined for conduct that others were not.

### *Events Relating to Ramadan 2008*

33.  The requirement stated in the Qur'an that Muslims pray five (5) times a day is especially important during the holy month of Ramadan, when Muslims also fast during the day and only break their fast at sundown during their fourth prayer of the day.

34.  Fasting during Ramadan requires no intake of food or water before sunset.

35.  The first day of the 2008 Ramadan holiday on which the charging parties reported to work was Tuesday, September 2, 2008.

36. On September 2, 2008, at the conclusion of the B shift, at or around 11:45 p.m., between 40 and 100 Muslim employees went to Shift Superintendent Juan Palacios' office to request that the meal break be moved from 9:15 to 7:30 p.m., so that the Muslim employees could pray in accordance with the requirements of their religion and break their fast within fifteen (15) minutes of sunset.

37. For the next two shifts, Wednesday and Thursday, September 3 and 4, 2008, Defendant accommodated the Muslim employees and had the meal break occur midway through the shift, at 7:30 p.m.

38. On Friday September 5th, 2008, shortly before the Muslim employees believed their 7:30 p.m. break would occur, Defendant decided to move the break to 8:00 p.m.

39. On September 5, 2008, at around 7:30 p.m., Defendant stationed management employees at all of the exits, refused to allow the Muslim employees to leave the line and told them to return to their lines.

40. At 8:00 p.m., the employees were allowed to take their break.

41. Defendant shut off the water fountains and/or tagged them with red tags and yellow caution tape.

42. Red tags are usually used in the Facility to indicate rotten or spoiled meat.

43. Because the water fountains were unavailable for use, the Muslim employees were prevented from getting a drink of water, a drink they needed after fasting all day for Ramadan.

44. Because of Swift's actions, the Muslim employees were also prevented from washing up, a religious requirement before prayers.

45. During the 8:00 p.m. break on September 5, 2008 Defendant's management told Muslim employees to leave the facility.

46. When some Muslim employees attempted to re-enter the facility at the conclusion of the break, Defendant told them that they could not return to work.

47. Other Muslim employees were allowed to return to work but faced significant harassment.  For some Muslim employees that returned, the harassment experienced was so severe that they were constructively forced to leave the facility.

48. From Friday, September 5, 2008 and thereafter, Defendant refused to accommodate the Muslim employees and instead moved the meal break to 8:00 p.m. on Friday and to 8:30 p.m. thereafter.

49. Muslim employees had suggested numerous ways their need to pray during the workday could be accommodated, but their suggestions were rejected.

50. On Monday, September 8, 2008, Defendant informed the Union that employees who had left the Facility on Friday evening would be placed on an indefinite suspension for engaging in an "unauthorized work stoppage."

51. On Tuesday, September 9, 2008, Defendant decided that employees who left the facility on Friday evening would be allowed to return to work.  These employees would be given a final written warning with Friday and Monday being treated as unpaid suspensions, provided they returned to work that day.

52. Defendant did not contact each of the affected Muslim employees to tell them they were expected to return to work on Tuesday, September 9, 2008.

53. Some Muslim employees heard via word of mouth that they were expected to return to work on the night of Tuesday, September 9, 2008, and were able to do so.

54. Employees that returned to work on September 9, 2008 faced further significant harassment and discriminatory treatment from Defendant's employees, managers and supervisors.

55. Plaintiff/Intervenor Maryan Abdulle additionally alleges the following:

   1. Plaintiff/Intervenor Maryan Abdulle has been employed by Defendant since about June 23, 2008.

   2. Ms. Abdulle repeatedly requested an accommodation of a break, 10-15 minutes in length, to pray during her shift.  Her supervisor denied these requests, while granting other non-Muslim co-workers breaks of similar length for reasons other than restroom use.

   3. Ms. Abudulle is only given bathroom breaks lasting 2-5 minutes.  This amount of time is inadequate for Ms. Abdulle to remove her personal protective gear and use the restroom.  As a result, she is subject to verbal discipline by her supervisor.

   4. Ms. Abdulle's supervisor frequently denies her the right to use the bathroom at all, and she is forced to remain at her workstation despite the fact that she urgently needs to use the restroom.

   5. Ms. Abdulle has requested, during every Ramadan, to break her fast according to her religious beliefs, within fifteen (15) minutes of sundown.  She has consistently been denied this request for a religious accommodation.

6. Ms. Abdulle received a suspension and written discipline from Defendant for leaving the Facility on September 5, 2008, after she was harassed by co-workers.

56. Plaintiff/Intervenor Rahma Arr additionally alleges the following:

a. Plaintiff/Intervenor Rahma Arr has been employed by Defendant since about March 31, 2008.

b. Although Defendant's employees are typically "qualified" within two to three weeks of their date of hire, Ms. Arr was not qualified for nine months, even though she was performing her position correctly. As a result, Ms. Arr did not receive a pay increase during the nine months when she was not qualified.

c. Ms. Arr works at a knife table, which involves grabbing meat off the line, placing it on a table, and using a whistle knife to cut the meat off the bones. Generally, two people work at a knife table where Ms. Arr works. However, Ms. Arr has worked alone at her station since October 2009. Although Ms. Arr has repeatedly asked her supervisor, Antonio Roscoe, for assistance at her knife table, Mr. Roscoe denies her requests.

d. Ms. Arr is not allowed to leave her knife table to sharpen her knife, unlike her non-Somali co-workers who are permitted to leave the disassembly line during their shift to sharpen their knives. Because Ms. Arr is unable to sharpen her knife, her job becomes significantly more difficult. As a result, Ms. Arr has developed a physical injury in her shoulder that causes her severe pain.

e. Because Ms. Arr works alone at a station requiring two employees and is unable to sharpen her knife, she sometimes misses meat when it passes by on the

disassembly line.  Mr. Roscoe has disciplined Ms. Arr twice for letting the meat pass by her on the disassembly line.  Ms. Arr's non-Somali co-workers who let meat pass by on the disassembly line are not disciplined.

f.   Ms. Arr asked to see the nurse when she cut her finger.  Mr. Roscoe denied this request and informed Ms. Arr he didn't care because he has already cut off his own finger.

g.   Ms. Arr repeatedly requests to work overtime.  Mr. Roscoe ignores these requests and allows her non-Somali co-workers to work overtime instead.

h.   During her entire shift, Ms. Arr is not permitted to use the restroom outside of her two scheduled breaks.  Ms. Arr's non-Somali co-workers are permitted 2-3 unscheduled breaks during their shift.

i.   Ms. Arr has seen racially offensive graffiti in the women's restroom.

57.  Plaintiff/Intervenor Abdirashid Hussein additionally alleges the following:

a.   Plaintiff/Intervenor Abdirashid Hussein was employed by Defendant from about January 21, 2008 through about October 2009.

b.   While working at the Facility, Mr. Hussein was often called derogatory names by his non-Somali co-workers and supervisors.  For example, his supervisor referred to him as "Saddam Hussein" on a daily basis.

c.   Mr. Hussein saw a lot of racially offensive graffiti in the men's restroom.  The graffiti was anti-African, anti-Black, anti-Somali, and anti-Muslim.

d.   Mr. Hussein was never qualified in any position.  He was constantly being moved around with no explanation as to why the moves were necessary.

e.  Mr. Hussein was repeatedly denied restroom breaks.  Because of this, Mr. Hussein was forced to take unauthorized breaks to use the restroom.  Mr. Hussein was disciplined for taking these unauthorized breaks.

f.  Mr. Hussein requested short prayer breaks on several occasions.  He was denied these breaks.  In response to his requests, supervisors told Mr. Hussein that if he asked for any more breaks, he would be fired.  In addition, Mr. Hussein was sent to the office for discipline.

g.  Mr. Hussein was repeatedly denied water breaks.

h.  When Mr. Hussein prayed in the restroom during his scheduled breaks, he was kicked by co-workers.

i.  During Ramadan 2008, Mr. Hussein did not leave the Facility as instructed by management.  Instead, he remained on the line.  For the remainder of the shift, Mr. Hussein was subjected to harassment by non-Somali co-workers.

j.  Mr. Hussein was routinely not paid for the hours that he worked.

k.  Mr. Hussein complained to supervisors and other management regarding the miscalculations in his pay.

l.  In response to Mr. Hussein's complaints and grievances, supervisors and management told Mr. Hussein that if he continued to complain or filed any more grievances, he would be fired.

m.  In about March 2009, Mr. Hussein was injured during his shift.  He was not adequately treated for his workplace injury.

n.  On or about September 1, 2009, Mr. Hussein filed a Charge of Discrimination with the EEOC.  Upon information and belief, Defendant was aware of Mr. Hussein's complaint.  In October 2009, Mr. Hussein was fired.

58.  Plaintiff/Intervenor Faysal Ibrahim additionally alleges the following:

a.  Plaintiff/Intervenor Faysal Ibrahim was employed by Defendant from about June 2008 until about July 2009.

b.  Aside from the first several weeks of his employment, Mr. Ibrahim was the only Black, African, and Muslim stationed on his "line."

c.  When Mr. Ibrahim would request a bathroom break from his supervisor, he was often forced to wait thirty minutes to an hour.  Mr. Ibrahim was the only person on his line who ever had to wait for a bathroom break.

d.  Mr. Ibrahim was often denied the opportunity to sharpen his knife, which affected his job performance and caused him to be injured.  When Mr. Ibrahim requested to sharpen his knife, he was denied by his supervisor.  Mr. Ibrahim would then be forced to use his breaks in order to sharpen his knife.  Mr. Ibrahim was the only worker on his line who was denied the opportunity to sharpen his knife, which often made him work with a dull knife.

e.  Mr. Ibrahim suffered a back injury as a result of his work with a dull knife.  After his injury, Mr. Ibrahim went to health services, where he was told to go back to work on the line.  After initially going to health services, Mr. Ibrahim was subsequently denied by his supervisor the opportunity to return to health services to receive medical treatment.

f.   Mr. Ibrahim was exposed to racially offensive graffiti in the men's restroom.

g.   Mr. Ibrahim was harassed and called racist names by co-workers on his line.  Mr. Ibrahim's supervisors frequently witnessed this name-calling.

h.   One of Mr. Ibrahim's supervisors, Javier, also called Mr. Ibrahim offensive names.  Mr. Ibrahim's manager, Gilbert Chavez, referred to Mr. Ibrahim as "the African," and "the Black guy."  All other workers Mr. Ibrahim's line were referred to by their first names.

i.   Between November and December of 2008, Mr. Ibrahim had meat thrown at him on three separate occasions.  No other workers on Mr. Ibrahim's line ever had meat thrown at them.

j.   Mr. Ibrahim was given more work than the other workers on his line.  His co-workers forced him to clean up the meat they had dropped, which was not Mr. Ibrahim's responsibility.  If Mr. Ibrahim refused, the other workers physically threatened Mr. Ibrahim and they collaborated to report to their supervisor that Mr. Ibrahim was not doing his work.

k.   Mr. Ibrahim went to Human Resources to report the disparate treatment he was receiving.  Additionally, Mr. Ibrahim reported the discrimination to his supervisors.  Following Mr. Ibrahim's complaint to HR, his manager, Gilbert Chavez, began disciplining him on a regular basis. Between Mr. Ibrahim's initial complaint to HR in approximately June of 2009 and his suspension on July 20, 2009, Mr. Ibrahim was disciplined approximately 3-4 times per week.

l. On or about July 20, 2009, Mr. Ibrahim was suspended. Three days after his suspension, Mr. Ibrahim went to the Facility to inquire about his employment status. He was told that HR would call him. One week later, Mr. Ibrahim received a call from Defendant informing him that he was terminated.

59. Plaintiff/Intervenor Abdirasak Issa additionally alleges the following:

a. Plaintiff/Intervenor Abdiradak Issa has been employed by Defendant since about August 31, 2009.

b. Mr. Issa is often called names such as "fucking ugly African," "monkey," and "lazy" by his non-Somali co-workers.

c. Mr. Issa has often had meat, bones and fat thrown at him by other non-Somali co-workers, who follow these actions with laughter.

d. Mr. Issa has seen a significant amount of offensive graffiti in the restroom targeted at Blacks, Somalis and Muslims. Phrases Mr. Issa has seen include: "Somalias fucking stink cozy motherfuckers go back to Africa"; "Hey fucking Africans, go back to Africa"; "America is not for you"; "Fuck the Muslims"; "Disgusting Somalis" and "Somalis are lazy and weak."

e. Mr. Issa has complained to his supervisor two or three times about the name-calling, meat throwing, and offensive graffiti. However, Mr. Issa's supervisor has not done anything to stop the harassment.

f. Mr. Issa's supervisor refused to allow him to go to health services when he was injured. This injury was largely caused by the fact that Mr. Issa was not allowed to sharpen his knife.

g.  Mr. Issa receives lower pay than other non-Somali employees with similar experience and in similar positions to Mr. Issa.

h.  Mr. Issa's supervisors routinely ask Mr. Issa to perform tasks on his own that cannot reasonably be handled by one employee.  For example, Mr. Issa has been requested to carry large chunks of carcass that no individual can reasonably carry on their own.

i.  Mr. Issa is routinely denied restroom breaks while non-Somali employees are not denied such breaks.

j.  Even when Mr. Issa is allowed restroom breaks, he is always made to wait, although non-Somali employees are never subjected to such limitations.

k.  Mr. Issa has requested the opportunity to take one short break during his shift to pray, but has been denied.

l.  Mr. Issa was retaliated against for requesting this religious accommodation. Specifically, Mr. Issa's supervisors threatened to fire him if he ever again went to Human Resources regarding prayers.

60.  Plaintiff/Intervenor Raawi Sahal additionally alleges the following:

a.  Plaintiff/Intervenor Raawi Sahal has been employed by Defendant since about May 27, 2008.

b.  Ms. Sahal was subjected to harassing comments including phrases such as, "Nigger," "The Blacks are back!" and "The animals!"

c.  Ms. Sahal saw offensive graffiti about people of African origin on the walls of the women's restroom.

d. Ms. Sahal was offended by the above actions and comments.

e. Ms. Sahal was discriminatorily denied restroom breaks. Following the denial of restroom breaks, she was sometimes forced to take unauthorized restroom breaks in order to avoid an accident. She was the disciplined for leaving the floor.

f. Ms. Sahal was unable to drink water during Ramadan 2008 because the water fountains were taped off when it was time to break the fast.

g. Ms. Sahal received a suspension and written discipline from Defendant for leaving the Facility on September 5, 2008.

h. Throughout her employment, Ms. Sahal has been denied the ability to pray. Ms. Sahal specifically requested breaks for prayers and was consistently denied those breaks.

i. Ms. Sahal has been harassed while praying during scheduled breaks. This harassment has included being yelled at while praying, having her prayer mat taken away, and once having a supervisor attempt to steal items off her person while she was praying.

j. When Ms. Sahal complained to management about not receiving prayer breaks and receiving discriminatory treatment from her supervisor, her supervisor retaliated by harassing Ms. Sahal and other Somali employees. This had the actual effect of discouraging Ms. Sahal from bringing further complaints.

## V.     CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF:**
**PATTERN OR PRACTICE OF DISCRIMINATORY TREATMENT BECAUSE OF**
**RACE, NATIONAL ORIGIN, RELIGION, AND/OR RETALIATION**
**(42 U.S.C. § 2000e-2(a))**

61.   Plaintiffs/Intervenors reallege all of the foregoing paragraphs.

62.   Since at least December 22, 2007, Defendant has engaged and continues to engage in a

pattern or practice of unlawful discriminatory employment practices at its facility in

Greeley, CO, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by

discriminating against Plaintiffs/Intervenors with respect to the terms and conditions of

their employment because of their race (Black), color (Black), national origin (Somali),

and religion (Muslim), and/or has retaliated against employees for requesting a

reasonable accommodation for their religion.

63.   The pattern and/or practice of discrimination includes, without limitation, harassment,

disparate treatment, denial of religious accommodation, retaliation against individuals

for seeking religious accommodation, and disciplining and discharging Somali Muslim

employees because of their race, color, national origin, religion and in retaliation for

requesting religious accommodation or having religious accommodation requested on

their behalf.

64.   The effect of the practices complained of above has been to deprive

Plaintiffs/Intervenors of equal employment opportunities and otherwise adversely affect

their employment status because of their race, color, national origin, religion, and/or

because they sought religious accommodation.

65. The unlawful employment practices complained of above were and are intentional.

66. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiffs/Intervenors.

**SECOND CLAIM FOR RELIEF:**
**FAILURE TO ACCOMMODATE RELIGION**
**(42 U.S.C. § 2000e-2(a))**

67. Plaintiffs/Intervenors reallege all of the foregoing paragraphs.

68. Since at least December 22, 2007, Defendant has engaged and continues to engage in unlawful discriminatory employment practices at its facility in Greeley, CO in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by failing to reasonably accommodate its Muslim employees' religious practices and/or beliefs.

69. The effect of the practices complained of above has been to deprive Plaintiffs/Intervenors of equal employment opportunities and otherwise adversely affect their employment status because of their religion.

70. The unlawful employment practices complained of above were and are intentional.

71. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiffs/Intervenors.

**THIRD CLAIM FOR RELIEF:**
**RETALIATION FOR REQUESTING RELIGIOUS ACCOMODATION**
**(42 U.S.C. § 2000E-3)**

72. Plaintiffs/Intervenors reallege all of the foregoing paragraphs.

73. Since at least September 2008, Defendant has engaged and continues to engage in unlawful employment practices at its facility in Greeley, Colorado, in violation of

Section 704 of Title VII, 42 U.S.C. § 2000e-3 by disciplining and/or terminating Plaintiffs/Intervenors in retaliation for requesting religious accommodation.

74. The effect of the practices complained of above has been to deprive the Plaintiffs/Intervenors of equal employment opportunities and otherwise adversely affect their employment status because of their requests for religious accommodation.

75. The unlawful employment practices complained of above were and are intentional.

76. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiffs/Intervenors.

**FOURTH CLAIM FOR RELIEF:**
**HOSTILE WORK ENVIRONMENT/HARASSMENT**
**(42 U.S.C. §§ 2000E-2(A))**

77. Plaintiffs/Intervenors reallege all of the foregoing paragraphs.

78. Since at least December 22, 2007, Defendant has engaged and continues to engage in unlawful employment practices at its facility in Greeley, Colorado in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by harassing Plaintiff because of their race (Black), color (Black), national origin (Somali), and/or religion (Muslim).

79. The harassment of Plaintiffs/Intervenors was sufficiently severe and/or pervasive as to alter the terms and conditions of their employment.

80. Management-level employees participated in the harassment of Plaintiffs/Intervenors.

81. Management-level employees knew or should have known of the harassment of Plaintiffs/Intervenors.

82. Management-level employees failed to take appropriate action to prevent or promptly correct the harassment of Plaintiffs/Intervenors.

83. The effect of the practices complained of above has been to deprive Plaintiffs/Intervenors of equal employment opportunities and otherwise adversely affect their employment status because of their race, color, national origin, and/or religion.

84. The unlawful employment practices complained of above were and are intentional.

85. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiffs/Intervenors.

**FIFTH CLAIM FOR RELIEF:**
**DISCRIMINATORY DISCIPLINE AND/OR DISCHARGE**
**(42 U.S.C. §§ 20003e-2(a))**

86. Plaintiffs/Intervenors reallege the foregoing paragraphs.

87. Since at least September 2008, Defendant has violated Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by disciplining and discharging Plaintiffs/Intervenors and other aggrieved individuals because of their race (Black), color (Black), national origin (Somali), religion (Muslim) and/or in retaliation for requesting religious accommodation and/or in retaliation for engaging in protected activity by complaining about discrimination and/or harassment.

88. Plaintiffs/Intervenors were disciplined for allegedly engaging in a work stoppage, while non-Somali, non-Muslim employees were not disciplined for similar conduct.

89. Plaintiffs/Intervenors were directed not to come to work and/or were not allowed to return to their shift because of their race (Black), color (Black), national origin (Somali), religion (Muslim), and/or because they had requested or needed a religious accommodation.  Defendant disciplined Plaintiffs/Intervenors for allegedly engaging in an unauthorized work stoppage when they failed to report to work as directed.

90. The effect of the practices complained of above has been to deprive Plaintiffs/Intervenors and other aggrieved individuals of equal employment opportunities and otherwise adversely affect their employment status because of their race, color, national origin, religion and/or because they requested religious accommodation and/or because they complained of discrimination and/or harassment.

91. The unlawful practices complained of above were and are intentional.

92. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiffs/Intervenors.

**SIXTH CLAIM FOR RELIEF:**
**RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY - COMPLAINTS OF DISCRIMINATION AND/OR HARASSMENT**
**(42 U.S.C. §§ 2000e-3)**

93. Plaintiffs/Intervenors reallege the foregoing paragraphs.

94. Since at least December 22, 2007, Defendant has engaged and continues to engage in unlawful employment practices at its facilities in Greeley Colorado, in violation of Section 704 of Title VII, 42 U.S.C. § 2000e-3, by retaliating against Plaintiffs/Intervenors and other aggrieved individuals who engaged in protected opposition to Defendant's unlawful employment practices by complaining about discrimination and/or harassment.

95. In retaliation for Plaintiffs/Intervenors' and other aggrieved individuals' opposition to what they reasonably believed to be Defendant's unlawful discrimination against them, Defendant harassed, disciplined and/or terminated them from their employment.

96. The effect of the practices complained of above has been to deprive Plaintiffs/Intervenors and other aggrieved individuals of equal employment opportunities

and otherwise adversely affect their employment status because of their protected activity.

97. The unlawful employment practices complained of above were and are intentional.

98. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiffs/Intervenors and other aggrieved individuals.

### SEVENTH CLAIM FOR RELIEF:
### RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY - COMPLAINTS OF DISCRIMINATION AND/OR HARASSMENT
### (42 U.S.C. § 1981)

99. Plaintiffs/Intervenors reallege the foregoing paragraphs.

100. Since at least December 22, 2007, Defendant has engaged and continues to engage in unlawful employment practices at its facilities in Greeley, Colorado, in violation of 42 U.S.C. § 1981, by retaliating against Plaintiffs/Intervenors and other aggrieved individuals who engaged in protected opposition to Defendant's unlawful employment practices by complaining about discrimination and/or harassment.

101. In retaliation for Plaintiffs/Intervenors' and other aggrieved individuals' opposition to what they reasonably believed to be Defendant's unlawful discrimination against them, Defendant harassed, disciplined and/or terminated them from their employment.

102. The effect of the practices complained of above has been to deprive Plaintiffs/Intervenors and other aggrieved individuals of equal employment opportunities and otherwise adversely affect their employment status because of their protected activity.

103. The unlawful employment practices complained of above were and are intentional.

104. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiffs/Intervenors and other aggrieved individuals.

**EIGHTH CLAIM FOR RELIEF:**
**DISCRIMINATORY TREATMENT BECAUSE OF RACE**
**(42 U.S.C. § 1981)**

105. Plaintiffs/Intervenors reallege the foregoing paragraphs.

106. Since at least December 22, 2007, Defendant has engaged and continues to engage in a pattern or practice of unlawful discriminatory employment practices at its facility in Greeley, Colorado, in violation of 42 U.S.C. § 1981 by discriminating against Plaintiffs/Intervenors with respect to the terms and conditions of their employment because of their race (Black) and color (Black).

107. The pattern and/or practice of discriminatory treatment includes, without limitation, harassment, disparate treatment, and disciplining and discharging Plaintiffs/Intervenors because of their race and/or color.

108. The effect of the practices complained of above has been to deprive Plaintiffs/Intervenors of equal employment opportunities and otherwise adversely affect their employment status because of their race and/or color.

109. The unlawful employment practices complained of above were and are intentional.

110. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiffs/Intervenors.

**NINTH CLAIM FOR RELIEF:**
**HOSTILE WORK ENVIRONMENT/HARASSMENT**
**(42 U.S.C. § 1981)**

111. Plaintiffs/Intervenors realleges the foregoing paragraphs.

112. Since at least December 22, 2007, Defendant has engaged and continues to engage in unlawful employment practices at its facility in Greeley, Colorado, in violation of 42 U.S.C. § 1981 by harassing Plaintiffs/Intervenors because of their race (Black) and/or color (Black).

113. The harassment of Plaintiffs/Intervenors was sufficiently severe and/or pervasive as to alter the terms and conditions of their employment.

114. Management employees participated in the harassment of Plaintiffs/Intervenors.

115. Management employees knew or should have known of the harassment of Plaintiffs/Intervenors.

116. Management employees failed to take appropriate action to prevent or promptly correct the harassment of Plaintiffs/Intervenors.

117. The effect of the practices complained of above has been to deprive Plaintiffs/Intervenors and other aggrieved individuals of equal employment opportunities and otherwise adversely affect their employment status because of their race and/or color.

118. The unlawful employment practices complained of above were and are intentional.

119. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiffs/Intervenors.

**TENTH CLAIM FOR RELIEF:**
**DISCRIMINATORY DISCIPLINE AND/OR DISCHARGE**
**(42 U.S.C. § 1981)**

120. Plaintiffs/Intervenors reallege the foregoing paragraphs.

121. Since at least September 2008, Defendant has violated and continues to violate 42 U.S.C. § 1981 by disciplining and/or discharging Plaintiffs/Intervenors and other aggrieved individuals because of their race (Black) and/or color (Black) and/or in retaliation for engaging in protected activity by complaining about discrimination and/or harassment.

122. Plaintiffs/Intervenors were disciplined for allegedly engaging in a work stoppage, while non-Somali employees were not disciplined for similar conduct.

123. Plaintiffs/Intervenors were directed not to come to work and/or were not allowed to return to their shift because of their race and/or color.  Defendant disciplined Plaintiffs/Intervenors for allegedly engaging in an unauthorized work stoppage when they failed to report to work as directed.

124. The effect of the practices complained of above has been to deprive Plaintiffs/Intervenors and other aggrieved individuals of equal employment opportunities and otherwise adversely affect their employment status because of their race and/or color, and/or because they complained of discrimination and/or harassment.

125. The unlawful employment practices complained of above were and are intentional.

126. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiffs/Intervenors.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs/Intervenors respectfully request that this Court:

1.   Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all person in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race, color, national origin, religion or retaliates against employees in violation of Title VII and/or 42 U.S.C. § 1981;

2.   Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for Somali individuals, Muslims, and employees who engaged in protected activity, and which eradicate the effects of its past and present unlawful employment practices;

3.   Order Defendant to make whole Plaintiffs/Intervenors by providing appropriate back pay, and actual damages in the amount to be show at trial to compensate Plaintiffs/Intervenors for lost wages, benefits, and employment opportunities;

4.   Order Defendant to make whole Plaintiffs/Intervenors by providing appropriate front pay in an amount to be shown at trial;

5.   Order Defendant to make whole Plaintiffs/Intervenors by providing appropriate compensatory and punitive damages;

6.   Retain jurisdiction of this matter to ensure full compliance with the Orders of this Court;

7.   Award Plaintiffs/Intervenors reasonable attorneys' fees and costs of this litigation as provided under Title VII and 42 U.S.C. § 1981;

8.   Award Plaintiffs/Intervenors pre-judgment and post-judgment interest and costs of this action together with reasonable expert witness fees as provided by law;

9.  Declare that the acts and practices complained of herein are in violation of Title VII and § 1981 and constituted intentional and/or willful conduct by Defendant; and

10.  Grant such other and further relief as this Court deems necessary and proper.

### **JURY DEMAND**

Plaintiffs/Intervenors request a jury trial on all questions of fact raised by this complaint.

Dated this 18th day of November, 2010.

Respectfully submitted,

s/Christine Cimini
Christine Cimini
Raja Raghunath
Student Law Office
University of Denver Sturm College of Law
2255 E. Evans Ave., Rm. 335
Denver, CO 80208
Phone: (303) 871-6140
Fax: (303) 871-6847

*ATTORNEYS FOR PLAINTIFFS/INTERVENORS*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of November, 2010, I electronically filed the foregoing COMPLAINT IN INTERVENTION with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Stephanie Struble | stephanie.struble@eeoc.gov |
| Iris Halpern | iris.halpern@eeoc.gov |
| David Andrew Winston | Andrew.winston@eeoc.gov |
| William Moench | william.moench@eeoc.gov |

**U.S. Equal Employment Opportunity Commission**

| | |
|---|---|
| W V Siebert | bsiebert@shermanhoward.com |
| Heather Fox Vickles | hvickles@shermanhoward.com |
| Raymond Deeny | rdeeny@shermanhowaed.com |

**Sherman & Howard, L.L.C.**

| | |
|---|---|
| Diane King | king@kinggreisen.com |
| Ashley Kelliher | kelliher@kinggreisen.com |

**King & Greisen, L.L.P.**

s/Christine Cimini