IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No.  10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

and

IRAQ ABADE, et al.,

      Plaintiffs-Intervenors,

and

MARYAN ABDULLE, et al.,

      Plaintiffs-Intervenors,

v.

JBS USA, LLC,
d/b/a JBS Swift & Company,

      Defendant.

---

## ORDER ON MOTIONS TO DISMISS

---

This case involves allegations of national origin, religious, and ethnic discrimination at a meat packing plant in Greeley, Colorado owned and operated by JBS USA, LLC ("JBS").  It is before the Court on defendant's motions to dismiss [Docket Nos. 12, 52 and 64] the Equal Employment Opportunity Commission's ("EEOC") complaint [Docket No. 1] and two complaints in intervention [Docket Nos. 61, 40].  The motions are fully briefed and ripe for disposition.  Jurisdiction over this case is premised upon plaintiffs' invocation of federal questions pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

On August 30, 2010, the EEOC filed a complaint [Docket No. 1] against
defendant alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e *et seq.* and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  On
November 2, 2010, Iraq Abade and approximately 103 other employees or former
employees of defendant (collectively "the Abade intervenors") filed a complaint in
intervention [Docket No. 17], which was later amended [Docket No. 61].  On November
29, 2010, Maryan Abdulle and five others (collectively "the Abdulle intervenors") also
filed a complaint in intervention [Docket No. 40].  The EEOC, the Abade intervenors,
and the Abdulle intervenors assert similar claims.  Each brings a claim for pattern and
practice of discriminatory treatment, failure to accommodate religion, retaliation for
requesting religious accommodation, hostile work environment, and discriminatory
discipline and discharge.  The intervenors also bring claims for retaliation for engaging
in protected activity, discriminatory treatment because of race, hostile work
environment/harassment because of race, and discriminatory discipline and discharge
because of race.  All of these claims arise out of allegations of employees' treatment at
defendant's plant in Greeley, Colorado.

Plaintiffs allege that defendant harassed black Somali Muslim employees and
denied them the ability to pray as required by their religion.  Employees at defendant's
Greeley plant are exclusively represented by United Food and Commercial Workers
Local #7 ("the Union").  According to the complaints, although Muslims are required by
their religion to pray five times a day, Muslim employees at the plant were denied
requests to pray during their bathroom breaks and were harassed when they attempted

2

to pray during scheduled breaks.  These employees were subject to harassing

comments based on their race, national origin and/or religion, and managers and other

employees regularly threw blood, meat, and bones at them.  The plant's restrooms bore

anti-black, anti-Somali, and anti-Muslim graffiti and these employees were subject to

offensive comments regarding their race, national origin, and/or religion.  This group of

employees was disciplined more than other employees and, when they complained

about this discrimination, defendant did not correct the hostile work environment.

The complaints also allege that tensions with black Somali Muslim employees at

the plant came to a head in 2008 during Ramadan, a Muslim holy month during which

Muslims fast.  A large group of Muslim employees came to the office of the plant's

superintendent to request that their meal break be moved from 9:15 p.m. to 7:30 p.m.

These employees wanted the change in order to break their fast within fifteen minutes

of sunset, as required by their religion.  Plant management allowed Muslim employees

to break at 7:30 p.m., fifteen minutes after sunset, for two shifts on September 3 and 4,

2008.

On September 5, 2008, management allegedly moved the break to 8:00 p.m.  At

7:30 p.m. on September 5, 2008, management stood at all of the exits and blocked

Muslim employees from leaving.  Defendant also shut off the water fountains at the

plant or marked them with red tags (usually used to mark spoiled meat), preventing

Muslim employees from taking a drink of water after their day of fasting or washing up

as required before their prayers.  At 8:00 p.m., management allowed the Muslim

employees to take their break and ordered them outside the facility.  When the

employees attempted to re-enter after their break, they were told they could not return

3

to work.  On Monday, September 8, 2008, defendant informed the Union that employees who left the plant on Friday evening had engaged in an "unauthorized work stoppage" and would be placed on an indefinite suspension.  On September 9, 2008, defendant decided to allow employees who left the facility to return to work with a final written warning, provided they returned to work that day.  But it did not contact each of the employees to tell them they were required to return that day and subsequently terminated all of the Muslim employees who did not return to work on Tuesday, September 9, 2008.

## II.  ANALYSIS

Defendant seeks the dismissal of all three operative complaints.  It argues that the entire case should be dismissed for failure to join the Union, a necessary party.  It also argues that the EEOC's complaint should be dismissed because the EEOC failed to conciliate with defendant in good faith.  Finally, it argues that each group of intervenors has failed to administratively exhaust its claims and, thus, their complaints should be dismissed as well.

### A.  Failure to Join the Union

#### 1.  Standard of Review

Federal Rule of Civil Procedure 12(b)(7) allows for dismissal for failure to join a person under Rule 19.  Rule 19 requires a two step analysis before dismissing a claim for failure to join an indispensable person.  *See Davis v. United States*, 343 F.3d 1282, 1288 (10th Cir. 2003).  First, the court must determine whether the absent person is "necessary" or, under the language in the newly revised Rule 19, "required."  *See id.;*

Fed. R. Civ. P. 19(a).[1]   A person is "required" to be joined under Rule 19 if:

> (A) in that person's absence, the court cannot accord complete relief
> among existing parties; or
> (B) that person claims an interest relating to the subject of the action and
> is so situated that disposing of the action in the person's absence may: (i)
> as a practical matter impair or impede the person's ability to protect the
> interest; or (ii) leave an existing party subject to a substantial risk of
> incurring double, multiple, or otherwise inconsistent obligations because
> of the interest.

Fed. R. Civ. P. 19(a)(1).   A required person must be joined as a party if joinder is

feasible.  *Id.*  If a required person cannot be joined, the court moves to the second step,

determining "whether, in equity and good conscience, the action should proceed among

the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  In deciding whether

to proceed without the required person, the court should consider:

> (1) the extent to which a judgment rendered in the person's absence
> might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by: (A)
> protective provisions in the judgment; (B) shaping the relief; or (C) other
> measures;
> (3) whether a judgment rendered in the person's absence would be
> adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were
> dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  The party seeking dismissal for failure to join bears the burden of

persuasion.  *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1372 (10th Cir. 1998).

---

[1] Rule 19 was amended in 2007 for stylistic purposes only.  *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 855-56 (2008); Advisory Committee Notes on the 2007 Amendment to Fed. R. Civ. P. 19 (2007).  The previous rule referred to "necessary" persons in 19(a), which are now called "required" persons, and "indispensable" persons in 19(b), persons the rule now generally refers to as those required to be joined if feasible but who cannot be joined.  *See id.*

### 2. Analysis

Defendant argues that all three complaints should be dismissed because none of the plaintiffs have joined the Union as a party. Dismissal for failure to join requires the Court to find (1) that the Union is a required party under Federal Rule of Civil Procedure 19(a), (2) that joinder of the Union is infeasible, and (3) that dismissal is appropriate. The Court will address each step of this analysis in turn.

Defendant advances a series of arguments for why the Union is a required person, which all focus on the nature of the plaintiffs' requested relief. The relief plaintiffs seek are varieties of equitable relief, including an injunction prohibiting defendant from engaging in discrimination; an order requiring defendant to implement policies accommodating Somali and Muslim employees; and backpay and reinstatement and/or front pay for terminated employees. Plaintiffs additionally seek compensatory relief and punitive damages. Defendant first argues that this relief cannot be afforded absent the Union, thereby making the Union a required party under Rule 19(a)(1)(A), and second, that affording this relief will subject defendant to inconsistent obligations, thereby making the Union a required party under Rule 19(a)(1)(B)(ii).

The Court finds that it can accord the relief plaintiffs seek even in the Union's absence and, therefore, the Union is not required under Rule 19(a)(1)(A). Plaintiffs have not alleged any wrongdoing by the Union. *See Potter v. Continental Trailways, Inc.*, 480 F. Supp. 207, 213 (D. Colo. 1979) (finding unions not required under Rule 19 where plaintiff did not allege any violations by the union or seek relief against the union); *Atkinson v. Owens-Illinois, Inc.*, 1975 WL 160 at *8 (N.D. Ga. Mar. 31, 1975)

6

(union not required where plaintiffs did not allege union facilitated discrimination).  Nor do plaintiffs challenge the collective bargaining agreement ("CBA") reached by defendant and the Union.  *Compare Ware v. City of Buffalo*, 186 F. Supp. 2d 324, 330-31 (W.D.N.Y. 2001) (union was necessary party where it was signatory to drug policy challenged by plaintiff); *Forsberg v. Pac. Nw. Bell Tel.*, 623 F. Supp. 117, 122 (D. Or. 1985) (granting motion to join union where wage rates alleged by plaintiff to be discriminatory were negotiated and agreed to by the union in the CBA); *McCooe v. Town of Manchester*, 101 F.R.D. 339, 341 (D. Conn. 1984) (granting joinder where plaintiffs challenged a provision negotiated for in the CBA).  Moreover, the relief requested by plaintiffs will not significantly impact the CBA, which provides for flexible scheduling of break times and prohibits discrimination.  *See* Docket No. 12-2 at 16 (allowing for a fifteen minute rest period approximately halfway through the first portion of an employee's shift and a thirty minute lunch period approximately halfway through the scheduled workday); *id.* at 11-12 (prohibiting discrimination based on, *inter alia*, "race, color, religion" and requiring reasonable accommodation of religious tenets); *see also* Charles Alan Wright et al., Federal Practice & Procedure § 1620 (2010) (noting that unions should be joined if feasible where an adjudication "might have a significant impact on the collective-bargaining agreement").

Finally, the mere fact that plaintiffs seek reinstatement or, alternatively, front pay for terminated employees does not make the Union necessary to accord that relief, even assuming that such relief would violate the provisions of the CBA as to seniority. *See Hayden v. Freightcar Amer., Inc.*, 2008 WL 375762 at *15 (W. D. Pa. 2008)

(reasoning that such relief could be accorded without absent union members because CBA seniority system would not trump court order requiring reinstatement of employees).  Moreover, it is not clear that reinstatement of these employees would violate the CBA, as the CBA only allows for loss of seniority where an employee is discharged for cause.  *See* Docket No. 12-2 at 7; *see also* Docket No. 84-1 at 7 (*EEOC v. JBS USA*, Case No. 8:10CV318 (D. Neb. Mar. 3, 2011)).

Nor is the Union a required person under Rule 19(a)(1)(B).  As a threshold matter, plaintiffs argue that Rule 19(a)(1)(B) is irrelevant here because it only applies when the absent person "claims an interest relating to the subject of the action" and the Union has not expressed an interest in the case.  *See* Fed. R. Civ. P. 19(a)(1)(B).  Defendant responds by pointing to media accounts wherein Union representatives commented on the events underlying this case and the fact that Greeley plant employees have filed related grievances with the Union.  Defendant does not articulate precisely the interest it believes the Union has in the subject matter of this case, but, based on the Union's statements to the media, the Union appears to claim an interest in participating in the negotiations that will set the plant's break schedules and determine the appropriate accommodation of Muslim workers.  *See* Docket No. 45 at 8-9.  Presumably, the Union's desire to participate in these negotiations comes from its interests in ensuring that all of its workers are protected and provided adequate breaks and religious accommodation as required by the CBA.  These interests are not patently frivolous; therefore, Rule 19(a)(1)(B) is applicable here.  *See Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 998-99 (10th Cir. 2001) (absent parties have an interest under

19(a)(1)(B) where they "can . . . validly claim an interest in the subject of the action"); *compare Potter*, 480 F. Supp. at 212-13 (concluding unions had no interest in action where plaintiff sought reinstatement after illegal discrimination because "the unions have no interest in maintaining seniority lists which are incorrect as a result of illegal exclusions").

The Court, however, does not find that allowing this suit to go forward without the Union impermissibly risks impairing the Union's ability to protect its interests. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). The Union's interest in obtaining religious accommodation for Muslim employees as required by the CBA is not impeded by this suit; rather, it is furthered by it. *See Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1291-92 (10th Cir. 2003) ("We note that in some cases the interests of the absent person are so aligned with those of one or more parties that the absent person's interests are, as a practical matter, protected.") A more difficult question is whether the Union's interest in representing its non-Muslim employees could be impaired by this suit. Defendant claims that "[a]ny religious accommodation relief for Muslim employees will significantly impact non-Muslim employees (and could result in major discord at the plant)." Docket No. 12 at 9. But, given that the relief requested does not substantially impact the CBA, it is not clear what legitimate, non-frivolous interest the Union has in mollifying any discord that may arise from accommodating Muslim employees.[2] Moreover, the CBA

---

[2] Union members not involved in this litigation arguably also have an interest in maintaining their seniority, an interest that defendant claims will be affected if the Court orders reinstatement of terminated plaintiffs. Plaintiffs are not explicitly seeking retroactive seniority in addition to reinstatement here, *compare EEOC v. Rockwell Int'l Corp.*, 23 F. Supp. 2d 892, 894 (N.D. Ill. 1998), but even if they were, defendant has not established that reinstatement with seniority would violate the CBA. Moreover,

allows the company to unilaterally make such religious accommodations without consulting the Union so long as the accommodations do not require modification or waiver of the CBA.  *See* Docket No. 12-2 at 12.  Therefore, the Court concludes that the Union's ability to protect its interests is not so impeded as to require joinder of the Union under Rule 19(a)(1)(B)(i).

The Court also finds that allowing this case to proceed without the Union will not subject defendant to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations."  *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).  Defendant's primary concern is that, if it implements changes to policies at its plant without involving the Union, it will be subject to unfair labor practice charges.  Defendant has not established that the risk of such charges is substantial in light of the fact that the CBA itself directs defendant to accommodate employees' religious practices and allows defendant to make unilateral changes in its policies in order to do so, provided that such changes do not waive or modify provisions of the CBA.  *See* Docket No. 12-2 at 12.  As discussed above, were the Court to grant the relief plaintiffs request, it would be within the parameters of the CBA.  Defendant's fears in this regard are largely speculative.  *See Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001) ("The key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria.") (quoting

––––––––––––––––––––

employees who were not terminated likely do not have a valid interest in seniority obtained by virtue of unlawful discrimination.  *See Potter*, 480 F. Supp. at 212-13, *Hovanas v. Amer. Eagle Airlines, Inc.*, 2009 WL 4639492 at *6 (N.D. Tex. Dec. 8, 2009) (union "could not possibly have an interest or obligation to maintain a discriminatory and illegal Seniority List practice").

Wright et al., Federal Practice & Procedure § 1604 at 62).   The Court finds that defendant does not face a substantial risk of inconsistent obligations so as to render the Union a required person under Rule 19(a)(1)(B)(ii).

Because the Court finds that the Union is not a required person to be joined if feasible under Rule 19(a), it need not address the feasibility of joining the Union or the appropriateness of dismissal if the Union cannot be joined.  Accordingly, the Court will deny defendant's motions insofar as the motions seek dismissal under Rule 19.

### B.  Failure to Conciliate in Good Faith

Defendant's motion to dismiss the EEOC's complaint next argues that the complaint must be dismissed because the EEOC did not conciliate in good faith before filing suit as required by 42 U.S.C. § 2000e-5(b), which directs the EEOC to engage in "informal methods of conference, conciliation, and persuasion."  In making this argument, defendant refers to evidence and attaches materials outside of the pleadings, as does the EEOC in its response.  Consequently, the Court will convert this portion of defendant's motion into a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d) (allowing that when "matters outside the pleadings [have been] presented . . . and not excluded" and "[a]ll parties [have been] given a reasonable opportunity to present all the material that is pertinent to the motion" such conversion is appropriate).

"[T]he EEOC is required to act in good faith in its conciliation efforts," *E.E.O.C. v. the Zia Co.*, 582 F.2d 527, 533 (10th Cir. 1978), and must make a "sincere and reasonable effort to negotiate by providing the defendant an adequate opportunity to respond to all charges and negotiate possible settlements."  *E.E.O.C. v. Prudential Fed.*

*Sav. & Loan Ass'n*, 763 F.2d 1166, 1169 (10th Cir. 1985) (quotation omitted).  The

Tenth Circuit, however, has instructed district courts not to "examine the details of the

offers and counteroffers between the parties, nor impose its notions of what the

agreement should provide" when considering whether the EEOC has met its

conciliation obligations.  *Zia*, 582 F.2d at 533.  Rather, the court should only inquire

whether the minimal jurisdictional requirement is satisfied by the EEOC's "sufficient

albeit limited effort to conciliate" and then, "'if the district court finds that further

conciliation efforts are required the proper course is to stay proceedings until such

informal conciliation can be concluded.'" *Prudential*, 763 F.2d at 1169 (quoting *Marshall*

*v. Sun Oil Co.*, 592 F.2d 563, 566 (10th Cir. 1979)).  "In the Tenth Circuit, if there has

been any attempt at conciliation, the action cannot be dismissed for failure to attempt

conciliation."  *EEOC v. State of Kansas, Dept. of Admin.*, 1982 WL 303 at *3 (D. Kan.

April 8, 1982).

        Here, defendant does not dispute that the EEOC attempted conciliation.  Rather,

it argues that the EEOC's failure to include the Union in conciliation precluded the

possibility of an acceptable settlement.  Defendant provides no authority for the

proposition that the EEOC had a duty to include the Union, nor does it appear from the

records of the parties' conciliation efforts that defendant truly believed the Union to be

necessary to the process.  Both the EEOC and defendant have submitted evidence that

the EEOC informed defendant of the nature and extent of the violations and the relief

sought, gave defendant an opportunity to respond, and informed defendant that a

breakdown of the conciliation process could result in legal action.  *See State of Kansas*,

1982 WL 303 at *3 (describing "adequate conciliation" as meeting these requirements). The record also shows that the parties met several times to explore a potential settlement.  Because the Court finds that there have been sufficient attempts to conciliate and because defendant has not sought a stay in order to conduct further conciliation, defendant's motion to dismiss for failure to conciliate will be denied.  *See id.* at *4 ("There being no request for a stay of proceedings before this court, the issue of good faith is not material.").

### C.  Failure to Exhaust

Defendant seeks dismissal of the Abade and Abdulle intervenors' complaints on the basis that the intervenors have not exhausted their administrative remedies as required by Title VII and, therefore, the Court lacks subject matter jurisdiction over their claims.  Defendant argues that the Abade intervenors have failed to exhaust because they either filed unverified charges of discrimination or did not file charges at all. Defendant argues that the Abdulle intervenors have also failed to exhaust because they filed suit before receiving right to sue letters from the EEOC, filed charges that were untimely, or failed to file charges at all.

### 1.  Standard of Review

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint.  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by

13

presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When resolving a facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). To the extent the defendant attacks the factual basis for subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance SA v. La Plata County*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *Id.* Ultimately, and in either case, plaintiffs have "[t]he burden of establishing subject matter jurisdiction" because they are "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies with the EEOC. *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). The exhaustion of administrative remedies is a jurisdictional prerequisite in the Tenth Circuit and, therefore, appropriate for resolution under Rule 12(b)(1). *Id.* ("Unlike many other circuits, we have held that a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII - not merely a condition precedent to suit."). The Court is permitted to exercise jurisdiction over claims falling within "the scope of the administrative investigation that

can reasonably be expected to follow the charge of discrimination submitted to the

EEOC." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (quotation marks

and citation omitted).  "[B]ecause failure to exhaust administrative remedies is a bar to

subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal

jurisdiction to show, by competent evidence, that she did exhaust." *McBride v. CITGO*

*Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

### 2. *Abade Intervenors*

The Abade intervenors consist of 104 current or former employees of defendant,

84 of whom filed charges with the EEOC.  Some of the Abade intervenors are also

named in the EEOC complaint as charging parties.  The Court granted the Abade

intervenors' unopposed motion to intervene.  Title VII grants "[t]he person or persons

aggrieved" by charged discrimination an unconditional right to intervene in a suit

brought by the EEOC.  *See* 42 U.S.C. § 2000e-5(f)(1); *EEOC v. GMRI, Inc.*, 221 F.R.D.

562, 563 (D. Kan. 2004).

As a threshold matter, the Court finds that the Abade intervenors' claims are not

automatically viable by virtue of their being "persons aggrieved" under the statute.

Contrary to the intervenors' argument, no authority suggests that the right to intervene

exempts them from the traditional exhaustion requirements applicable to individual

plaintiffs bringing Title VII claims.  *Compare EEOC v. Fry's Electronics*, --- F. Supp. 2d

----, 2011 WL 938384 (W.D. Wash. 2011) (reasoning that the right to intervene must be

read in conjunction with the exhaustion requirement and holding that "persons

aggrieved" under the statute only covers individuals who filed charges with the EEOC).

Although intervenors cite cases holding that those individuals who have failed to exhaust their claims may nonetheless intervene when the EEOC brings suit, these cases apply the single filing rule, an exception to the exhaustion requirement which the Court will address below.  *See, e.g.*, *EEOC v. Albertson's LLC*, 247 F.R.D 638, 643 (D. Colo. 2007) (applying single filing rule but noting that its application was premised on the existence of a valid, properly exhausted charge on which the intervenors could piggyback).

Having found that the intervenors are not automatically exempt from the exhaustion requirement, the Court considers whether they have exhausted their administrative remedies.  Defendant argues that all but two of the Abade intervenors' charges were never properly verified as they were signed only by the charging parties' attorneys and, therefore, these intervenors have failed to administratively exhaust their claims.  Before filing suit, a plaintiff must file a charge of discrimination "in writing under oath or affirmation" with the EEOC.  42 U.S.C. § 2000e-5(b).  "[A] document constitutes a charge if it (i) provides the minimum information the regulations require, and (ii) can 'be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee.'"  *Semsroth v. City of Wichita*, 304 F. App'x 707, 712-13 (10th Cir. 2008) (quoting *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)).  It is undisputed that a subset of the Abade intervenors filed charges with the EEOC and that these charges were only signed by their attorneys.

EEOC regulations define "verified" as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized

by law to administer oaths and take acknowledgments, or supported by an unsworn

declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3. The intervenors

argue that their charges were "verified" in compliance with this regulation because

EEOC investigators interviewed each intervenor, the intervenor indicated he or she

wanted to file charges with the EEOC, and the investigator drafted a charge of

discrimination which was signed by the intervenor's attorney. *See* Docket No. 76-5 at 3

¶ 3 (Declaration of Shannon Breen). This process, however, does not demonstrate that

the intervenors' charges were actually "under oath or affirmation." *See* 42 U.S.C.

§ 2000e-5(b). Although these investigators were designated to administer oaths and

take acknowledgments, there is no evidence they actually did so after preparing the

intervenors' charges. *See* Docket No. 76-5. Although the applicable regulations allow

charges of discrimination to be submitted on behalf of a person, the charge must still be

verified. *See* 29 C.F.R. §§ 1601.7(a) and 1601.9. There being no evidence that the

charges here were verified, the Court finds that they were not verified.

The question now becomes whether these intervenors' failure to verify the

charges dooms their claims. No Tenth Circuit case has addressed this issue. In

*Peterson v. City of Wichita*, 888 F.2d 1307, 1308-09 (10th Cir. 1989), the Tenth Circuit

upheld an EEOC regulation which allows an individual who files an unverified charge to

later amend the charge and have the amended charge relate back to the date of the

original unverified filing. *See* 29 C.F.R. § 1601.12(b). *Peterson* reasoned that the

regulation does "not frustrate the purpose of the verification requirement, which is to

protect the employer from frivolous claims, because the EEOC does not proceed to

investigate a charge until it is verified."  888 F.2d at 1309.  The Supreme Court held

similarly in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), finding that the

regulation was valid and explaining that "[t]he verification requirement has the . . . object

of protecting employers from the disruption and expense of responding to a claim

unless a complainant is serious enough and sure enough to support it by oath subject

to liability for perjury.  This object, however, demands an oath only by the time the

employer is obliged to respond to the charge, not at the time an employee files it with

the EEOC."  *Id.* at 1149.

In this case, contrary to the assumptions regarding EEOC procedures underlying

*Peterson* and *Edelman*, the EEOC investigated the intervenors' charges and demanded

responses from defendant before the charges were verified.  The charges apparently

remain unverified.  Courts of appeal that have considered similar facts have come to

different conclusions about a suit based on an unverified charge that the EEOC

nonetheless processed and investigated.  The Third Circuit held that, although Title VII

requires verification, the requirement, "like the statute's time limit for filing a charge with

the EEOC, should be subject to waiver 'when equity so requires.'"  *Buck v. Hampton*

*Township Sch. Dist.*, 452 F.3d 256, 263 (3d Cir. 2006).  The Fifth Circuit has held

similarly.  *See Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 79 (5th Cir. 1982) ("the

verification requirement is non-jurisdictional, and therefore subject to equitable

considerations").  These decisions suggest that the verification requirement may be

waived by an employer if the employer does not raise the issue before the agency.  *See*

*Buck*, 452 F.3d at 264-65.  The Ninth Circuit has held even more broadly that a failure

to verify is a "mere technical defect" which can be remedied under 29 C.F.R.

§ 1601.12(b) at any time, even after the EEOC has issued a right to sue letter and suit

has been filed, because "when, as here, the charge provided a sufficient description of

the factual allegations to put the employer on notice and allow the administrative

agency to conduct a complete investigation of the charges, the initial failure to verify

does not prejudice the employer and should not be fatal to the employee's later filed

lawsuit." *See McWilliams v. Latah Sanitation, Inc.*, 149 F. App'x 588, 590 (9th Cir.

2005).

On the other side of the issue, the Fourth Circuit has held that verification is

mandatory and that an employee may only amend his charge to properly verify it while

the charge is still pending with the EEOC; once a right to sue letter is issued and the

employee files suit, it is too late. *See Balazs v. Liebenthal*, 32 F.3d 151, 156-57 (4th

Cir. 1994).[3]  The Eleventh Circuit has also held that verification is mandatory and that

summary judgment was appropriate where an employee made no effort to amend her

unverified charge. *See Vason v. City of Montgomery,* 240 F.3d 905, 907 (11th Cir.

2001).  More recently, the Eleventh Circuit considered whether waiver was appropriate

when upholding the dismissal of a claim for failure to verify. *See Butler v. Greif*, 325 F.

App'x 748, 749-50 (11th Cir. 2009) (concluding that equitable relief from waiver

requirement was not appropriate because plaintiff failed to cooperate with EEOC).

Defendant urges the Court to hold that the verification requirement is not subject

_____

[3] As the Third Circuit points out in *Buck*, 452 F.3d at 262 n.5, the employer in *Balazs* did not receive notice of the unverified charge while it was pending with the EEOC and, thus, was "never given [the] chance" to engage in conciliation. *See Balazs,* 32 F.3d at 158.

to waiver because the Tenth Circuit has consistently held that administrative exhaustion is a jurisdictional prerequisite.  Although it is the general rule in the Tenth Circuit that a plaintiff must exhaust his administrative remedies under Title VII for a court to have jurisdiction, not every defect in the administrative process defeats jurisdiction.  *See Peterson*, 888 F.2d at 1309 ("although satisfying section 2000e-5(b) is a jurisdictional prerequisite to enforcing an EEOC summons, filing a *timely* EEOC charge is indisputably *not* a jurisdictional prerequisite to suit under *Zipes*"); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). Generally, the Tenth Circuit has held that a plaintiff alleging discrimination fails to exhaust his administrative remedies where he fails to file a charge with the EEOC, files a charge that does not include all of his claims or facts, or fails to cooperate with the EEOC during the administrative process.  *See, e.g., Jones v. U.P.S., Inc.,* 502 F.3d 1176, 1186 (10th Cir. 2007) (court may exercise jurisdiction over claims falling within "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC"); *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304 (10th Cir. 2005) (plaintiff failed to exhaust by not cooperating with the EEOC).  The Tenth Circuit has repeatedly held that the purposes of administrative exhaustion are "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim." *Jones*, 502 F.3d at 1185 (quotations omitted).  These purposes may be satisfied where a defendant

receives an unverified charge, fully responds to the charge, and engages in the conciliation process.  Finding no Tenth Circuit authority on point, the Court finds the Third Circuit's decision in *Buck* persuasive.  Therefore, the Court holds that the "technical" verification requirement, like the requirement of timely filing, may be waived under certain circumstances and is not a jurisdictional prerequisite.

Moreover, the Court finds that defendant waived the verification requirement here.  In this case, as in *Buck*, "the employer received a notice and copy of the charge[s], and filed a lengthy and detailed response on the merits, without mentioning the [intervenors'] failure to verify the charge[s], all *before*" the EEOC brought suit on the intervenors' behalf.  *See* 452 F.3d at 262; *compare Balazs*, 32 F.3d at 158 (employer did not receive notice of charge before right to sue); *Vason*, 240 F.3d at 906 (same). The purposes of administrative exhaustion outlined in *Jones* were served here. Defendant received notice of the charges and the EEOC had a full opportunity to conciliate.

The Court is not persuaded by defendant's argument that the sheer number of charges it received changes the equities of this case from those present in *Buck*. Defendant claims that it was unable to assess the legitimacy of any one individual charge because of the volume of charges it received from black African Muslim workers at its Greeley plant; however, defendant submitted detailed and individualized responses to each charge it received.  *See* Docket No. 76-1.  These position statements support the Court's finding that defendant could have discovered the

verification failure and raised it during the conciliation process.[4]  But, instead, defendant

chose to respond to the charges on their merits and raise the verification defect after

the EEOC decided to file suit on the charges.  *See Buck*, 452 F.3d at 264 (allowing

employers to wait until a suit is filed to raise the verification issue "gives employers an

incentive *not* to raise a plaintiff's failure to verify her charge before the EEOC, in the

hope that plaintiff will not discover the 'technical' error until it is too late, and that the

employer will be able to secure dismissal of any subsequent federal suit on that basis").

When defendant chose to respond on the merits instead of raising the technical

requirement, it gave up "the protection that the requirement affords."  *See id.* at 263.

Therefore, the Court finds that defendant waived the verification requirement and the

Abade intervenors who filed charges have properly exhausted their administrative

remedies.

Having found that the Abade intervenors who filed unverified charges may

proceed with their claims, the Court must next determine whether those Abade

intervenors who did not file charges at all are covered by the single filing rule.  The

single filing rule provides an exception to the requirement that, in order for a district

court to have jurisdiction over a Title VII claim, the plaintiff must have exhausted his

administrative remedies.  *See Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1197 (10th

---

[4] Defendant's argument that it would have been too burdensome to identify the signatures on all of the charges is also belied by the fact that at least some of the charges were clearly and legibly signed by the intervenors' attorneys on their behalf. *See, e.g.*, Docket No. 58-1 at 2 (Sadi Mohamed Adan's charge).  Had defendant raised the issue during the administrative process even as to those charges that were clearly signed only by attorneys, it would be evidence that defendant had not waived the issue.

Cir. 2004).  Under the rule, a similarly situated plaintiff who has not filed a charge of discrimination but whose claims arise out of the same circumstances and the same time frame as individuals who have filed a proper charge may "piggyback" on the properly filed charge.  *See id.*  Although the rule is not limited to class actions, it is unclear in the Tenth Circuit whether the rule also requires that the properly exhausted charge give the defendant notice that the discrimination relates to an entire class of employees.  *See id.* at 1198-99.  The purpose of this rule "is to give effect to the remedial purposes of [Title VII] and to not exclude otherwise suitable plaintiffs from a [Title VII] class action simply because they have not performed the useless act of filing a charge."  *Id.* at 1197 (quotations omitted).  "The act of filing a charge is deemed 'useless' in situations in which the employer is already on notice that plaintiffs may file discrimination claims, thus negating the need for additional filings."  *Id.; see also Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1110 (10th Cir. 2001) ("The policy behind the single filing rule is that it would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC.") (quotations omitted).

Application of the single filing rule requires assessment of the content and time frame of the claims of both those individuals who filed charges and those who did not. The Abade intervenors' complaint lists the name of each intervenor along with the dates of their employment with defendant; however, it does not indicate which of these intervenors filed a charge and which did not.  In order to analyze whether those intervenors who did not file charges may piggyback on the charges that were actually filed, the Court requires more information about each individual intervenor's claim.

23

Therefore, the Court will order briefing on this issue and will hold in abeyance its decision on the applicability of the single filing rule to those Abade intervenors who did not file a charge with the EEOC.

### 3. Abdulle Intervenors

Defendant offers three reasons that the Abdulle intervenors' complaint should be dismissed for failure to exhaust.  First, none of these intervenors has received a right to sue letter from the EEOC; second, all of their claims are time-barred; and third, one of them – Faysal Ibrahim – did not file a charge of discrimination with the EEOC.[5]  The Abdulle intervenors respond that their lack of right to sue letters are immaterial, that their claims are timely, and that, in any case, their claims are covered under the single filing rule.

The Court will first inquire whether defendant is correct that the Abdulle intervenors have failed to exhaust and then assess whether the single filing rule might nonetheless save their claims.  The Abdulle intervenors do not dispute that they filed their complaint in intervention before the EEOC issued them right to sue letters.  Title VII provides that the EEOC will issue a right to sue letter within 180 days of the filing of a charge if the agency has not filed a civil action on the charge or obtained a settlement.  *See* 42 U.S.C. § 2000e-5(f)(1).  "Under Title VII, a plaintiff must obtain a right to sue letter from the EEOC as a prerequisite to suit."  *Shikles v. Sprint/United*

---

[5] The Abdulle intervenors point out that defendant has not made any arguments in its motion to dismiss their complaint as to the adequacy of their 42 U.S.C. § 1981 claims, which do not require administrative exhaustion.  The intervenors are correct on this point and those claims will, therefore, survive regardless of the Court's conclusions on the intervenors' exhaustion of their Title VII claims.

*Mgmt. Co.*, 426 F.3d 1304, 1310 (10th Cir. 2005).  "The EEOC has exclusive

jurisdiction over a claim during the 180 days following the filing of a charge with the

EEOC by an aggrieved individual.  During this time an individual may not bring suit in

federal court."  *EEOC v. W.H. Braum, Inc.*, 347 F.3d 1192, 1200 (10th Cir. 2003)

(internal citations omitted).  Although the intervenors point to cases where courts have

allowed plaintiffs to bring suit before receiving right to sue letters, plaintiffs in these

cases filed suit more than 180 days after filing their charges.  *See Dupree v. Housing*

*Auth. of Kan. City, Kan.*, 1991 WL 12819 at *5 (D. Kan. Jan. 11, 1991); *Stone v.*

*Lockheed Martin Corp.*, Civil Action No. 08-cv-02522-REB-KMT, 2009 WL 3158122 at

*2 (D. Colo. Sept. 24, 2009).  Here, intervenors filed their complaint in intervention

during the 180 day period.  *See* Docket Nos. 52-2; 52-3; 52-4; 52-5; 52-6.

However, 180 days has now passed since the intervenors filed their charges with

the EEOC.[6]  The Court must, therefore, determine if it has subject matter jurisdiction

over these intervenors' claims.  *Martin v. Cent. States Emblems, Inc.*, 150 F. App'x 852

(10th Cir. 2005), is instructive on this issue.  In *Martin*, plaintiff filed his complaint in the

district court before filing a charge with the EEOC.  *Id.* at 854-55.  When he received his

right to sue letter from the EEOC, plaintiff supplemented his district court complaint with

the right to sue letter.  *Id.*  The Tenth Circuit explained that Martin's filing of his suit

before fully exhausting his administrative remedies was permissible because "[a] Title

VII complainant may file an action prior to receiving [a] right to sue letter, provided there

---

[6] The Court is uncertain of the date which intervenor Abdirasak Issa filed his
charge.  *See* Docket No. 52-5.  In any case, it has already been 180 days since Mr.
Issa filed his charge or it will be on June 13, 2011.

is not evidence showing that the premature filing precluded the [EEOC] from performing its administrative duties or that the defendant was prejudiced by such filing." *See id.* at 855 n.3 (quoting *Edwards v. Occidental Chem Corp.*, 892 F.2d 1442, 1445 n.1 (9th Cir. 1990)).   Other circuits have also held that failure to obtain a right to sue letter is a defect that can be cured after the filing of the suit.  *See Jones v. American State Bank*, 857 F.2d 494, 499-500 (8th Cir. 1988)*; Pinkard v. Pullman-Standard, a Division of Pullman, Inc.*, 678 F.2d 1211, 1215 (5th Cir. 1982).  Intervenors, of course, have not actually produced evidence of their right to sue letters and the defect arguably has not yet been cured.  But the Tenth Circuit authority stating that a court has jurisdiction over an employee's suit "after the expiration of the 180 days . . . even if a right-to-sue letter was not actually received," *see W.H. Braum*, 347 F.3d at 1200-01 (citing *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982)), leads the Court to the conclusion that, finding no evidence that the premature filing prejudiced either the EEOC or defendant, it has jurisdiction over these intervenors' claims.

Finding that the Abdulle intervenors who filed charges have not failed to exhaust by filing their claims prematurely, the Court now considers the timeliness of their claims. Defendant argues that none of the intervenors filed their charges within 300 days of Ramadan 2008, and thus, they cannot base their claims on the events that allegedly occurred during that period.  *See* 42 U.S.C. § 2000e-5(e)(1).  Intervenors admit that the five intervenors who filed charges did so more than 300 days after Ramadan 2008, but they argue that the events of Ramadan 2008 can be considered because they have alleged an ongoing hostile work environment.  It is true that, "[p]rovided that an act

26

contributing to the [hostile work environment] claim occurs within the filing period," the court may consider acts outside the statutory time period as evidence of the hostile work environment. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). All of the intervenors allege discriminatory practices that subsisted throughout their employment, thereby falling within the filing period. However, the intervenors also bring claims based on discrete acts of discrimination, including failure to accommodate religion; discriminatory discipline and discharge; and retaliation. The intervenors cannot base these claims on events outside the statutory period. *See id.* at 113 (plaintiffs must file their charge within 180 or 300 days of a discrete discriminatory act for the charge to be timely). Therefore, the Court finds that the intervenors' claims are untimely insofar as they seek to recover for discrete acts that occurred more than 300 days before they filed their charges. *See* Docket No. 40 at 10 (alleging intervenor Maryan Abdulle was disciplined on September 5, 2008); at 17 (alleging intervenor Raawi Sahal was suspended and disciplined on September 5, 2008). The Court also rejects the intervenors' attempt to cure this defect by way of the single filing rule. The Tenth Circuit has held that the single filing rule is not applicable to individuals who actually filed charges but whose charges were untimely. *See O'Neal v. Thompson*, 54 F. App'x 301, 304 (10th Cir. 2002) (declining to extend the single filing rule to a plaintiff who had filed her federal suit too long after receiving her right to sue letter).

Finally, the Court must consider the claim of Faysal Ibrahim, who did not file a charge with the EEOC but now seeks to bring claims under the single filing rule. In order to piggyback on the other intervenors' charges, Mr. Ibrahim must be similarly situated to an intervenor with a properly exhausted charge and his claim must arise out

27

of the same discriminatory treatment and have occurred within the same time frame. *See Foster*, 365 F.3d at 1197.  Defendant contends that there is no properly exhausted charge upon which Mr. Ibrahim may piggyback.  The Court disagrees.  Mr. Ibrahim is similarly situated to the other intervenors as they are all black Somali Muslims employed by defendant.  Mr. Ibrahim alleges that he was made to wait for bathroom breaks, was denied the opportunity to sharpen his knife, was denied medical treatment, was exposed to offensive graffiti, was called racist names, had meat thrown at him, was given more work than other workers, was retaliated against for reporting discrimination, was suspended and was terminated.  *See* Docket No. 40 at 14-15.  The other intervenors' claims stem from the same conduct; they make identical allegations of denial of bathroom breaks, denial of knife sharpening, denial of adequate medical treatment, exposure to graffiti, verbal harassment, retaliation for reporting discrimination, meat throwing, suspension, and termination.  Defendant argues that Mr. Ibrahim's allegations do not arise out of similar discriminatory conduct, particularly focusing on Mr. Ibrahim's allegation that he was wrongfully terminated.  Abdirashid Hussein's charge, however, also alleged wrongful discharge after reporting discrimination.  *See* Docket No. 52-4.  The Court thus finds that Ibrahim's claim stems from the same discriminatory treatment as the other intervenors' claims.  *See Foster*, 365 F.3d at 1197; *EEOC v. Albertsons*, 579 F. Supp. 2d 1342, 1346 (D. Colo. 2008) (applying single filing rule to pattern and practice case).[7]

---

[7] The Court is unconvinced by defendant's argument that the single filing rule does not apply because the discrimination alleged involves "different supervisors and different incidents."  *See Semsroth*, 304 F. App'x at 714 n. 6.  Had Mr. Ibrahim filed a charge it would have been largely identical to the charges actually filed by other

Mr. Ibrahim also allegedly suffered discrimination during the same time frame as the other intervenors.  An individual's unexhausted claim occurs in the same time frame as an exhausted claim if the individual could have filed his charge at the same time that the properly exhausted charge was filed.  *See Thiessen*, 267 F.3d at 1111.  Mr. Ibrahim alleges discrimination occurring throughout his employment from June 2008 to July 2009.  See Docket No. 40 at 13-15.  He also alleges that he was suspended on July 20, 2009 and dismissed a week later, around July 27, 2009.  To file a timely charge related to his termination, Mr. Ibrahim would have had to file his charge within 300 days of July 27, 2009, or by May 23, 2010.  Mr. Hussein, who also alleged termination in his charge, filed his charge on November 22, 2009, within this time period.  Finally, although it is not clear that the Court is required to do so, *see Foster*, 365 F.3d at 1198-99, the Court finds that the EEOC charges actually filed gave defendant notice of the class-wide nature of the charge.  *See* Docket Nos. 52-3; 52-5; 52-6; 52-11 (alleging discrimination on behalf of a "class of individuals").  Therefore, the Court will deny defendant's motion to dismiss Mr. Ibrahim's claim.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 12(b)(7) and 19 [Docket No. 12] is **DENIED**.  It is further

**ORDERED** that defendant's Motion to Dismiss Complaint in Intervention [Docket No. 52] is **DENIED** in part and **GRANTED** in part.  The Abdulle intervenors' claims

---

intervenors and, therefore, application of the single filing rule is appropriate.  *See Albertson's*, 579 F. Supp. 2d at 1456.

based on discrete acts of discrimination occurring more than 300 days before they filed their charges with the EEOC are dismissed.  The Abdulle intervenors' remaining claims are not dismissed.  It is further

**ORDERED** that defendant's Motion to Dismiss Amended Complaint in Intervention (Abade, et al.) [Docket No. 64] is **DENIED** in part and taken under advisement in part.  On or before **June 30, 2011**, the Abade intervenors shall file a brief no longer than ten pages detailing which intervenors did not file charges.  For each of these intervenors, the brief shall summarize the factual allegations underlying his or her claim and attach a properly exhausted charge upon which the intervenor proposes to piggyback.


        DATED June 9, 2011.

                                        BY THE COURT:


                                         s/Philip A. Brimmer
                                        PHILIP A. BRIMMER
                                        United States District Judge