IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

　　　Plaintiff,

and

IRAQ ABADE, et al.,

　　　Plaintiffs-Intervenors,

v.

JBS USA, LLC, d/b/a JBS Swift & Company,

　　　Defendant.

_____

### ORDER REGARDING PHASE I DISCOVERY
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

### I.  Factual and Procedural Background

Defendant JBS USA, LLC ("JBS") owns and operates a meat packing plant in Greeley, Colorado at which a large number of Somali, Muslim and black persons work. The EEOC filed this suit alleging that JBS has discriminated against these workers based on their national origin, religion, and ethnicity.  The EEOC's claims are based on Sections 706 and 707 of Title VII of the Civil Rights Act of 1964, as amended (the "Act").  Section 706 of the Act permits the EEOC to sue an employer on behalf of persons aggrieved by the employer's alleged unlawful practice.  Section 707 of the Act permits the EEOC to sue employers whom it has reasonable cause to believe are engaged in a pattern or practice

1

of unlawful employment discrimination.  42 U.S.C. § 2000e-5(f)(1); 2000e-6; *see also Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 324 (1980).  For purposes of this Order, the EEOC's claim regarding a pattern or practice of religious discrimination and retaliation (the "Section 707 Claim") is at issue.  *See* Complaint [#1] at 7-8.

The Intervenors in this lawsuit, who number in excess of two hundred, are former or current workers at the JBS Greeley plant.  They have appeared and been granted permission to intervene in four separate groups.  They assert multiple claims against JBS, including claims based on a pattern or practice of discriminatory treatment because of race, national origin, religion, and/or retaliation, pursuant to 42 U.S.C. § 2000e-2(a).  *See* Complaint in Intervention and Jury Demand, [#40] at 18-19 (the "Abdulla Intervenors' Complaint"); Amended Complaint in Intervention and Jury Demand [#61] at 156-61 (the "Abade Intervenors' Complaint"); Complaint in Intervention and Jury Demand [#132] at 12-13 (the "Abdi Intervenors' Complaint"); Amended Complaint in Intervention and Jury Demand [#137] at 10-11 (the "Adan Intervenors' Complaint").

On August 8, 2011, the District Judge granted in part the EEOC's Motion to Bifurcate the trial, and ordered that the trial will be conducted in two phases.  [#116].  During Phase I of the trial, the EEOC will present its claim that JBS engaged in a pattern or practice of denial of religious accommodation, retaliation, and discipline and discharge.  During Phase II, the EEOC may present its pattern or practice claim for hostile work environment, pursue individual damages for its pattern or practice claim presented in Phase I, and pursue individual claims for compensatory and punitive damages.  The individual Intervenors' claims not covered by the EEOC's claims will also be evaluated in Phase II.  *Id.* at 18. The District Judge further granted the EEOC's request to bifurcate discovery.  *Id.* at 17-18.  As

a result of the Court's bifurcation order, the Intervenors' claims will not be adjudicated until Phase II of the trial.

This matter is before the Court on two issues relating to the parties' proposed Phase I Scheduling Order [Docket No. 128; Filed October 27, 2011]. The first issue is whether, in the absence of class certification, the Intervenors may participate in Phase I discovery regarding the Section 707 claim. The second issue is how much written discovery should be permitted in Phase I. In connection with these issues, I have reviewed **Plaintiff and Intervenors' Brief in Support of Intervenors' Participation in Phase I Discovery** [Docket No. 141; Filed November 14, 2011], **Defendant's Brief in Support of Preclusion of Intervenors From Phase I** [Docket No. 140; Filed November 14, 2011], **Plaintiff and Intervenors' Brief in Support of Plaintiffs' Proposed Written Requests for Discovery in Phase I** [Docket No. 142; Filed November 14, 2011], and **Defendant's Brief in Support of Defendant's Requested Limits Upon Written Discovery** [Docket No. 139; Filed November 14, 2011]. These matters are ripe and I am fully advised in the premises.

## II. Intervenors' Participation in Phase I Discovery

### A.   Intervenors May Not Intervene in the Section 707 Claim

Title VII of the Civil Rights Act of 1964 (the "Act") grants "[t]he person or persons aggrieved" by charged discrimination an unconditional right to intervene in suits brought by the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); *EEOC v. GMRI, Inc.*, 221 F.R.D. 562, 563 (D. Kan. 2004). Ordinarily, when a party intervenes in a lawsuit, he "becomes a full participant . . . and is treated just as if [he] were an original party. The intervenor renders himself vulnerable to complete adjudication . . . of the issues in litigation between the intervener

3

[sic] and the adverse party." *Alvarado v. J.C. Penney Co., Inc.*, 997 F.2d 803, 805 (10th Cir. 1993) (internal citations omitted).

However, an individual's unconditional right to intervene in a Title VII suit brought by the EEOC does not include the right to participate in all *claims* asserted in the suit.  As explained above, the claim at issue in Phase I of this case is a "pattern or practice" claim brought by the EEOC pursuant to Section 707 of the Act, which "is conspicuously silent in regard to intervention." *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 843 (5th Cir. 1975).  The purpose of Section 707 is "to provide the government with a swift and effective weapon to vindicate the broad public interest in eliminating unlawful practices, at a level which may or may not address the grievances of particular individuals."  517 F.2d at 843.  In contrast, Section 706 of the Act addresses individual grievances and includes requirements that charges be filed, investigations conducted, and an opportunity to conciliate afforded to the respondent when reasonable cause has been found.  *Id.*  Examination of the statutory language, purposes and legislative history of the Act has led two Circuit Courts of Appeal to conclude that private parties may not intervene in claims brought pursuant to Section 707.  *EEOC v. United Air Lines, Inc.,* 515 F.2d 946, 949 (7th Cir. 1975); *see also Allegheny-Ludlum,* 517 F.2d at 844 (holding, *inter alia*, that the legislative history of Title VII does not evince "a favorable congressional attitude toward unconditional private intervention in government 'pattern or practice' litigation").  Although there is no Tenth Circuit decision on the issue, the decisions in *United Air Lines* and *Allegheny-Ludlum* are persuasive.  Accordingly, for purposes of this Order, the Court holds that Intervenors may not intervene in the EEOC's pattern or practice claim brought pursuant to Section 707 of the Act.

**B.      Differences Between the Section 706 and Section 707 Claims**

District Courts which have examined the differences between cases and claims brought pursuant to Section 706 and those brought pursuant to Section 707 have frequently "blurred the line" between them to such an extent that there appear to be "widely divergent analyses that are impossible to reconcile or even tidily summarize." *EEOC v. CRST Van Expedited, Inc.*, 615 F. Supp. 2d 867, 877 (N.D. Iowa 2009).  Indeed, some courts have denominated those cases in which the EEOC brings claims under both Section 706 and Section 707 simultaneously, like the case at bar, as "hybrid" cases.  Nevertheless, one recent decision has clarified the differences between Section 706 cases and Section 707 cases as follows: (1) a Section 706 case can be initiated by an individual charge of discrimination and can be filed as a civil suit by an individual, but a Section 707 case may not be;  (2) a Section 706 case seeks to vindicate the rights of aggrieved individuals who are challenging an unlawful employment practice by an employer; while a Section 707 case challenges systemic, wide-spread discrimination by an employer; (3) the EEOC may seek compensatory and punitive damages under Section 706, although it may not do so under Section 707; and (4) Section 706 actions proceed under the *McDonnell-Douglas* burden-shifting framework, while Section 707 actions proceed under the *Teamsters* burden-shifting framework.[1] *Serrano v. Cintas Corp.,* 711 F. Supp. 2d 782, 786-87 (E.D. Mich. 2010); *see also* Order, [#116] at 8 (delineating distinctions between Sections 706 and 707).

The differences between the burdens of proof regarding Section 706 and Section 707 claims are significant for purposes of discovery.

---

[1]  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977).

> Under the *McDonnell-Douglas* framework [applicable to § 706 claims], plaintiffs must first establish a *prima facie* case of discrimination. Once the plaintiff has established a *prima facie* case of discrimination, the burden of production shifts to the employer to rebut the plaintiff's *prima facie* case by articulating a legitimate, non-discriminatory reason for the adverse employment action. If the employer articulates such a legitimate, nondiscriminatory reason, the plaintiff bears the burden of proving that the employer's articulated reason is a pretext for discrimination.

*Serrano*, 711 F. Supp. 2d at 785. However, in a Section 707 case, the EEOC has the initial

burden of

> demonstrat[ing] that unlawful discrimination has been a regular procedure or policy followed by an employer. . . . At the initial, "liability" stage of a pattern or practice suit, the [EEOC] is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a *prima facie* case that such a policy existed. The burden then shifts to the employer to defeat the *prima facie* showing of a pattern or practice by demonstrating that the [EEOC's] proof is either inaccurate or insignificant. . . . If an employer fails to rebut the inference that arises from the [EEOC's] *prima facie* case, a trial court may then conclude that a violation has occurred and determine the appropriate remedy. Without any further evidence from the [EEOC], a court's finding of a pattern or practice justifies an award of prospective relief.

*Teamsters*, 431 U.S. at 360-61 (footnotes and citations omitted); *see also* Order [#116] at

5-6 (same). The District Judge determined that in Phase I, "the EEOC's pattern or practice

claims should proceed pursuant to the *Teamsters* burden-shifting framework." [#116] at

10.

The differing burdens of proof under Sections 706 and 707 necessarily command

the marshaling of different evidence. The focus of the EEOC's Section 707 claim will be

on evidence which establishes a purported discriminatory policy or policies. Such evidence

frequently relates to statistical data, and does not necessarily focus on either individual

employment experiences or damages. *E.g., Teamsters*, 431 U.S. at 339-40 (noting that

Supreme Court cases establish the role of statistical evidence in proving employment

discrimination cases, and recognizing individual testimony as bringing "the cold numbers convincingly to life"); *EEOC v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 876-78 (7th Cir. 1994) (reliance on statistical evidence may prove intent and "can also be sufficient to establish a pattern and practice of discrimination").   In order to prove the existence of an employment policy, it is likely that the EEOC will need to conduct a Rule 30(b)(6) deposition of Defendant, as well as depose management officials.  This discovery can be most efficiently and effectively conducted by the EEOC without the involvement of Intervenors.  Moreover, the Tenth Circuit Court of Appeals has recognized that the pattern or practice method of proof under the Act may only be utilized by the government or by plaintiffs in class actions.  *Semsroth v. City of Wichita*, 304 F. App'x 707, 716-17 (10th Cir. 2008) (unpublished decision). As of this date, Intervenors have not sought certification of a class.  Hence, they have no direct stake in the evidence to be generated through Phase I discovery.

**C.     Intervenors' Stake in Phase I Discovery**

In short, Intervenors are not parties to the Phase I Section 707 claim, the burden of proof on their claims is different from the EEOC's burden of proof in Phase I, and their "entitlement to relief [on the Section 707 claim] does not arise until it has been proved that [JBS] followed an employment policy of unlawful discrimination." *Teamsters*, 431 U.S. at 362.  Simply stated, Intervenors' stake in the discovery to be conducted during Phase I is relatively minimal.

Nevertheless, Fed. R. Civ. P. 26(b)(1) permits discovery regarding any matter "relevant to any party's claim or defense."  According to ample case law, a "plaintiff is as free to seek information relevant to a defense as he is to seek matter relevant to his own

case." 8 Richard L. Marcus, Fed. Prac. & Proc. § 2011 (3d ed. West 2011).  Likewise, "a third-party defendant may examine plaintiff although neither party asserts a claim against the other."  *Id.*  The generally permissive scope of the Federal Rules of Civil Procedure regarding discovery could be construed to favor participation by Intervenors in Phase I discovery, despite their relatively minimal stake in the EEOC's Phase I claim.

## D.      The Rationale for Controlling Discovery

The Federal Rules of Civil Procedure do not permit unfettered discovery.  In fact, they allow the Court to limit discovery in a variety of circumstances.  For example, the Court may forbid discovery entirely or prescribe a discovery method "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  The Court may sequence discovery "for the parties' and witnesses' convenience and in the interests of justice."  Fed. R. Civ. P. 26(d)(2).  Courts have imposed discovery limitations in the interest of fairness under the circumstances at issue.  *E.g., Teamsters*, 431 U.S. at 361 ("When the Government seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief. . . . [T]he question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination."); *United States v. City of New York*, 683 F. Supp. 2d 225, 247 (E.D.N.Y. 2010) ("A class-action pattern-or-practice suit is typically divided into 'liability' and 'remedial' phases"; such bifurcation results in differing discovery obligations during each phase) (citations omitted).  Thus, the question becomes whether the interests of efficiency, economy and fairness would be advanced by permitting Intervenors to participate in Phase I discovery here.

The answer is no.  First, Intervenors do not make any showing that efficiency, economy or fairness would be advanced by allowing them to initiate discovery during Phase I.  It is difficult to imagine how those interests would be advanced by the participation of more than two hundred additional individuals who have a relatively minimal stake in the claim at issue.

Second, although Intervenors have also asserted pattern or practice claims, the EEOC is better suited to gather the evidence on the Section 707 claim.  As a government entity empowered to pursue such claims, the EEOC has the experience and expertise to pursue them most effectively.  Moreover, there is no barrier to disclosure of the evidence adduced by the EEOC to Intervenors for their use in Phase II of the case.

Third, the time, energy and expense incurred by the EEOC and Defendant, who are the parties to the Section 707 claim, would likely be increased by allowing the Intervenors to participate in discovery in Phase I.  This seems unfair.  The parties who will ultimately bear the burden of proving or disproving the claim should be provided an opportunity to do so without complications caused by the intervention of others.

In light of the above-described case precedent and the District Judge's orders regarding intervention and bifurcation, Intervenors should not be permitted to initiate discovery regarding the EEOC's pattern or practice claim in Phase I. As discussed above, the law generally precludes intervention by private parties in such claims.  Since Intervenors are precluded from intervening in the EEOC's Section 707 pattern or practice claim, they have no burden of proof (or trial obligations whatsoever) with respect to that claim.  Although Intervenors undoubtedly remain interested in the result of the EEOC's assertion of its pattern or practice claim, that interest alone should not necessarily generate

an opportunity to participate in discovery regarding the claim.  If Intervenors were allowed to initiate discovery on the EEOC's pattern or practice claim, the amount of time, energy and money that Defendant would expend to defend the claim would necessarily increase, despite the fact that Intervenors have a relatively minimal stake in the claim.  Allowing Intervenors to participate in discovery on the EEOC's pattern or practice claim would likely increase Defendant's initial discovery costs without increasing the potential for recovery on that claim by Intervenors.  At this stage of the litigation, the balance of interests (Intervenor's interest in discovering evidence in support of their pattern or practice claims and/or the EEOC's claim versus Defendant's interest in minimizing the expense of defending against the EEOC's claim) favors Defendant.  The EEOC is fully capable of conducting discovery to evoke evidence supporting its pattern or practice claim, and Intervenors have an opportunity to do the same regarding their claims in Phase II.[2]

Moreover, the mere possibility that Intervenors may seek and obtain class certification for the purpose of pursuing their pattern or practice claims does not warrant a different result.  First, certification of a class is speculative, at this point.  Second, if a class is certified, Intervenors will be permitted to engage in discovery related to their pattern or practice claims in Phase II.  Thus, under the present circumstances, Intervenors' participation in discovery on the EEOC's pattern and practice claim is not appropriate.

The District Judge has carefully limited Phase I of the trial to the Section 707 claim.

---

[2]  As explained by the District Judge, "at the end of Phase I, the Court may award prospective relief based on [the bifurcated] claims as contemplated by *Teamsters* if the EEOC prevails. . . . In Phase II, individual plaintiffs may then make use of the presumption that they were victims of defendant's discriminatory practices to argue in favor of equitable relief."  [#116] at 16. "[I]ndividual claims for compensatory and punitive damages must be decided entirely during Phase II."  *Id.*

[#116] at 17-18.  For the reasons discussed above, the Court holds that Intervenors will not be permitted to initiate discovery during Phase I.  They may, however, be deposed as witnesses or be required to respond to written discovery propounded by the EEOC or Defendant regarding the single claim at issue in Phase I.

### III.  Written Discovery Limits in Phase I

The parties disagree about appropriate limits on written discovery in Phase I of this case.  The EEOC proposes that each side be permitted to serve 50 interrogatories, 50 requests for production of documents and 50 requests for admission, as well as 5 additional interrogatories, 5 additional requests for admission and 5 additional requests for production "to be served by and on each [Intervenor] identified to testify in Phase I."  [#142] at 1-2. Defendant proposes that the parties be permitted to serve 25 interrogatories, 25 requests for production of documents and 25 requests for admission.  [#139] at 2.

The District Judge's Order allowing bifurcation sets limits on deposition discovery during Phase I.  [#116] at 17.  Pursuant to that Order, the EEOC is entitled to depose every individual identified by Defendant as a Phase I witness, as well as to take up to 20 additional depositions.  *Id.*  Defendant is entitled to depose every individual employee upon whom the EEOC will rely to prove its pattern or practice claim, as well as to take up to 20 additional depositions.  *Id.*

In light of the extensive deposition discovery permitted during Phase I, as well as the Court's previous ruling that Phase I discovery is limited to the EEOC's pattern or practice claim, the Court finds that the EEOC and Defendant should be limited to 25 interrogatories, 25 requests for production of documents and 25 requests for admission, plus 5 interrogatories, 5 requests for production of documents and 5 requests for admission

11

served on each individual Intervenor identified as a Phase I witness for either the EEOC or Defendant.  The parties should be fully able to focus their discovery efforts to obtain necessary information regarding the Phase I claim within these limits, particularly in light of the deposition testimony that has been allowed.   Fed. R. Civ. Pro. 26(b)(2)(C); *Onesource Commercial Prop. Servs., Inc. v. City & Cnty. of Denver*, No. 10-cv-02273-WJM-KLM, 2011 WL 2632894, at *2 (D. Colo. July 6, 2011) (citing *Qwest Commc'ns Int'l v. Worldquest Networks, Inc.*, 213 F.R.D. 419, 419 (D. Colo. 2003)) ("the Court has discretion to limit the discovery requested.").   Either party may seek additional written discovery on a showing of good cause.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that Intervenors shall not initiate discovery during Phase I of the case, as defined in the Scheduling Order [#128].

IT IS FURTHER **ORDERED** that the EEOC and Defendant shall be limited to 25 interrogatories, 25 requests for production of documents, and 25 requests for admission, plus an additional 5 of each form of written discovery which may be directed to the individual Intervenors identified as Phase I witnesses.

Dated:  December 16, 2011

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge