IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

JBS USA, LLC d/b/a JBS SWIFT & COMPANY,

    Defendant.

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE
TO DESIGNATE ADDITIONAL EXPERT WITNESSES, OR IN THE ALTERNATIVE,
TO STRIKE PLAINTIFF'S EXPERT WITNESS KEITH KOONTZ [230]**

Defendant JBS USA, LLC ("JBS") submits the following Reply Brief in support of its request for permission and time to designate up to three additional expert witnesses, or in the alternative, to strike certain testimony of Plaintiff's expert witness Keith Koontz [Doc. 230].[1]

## INTRODUCTION

Defendant's Motion [Doc. 230] is a motion under Rule 16(b)(4) of the Federal Rules of Civil Procedure to amend the Scheduling Order so as to increase the limit on the number of expert witnesses designated by JBS, and to provide additional time to designate up to three additional expert witnesses.[2] Alternatively, if Defendant's Rule 16(b)(4) motion is not granted,

---

[1] In particular, this Reply will address the arguments in Plaintiff EEOC's Response to Defendant's Motion for Leave to Designate Additional Expert Witnesses, or in the Alternative, to Strike Plaintiff's Expert Witness Keith Koontz [Doc. 230] ("Response") [Doc. 241].

certain testimony of Keith Koontz should be stricken, insofar as his "rebuttal" testimony roamed far beyond the scope of the expert testimony he is allegedly rebutting.

In opposing Defendant's Motion, the EEOC misrepresents and mischaracterizes the history of the case, as explained below. One major misrepresentation is that "Defendant's *only* justification for seeking to designate another three expert witnesses" is the contention that "Mr. Koontz' report exceeds the scope of the expert testimony of Defendant's expert, Heather Skinner." (Response, Doc. 241, at 5 [emphasis added].) This is one justification for the Motion, but not the "only justification." An independent justification is that, as explained further below, the EEOC sandbagged JBS in this case for more than one year before it finally disclosed the accommodations it contends are required of Defendant, including for example a policy of always denying an employee's request for an unscheduled bathroom break when it conflicts with a Muslim employee's prayer break request (Motion, Doc. 230, at 6-7), an unsanitary and unsafe practice.

Further, as discussed below, the EEOC attempts to divert the Court's attention from the pertinent facts by misrepresenting that Defendant has engaged in abusive and "scorched earth" discovery and pre-trial tactics. (Response, Doc. 241, at 3, 10.) This argument is not only immaterial to the question at hand, but premised on complete misrepresentations of fact.

## KEY FACTS

The Phase I Scheduling Order [Doc. 128] set a limit of five expert witnesses per side, as the parties anticipated possible expert testimony on the Muslim faith, the culture of refugees and Somalis, industrial organization, statistics, and industry operations. *Id.* at 23-24. After the

---

[2] Although not originally denominated a Rule 16(b)(4) motion, the Motion was in substance such a motion, and it should be treated as such. *See, e.g., Mays v. Stobie*, 2010 U.S. Dist. LEXIS 129263, at *12 (D. Idaho Dec. 7, 2010).

2

deadlines in the Phase I Scheduling Order were extended, the eventual deadline for designation of experts was November 16, 2012, and for rebuttal experts, January 4, 2013. [Doc. 195.] Defendant timely designated four experts. The EEOC timely designated four experts and Mr. Koontz as a "rebuttal" expert.[3]

The EEOC says that Mr. Koontz is a "rebuttal" expert responding to the expert testimony of Heather Skinner, the Corporate Controller of Defendant's Beef Division, who had previously opined on such topics as various costs to JBS of any employee break (such as a prayer break) at the Greeley, Colorado plant; and the harm to production suffered at the Greeley plant during the week of September 7, 2008, when work disruptions by Muslim and non-Muslim employees occurred in protest over Muslim employees' demands for prayer breaks.

Although *some* of Mr. Koontz' stated opinions relate to *some* of Ms. Skinner's stated opinions, he has also opined on matters far afield not addressed by Ms. Skinner, such as:

- that Greeley management should not have discharged Muslim employees who did not return to work, as they had been directed;
- that Defendant's published policies and training on prayer breaks and bathroom breaks were "lacking or ineffective";
- how JBS should communicate its policies to supervisors and non-supervisors;
- that "work in process" buffers should be implemented at the Greeley plant;
- that the Greeley management team did not plan properly for the production losses during the week of September 7, 2008.

---

[3] Four of the parties' originally designated expert witnesses (two on both sides) also submitted rebuttal reports.

3

(Motion, Doc. 230, ¶ 5.)[4]

Mr. Koontz' report took on great significance on February 27, 2013, when *for the first time – and well after the expert disclosure deadlines – the EEOC finally responded to an interrogatory* asking the agency to specify the religious accommodations that it contends JBS must implement. (Motion, Doc. 230, ¶ 8.) In its discovery response, the EEOC specified *for the first time* that JBS should be required to excuse Muslim employees from work for Eid celebrations,[5] and that prayer breaks should be given preference over bathroom breaks, an unsanitary practice that would violate employee safety standards and calls for the presentation of expert testimony by Defendant.[6] The discovery response also vaguely referenced Mr. Koontz' report – "Finally, reference is made to the opinions and recommendations stated in the January 4, 2013, of Keith Koontz, P.E." (Motion, Doc. 230, ¶ 8) – which could be read to mean that JBS is required to adopt all measures in Mr. Koontz' report.

In its Response, the EEOC misrepresents that JBS cannot complain of the EEOC's late disclosure of these accommodation expectations, because Defendant only recently asked for such information. (Doc. 241, at 8.) *This is a complete fabrication.* On December 9, ***2011***, JBS served written discovery on the EEOC asking it to: "Describe with specificity each and every religious accommodation the EEOC is seeking to require JBS to provide to Muslim employees of the Greeley facility." (Ex. 2 attached hereto, Interrogatory 11.) In response, on January 24,

---

[4] Many other topics not mentioned by Ms. Skinner, about which Mr. Koontz now opines, have been listed in Defendant's Motion. *Id.*

[5] The EEOC concedes that this was an accommodation specified for the first time in its February 27, 2013, discovery responses. (Response, Doc. 241, at 8.)

[6] The EEOC's Response is completely silent on this new accommodation demanded of Defendant. James W. Stanley, a former Deputy Assistant Secretary of Labor for the Occupational Safety & Health Administration, U.S. Department of Labor, has opined that such a proposed policy would violate OSHA regulations requiring that employees have access to toilet facilities when needed. *See,* 29 C.F.R. § 1910.141(c)(1)(i). A copy of Mr. Stanley's report is attached (as Ex. 1).

4

2012, the EEOC – notwithstanding the fact that it had commenced this lawsuit over Defendant's alleged failure to make reasonable accommodation for Muslim employees – indicated that it should not have to respond because the interrogatory was "premature." (Doc. 230-4, Ex. D, Interrogatory 11, at 6.) For the *ensuing thirteen months*, from January 24, 2012, until February 27, 2013, the EEOC never supplemented its response to Interrogatory 11. Indeed, the first time since these proceedings, including the prior administrative proceedings, began, that the EEOC specified the religious accommodations it is seeking was February 27, 2013.

Mr. Koontz' purported "rebuttal" report took on further significance on March 19 and 20, 2013, when the Intervenors' responses to Defendant's written discovery were served, setting forth and adopting the EEOC's February 27, 2013, responses, and using the same "incorporation by reference" phrase used by the EEOC. (Doc. 230-3, Ex. C, Interrogatory 1, at 5.)

## ARGUMENT

### I.  "Good Cause" Exists for Modification of the Court's Scheduling Order.

The Court's Scheduling Order "may be modified only for good cause and with the judge's consent." *See generally,* Fed. R. Civ. P. 16(b)(4); *Summers v. Mo. Pac. R.R. System*, 132 F.3d 599, 604 (10th Cir. 1997). Rule 16(b)(4) "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Colo. Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000); *Koch v. Kaz USA, Inc.*, 2011 U.S. Dist. LEXIS 66946, at *7 (D. Colo. June 23, 2011).

Prior to November 16, 2012, the date for the initial designation of experts, or even by January 4, 2013, the deadline for designating rebuttal experts, JBS could not have possibly

5

known that Mr. Koontz – under the guise of responding to expert testimony – would attack Defendant's policies and practices, comment on the dismissals of Muslim employees, and propose questionable operational measures.  Nor could JBS have possibly known that the EEOC would contend that Mr. Koontz' questionable systems should be mandatory, along with the EEOC's own unsanitary, unsafe and infeasible requirements, such as a policy making bathroom breaks subordinate to Muslim employees' prayer breaks.  Hence, despite JBS's diligence, it could not have addressed these new subjects within the expert deadlines in the Scheduling Order.

The EEOC seems to argue that discovery responses cannot justify the designation of rebuttal expert testimony, and states that it is unaware of any legal authority supporting such a proposition.  (Response, Doc. 241, at 7.)  Courts routinely modify scheduling orders when newly-revealed information obtained in discovery supports further discovery beyond existing deadlines.  *See, e.g., Koch v. Kaz USA, Inc., supra*, 2011 U.S. Dist. LEXIS 66946, at *8 (new evidence disclosed after the discovery deadline regarding the plaintiff's claimed physical injuries, future required medical care, the cost of such care, and her claimed new memories of events in question justified amendment of the scheduling order to permit additional depositions ); *Large v. Regents of Univ. of Calif.*, 2012 U.S. Dist. LEXIS 119265 (E.D. Cal. Aug. 21, 2012) ("good cause" existed to amend scheduling order to permit plaintiff's IME when, after her deposition, plaintiff revealed she had commenced treatment for post-traumatic stress disorder allegedly caused by  sexual harassment and assault, and that she planned to call two treating physicians as witnesses); *Estate of Ratcliffe v. Pradera Realty Co.*, 2007 U.S. Dist. LEXIS 78070, at *11 (S.D.N.Y. Oct. 19, 2007) (amendment of scheduling order based on evidence discovered after expiration of discovery deadline).

6

Further, pre-trial developments, including new information obtained in discovery, often constitute "good cause" for the designation of additional expert witnesses, after the original deadline for designating expert testimony. For example, in *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247 (10th Cir. 2011), the judge to whom a wrongful death suit was reassigned (after the first judge's recusal) reversed the first judge's denial of a *Daubert* motion, excluding an expert witness on causation, and then denied the plaintiff's request for a new scheduling order to allow designation of a substitute expert witness. The Tenth Circuit ruled the second judge's denial of the motion for a new scheduling order was an abuse of discretion. Likewise, in *Salazar v. Continental Constr. of Montana, LLC*, 2012 U.S. Dist. LEXIS 106044 (D. Mont. July 30, 2012), the plaintiff sued contractors and subcontractors for work-related personal injuries suffered at a worksite allegedly caused by an unsafe work environment, and the defendants argued that he was an independent contractor owed no duty of care. More than two months after the deadline for designating experts, the plaintiff obtained from the Montana Department of Labor and Industry what appeared to be an application for independent contractor certification signed by him. Plaintiff contended that the document had been forged by an employee of a contractor on-site. His motion to amend the scheduling order to permit the designation of a handwriting expert, to explore whether evidence had been fabricated at the request of a defendant contractor, was "good cause." *Id.*, at *5. *See also, Soroof Trading Devel. Co., Ltd. v. G.E. Fuel Cell Systems, LLC*, 2012 U.S. Dist. LEXIS 178205 (S.D.N.Y. Dec. 13, 2012) (discovery of identity of expert witness who had been involved in testing and evaluation of the fuel cell technology at issue was "good cause" for amendment of the scheduling order, to permit his designation as expert witness).

Case No. 1:10-cv-02103-PAB-KLM   Document 242   filed 05/24/13   USDC Colorado
pg 8 of 12

Under the circumstances of this case, JBS acted with diligence. It could not have possibly anticipated that the EEOC, via a purported "rebuttal" expert, would propose unsanitary, unsafe and unworkable production systems. Nor could JBS have anticipated the EEOC's and the Intervenors' discovery responses, on February 27 and March 19 and 20, 2013, which endorsed Mr. Koontz' comments and proposed systems, and called for additional unsafe and unhealthy measures at the Greeley facility. When it became apparent that expert testimony was reasonably necessary to address Mr. Koontz' proposed systems (and the EEOC's and Intervenors' other proposed accommodations), JBS diligently filed its Motion.

Although the primary focus of Rule 16(b)(4) is the diligence of the moving party, a relevant consideration is whether the non-moving party will be prejudiced by amendment of the scheduling order. *See, e.g., Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *Soroof Trading Devel. Co., Ltd., supra,* 2012 U.S. Dist. LEXIS 178205, at *10-12. Although five may have been an appropriate limit on the number of expert witnesses when the Scheduling Order was first entered, it is no longer. Granting JBS additional time to designate up to three more experts would not present a time crunch for the EEOC; as the discovery cut-off is August 15, 2013. [Doc. 223.] The three additional experts have only been made necessary because of the EEOC's and the Intervenors' untimely discovery responses, and Mr. Koontz' untimely report.[7]

Without knowing the identity of two of the three potential new expert witnesses or their specific opinions,[8] the EEOC argues that it will be prejudiced by the relief sought by JBS

---

[7] Mr. Koontz was clearly designated as a "rebuttal" expert because the EEOC realized too late that it should have earlier designated an expert on whether the Greeley plant could be productive while allowing unscheduled prayer breaks. This is an improper use of so-called "rebuttal" testimony. *See, e.g., Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006). As Mr. Koontz' report was not a true rebuttal report, it was untimely, submitted long after the applicable November 16, 2012 deadline.

[8] Mr. Stanley is one of the three who has already been identified. *See,* note 6, *supra.*

8

because it will be required to conduct three additional depositions and designate its own rebuttal experts. Nothing requires the EEOC to depose all expert witnesses (both sides have elected not to conduct depositions of certain opposing experts). And nothing requires the EEOC to call rebuttal experts. The EEOC cannot complain of unfair prejudice if it opts for those strategies.

## II.     The EEOC's Misrepresentations Regarding Defendant's Discovery and Pre-Trial Actions Are Not A Legitimate Basis for Denying Defendant's Motion.

The EEOC gratuitously accuses Defendant of "a pattern of abuse in the litigation process" and "scorched-earth litigation tactics." (Response, Doc. 241, at 3, 10.) Having filed a case on behalf of hundreds of Muslim employees, amazingly, Plaintiff whines that JBS has somehow "over-litigated" the case, and that this should be grounds for denying a Rule 16(b)(4) motion. Not only is there no law supporting this contention, it is a complete fabrication.

Plaintiff complains that JBS "has served over 500 written discovery requests." (Response, Doc. 241, at 10.) In reality, the EEOC has been served with only 58 discovery requests, well within the limits: 25 interrogatories, 25 requests for admission, and 8 document requests.[9] In order to exaggerate Defendant's written discovery, the EEOC has counted discovery that it was not obligated to answer – the written discovery that went to the separately-represented 55 Intervenors identified as Phase I witnesses. Moreover, the written discovery propounded to each such Intervenor was very limited – 3 interrogatories, 4 document requests,

---

[9] *See,* Defendant's First Set of Interrogatories and Requests for Production of Documents to EEOC (Ex. 2 attached); Defendant's First Set of Requests for Admission to EEOC (Ex. 3 attached); Defendant's Second Set of Interrogatories and Requests for Production of Documents to EEOC (Ex. 4 attached). Ironically, the EEOC served written discovery in excess of the numerical limits, to which Defendant objected.

9

and 1 or 2 requests for admission.[10]  Considering the hundreds of people on whose behalf the EEOC has sued, even 500 written discovery requests would not be excessive.

Further, the EEOC – again, having commenced this huge lawsuit – complains about the number of persons disclosed by JBS as likely having discoverable information that it may use to support its defenses.  *See,* Fed. R. Civ. P. 26(a).  (Response, Doc. 241, at 3, 10.)  According to the EEOC, JBS disclosed 80 such persons on February 22, 2013, and another 92 persons less than two weeks later, on March 6, 2013.  *This is wrong.*  On February 22, 2013, JBS did disclose 80 *rebuttal or impeachment* witnesses (based on deposition testimony of the Intervenors identified by Plaintiff as witnesses).  (Def.'s Eighteenth Supp. Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), Ex. 6 attached.)  On March 6, 2013, 12 more people – *not an additional 92 people as claimed by Plaintiff* – were disclosed.  (Def.'s Nineteenth Supp. Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), Ex. 7 attached.)  The EEOC's accusations are greatly exaggerated.

Finally, if the EEOC's point is that JBS has vigorously litigated this case, this merely *supports* the Motion, insofar as Rule 16(b)(4) motions turn on the diligence of the party seeking leave to modify the scheduling order.  *See, e.g., Koch v. Kaz USA, Inc., supra*, at *7.

## CONCLUSION

For the above reasons, the Court should grant JBS permission and additional time to designate up to three additional experts.  Alternatively, the Court should strike Mr. Koontz' proffered testimony as to all matters beyond the scope of Ms. Skinner's designated expert witness testimony, including specifically those matters set forth in paragraph 5 of the Motion.

DATED this 24th day of May, 2013.

---

[10] *See, e.g.,* Defendant's First Set of Interrogatories, Requests for Production of Documents & Requests for Admission to Muna Ahmed Jama (an Intervenor Identified as a Phase I Witness) (Ex. 5 attached).

10

       Respectfully submitted,


       */s/ Heather Fox Vickles*
       W.V. Bernie Siebert
       Raymond M. Deeny
       Heather Fox Vickles
       Kelly K. Robinson
       Andrew W. Volin
       SHERMAN & HOWARD L.L.C.
       633 17th Street, Suite 3000
       Denver, CO  80202
       303-297-2900 / Fax:  303-298-0940
       Email:  BSiebert@shermanhoward.com
       Email:  RDeeny@shermanhoward.com
       Email:  HVickles@shermanhoward.com
       Email:  KRobinson@shermanhoward.com
       Email:  AVolin@shermanhoward.com

       Attorneys for Defendant JBS USA, LLC

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 24th day of May, 2013, I electronically filed the foregoing **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO DESIGNATE ADDITIONAL EXPERT WITNESSES, OR IN THE ALTERNATIVE, TO STRIKE PLAINTIFF'S EXPERT WITNESS KEITH KOONTZ [230]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses**:**

| | |
|---|---|
| Rita Byrnes Kittle | rita.kittle@eeoc.gov |
| Stephanie Struble | stephanie.struble@eeoc.gov |
| Andrew Winston | andrew.winston@eeoc.gov |
| William Moench | william.moench@eeoc.gov |
| Iris Halpern | iris.halpern@eeoc.gov |
| Sean William Ratliff | sean.ratliff@eeoc.gov |
| Diane King | king@kinggreisen.com |
| Lauren Hasselbacher | hasselbacher@kinggreisen.com |
| Raina Bayas | bayas@kinggreisen.com |
| Joel Borgman | borgman@kinggreisen.com |
| Rajasimha Raghunath | rraghunath@law.du.edu |
| Brittany Glidden | bglidden@law.du.edu |
| Richard Blundell | rick@rkblaw.net |
| James Chiu | james.y.chiu2008@gmail.com |
| Harry Budisidharta | harry@denverfirm.com |
| Todd McNamara | tjm@18thavelaw.com |
| David Lichtenstein | dave@lichtensteinlaw.com |

*/s/ Lynn Zola Howell*