IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Plaintiff,

and

IRAQ ABADE, et al.,

        Plaintiffs-Intervenors,

v.

JBS USA, LLC, d/b/a JBS Swift & Company,

        Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on **Defendant's Motion for Leave to Designate**

**Additional Expert Witnesses, or in the Alternative, to Strike Plaintiff's Expert Witness**

**Keith Koontz** [Docket No. 230; Filed April 1, 2013] (the "Motion").  The Motion is referred

to this Court for disposition [#231].  Plaintiff Equal Employment Opportunity Commission

(the "EEOC") filed a Response to the Motion [#241].  Defendant filed a Reply [#242].  The

Motion is now fully briefed and ripe for resolution.  The Court has reviewed the Motion, the

Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised

in the premises.  For the reasons set forth below, the Motion is **GRANTED in part** and

**DENIED in part**.

# I.  Background

Defendant owns and operates a meat packing plant in Greeley, Colorado at which a large number of Somali, Muslim, and black persons work.  The EEOC filed this suit alleging that Defendant has discriminated against these workers based on their national origin, religion, and ethnicity.  The EEOC brings several pattern or practice claims alleging discriminatory harassment, disparate treatment, denial of religious accommodation, retaliation, and discipline and discharge.  The EEOC also brings individual claims on behalf of charging parties for failure to accommodate religion, retaliation for requesting accommodation, hostile work environment, and discriminatory discipline and discharge.  The EEOC's claims are based on Sections 706 and 707 of Title VII of the Civil Rights Act of 1964, as amended (the "Act").  Section 706 of the Act permits the EEOC to sue an employer on behalf of persons aggrieved by the employer's alleged unlawful practice.  Section 707 of the Act permits the EEOC to sue employers whom it has reasonable cause to believe are engaged in a pattern or practice of unlawful employment discrimination.  42 U.S.C. § 2000e-5(f)(1); 2000e-6; *see also Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 324 (1980).

The EEOC's pattern or practice religious accommodation claim alleges that Defendant violated workers' rights to religious accommodation in four ways since at least December 22, 2007: (1) in 2008, it denied Muslim workers the ability to pray at or near sundown during the holy month of Ramadan; (2) in 2008, it did not allow Muslim workers to break their fast after sundown during Ramadan; (3) it denied Muslim workers bathroom breaks and the ability to pray during those bathroom breaks; and (4) it did not provide Muslim workers a space in which to pray, forcing them to pray on bathroom floors. *Compl.*

[#1] at ¶¶ 15-18, 23, 30-39; 44-54. The EEOC also alleges that during Ramadan of 2008, Muslim employees requested that their evening break be moved from 9:15 p.m. to 7:30 p.m. so that they could pray and break their fast within fifteen minutes of sunset. *Id.* at ¶ 29. As alleged, for two days Defendant accommodated this request, but on the third day, a Friday, the break was moved to 8:00 p.m. *Id.* at ¶¶ 30-31. On Friday, management stationed employees at the doors to prevent Muslim workers from leaving the facility at 7:30 p.m. and shut off water fountains or tagged them with red tags and yellow tape, preventing the workers from drinking water at the end of their daily fast or washing up for their prayers. *Id.* at ¶ 32. At 8:00 p.m., management told Muslim employees to leave the facility, but when the employees attempted to re-enter after their breaks, management told them they could not return to work. *Id.* at ¶¶ 37-39. Plaintiff avers that the following Monday Defendant advised the employees' union that those workers who left the plant had engaged in an unauthorized work stoppage and would be placed on an indefinite suspension. *Id.* at ¶ 40. It is further alleged that on Tuesday, Defendant decided to allow these workers to return to work with a final written warning, provided they returned that day. *Id.* at ¶ 41. However, Plaintiff claims that Defendant did not contact each worker to tell him or her about this decision and, therefore, several Muslim employees were terminated for not returning to work on Tuesday. *Id.* at ¶ 42.

The EEOC's pattern or practice hostile work environment claim alleges a variety of forms of harassment against Defendant's Muslim, Somali, and/or black employees. These employees were allegedly subjected to harassing comments on the basis of their race, national origin, and/or religion. *Id.* at ¶ 19. Other employees allegedly threw blood, meat, and bones at these employees and called them offensive names. *Id.* at ¶ 20. Plaintiff

3

further alleges that Defendant's Muslim employees were harassed when they attempted to pray during scheduled breaks and were discriminatorily denied bathroom breaks. *Id.* at ¶¶ 20-23. The bathrooms at Defendant's facility also allegedly bore anti-Muslim, anti-Somali, and anti-black graffiti. *Id.* at ¶ 21. In its briefing on its Motion for Bifurcation [#28], the EEOC stated that its theory of Defendant's liability for this harassment is one of employer negligence. *Reply in Support of Motion for Bifurcation* [#62] at 8. The EEOC also alleges a retaliation pattern or practice claim, asserting that Muslim workers were retaliated against for requesting religious accommodations. *Compl.* at ¶¶ 55-59. It further alleges a discriminatory discipline and discharge claim, alleging that Muslim, Somali, and/or black workers were disciplined or fired because of their religion, national origin, and/or race.[1] *Id.* at ¶¶ 44-49.

The Intervenors in this lawsuit, who number in excess of two hundred, are former or current workers at Defendant's Greeley plant. They assert multiple claims against Defendant, including claims based on a pattern or practice of discriminatory treatment because of race, national origin, religion, and/or retaliation, pursuant to 42 U.S.C. § 2000e-2(a). *See Compl. in Intervention and Jury Demand* [#40] at ¶¶ 61-66 (the "Abdulla Intervenors' Compl."); *Am. Compl. in Intervention and Jury Demand* [#61] at ¶¶ 156-61 (the "Abade Intervenors' Compl."); *Compl. in Intervention and Jury Demand* [#132] at ¶¶ 34-39 (the "Abdi Intervenors' Compl."); *Am. Compl. in Intervention and Jury Demand* [#137] at ¶¶

---

[1] The EEOC also appears to bring a disparate treatment pattern or practice claim separate from the foregoing pattern or practice claims. *See Compl.* [#1] ¶ 46. However, the EEOC fails to allege a separate cause of action for disparate treatment; instead, briefly mentioning "disparate treatment" as a part of the pattern or practice of discriminatory treatment alleged in the first claim for relief. *Id.*

52-57 (the "Adan Intervenors' Compl."); *Compl. In Intervention and Jury Demand* [#236] at ¶¶ 51-56 (the "Abdille Intervenors' Compl.").

On August 8, 2011, the District Judge granted in part the EEOC's Motion to Bifurcate the trial, and ordered that the trial will be conducted in two phases. *Order* [#116] at 18. During Phase I of the trial, the EEOC will present its claim that Defendant engaged in a pattern or practice of denial of religious accommodation, retaliation, and discipline and discharge. *Id.* During Phase II, the EEOC may present its pattern or practice claim for hostile work environment, pursue individual damages for its pattern or practice claim presented in Phase I, and pursue individual claims for compensatory and punitive damages. *Id.* The individual Intervenors' claims not covered by the EEOC's claims will also be evaluated in Phase II. *Id.* The District Judge further granted the EEOC's request to bifurcate discovery. *Id.* at 17-18.

Subsequently, the Court entered a Scheduling Order governing Phase I. *See generally Sched. Order* [#128]. Among other things, the Scheduling Order limited the number of expert witnesses to five experts per side. *Id.* at § 9(d)(2) ("The parties agree to a limit of 5 experts per side."). The Scheduling Order also set deadlines for disclosure of expert witnesses and related disclosures required pursuant to Fed. R. Civ. P. 26. *Id.* at § 9(d)(3)-(4). These deadlines were subsequently amended pursuant to requests from the parties. *See generally Order* [#195]; *Order* [#202].

In its Motion, Defendant requests that the Court either strike Keith Koontz's ("Koontz") rebuttal expert report or that the Scheduling Order [#128] be amended pursuant to Fed. R. Civ. P. 16(b)(4) to enlarge the number of expert witnesses each side is allowed from five to eight. *Motion* [#230] at 1. Defendant contends that Mr. Koontz's rebuttal report

5

[#230-2] "went far beyond Ms. Skinner's expert opinions" that he was designated to rebut. *Id.* at 3. Defendant argues that Mr. Koontz's expert report included a variety of topics that were not raised in Defendant's Summary of Anticipated Expert Testimony of Heather Skinner[2] [#230-1]. As a result, if Mr. Koontz's report is not stricken pursuant to Rule 26, Defendant argues that the following topics may require designation of additional expert witnesses: (1) employee health and safety; (2) industrial engineering; and (3) public health, food safety, and sanitation. *Id.* at 7. Defendant further contends that the additional information contained in Mr. Koontz's report makes it an affirmative expert report which was disclosed after the deadline for submission of such reports. *Id.* at 5 ("Mr. Koontz's report was untimely as it was not a rebuttal report and was submitted long after the governing deadline set by the Court [for affirmative expert reports].").

In addition, Defendant argues that written discovery responses submitted by Plaintiff-Intervenors and Plaintiff on February 27, 2013 "substantially changed the nature of the claims asserted in this case." *Id.* at 6. Defendant agues that this was the "first time all of the religious accommodations for Muslim employees that are expected of Defendant" were disclosed to Defendant. *Id.* Because reference to Mr. Koontz' rebuttal report is also made in those discovery responses, Defendant argues that it "should be given the opportunity *after* Mr. Koontz' [sic] deposition[3] to consider whether to designate three additional expert

---

[2] Ms. Skinner ("Skinner") is the Corporate Controller of Defendant's Beef Division and is not someone who regularly provides expert testimony. *Motion* [#230] at 1 n.1. Therefore, Defendant did not produce an expert report, rather, pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), Defendant produced the Summary of Anticipated Expert Testimony of Heather Skinner [#230-1].

[3] According to Defendant, discussions regarding scheduling Mr. Koontz's deposition have stalled. *Motion* [#230] at 5. However, discovery does not close until August 15, 2013. *Minutes/Minute Order* [#223] at 1.

witnesses, and if so, to compile the necessary information for the designations and the experts' reports." *Id.* at 6-7.

In response, Plaintiff argues that the opinions expressed in Mr. Koontz's expert report are properly offered in rebuttal to Ms. Skinner's anticipated testimony. *Resp.* [#241] at 5.   Plaintiff further argues that Defendant has not shown good cause to amend the Scheduling Order [#128]; instead, Plaintiff claims that "Defendant's request will only cause undue additional expense and delay in an already very expensive and long-delayed litigation." *Id.* at 2.  Plaintiff further alleges that Defendant's arguments relating to Plaintiff's February 27, 2013 written discovery responses have no basis. *Resp.* [#241] at 7.  Plaintiff states that "neither of the alleged 'new' accommodations Defendant complains about in the EEOC's supplemental discovery responses . . . is referenced in any manner in Mr. Koontz's report or has anything to do with Mr. Koontz's testimony." *Id.* at 7-8.

In its Reply, Defendant reiterates its argument that Mr. Koontz's rebuttal report went beyond the topics Ms. Skinner was designated to discuss and expands on its argument that Plaintiff's February 27, 2013 response to Interrogatory 11 (regarding the requested accommodations) and the Intervenor-Plaintiffs' similar discovery responses constitute good cause for modification of the Scheduling Order [#128]. *See generally Reply* [#242].

## II.  Standard of Review

### A.    Standard for Striking Expert Report

"Fed. R. Civ. P. 26(a)(2)(B)(i) requires the disclosure of an expert's report, which must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them." *Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 80 (10th Cir. 2011) (internal quotation omitted).  While Fed. R. Civ. P. 26(a)(2)(d) governs the timing

of expert report disclosures, Rule 37(c)(1) provides that failure to comply with Rule 26(a) precludes the use of the expert information at issue "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997); *e.g., Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002) ("Rule 37(c) permits a district court to refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless."). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.1999) (quoting *Mid-Am. Tablewares, Inc. v. Moqi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Id.* (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)). However, the Tenth Circuit has enumerated four factors the Court should use to guide its discretion in determining whether a Fed. R. Civ. P. 26(a) violation is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* (citations omitted). The non-moving party has the burden of showing that it was substantially justified in failing to comply with Fed. R. Civ. P. 26(a) and that such failure was harmless. *See Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004) (citation omitted). Therefore, assuming, *arguendo*, that Mr. Koontz's rebuttal report violates Rule 26(a), the Court may nonetheless decline to strike the rebuttal report if the violation was substantially justified or harmless.

8

In analyzing these factors, the Court notes that the Tenth Circuit has stated that "the decision to exclude evidence is a drastic sanction." *Summers*, 132 F.3d at 604.

## B.     Standard for Modifying Scheduling Order

As an initial matter, numerous courts have noted, and the undersigned agrees, that a "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *See, e.g., Washington v. Arapahoe Cnty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441 (D. Colo. 2000) (citations omitted).  Scheduling order deadlines "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b).  To demonstrate good cause pursuant to Rule 16, the moving party must "show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Minter v. Prime Equip. Co.*, 451 F3d 1196, 1205 n.4 (10th Cir. 2006).

> Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.  Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. . . .  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Colo. Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000) (internal quotation and citation omitted). *Accord Summers*, 132 F.3d at 604 (holding that "total inflexibility is undesirable" in the context of a motion to adopt a new scheduling order).

The decision to modify the Scheduling Order "is committed to the sound discretion of the trial court." *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987); *see also Benton v. Avedon Eng'g, Inc.*, No. 10-cv-01899-RBJ-KLM, 2013 WL 1751886, at *1 (D. Colo. April 23, 2013).  When exercising its discretion, the Court considers the following

9

factors: (1) whether trial is imminent; (2) whether the request to reopen or extend discovery is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the Court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the Court; and (6) the likelihood that the discovery will lead to relevant evidence.  *Id.* (citations omitted).  With regard to the fourth factor, the Tenth Circuit has explained that "[d]emonstrating good cause under [Rule 16(b)(4)] 'requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay.'"  *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir.1994)).  While "the [Scheduling Order] defines a lawsuit's boundaries in the trial court and on appeal, "total inflexibility is undesirable.' " *Summers,* 132 F.3d at 604 (citations omitted).  However, the Court notes that a scheduling order plays an important role in the management of a case and should not be unnecessarily amended. *Cf. Washington v. Arapahoe Cnty. Dep't of Soc. Servs.,* 197 F.R.D. at 441 (noting that a "scheduling order is an important tool necessary for the orderly preparation of a case for trial"). *See also Rent–a–Center, Inc. v. 47 Mamaroneck Ave. Corp.,* 215 F.R.D. 100, 101 (S.D.N.Y.2003) ("scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed").

### III.  Analysis

#### A.    Mr. Koontz's Rebuttal Expert Report

The Court first examines whether Mr. Koontz's expert report exceeds the scope of proper rebuttal testimony.  A witness designated as a rebuttal expert witness, is a witness

10

"intended solely to contradict or rebut evidence on the same subject matter identified" in the expert report of another party. Fed. R. Civ. P. 26(a)(2)(C)(ii); *see also Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Hawaii 2008) (holding that individuals designated only as rebuttal experts could present limited testimony, could not testify as part of a party's case-in-chief, and would not be allowed to testify "unless and until" the experts they were designated to rebut testified at trial); *Johnson v. Grays Harbor Cmty. Hosp.*, No. C06-5502BHS, 2007 WL 4510313, at *2 (W.D. Wash. Dec. 18, 2007) (finding that experts designated as rebuttal witnesses would "be permitted only to offer rebuttal testimony at trial"). Fed. R. Civ. P. 26(a)(2)(D)(ii)

> make[s] clear that a rebuttal expert's testimony must relate to and rebut evidence or testimony on the same *subject matter* identified by another party under Rule 26(a)(2)(B) or (C). Such evidence is not tied to any particular witness; it is tied to whether the party with the affirmative burden has presented evidence and/or testimony from a duly disclosed expert on the same subject matter as that which will be rebutted by the disclosed rebuttal expert.

*Bleck v. City of Alamosa, Colo.*, No. 10-cv-03177-REB-KMT, 2012 WL 695138, at *4 (D. Colo. March 5, 2012) (citing *Baumann v. Am. Family Mut. Inc. Co.,* 278 F.R.D. 614, 2012 WL 27652, *2 (D. Colo. 2012) and *Morel v. Daimler–Chrisler Corp.,* 259 F.R.D. 17, 21 (D. Puerto Rico 2009)). "It is irrelevant through which expert witness that evidence is elicited; that it actually *be elicited* in the course of Plaintiff's case-in-chief is the determining factor in the context of the admissibility analysis." *Id.*

Here, the parties have supplied the Court with Defendant's Summary of Anticipated Expert Testimony of Heather Skinner [#230-1], Mr. Koontz's report [#230-2], various written discovery requests and responses, and a document titled "Expert Advice of James W.

Stanley" [#242-1].[4]   The parties' arguments about Mr. Koontz's report relate exclusively to whether his opinion properly rebuts Ms. Skinner's testimony.   As a result, Ms. Skinner's expert opinion is the only expert opinion offered by Defendant that the Court evaluates with regard to the scope of Mr. Koontz's report.   After a careful review of both Defendant's Summary of Anticipated Expert Testimony of Heather Skinner [#230-1] and Mr. Koontz's report [#230-2], the Court finds that Section 4 of Mr. Koontz's report exceeds the boundaries of the topics Defendant intends to present through Ms. Skinner's expert testimony.

Section 4 of Mr. Koontz's report is entitled "Feasibility of accommodating the prayer needs of Muslim employees at the JBS Greeley, Colorado facility" and discusses "Industrial Engineering Methods Design analyses" and depositions taken in this case to recommend the steps Defendant should take in "develop[ing] an accommodating production system for breaks" for its employees.   *Koontz Report* [#230-2] at § 4.2.   Ms. Skinner's anticipated topics of testimony are limited to the financial impact on Defendant of various religious accommodations either proposed during this litigation or considered by Defendant.   *See generally Defendant's Summary of Anticipated Expert Testimony of Heather Skinner* [#230-1].   The vast majority of Ms. Skinner's expert opinion involves various calculations which

---

[4] Mr. Stanley's report notes that he is retained by Defendant "to provide expert counseling, advice, and guidance regarding the occupational safety and health implications for [Defendant] and its employees concerning [Plaintiff]'s position that prayer breaks for Muslim employees working on a continuous production line should be given preference by management over all production employees' unscheduled bathroom breaks." *Stanley Report* [#242-1] at 20-21. Plaintiff alleges that Mr. Stanley is Defendant's sixth expert who was designated on May 8, 2013 in violation of the Scheduling Order. *Resp.* [#241] at 3. However, the Motion, Response, and Reply do not address the contents of Mr. Stanley's report or request that it be stricken; Plaintiff simply offers this information in furtherance of its allegation that Defendant has designated "more experts than allowed by the Scheduling Order." *Id.*

Mr. Koontz rebuts in his report. *See Koontz Report* [#230-2] at §§ 3 ("Rebuttal Discussion of Skinner Report") and 5 ("Opinions").   The furthest Ms. Skinner veers from directly addressing costs of accommodations is when, within her analysis of proposed "rolling" breaks for Muslim employees, she mentions that "[c]ertain key factors affect the feasibility and cost of such a system" and lists certain factors she considered when calculating the cost of rolling breaks. *Defendant's Summary of Anticipated Expert Testimony of Heather Skinner* [#230-1] at § 5.  However, this mention of key factors does not delve into a specific engineering analysis or mention engineering systems that should be considered in the analysis.  In addition, Mr. Koontz's report directly addresses these factors elsewhere in his report. *See Koontz Report* [#230-2] at § 3.3 ("Ms. Skinner begins a discussion about this subject in section 5.  I agree with Ms. Skinner that certain key factors need to be established . . .").

Mr. Koontz's discussion of "Industrial Engineering Methods Design analyses," *id.* at § 4, simply does not rebut Ms. Skinner's anticipated testimony regarding the costs to Defendant of providing the religious accommodations sought by Plaintiff.  Instead, it posits a method for developing a system to accommodate employee breaks.  As a result, the Court finds that Section 4 of Mr. Koontz's report does not comply with Fed. R. Civ. P. 26(a)(2)(D).   *See Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.*, No. 603CV1860ORL19KRS, 2005 WL 2465020, at *4-5 (M.D. Fla. Oct. 6, 2005) (finding that a portion of rebuttal expert's report "cannot reasonably be classified as rebuttal evidence" because it included "independent analysis which should have been disclosed" by the expert disclosure deadline); *see also In re Fla. Cement and Concrete Antitrust Litig.,* 278 F.R.D. 674, 683-84 (S.D. Fla. 2012) (finding that rebuttal expert reply report improperly contained

13

information that was not proper rebuttal evidence and its inclusion would prejudice the opposing party); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 501 (N.D. Cal. 2008) (striking portions of rebuttal expert declaration).  Such non-rebuttal, expert evidence cannot be admitted as rebuttal evidence pursuant to Rule 26(a)(2).  *See Id.* at 5.

As discussed above, Rule 37(c)(1) provides that failure to comply with Rule 26(a) precludes the use of the expert information at issue "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  *Summers*, 132 F.3d at 604.  The Court considers the following four factors in determining whether Plaintiff's violation of Fed. R. Civ. P. 26(a)(2)(D) is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Woodworker's Supply, Inc.*, 170 F.3d at 993.[5]  In evaluating these factors, the Court is mindful that Plaintiff has the burden of showing that it was substantially justified in failing to comply with Fed. R. Civ. P. 26(a) and that such failure was harmless.  *See Sender*, 225 F.R.D. at 655 (citation omitted).

With regard to the prejudice or surprise to Defendant, neither party addresses prejudice to Defendant with regard to Mr. Koontz's report.  Instead, Defendant states that "[t]he designation of three additional expert witnesses would not prejudice Plaintiff [because t]he discovery cut-off in this case has been extended to August 15, 2013."  *Motion* [#230]

_____

[5]  The Court notes that neither party addresses these factors in its briefing.  In fact, neither party mentions the "substantially justified or harmless" standard articulated in Fed. R. Civ. P. 26(a)(2)(D).  Instead, both parties focus only on the standard for modification of a Scheduling Order.  Therefore, the Court is unable to consider the parties' points of view in this regard.

at 7.  Plaintiff argues that it would be prejudiced by the designation of three additional experts because it "will be forced to incur the costs associated with deposing these witnesses, which may not be insignificant." *Resp.* [#241] at 8-9.  Here, the Court finds that Plaintiff's logic applies to Defendant's argument regarding Mr. Koontz's report.  Section 4 of Mr. Koontz's rebuttal report raises issues that, as far as the Court can tell, Defendant has not addressed through its expert witnesses.  Therefore, Section 4 unfairly surprises and prejudices Defendant.  In addition, such prejudice cannot be cured because the time for designation of additional expert witnesses has elapsed and both parties have already designated the maximum number of experts allowed pursuant to the Scheduling Order. *See Sched. Order* [#128] at § 9(d)(2) ("The parties agree to a limit of 5 experts per side."); *Order* [#191] at 1 (granting joint motion to extend affirmative expert and rebuttal expert deadlines); *Order* [#202] at 1 (granting unopposed motion to extend deadline for designation of rebuttal experts).  Neither party addresses the remaining factors for determining whether the violation of Fed. R. Civ. P. 26(a)(2)(D) is substantially justified or harmless.  However, the Court notes that discovery is on-going and a trial date has not yet been set.  In addition, no evidence of Plaintiff's bad faith has been presented.

Because Plaintiff has the burden of showing that it was substantially justified in failing to comply with Fed. R. Civ. P. 26(a) and that such failure was harmless, *see Sender*, 225 F.R.D. at 655, and Plaintiff has failed to address the standard articulated in Fed. R. Civ. P. 37(c)(1), Plaintiff has failed to carry its burden.  Considering the prejudice to Defendant of Section 4 of Mr. Koontz's report, the Court finds that this portion of the report is neither substantially justified nor harmless.  As a result, Section 4 of Mr. Koontz's report shall be **stricken**.  *See Lindner*, 249 F.R.D. at 625 (striking portion of rebuttal report that

15

did "not constitute a proper rebuttal report"); *Daly v. Fesco Agencies NA Inc.*, 108 F. App'x 476, at *2 (9th Cir. Aug. 23, 2004) (unpublished decision) (holding that district court did not abuse its discretion by limiting testimony of rebuttal expert to information actually rebutting opposing party's case and excluding testimony that was not considered rebuttal testimony pursuant to Rule 26(a)(2)).

**B.      Defendant's Request For Leave to Designate Three Additional Experts**

Defendant asks the Court to amend the Scheduling Order to allow it to designate three additional expert witnesses on two grounds: (1) because Mr. Koontz's rebuttal report raises new topics and (2) because Plaintiff's February 27, 2013 written discovery responses "substantially changed the nature of the claims asserted in this case." *Motion* [#230] at 6-7. As discussed above, Defendant's first basis for modification of the Scheduling Order is mooted by the Court's Order striking Section 4 of the report.  With regard to the second basis, Plaintiff argues that "nothing in Plaintiffs' discovery responses warrant[s] the Court allowing more expert testimony in this case." *Resp.* [#241] at 8.  Further Plaintiff alleges that Plaintiff's written discovery responses were timely and that "Defendant . . . only recently learned of the information" in the responses because "Defendant only recently served" the discovery requests. *Id.*  Plaintiff therefore argues that "Defendant created its own problem." *Id.*  Plaintiff further argues that the written discovery responses only identified one new accommodation and, in response, "Defendant has produced a supplemental report from its Muslim religion expert addressing this potential accommodation" to which Plaintiff "has not and will not object." *Id.*  In its Reply Defendant states that "[o]n December 9, 2011, [Defendant] served written discovery on [Plaintiff] asking it to: 'Describe with specificity each and every religious accommodation [Plaintiff]

16

is seeking to require [Defendant] to provide to Muslim employees of the Greeley facility.'"
*Reply* [#242] at 4; *Reply Ex. 2* [#242-2] at 6.  Defendant alleges that Plaintiff responded to
the 2011 discovery request by stating that it did not have to respond to the request because
it was premature.[6]  *See Reply* [#242] at 5.  Defendant claims that it was not until February
27, 2013 that Plaintiff supplemented its prior objections and responses, and it was only then
that Defendant learned what accommodations Plaintiff seeks in this case.  *Id.*

As discussed above, Defendant must show good cause pursuant to Rule 16 to
modify the Scheduling Order.  Further, prejudice to the nonmoving party is not taken into
account when determining if the moving party has shown good cause.  *Colo. Visionary
Acad.,* 194 F.R.D. at 687; *Koch v. KAZ USA, Inc.*, No. 09-cv-02976-LTB-BNB, 2011 WL
2490989, at *3 (D. Colo. June 23, 2011) (granting motion to amend scheduling order to
allow depositions of individuals, the need for which could not have been known prior to the
close of discovery).

Here, the Court finds that Plaintiff's late supplemental disclosure of the
accommodations it seeks from Defendant does not constitute good cause to modify the
Scheduling Order to allow the parties to designate additional expert witnesses.  In the
Scheduling Order [#128], Plaintiff anticipated the need for "an industrial organizations
expert (to opine regarding the reasonableness of accommodations)" and Defendant
anticipated retaining an expert on "industry operations and standards."  *Sched. Order*
[#128] at § 9(d)(1).  It is clear that both parties understood that they would need expert

---

[6]  Neither party has provided the Court with this alleged objection to Defendant's First Set
of Interrogatories and Requests for Production of Documents to EEOC.  Because this argument
was raised in Defendant's Reply, Plaintiff has not had an opportunity to contradict the allegation.

witnesses with regard to these topics.

However, the Court notes that Plaintiff's supplemental discovery responses came more than three months after the deadline for designation of affirmative experts in this matter and more than a month after the deadline for designation of rebuttal experts. *See Order* [#195] (granting joint motion to amend the Scheduling Order and setting November 16, 2012 as the deadline for designation of affirmative experts); *Order* [#202] at 1 (granting unopposed motion to amend Scheduling Order and setting January 4, 2013 as the deadline for designation of rebuttal experts). As a result, it was impossible for Defendant's experts to properly analyze the requested accommodations. Therefore, the Court finds that Defendant has shown good cause to modify the Scheduling Order to allow Defendant to file a supplemental expert report, if needed, to address the accommodations requested by Plaintiff. Such supplemental report shall be in addition to Professor Takim's supplemental report and shall only be authored by an individual previously designated by Defendant as an affirmative expert witness.

IT IS HEREBY **ORDERED** that the Motion [#230] is **GRANTED in part** and **DENIED in part**.

IT IS FURTHER **ORDERED** that Section 4 of Mr. Koontz's rebuttal expert report is **STRICKEN**. Mr. Koontz is not permitted to testify regarding that portion of his report at trial.

IT IS FURTHER **ORDERED** that the Scheduling Order [#128] is hereby **AMENDED**

to allow Defendant to file one supplemental expert report as specified above, if needed, **on**

**or before July 22, 2013**.

       Dated:  July 1, 2013                BY THE COURT:

                                         Kristen L.  Mix
                                         United States Magistrate Judge