# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02103-PAB-KLM


ABADE, *et al*.,

      Plaintiffs-Intervenors,

and

ABDULLE, *et al*.,

      Plaintiffs-Intervenors,
and

ASAD ABDI, *et al*.,

      Plaintiffs-Intervenors,

NAFISO ABDI, *et al*.,

      Plaintiffs-Intervenors,
and

FARTUN ADAN, *et al*.,

      Plaintiffs-Intervenors,

v.

JBS USA, LLC, d/b/a JBS SWIFT & COMPANY,

      Defendant.

---

## PLAINTIFFS-INTERVENORS' MOTION TO QUASH SUBPOENA DUCES TECUM DIRECTED TO NON-PARTY CARGILL INC. PURSUANT TO Fed. R. Civ. P. 45 AND FOR AN AMENDED PROTECTIVE ORDER PURSUANT TO Fed. R. Civ. P. 26(c)

---

All Plaintiffs-Intervenors, the Abade Intervenors, Abdulle Intervenors, Asad Abdi

Intervenors, Nafiso Abdi Intervenors, and Fartun Adan Intervenors (collectively "Plaintiffs"),

through their respective attorneys, and for their Motion to Quash Subpoena Directed to Non-

Party Cargill Inc. ("Cargill") and for an Amended Protective Order Pursuant to Fed. R. Civ. P.

26(c), state as follows:

### Certificate of Compliance with D.C.COLO.LCivR 7. 1.A:

On August 8, 2013, Intervenors' counsel Diane King had a telephone call with opposing

counsel, Kelly Robinson, in which she addressed the overbreadth of the subpoena issued to

Cargill by Defendant JBS USA, LLC, D/B/A JBS Swift & Company ("JBS"). Ms. Robinson

indicated that the information sought by the subpoena goes to Plaintiffs' "credibility." Ms. King

provided case cites to Ms. Robinson to review. On August 9, 2013, Ms. Robinson indicated that

the requested information goes to "emotional distress." She did not raise credibility.

During the telephone conversation, Ms. Robinson identified eight (8) categories of

documents she is seeking:

1. Dates of employment;

2. Earnings information;

3. Attendance records;

4. Requests for religious accommodations (not specifically identified in the

   subpoena);

5. Applications;

6. Discharges;

7. Workplace injuries; and

8. Complaints filed (not specifically identified in the subpoena).

Defendant declined to narrow the scope of its subpoena other than agreeing not to seek

attendance records and earnings information from former employers.

After the telephonic hearing before this Court, on September 23, 2013, Diane King

contacted Kelly Robinson and invited JBS to narrow its requests based upon the remarks of this

Court during the hearing. Kelly Robinson declined.

As a result of the 7.1.A conferences, Plaintiffs have agreed to the following:

1.      For Plaintiffs subsequently employed at Cargill, Plaintiffs have no objection to

Cargill's providing dates of employment and earnings information.

2.      For the one current Cargill employee, Plaintiffs object to the use of a subpoena

duces tecum but will voluntarily provide dates of employment and damages information.

Defendant opposes this motion.

## INTRODUCTION

This case is in Phase 1 Discovery for the EEOC's section 707 Title VII claim. The EEOC

is suing JBS under Section 707 because it has reasonable cause to believe that the company has

engaged in a pattern or practice of, *inter alia*, unlawful employment discrimination, including the

denial of religious accommodation, retaliation, discipline, and unlawful termination.

During this Phase of discovery, JBS has taken extensive written discovery from

individual Plaintiffs, including the Plaintiffs who are the subject of the subpoena duces tecum

directed to Cargill Incorporated ("Cargill"). It has also deposed all of the Plaintiffs identified in

the subpoena. For each of the fifteen (15) Plaintiffs who are the subject of the subpoena, Cargill

is either his or her former employer (before employment with JBS), subsequent employer (after

employment with Swift but no longer working at Cargill), or current employer. The legal

analysis of the validity of the subpoena depends in part upon this distinction.

The language in the subpoena states:

> For each person listed in Exhibit A, please forward the **complete personnel file**, including but not limited to, **applications** for employment; **attendance records**; **performance evaluations**; documents concerning **performance issues**, **promotions**, **demotions**, **transfers** and/or **termination**; and any records regarding **workplace injuries** or claims for **Worker's Compensation**.

Ex. 1, Subpoena to Cargill Incorporated at 1 (emphasis added).

The subpoena does not specifically include requests for religious accommodation or

complaints. *See id*.

What is particularly troubling about this subpoena is that because JBS has already

deposed each of the Plaintiffs whose documents they are seeking and secured extensive written

discovery from them, JBS could have made the necessary particularized showing as to why it

needs this information for each Plaintiff. JBS did not.[1] Instead, the subpoena sweeps broadly,

treating Plaintiffs not as individuals with distinct employment histories and records, but as one

collective group.

Although the scope of discovery is liberal and broad, it does not extend this far.

---

[1] Plaintiffs will first discuss the general principles of law underlying their objections and then discuss the three (3) categories of Plaintiffs, those who were employed at Cargill prior to their employment with JBS, those subsequently employed by Cargill but are no longer there, and those who are currently employed by Cargill. Then, within those three (3) categories, Plaintiffs will individually address the eight (8) kinds of documents sought.

# ARGUMENT

**A.    Plaintiffs Have Standing to Challenge a Subpoena Duces Tecum to a Non-Party Where the Documents Sought Are Employment Records.**

### EMPLOYMENT AND PERSONNEL FILES IMPLICATE PLAINTIFFS' PRIVACY AND PERSONAL INFORMATION INTERESTS, THEREBY CONFERRING STANDING

JBS posits that only the nonparty can move to quash a subpoena, "unless the party challenging the subpoena has a personal right or privilege" in the documents sought. *EEOC v. Original Honeybaked Ham Co. of Georgia*, No. 11-cv-02560, 2012 U.S. Dist. LEXIS 37107, 2012 WL 934312 (D. Colo. Mar. 19, 2012). There, the subpoenas at issue were directed to non-parties who were prior and subsequent employers, seeking the same kinds of information JBS is asking for in this case. In *Honeybaked*, however, the EEOC argued, and the court agreed, that the privacy interests of the employees it represented conferred "limited standing." *Id*. at **6-7.[2]

Here, as well, because JBS's subpoena seeks Plaintiffs' employment records from non-party Cargill — information in which the Plaintiffs have recognized privacy and personal interests —Plaintiffs have standing to challenge these subpoenas. *Richards v. Convergys Corp.*, No. 2:05-CV-00790, 2007 U.S. Dist. LEXIS 9131, **3-7 (D. Utah Feb. 6, 2007) ("The court agrees with the reasoning of the courts that have found that a party has a personal right in his employment records sufficient to confer standing"); *Stewart v. Mitchell Transp.*, No. 01-2546, 2002 U.S. Dist. LEXIS 12958, **4-5 (D. Kan. July 11, 2002) (same).

---

[2] Plaintiffs have not located any Tenth Circuit Court of Appeals rulings on the standing issue. However, the Tenth Circuit has held that the **"personnel files often contain sensitive personal information . . . and should not be disclosed 'willy-nilly.'"** *Regan-Touhy v. Walgreen Co*., 526 F.3d 641, 648 (10th Cir. 2008) (emphasis added).

**B.      Legal Standard for Deciding Discovery Disputes.**

Under Fed. R. Civ. P. 26(1)(1), only relevant information is discoverable. "Relevant information need not be admissible at the trial *if the discovery appears reasonably calculated* to lead to the discovery of admissible evidence." *Id*. (emphasis added).

If the discovery sought appears relevant, the party opposing the discovery has the burden to establish the lack of relevancy. There are two ways to show irrelevancy: (1) that the sought after discovery is outside the scope of relevance under Fed. R. Civ. P. 26(b)(1), or (2) is only marginally relevant such that "that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo*., 220 F.R.D. 354, 359 (D. Colo. 2004) (citations omitted). A party opposing discovery on relevancy grounds has the burden "to explain how each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome." *Continental Illinois Nat'l Bank & Trust Co. v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991).

The burden can shift, however, if the request for discovery is overly broad on its face. "When relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." *Hammond v. Lowe's Home Ctrs., Inc*., 216 F.R.D. 666, 670 (D. Kan. 2003); *Paradigm Alliance v. Celeritas Techs*., No. 07-1121, 2008 U.S. Dist. LEXIS 20656, **7-8 (D. Kan. Mar. 7, 2008).

**C.      While the Scope of Discovery is Broad, it is Not Unlimited, Especially as to the Discovery of Personnel Files Held by Former or Current Employers.**

BLANKET REQUESTS FOR PERSONNEL FILES ARE OVERLY BROAD

The scope of discovery under Fed. R. Civ. P. 26(b) is broad but not unlimited. *Cartel Asset Mgt. v. Ocwen Fin. Corp.*, No. 01-cv-01644, *2010 U.S. Dist. LEXIS 1785*7, **28-29 (D.

Colo. Feb. 8, 2010). The linchpin as to whether the information sought is discoverable is relevance. *Prof'l Solutions Ins. Co. v. Mohrlang*, No. 07-cv-02481, 2008 U.S. Dist. LEXIS 123128, at *5 (D. Colo. Aug. 26, 2008).   Under Fed. R. Civ. P. 26(b)(1), to be discoverable, the information sought must be relevant to any party's claim or defense.

Expansive "fishing expeditions" are prohibited. *See Munoz v. St. Mary-Corwin Hosp.,* 221 F.3d 1160, 1169 (10th Cir. 2000); *see also Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05-cv-1056, 2006 U.S. Dist. LEXIS 36774, **8-14 (M.D. Fla. June 6, 2006) (blanket requests are overly broad).

The same should hold true here. ***A party always has a responsibility to craft tailored, relevant discovery requests, including – and particularly – when it seeks personnel documents.*** *See Bottoms v. Liberty Life Assur. Co*., 2011 U.S. Dist LEXIS 143251, **17-18 (D. Colo. 2011). Indeed, *Bottoms* evaluated the overbreadth of a subpoena seeking complete personnel files as follows:

> Plaintiff's request for "***complete personnel files***" also is facially overbroad.
>
> * * *
>
> It is difficult to reconcile Ms. Bottoms' sweeping request for production of "complete personnel files" with the requirements and policy objectives underlying Rule 26(g).
>
> *Bottoms* at **17-18 (emphasis added).[3]

---

[3] In support of its holding, *Bottoms* cited to a number of other federal court decisions also recognizing the impropriety of requests for complete personnel files:

> *See*, *e.g.*, *Acton v. Target Corp*., No. C08-1149, 2009 U.S. Dist. LEXIS 104436, 2009 WL 3380645, at *4 (W.D. Wash. Oct. 16, 2009) (characterizing as "strikingly overbroad" a request for the production of complete personnel files for dozens of the defendant's employees "without identifying any justification for reviewing their entire files"); *Professional Recovery Services, Inc. v. General Electric Capital Corp.*, No. 06-2829, 2009 U.S. Dist. LEXIS 3889,

Likewise, JBS's blanket request for Plaintiffs' **complete personnel files** is overly broad

on its face and not properly tailored to the claims and defenses in the case.

> ### D.     JBS's Failure to Specify How Each Category of Documents Is Relevant to Each Individual Plaintiff Demonstrates That the Subpoena is a Fishing Expedition.

### WITHOUT TYING THE DOCUMENTS SOUGHT TO PARTICULAR CLAIMS AND DEFENSES, THERE CAN BE NO RELEVANCE

If the party seeking discovery is unable to explain with specificity how the evidence

requested is relevant to the claims and defenses, there should be no disclosure or production. "If

a proponent fails to specify how information is relevant, the court will not require" production.

*Williams v. Evogen, Inc.*, No. 12-2620, 2013 U.S. Dist. LEXIS 99675, \*\*4-5 (D. Kan. Jul. 17,

2013). The "theoretical possibility" of relevance is insufficient:

> *Plaintiff has not placed her entire employment history at issue, but rather only her employment with the Defendant. While it is certainly theoretically possible that records from a previous or subsequent employer might be relevant in an employment discrimination case, such a theoretical possibility does not make the records discoverable. Rather, the Defendant must demonstrate that the documents it seeks actually are relevant to the claims and defenses in this case.* Further, it is the Court's duty to consider whether "the burden or expense of the proposed discovery outweighs its likely benefit . . . .

> \* \* \*

> [A]bsent a showing that the subpoenas are reasonably calculated to lead to the discovery of admissible evidence, the Defendant is

---

2009 WL 137326, at \*4 (D.N.J. Jan. 15, 2009)  ("[I]t has been recognized that personnel files, even of a party's agent, may contain information that is both private and irrelevant to the case, and that special care must be taken before personnel files are turned over to an adverse party"); *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (noting a strong public policy against the discovery of personnel files and holding that production is required only if the material sought is clearly relevant and the need for discovery is compelling because the information sought is not otherwise readily obtainable).

> simply embarking on the proverbial fishing expedition, and the
> theoretical potential relevance of any information obtained by
> such discovery is outweighed by the interests of the plaintiff . . . .
>
> *Woods v. Fresenius Med. Care Group of N. Am.*, 2008 U.S. Dist.
> LEXIS 3756, **4-7 (D. Ind. 2008) (emphasis added).

JBS's justifications for its subpoena duces tecum are more aspirational than legitimate.

When conferring under D.C.COLO.LCivR 7.1.A, and in the Written Discovery Dispute Chart

previously submitted to this Court, JBS provided only conclusory justifications:

a) Dates of employment and attendance records, are relevant to refute Plaintiffs'

"repeated testimony they had no problems at Cargill," Ex. 2, Chart at 3 § 1; 4 at §

3; 5 at § 4; 7 at § 7; 8 at §8;

b) Damages, Ex. 2, Chart at 4 § 2; 6 at § 5; 7 at §§ 6-7;

c) After acquired evidence, Ex. 2, Chart at 3 § 1; 4 at § 3; 6 at § 5; 7 at §§ 6,7; 8 at §

8;

d) General credibility or credibility, Ex. 2, Chart at 3 §1; 4 at §§ 2,3; 5-6 at §§ 4-5; 7

at § 6;

e) Reasonableness of proposed prayer accommodations, Ex. 2, Chart at 4 § 3; 5 § 4;

6 at § 5; 7 at §§ 6,7; 8 at § 8;

f) Undue burden, Ex.2, Chart at 4 § 3; 5 at § 4; 7 at §§ 6, 7; 8 at § 8;

g) Discipline, Ex.2, Chart at 7 § 6;

h) Need to refute EEOC's expert, Ex. 2, Chart at 7 § 6; 8 at § 8;

i) Workplace injuries, Ex.2, Chart at 7 § 7; and

j) Complaints filed, Ex. 2, Chart 8 at § 8.

Although the subpoena identifies 15 individual Plaintiffs, JBS has failed to identify even one Plaintiff by name coupled with a specific reason as to why JBS requires complete personnel files and/or documents from each category. That is JBS's burden. *See Woods*, 2008 U.S. Dist. LEXIS 3756, *7 (emphasis in original) ("[b]ecause the Defendant has failed to demonstrate that its subpoenas to the Plaintiff's past and current employers are based upon anything other than the Defendant's hope that the documents sought might prove useful in this case, the Plaintiff's motion to quash the subpoenas is **GRANTED**").[4]

### E.    JBS is Not Entitled to a Fishing Expedition to Search for After Acquired Evidence.[5]

BEFORE SEEKING DISCOVERY REGARDING AFTER ACQUIRED EVIDENCE, JBS MUST BE ABLE TO MAKE A SUFFICIENT SHOWING THAT SUCH EVIDENCE EXISTS. JBS HAS MADE NO INDIVIDUALIZED SHOWING.

JBS has listed after-acquired evidence as a basis for obtaining the records at issue. Ex. 2, Chart at 3§1; 4 at § 3; 6 at § 5; 7 at §§6,7; 8 at § 8. Courts have rejected arguments that discovery of a plaintiff's personnel records from former employers is mandatory when asserting an after-acquired evidence defense. In *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360-63 (1995), the Supreme Court noted that while the after-acquired evidence defense can be used in certain instances to limit damages and remedies, it cautioned that employers should not undertake extensive discovery into an employee's background or performance to resist claims. Lower courts have applied the *McKennon* reasoning to hold that an after-acquired evidence

---

[4] JBS contends that a number of requested documents are relevant to damages including dates of employment, Ex.2, Chart at 3 § 1; earnings records, Ex. 2, Chart at 4 § 2; employment applications, Ex.2, Chart at 6 § 5; discipline, Ex. 2 at 7 § 6; workplace injuries, Ex.2, Chart at 7 § 7. However, the Order JBS cites in support of its argument that it is entitled to obtain documents regarding damages refers only to *deposition testimony* in Phase 1 Discovery, *not documents*. "The scope of deposition testimony may include questions related to plaintiffs' claims of . . . individual alleged damages." [DKT #116] at 17.

[5] JBS appears to be using after acquired evidence and credibility interchangeably.

defense should not be used to independently initiate discovery. Rather, a defendant must be able to make a sufficient showing that after-acquired evidence exists before seeking discovery to support such a defense.  *See*, e*.g.*, *Shirazi*, 2008 U.S. Dist. LEXIS 88686, **8-9 (collecting cases); *Williams v. Evogen, Inc.*, 2013 U.S. Dist. LEXIS 99675, *7 (D. Kan. 2013); *Premer v. Corestaff Servs., L.P.*, 232 F.R.D. 692, 693 (M.D. Fla. 2005).

Further, in order for JBS to advance an after acquired evidence argument, it "must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362-63. To date, JBS has provided no information as to the basis of its after acquired evidence theory.

However, if JBS intends to use errors on job applications as the basis for an after acquired evidence defense, it will be unable to establish that it would have discharged employees for inaccuracies on job applications. Barbara I. Walker, JBS's Human Resources Manager in Greeley who had been employed there for 25 years by the time of her deposition, testified to the following:

a) That JBS does no background checks because it would be too expensive, Ex. 3,Walker Dep. at 137-38: 23-3;

b)  That no one would know if a prior employer was omitted from a job application and that, consequently, no applicant has ever been refused a job for doing so, *id.* at 139: 1-19;

    c)   That only one employee had ever been terminated for incorrect information on an application and that person had a felony conviction, which JBS later learned about, *id.* at 140-41: 18-17;

    d)   That no one else has been terminated for falsifying an application or leaving a prior employer off an application, *id.* at 141: 18-23;

    e)   That Walker did not know whether JBS provided interpreters to job applicants but that sometimes applicants brought their own interpreters, *id.* at 142: 2-7; and

    f)   That all applications were received through Job Service and Walker would review them and decide who would be interviewed, *id.* at 142-43: 2-1.

Because only one person had been terminated for an inaccurate application in Walker's 25 years of employment with JBS in Greeley, JBS will not be able to satisfy *McKennon's* requirement that it "establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362-63. Plaintiffs in this case were not untruthful. Instead, as they readily admitted during their depositions during their depositions, to the extent that there are errors or inaccuracies in their application materials, it is generally attributable to language barriers, this further distinguishes this case from *Harroald*.

In conferring with Ms. King and in preparing the Chart, JBS has not made any showing that after acquired evidence exists as to even one of the 15 Plaintiffs. Consequently, JBS should be precluded from obtaining copies of Plaintiffs' personnel files with the "hope" of discovering after acquired evidence.

**F.    Three of JBS's Justifications for Plaintiffs' Personnel Files are Irrelevant on Their Face.**

In the Chart previously submitted to this court, which was the subject of a telephonic hearing on September 23, 2013, JBS contends that individual religious accommodation requests, disciplinary records, and records of complaints at Cargill are relevant to its ability to dispute the reasonableness prong of the EEOC's *prima facie* case regarding religious accommodations and to support its undue burden defense to that claim. Ex. 2, Chart at 5, § 4; 7 at §§ 6-7; 8 at § 8. JBS also contends that individual personnel files are necessary "to refute Keith Koontz." Ex.2, Chart at 7, § 6; 8 at § 8. Koontz is an industrial engineer and a rebuttal expert regarding mechanical ways to structure the lines when providing religious accommodations to Muslims. Each of these justifications is irrelevant on its face.

**1.    Because of Previous Discovery Rulings, JBS Is Not Entitled to Religious Accommodation Requests, Discipline Records or Individual Complaints Filed by Plaintiffs.**

Presumably, JBS is circling back to its argument opposing bifurcation where it argued that the "EEOC's religious accommodation pattern or practice claim presents individualized issues making it inappropriate for bifurcation. "*EEOC v. JBS United States, LLC*, No. 10-cv-02103, 2011 U.S. Dist. LEXIS 87127, **20-22 (D. Colo. Aug. 8, 2011). But, the district court disagreed with JBS, holding that:

> The EEOC's pattern or practice claim arising from these requests for accommodation can be efficiently bifurcated. In Phase I, the jury will consider whether groups of Muslim workers made these requests and whether defendant routinely and unlawfully denied them. The jury will also consider whether the accommodations posed an undue hardship to defendant. In Phase II, the jury will consider whether any particular worker held a particular religious belief and suffered damages as a result of defendant's unlawful denial of its accommodation.

*Id.* at 21.

This Court subsequently issued an order regarding Phase 1 Discovery. [#148]. There, this Court stated that in large part, the individual experiences of each Plaintiff would not necessarily be the focus of the EEOC's 707 claim, which requires that the EEOC establish a discriminatory policy or policies. [#148] at 6. Accordingly, it is unclear how JBS can make use of individual religious accommodation requests, disciplinary records or complaint records as evidence of the reasonableness, or unreasonableness, of JBS's policy or policies. It is also unclear how those same records would support JBS's undue burden defense. Given the nature of the Section 707 claim on the failure to make religious accommodations, it would be more useful to subpoena information from Cargill about its policies regarding religious accommodations.

Consequently, because of the limited scope of discovery in Phase 1, Plaintiffs ask that this Court bar JBS from obtaining any religious accommodation requests, disciplinary records or complaint records regarding Plaintiffs' prior employment, subsequent employment or current employment at Cargill.

> ### 2. The Disciplinary and Complaint Records That May Be in Individual Personnel Files Are Irrelevant to JBS's Desire to Refute Koontz's Expert Opinions.

JBS also alleges that it requires disciplinary and complaint records to "refute Keith Koontz," who is an EEOC expert. Ex. 2, Chart at 7, § 6, 8 at § 8. But Koontz is an industrial engineer who will, in part, testify about conveyor assembly lines:

> The EEOC designated Keith Koontz, P.E., as a rebuttal expert to the summary of anticipated testimony of Heather Skinner. However, the opinions offered in Mr. Koontz's "Industrial Engineer Rebuttal" report do not rebut Ms. Skinner's opinions concerning the financial impact of various religious accommodation scenarios. Ms. Skinner is the Director of

Finance for JBS's US Beef Division.  Mr. Koontz is an industrial
engineer who describes his methodology as relying on "standard
Industrial Engineering practices used in work methods and work
station design, continuous conveyor assembly line design, and
operations management."

Ex. 4, Feb. 18, 2013 email from Vickles to Struble.

Again, there is no explanation as to why disciplinary and complaint records would be

relevant in refuting Mr. Koontz's expert opinions.

Consequently, because of the limited scope of discovery in Phase 1, Plaintiffs ask that

this Court bar JBS from obtaining any religious accommodation requests, disciplinary records or

complaint records regarding Plaintiff's prior employment, subsequent employment or current

employment at Cargill.

### III. PRIOR EMPLOYERS

*Generally, employment and personnel records of former employers, including an*

*employee's performance evaluations, are unlikely to lead to admissible evidence, and thus, not*

*discoverable. Richards,* 2007 U.S. Dist. LEXIS 9131, *19 ; *see also Woods v. Fresenius Med.*

*Care Group of N. Am.*, No. 06-cv-1804, 2008 U.S. Dist. LEXIS 3756, **4-7 (S.D. Ind. Jan. 16,

2008) (motion to quash granted because defendant failed to demonstrate relevance, and "the

Plaintiff has not placed her entire employment history at issue, but rather only her employment

with the Defendant"); *EEOC v. Holmes & Holmes Indus.*, No. 2:10-cv-955, 2011 U.S. Dist.

LEXIS 124916, **6-8 (D. Utah Oct. 27, 2011) (blanket requests for all documents regarding a

party's employment are overly broad as to past and current employers); *Maxwell.*, 2006 U.S.

Dist. LEXIS, 36774, **10-11 ( a defendant's desire to discover information related to a

plaintiff's prior work history and/or any periods of unemployment constitute insufficient grounds to subpoena personnel records from former employers in discrimination cases).

Moreover, disciplinary records from a former employer, such as those sought by JBS here, are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. *Shirazi v. Childtime Learning Ctr.*, No. CIV-07-1289, 2008 U.S. Dist. LEXIS 88686, *7 (W.D. Okla. Oct. 31, 2008). That is particularly apt here, where Plaintiffs' complaints are based on religion, color, and national origin. Prior discipline adds nothing to the analysis.

### A. Dates of Employment.

**SEE ABOVE DISCUSSIONS REGARDING RELEVANCE, OVERLY BROAD, SUBJECT TO A PARTICULARIZED SHOWING OF NEED AND AFTER ACQUIRED EVIDENCE**

In the Chart, JBS contends that "[D]ates of employment are relevant to refute Intervenors' repeated testimony they had "no problems" at Cargill, damages, after-acquired evidence and Intervenors' general credibility." Ex. 2, Chart at 3 § 1. Plaintiffs' testimony about having "no problems" at Cargill relates to religious accommodations. For example, Mohamed W. Mohamed testified he had no religious problems or conflicts working at Cargill. Ex. 5, Mohamed Dep. at 58:1-4. He was able to take prayer breaks when he needed them. *Id.* at 58:5-7. Likewise, Raawi Sahal worked the morning shift at Cargill, and had no problems with prayer because she prayed at home. Ex. 6, Sahal Dep. at 19:18-25. Therefore, JBS's request for Plaintiffs' dates of employment at Cargill based on this rationale is not reasonably calculated to lead to admissible evidence. On its face, the dates of Plaintiffs' employment at Cargill have no apparent relevance to Plaintiffs' claims of discrimination when subsequently employed by JBS. *See Maxwell, v. Health Ctr. of Lake City, Inc.*, 2006 U.S. Dist. LEXIS 36774, **10-11 (M.D. Fla. 2006). Similarly, Plaintiffs' dates of employment at Cargill can have no bearing on the damages

Plaintiffs are seeking in this case. *Id*. at 9-10. As discussed above, JBS's defense of after acquired evidence does not entitle it to Plaintiffs' dates of employment at Cargill without some showing of serious misconduct.

Thus, JBS's request for Plaintiffs' dates of employment for their prior employment at Cargill is not reasonably calculated to lead to admissible evidence.

### B.     Earnings Information.

JBS is no longer seeking this information.

### C.     Attendance Records.

JBS is no longer seeking this information.

### D.     Requests for Religious Accommodation.[6]

#### SEE ABOVE DISCUSSIONS REGARDING RELEVANCE, OVERLY BROAD, SUBJECT TO A PARTICULARIZED SHOWING OF NEED AND AFTER ACQUIRED EVIDENCE

In addition to the foregoing, where a defendant was unable to provide any reason to believe that a plaintiff had complained about religious discrimination or retaliation during her previous employment, the requests for those records was held "overly intrusive and unnecessary." *Premer v. Corestaff Servs., L.P.*, 232 F.R.D. 692, 693 (M.D. Fla. 2005).

JBS also contends that Plaintiffs' requests for religious accommodation at Cargill are relevant to JBS's ability to dispute the reasonableness prong of the EEOC's *prima facie* religious accommodation claim and to establish JBS's undue burden defense. It is not apparent how an individual Plaintiff's request of Cargill for a religious accommodation will assist JBS in establishing the reasonableness, or the unreasonableness, of a prior employer's policy or practice

---

[6] Should this Court not agree that requests for religious accommodation filed by an individual Plaintiff are barred by the limitations on Phase 1 Discovery, Plaintiffs are responding to JBS's arguments in the Chart.

of accommodating religious requests in the work place. The same is true about JBS's undue

burden defense. Instead, it would make more sense to request documents about Cargill's policies

and practices regarding religious accommodation for the relevant time period.

In the Chart, Ex. 2, at 5 § 4, JBS relies on *Dreier v. Accord Human Res.*, No. CIV-08-

446, 2008 U.S. Dist. LEXIS 80033, *2 (W.D. Okla. Oct. 6, 2008), to support its argument that

prior requests for religious accommodation are discoverable. *Dreier*, however, is very different

from this case. The plaintiff there brought an ADA claim for the failure to accommodate his

disability, namely that he required either an interpreter or written communications to effectively

perform the essential functions of his job. The court found that *under those facts*, the

performance evaluations from prior and current employers were relevant in determining whether

Dreier actually required the requested accommodations to perform his job. Here, there should be

no dispute that Plaintiffs are Muslims and required religious accommodations at JBS.

JBS also relies on two other cases, both authored by the same judge, regarding, *inter alia*,

credibility concerns. *See Harroald v. Triumph Structure-Wichita, Inc*., No. 10-1281, 2011 U.S.

Dist. LEXIS 57680 (D. Kan. May 27, 2011) and *Gilkey v. ADT Sec. Servs.*, No. 11-1369, 2012

U.S. Dist. LEXIS 107944 (D. Kan. Aug. 2, 2012). The defendant in *Harroald* contended that it

was entitled to plaintiff's complete personnel files from former employers because it had

evidence that the plaintiff "was untruthful" in completing her employment application and as a

result, "'the possibility and likelihood exists that even more such misrepresentations exist and

[Defendant] is entitled to discover the same to develop evidence and defenses concerning

Plaintiff's credibility.'" The court accepted defendant's argument, but the opinion does not

identify the severity or the nature of the "untruthful" representations, which makes it difficult to

apply here. In *Gilkey*, the court characterized defendant's discovery requests as "relative[ly] standard in employment discrimination cases brought in this District." *Gilkey* at 6-7. However, the opinion provides no information about the specifics of the discovery sought and speaks only in general terms. *Id.* at 4-5. *Gilkey*, then, is of little help to JBS.

       **E.**       **Employment Applications.**

In the Chart, Ex. 2 at 3 § 1; 4 at § 3; 6 at § 5, JBS argues that because some Plaintiffs had mistakes on their applications for employment with JBS, those mistakes entitle them to discovery of Plaintiffs' complete employment files from Cargill because of its status as a prior employer. Some Plaintiffs did make mistakes in filling out their JBS applications, but there are reasonable explanations.

For example, Mohamed W. Mohamed does not read or speak English and had someone help him fill out the application. Ex. 5, Mohamed Dep. at 61:10-16. When the person asked Mr. Mohamed something, he gave him an answer. *Id.* at 61:22-25. Another Plaintiff, Raawi Sahal, who also does not read or speak English, also had help in completing her JBS application. In her deposition, Sahal testified that said that another Somali man helped her fill out the application. "I don't know what he put in there. All I wanted is to apply for the job and get the job, so he was the one who was putting all this information in the application." Ex. 6, Sahal Dep. at 25:19-22. "[H]e didn't ask me a lot of questions. He was just filling out the application." 26:15-16. "I wanted him to explain to me what I need to do, but he didn't tell me anything, he just fill out the form and said, You need to sign here and I did." *Id.* at 28:5-7. Iraq Abade said that she signed the document, but "but nobody read me or explain me. I don't know what's written here." Ex. 7, Abade Dep. at 37:25-2.

But, as testified to by HR manager, Barbara Walker, Swift did not rely on job

applications and conducted no reference checks. Ex. 3, Walker Dep. at 137-39:23-19. Moreover,

in all of Walker's 25 years with Swift in Greeley, she knew of only one employee who had been

fired for application issues, and that person had concealed a felony conviction.

Thus, this request is nothing but a fishing expedition.

**F.     Discipline.[7]**

**SEE ABOVE DISCUSSIONS REGARDING RELEVANCE, OVERLY BROAD, SUBJECT TO A
PARTICULARIZED SHOWING OF NEED, AFTER ACQUIRED EVIDENCE, IRRELEVANCE OF PRIOR
WORK HISTORY, RELIGIOUS ACCOMMODATION AT CARGILL UNDER SECTION 707**

In the Chart, Ex. 2, at 7 § 6, JBS asserts that the disciplinary records of individual

Plaintiffs from a prior employer is relevant to the reasonableness prong of the EEOC's Section

707 *prima facie* religious accommodation claim and to its undue burden defense. But, there is no

apparent related link between individual discipline and attacking the reasonableness prong of the

EEOC's *prima facie* Section 707 case, or establishing JBS's undue burden defense. Therefore,

the requested discovery is not relevant.

It is also unclear how discipline at a *prior* employer relates to damages caused by

discrimination while at JBS. And, while it may be true, as JBS asserts, that disciplinary records

are likely to be readily identifiable, that assertion contributes nothing to the relevancy

determinations, the key to discoverability.

Therefore, JBS is not entitled to disciplinary records from Cargill.

---

[7] Should this Court not agree that disciplinary records for individual Plaintiffs are barred by the limitations on Phase 1 Discovery, Plaintiffs are responding to JBS's arguments in the Chart.

### G.     Workplace Injuries.

SEE ABOVE DISCUSSIONS REGARDING RELEVANCE, OVERLY BROAD, SUBJECT TO A
PARTICULARIZED SHOWING OF NEED, AFTER ACQUIRED EVIDENCE, AND IRRELEVANCE OF
PRIOR WORK HISTORY

Workplace injuries at a *prior* employer have no relation to the claims and defenses in this

employment discrimination case. Moreover, documentation about a Plaintiff's workplace injury

will, by necessity, contain personal medical information about the Plaintiff. Without a showing

of individualized need, and JBS has provided none, these records are irrelevant and not

reasonably likely to lead to admissible evidence at trial.

JBS also restates its argument about the reasonableness prong of the EEOC's *prima facie*

case, its undue burden defense, its after acquired evidence defense, damages, and to disputing

Plaintiffs' general satisfaction with Cargill's religious accommodations. Because these rationales

are conclusory, and fail to demonstrate on their face **how** the request is related to the claims and

defenses in this case, documents about Plaintiffs' workplace injuries are irrelevant and, therefore,

not discoverable.

### H.     Complaints Filed.[8]

SEE ABOVE DISCUSSIONS REGARDING RELEVANCE, OVERLY BROAD, SUBJECT TO A
PARTICULARIZED SHOWING OF NEED, AFTER ACQUIRED EVIDENCE, AND IRRELEVANCE OF
PRIOR WORK HISTORY

These are the same arguments that have been debunked above, including the need for

complaints to dispute the industrial engineer's expert opinions. For the same reasons, Plaintiffs'

complaints are not discoverable.

---

[8] Should this Court not agree that individual requests for complaints filed by an individual Plaintiff are barred by the
limitations on Phase 1 Discovery, Plaintiffs are responding to JBS's arguments in the Chart.

## IV.  SUBSEQUENTLY EMPLOYED BY CARGILL BUT NO LONGER THERE

### A.    Dates of Employment.

Plaintiffs have no objection to providing this information.

### B.    Earnings Information.

Plaintiffs have no objection to providing this information.

### C.    Attendance Records.

**SEE ABOVE DISCUSSIONS REGARDING RELEVANCE, OVERLY BROAD, SPECIFICITY, SUBJECT
TO A PARTICULARIZED SHOWING OF NEED, AFTER ACQUIRED EVIDENCE, AND IRRELEVANCE
OF PRIOR WORK HISTORY**

These are the same arguments that have been debunked above. For the same reasons,

Plaintiffs' attendance records are not discoverable.

### D.    Requests for Religious Accommodation.

These are the same arguments that have been debunked above. For the same reasons,

Plaintiffs' requests for religious accommodation are not discoverable.

### E.    Employment Applications.

These are the same arguments that have been debunked above. For the same reasons,

Plaintiffs' employment applications are not discoverable.

### F.    Discipline.

These are the same arguments that have been debunked above. For the same reasons,

Plaintiffs' disciplinary records are not discoverable.

### G.    Workplace Injuries.

These are the same arguments that have been debunked above. For the same reasons,

Plaintiffs' workplace injuries are not discoverable, especially without a showing of specificity.

*See also Richards v. Convergys Corp.*, 2007 U.S. Dist. LEXIS 9131, **17-18 (D. Utah 2007)

(holding that defendant should first attempt to obtain medical information from the plaintiff

before subpoenaing records). JBS asked for this information during depositions. For example,

Iraq Abade testified that her symptoms improved over time and specifically said she felt better

once she started working for Cargill. Ex. 7, Abade Dep. at 151:5-11.

> **H.**    **Complaints Filed.**[9]

These are the same arguments that have been debunked above. For the same reasons,

Plaintiffs' complaints are not discoverable. In addition, JBS asked in depositions about religious

accommodations at Cargill. Iraq Abade testified that she was able to pray at Cargill, and said

there was "no problem" with everyone in her area praying at the same time. Ex. 7, Abade Dep. at

144:10-12, 145:5-7. Nur Abdullahi was allowed to pray at Cargill, and never missed his prayers.

Ex. 8, Abdullahi Dep. at 27:12-15.

> **V.    CURRENT EMPLOYEE**

There is only one Plaintiff who is currently employed by Cargill, Sadi Mohamed Aden. A

subpoena to a current employer may cause disruption in a plaintiff's employment relationship.

For example, in *Richards v. Convergys Corp.*, 2007 U.S. Dist. LEXIS 9131, **12-13 (D. Utah

2007), the court quashed the defendant's subpoena to plaintiff's current employer in part because

the defendant failed to initially attempt to obtain the evidence directly from the plaintiff or

through alternative means less likely to cause the plaintiff embarrassment.

---

[9] Should this Court not agree that records of an individual Plaintiff's complaints are barred by the limitations on Phase 1 Discovery, Plaintiffs are responding to JBS's arguments in the Chart.

Here, Plaintiffs have already voluntarily agreed to provide dates of employment as well as wage and benefits information, and are not entitled to the additional documents it seeks in the subpoena.  Therefore, JBS should not be allowed to obtain documents from Cargill.

Respectfully submitted this 30th day of September, 2013.

Respectfully submitted,

KING & GREISEN, LLP

By:   s/Diane S. King
        Diane S. King
        Lauren M. Hasselbacher
        1670 York Street
        Denver, Colorado 80206
        (303) 298-9878
        303) 298-9879 (fax)

*Attorneys for Plaintiffs/Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September 2013, that the foregoing **PLAINTIFFS-INTERVENORS' MOTION TO QUASH SUBPOENA DUCES TECUM DIRECTED TO NON-PARTY CARGILL INC. PURSUANT TO Fed. R. Civ. P. 45 AND FOR AN AMENDED PROTECTIVE ORDER PURSUANT TO Fed. R. Civ. P. 26(c) was electronically filed via CM/ECF which will send notification of such filing to the following email addresses:**

Bernie Siebert      bsiebert@shermanhoward.com
Heather Vickles    hvickles@shermanhoward.com
Raymond Deeny    rdeeny@shermanhoward.com
Kelly Robinson     krobinson@shermanhoward.com
Andrew Volin      avolin@shermanhoward.com
Brooke Colaizzi    colaizzi@shermanhoward.com
*Attorneys for Defendant*

David Lichtenstein      dave@lichtensteinlaw.com
Todd McNamara        tjm@18thavelaw.com
*Attorneys for Abade et al., Asad Abdi et al.*

24

*and Nafiso Abdi et al. Plaintiffs-Intervenors*

Rajasimha Raghunath rraghunath@law.du.edu
*Attorneys for Maryan Abdulle, et al.,*
*Plaintiff's Intervenors*

Richard K. Blundell rick@rbklaw.net
Harry Budisidharta   harry@denverfirm.com
James Y. Chiu    james@chiulawoffice.com
*Attorneys for Fartun Adan, et al.,*
*Plaintiffs-Intervenors*

Rita Kittle  rita.kittle@eeoc.gov
Stephanie Struble  stephanie.struble@eeoc.gov
Andrew Winston   andrew.winston@eeoc.gov
Iris Halpern  iris.halpern@eeoc.gov
William Moench  William.moench@eeoc.gov
Sean Ratliff sean.ratliff@eeoc.gov
*Attorney for Plaintiff EEOC*

s/ Dianne Von Behren
Dianne Von Behren, Paralegal