IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

IRAQ ABADE, et al.,

    Plaintiffs-Intervenors,

v.

JBS USA, LLC, d/b/a JBS Swift & Company,

    Defendant.
_____

**ORDER**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on **Plaintiff's Motion to Strike Witnesses** [#259][1] (the "Motion").  On September 6, 2013, Defendant filed a Response [#269].  On September 23, 2013, Plaintiff filed a Reply [#272].  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to this Court for disposition [#260]. The Court has reviewed the Motion, the Response, the Reply, the exhibits, the entire case file, and the applicable law, and is fully advised in the premises.  For the reasons set forth below, the Motion [#259] is **GRANTED**.

---

[1] "[#259]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

1

## I. Background

Defendant owns and operates a meat packing plant in Greeley, Colorado at which a large number of Somali, Muslim, and black persons work. The EEOC filed this suit alleging that Defendant discriminated against these workers based on their national origin, religion, and ethnicity. The EEOC brings several pattern or practice claims alleging discriminatory harassment, disparate treatment, denial of religious accommodation, retaliation, and discipline and discharge. The EEOC also brings individual claims on behalf of charging parties for failure to accommodate religion, retaliation for requesting accommodation, hostile work environment, and discriminatory discipline and discharge. The EEOC's claims are based on Sections 706 and 707 of Title VII of the Civil Rights Act of 1964, as amended (the "Act"). Section 706 of the Act permits the EEOC to sue an employer on behalf of persons aggrieved by the employer's alleged unlawful practice. Section 707 of the Act permits the EEOC to sue employers whom it has reasonable cause to believe are engaged in a pattern or practice of unlawful employment discrimination. 42 U.S.C. §§ 2000e-5(f)(1), 2000e-6; *see also Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 324 (1980).

The Intervenors in this lawsuit, who number in excess of two hundred, are former or current workers at Defendant's Greeley plant. They assert multiple claims against Defendant, including claims based on a pattern or practice of discriminatory treatment because of race, national origin, religion, and/or retaliation, pursuant to 42 U.S.C. § 2000e-2(a). *See First Am. Compl. in Intervention and Jury Demand* [#286] at ¶¶ 61-71, 77-92 (the "Abdulle Intervenors' Compl."); *Am. Compl. in Intervention and Jury Demand* [#61] at ¶¶ 156-61 (the "Abade Intervenors' Compl."); *Compl. in Intervention and Jury Demand* [#132]

at ¶¶ 34-39 (the "Abdi Intervenors' Compl."); *Am. Compl. in Intervention and Jury Demand* [#137] at ¶¶ 52-57 (the "Adan Intervenors' Compl."); *Compl. In Intervention and Jury Demand* [#236] at ¶¶ 51-56 (the "Abdille Intervenors' Compl.").

On August 8, 2011, the Court granted in part the EEOC's Motion to Bifurcate the trial, and ordered that the trial will be conducted in two phases. *Order* [#116] at 18. During Phase I of the trial, the EEOC will present its claim that Defendant engaged in a pattern or practice of denial of religious accommodation, retaliation, and discipline and discharge. *Id.* During Phase II, the EEOC may present its pattern or practice claim for hostile work environment, pursue individual damages for its pattern or practice claim presented in Phase I, and pursue individual claims for compensatory and punitive damages. *Id.* The individual Intervenors' claims not covered by the EEOC's claims will also be evaluated in Phase II. *Id.* The Court also granted the EEOC's request to bifurcate discovery. *Id.* at 17-18. The Court determined that Phase I discovery should proceed as follows:

> During Phase I discovery, defendant may depose aggrieved employees that plaintiffs identify as those upon whom they will rely to prove their bifurcated pattern or practice claims. Defendant may also depose 10 aggrieved employees selected by defendant and defendant may depose any combination of up to 10 of the following additional non-expert witnesses: non-aggrieved Somali, Muslim, or black employees who worked at the Greeley plant during the relevant time period, non-employee witnesses, union, co-worker witnesses, management (corporate and Greeley) and/or Rule 30(b)(6) witnesses. Plaintiffs may depose the witnesses defendant identifies as its Phase I witnesses and any combination of up to 20 non-expert witnesses, including, non-aggrieved Somali, Muslim, or black employees who worked at the Greeley plant during the relevant time period, non-employee witnesses, union, co-worker witnesses, management (corporate and Greeley), and/or Rule 30(b)(6) witnesses. Additional depositions may be taken upon leave of Court upon a showing of good cause. Any party may seek leave of Court to depose the affiants of statements submitted in support of or opposition to a dispositive motion. The scope of deposition questioning may include questions related to plaintiffs' claims of harassment/hostile work environment or individual plaintiffs' alleged damages. The assigned magistrate judge may

set an appropriate schedule for Phase I depositions and the schedule and parameters of Phase I expert discovery.

*Id.* at 17.

Subsequently, the Court entered a Scheduling Order governing Phase I. *See generally Phase I Scheduling Order* [#128]. The Court has not entered a scheduling order governing Phase II. In the Scheduling Order, the Court modified the language proposed by the parties regarding identification of fact witnesses relating to Phase I. *Id.* at § 8(d)(2). Specifically, the Court wrote:

> [Plaintiff] will identify aggrieved employees for Phase I only by November 15, 2011. [Defendant] will identify Phase I witnesses by December 15, 2011. Either party may amend [its] list up to 60 days thereafter. Subsequent amendments may be made only on a showing of good cause, which shall not include lack of diligence.

*Id.* The Scheduling Order also provided that the parties' disclosure requirements under Fed. R. Civ. P. 26(a)(1) were not changed. *Id.* at § 6(d). The Scheduling Order stated that the parties' initial Rule 26(a)(1) "disclosures were exchanged on November 15, 2010 by email[,]" and set October 20, 2011 as the deadline for supplemental initial Rule 26(a)(1) disclosures. *Id.* at § 6(c). The Scheduling Order also separately addressed expert witness disclosures. *Id.* at § 9(d).

In the Motion, Plaintiff moves to strike Defendant's designation of 103 witnesses.[2]

---

[2] As an initial matter, the Court notes that the three documents containing the designations Plaintiff seeks to strike purport to be designations pursuant to Fed. R. Civ. P. 26(a)(1). *See Defendant's Eighteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)* [#259-1]; *Defendant's Nineteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)* [#259-2]; *Defendant's Twentieth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)* [#259-3]. However, the parties both refer to these designations as covered by the deadlines set in § 8(d)(2) of the Scheduling Order. *See Motion* [#259] at 2; *Response* [#269] at 1. Section 6(c) of the Scheduling Order governs Rule 26(a)(1) disclosures and § 6(d) states that the Scheduling Order does not modify the parties' disclosure obligations pursuant to Rule 26(a)(1). Accordingly, the Court treats the disclosures at issue as identification of witnesses pursuant to § 8(d)(2) of the

4

*Motion* [#259] at 1.  Plaintiff argues that these witnesses, who were disclosed on February 22, 2013 [#259-1], March 6, 2013 [#259-2], and March 29, 2013 [#259-3], were improperly disclosed because they were disclosed after the deadline set in § 8(d)(2) of the Scheduling Order.  *Id.* at 5-6.  Plaintiff further argues that the 103 newly disclosed witnesses are not rebuttal nor impeachment witnesses.  *Id.* at 6-9.  Plaintiff maintains that the Scheduling Order does not allow for the designation of Phase I rebuttal or impeachment witnesses.  *Id.* at 9-11.  In addition, Plaintiff avers that Defendant has not established good cause for identifying these witnesses after the Scheduling Order deadline.  *Id.* at 11-13.  Finally, Plaintiff argues that Defendant's disclosures of the 103 witnesses were inadequate.  *Id.* at 13-15.

In its Response, Defendant argues that the witness disclosure deadlines set in § 8(d)(2) of the Scheduling Order did not require the parties to "identify **all trial** witnesses." *Response* [#269] at 4 (emphasis in original).  Defendant maintains that "[t]he intent of Section 8(d)(2) was merely to formalize the identification of Phase I witnesses in order to implement the Bifurcation Order's deposition parameters."  *Id.* at 5.  Defendant further argues that to require it to disclose all trial witnesses by the deadline set in § 8(d)(2) of the Scheduling Order would foreclose Defendant from identifying rebuttal and impeachment witnesses.  *Id.* at 6.  Defendant also offers argument based on the parties' various disclosures throughout discovery.  *Id.* at 8-10.  In addition, Defendant contends that its disclosure of the additional 103 witnesses complies with Rule 26 because the witnesses

---

Scheduling Order and only refers to Rule 26 as needed to offer analogous support regarding disclosures generally.  To the extent Defendant's documents disclosing the contested witnesses refer to Rule 26(a)(1), the Court disregards those references for purposes of this Order.

are offered for rebuttal and/or impeachment purposes. *Id.* at 10-13. Defendant further maintains that disclosure of the 103 additional witnesses was consistent with Rule 26(e)'s requirements that Rule 26(a) disclosures be supplemented in a "timely manner." *Id.* at 13-14.[3] Finally, Defendant argues that the information included in its disclosure of the 103 additional witnesses is adequate and that there is no prejudice to Plaintiff. *Id.* at 14-15.

In its Reply, Plaintiff revisits its argument that the 103 witnesses are neither rebuttal nor impeachment witnesses. *Reply* [#272] at 2-6. Plaintiff further argues that it will be prejudiced by Defendant's late identification of the 103 witnesses. *Id.* at 1, 9-10. Further, Plaintiff maintains that Defendant cannot rely on Rule 26(e) to excuse a violation of a deadline set in § 8(d)(2) of the Scheduling Order. *Id.* at 6-7.

In the briefing regarding the instant Motion, it is clear that the parties have two main disputes. First, whether the fact witness deadlines set in § 8(d)(2) apply to all fact witnesses or allow Defendant to designate 103 additional witnesses whom Defendant classifies as rebuttal or impeachment witnesses. Second, whether the 103 additional witnesses are, in fact, rebuttal or impeachment witnesses.

## II. Analysis

As an initial matter, numerous courts have noted, and the undersigned agrees, that a "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Washington v. Arapahoe Cnty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441 (D. Colo. 2000) (citations omitted). Here, the Scheduling Order set

---

[3] As noted above, the parties treat the challenged disclosures as subject to § 8(d)(2) of the Scheduling Order. Accordingly, the Court does not address Defendant's argument that its supplemental disclosures were proper pursuant to Fed. R. Civ. P. 26(e).

6

deadlines for Plaintiff to disclose the aggrieved employees and for Defendant to identify "Phase I witnesses." *Scheduling Order* [#128] at § 8(d)(2). Defendant is correct that "[t]he intent of Section 8(d)(2) was . . . to formalize the identification of Phase I witnesses in order to implement the Bifurcation Order's deposition parameters." *Response* [#269] at 5. However, Defendant is incorrect that the deadlines set in § 8(d)(2) somehow do not include all of Defendant's fact witnesses pertaining to Phase I. Further, the Scheduling Order provided a mechanism for the parties to modify their witness lists up to 60 days after Defendant's initial identification of its Phase I witnesses and stated that any subsequent amendments of witness lists required a showing of good cause, specifically noting that good cause does not include a lack of diligence. *Scheduling Order* [#128] at § 8(d)(2). Fed. R. Civ. P. 16(b) states that scheduling order deadlines "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b).

> Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Colo. Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000) (internal quotation and citation omitted); accord *Summers*, 132 F.3d at 604 (holding that "total inflexibility is undesirable" in the context of a motion to adopt a new scheduling order). In considering requests to modify the § 8(d)(2) deadlines or to designate witnesses after the deadlines for good cause shown, the Court would look to the standard applicable to motions filed under Rule 16.

Notably, Defendant did not seek (and does not seek now) permission to designate

7

the 103 witnesses beyond the Scheduling Order deadlines. Nor does Defendant seek to amend the § 8(d)(2) deadlines to allow disclosure of the 103 additional witnesses. However, the Court will briefly address the question of good cause in order to save the parties and the Court the expenditure of additional resources dealing with this question in subsequent motion practice. In its Response, Defendant notes that "48 our of 103 witnesses . . . are [Defendant's] management personnel, union officials, translators, or Tyson employees already well known to [Plaintiff]. The remaining witnesses consist largely of [Defendant's] supervisors who have been identified in [Plaintiff's] and Plaintiff-Intervenors' own discovery responses and witness disclosures." *Response* [#269] at 14. This admission makes clear that Defendant had knowledge of these 103 potential witnesses and did not include them in its identification of "Phase I witnesses," *Scheduling Order* [#128] at § 8(d)(2), despite that knowledge. While the issue is not before the Court at this time, the Court notes as guidance to the parties that this admission indicates to the Court a lack of diligence in trying to meet the § 8(d)(2) deadlines. However, if Defendant were able to successfully show that its need for rebuttal witnesses was based on deposition testimony of Plaintiff's witnesses who were deposed shortly before an attempt to supplement the witness list, *Response* [#269] at 13, that may constitute good cause to permit supplementation. However, Defendant would have to request permission to identify the witnesses and/or to extend the deadline through a written motion filed with the Court.

To the extent Defendant argues that to require it to disclose all Phase I trial witnesses by the deadlines set in § 8(d)(2) of the Scheduling Order would foreclose Defendant from identifying rebuttal and impeachment witnesses, *Response* [#269] at 6, Defendant is incorrect. As noted above, the Scheduling Order allowed the parties to

supplement their § 8(d)(2) witness lists up to 60 days after Defendant served its initial list and also allowed the parties to further amend their lists on a showing of good cause. Thus, to the extent Defendant wanted to identify rebuttal or impeachment witnesses in response to Plaintiff's list of "aggrieved employees," it had the option to do so for good cause over an extended period of time.

This leads to the second dispute between the parties with regard to the 103 additional witnesses—whether they are rebuttal or impeachment witnesses. It is not possible for the Court to determine if any of the 103 witnesses would testify solely as to rebuttal or impeachment evidence because the disclosures made by Defendant are vague. The vast majority of the witnesses are identified as having "knowledge or information which rebuts and/or impeaches testimony given by Plaintiff's Phase I witnesses" with regard to certain topics. *See, e.g., Defendant's Eighteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)* [#259-1] at 3. Some of the witness identifications provide a bit more detail, but even those still do not provide much clarification. *See, e.g., id.* at 4 (designation of Abel Barajas stating that he has "knowledge or information which rebuts and/or impeaches testimony given by Plaintiff's Phase I witnesses concerning his interaction with employees, supervisory practices, events of September 2008, and accommodation of Muslim employees' prayer practices."). In addition, certain witness designations add clauses identifying the Phase I witnesses whose testimony will be rebutted. *See, e.g., id.* at 4 (designation of Jorge Alvarado). The key point here is that of the 103 newly-designated witnesses, 102 designations state that the person's offered

testimony is rebuttal and/or impeachment testimony.[4]   Rebuttal testimony and impeachment testimony are two different things.

A rebuttal witness is a witness who will testify regarding issues that have been identified in the case. *See Searles v. Van Bebber*, 251 F.3d 869, 877 (10th Cir. 2001) (agreeing with district court's finding that a witness offering testimony that "went to an issue which had been identified in the pretrial order" was a rebuttal witness, not an impeachment witness); *see also United States v. Harris*, 557 F.3d 938, 942 (8th Cir. 2009) ("rebuttal testimony is offered to explain, repel, counteract, or disprove evidence of the adverse party.") (internal quotation omitted); *United States v. Finis P. Ernest, Inc.*, 509 F.2d 1256, 1263 (7th Cir. 1975), *cert. denied*, 423 U.S. 893 (1975) ("the function of rebuttal is to explain, repel, counteract or disprove the evidence of the adverse party."). Here, as noted above, Defendant had an opportunity to amend its witness list and then to supplement that list on a showing of good cause. Accordingly, all rebuttal witnesses should have been identified in accordance with § 8(d)(2) of the Scheduling Order.

A witness offered for purposes of impeachment only is offered to show the "bias or interest of a witness, his or her capacity to observe an event in issue, or a prior statement of the witness inconsistent with his or her current testimony." *Berry v. Oswalt*, 143 F.3d 1127, 1130 (8th Cir. 1998); *Finis P. Ernest, Inc.*, 509 F.2d at 1263 ("Impeachment is an attack upon the credibility of a witness. A witness' testimony may be contradicted without being impeached."). Put more succinctly, impeachment evidence "calls into question the

---

[4] The one exception is Defendant's designation of Abdeliah Karim which simply states that she has knowledge of certain topics and appears to offer her as an affirmative fact witness. *See Defendant's Eighteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)* [#259-1] at 11.

witness's veracity." *Harris*, 557 F.3d at 942. Here, Defendant's designations do not make clear if any of the witnesses are offered solely for impeachment purposes. Further, the designations do not offer clarity regarding the topics about which each person would allegedly provide impeachment testimony. More importantly, Defendant had an opportunity to amend its witness list to include impeachment witnesses and/or to supplement that list on a showing of good cause. Accordingly, all impeachment witnesses should have been identified in accordance with § 8(d)(2) of the Scheduling Order. If the timing of depositions precluded supplementation regarding impeachment witnesses until a later date, Defendant could have sought to add the witnesses on a showing of good cause.

Here, 102 of the 103 witnesses disclosed are either late-disclosed rebuttal witnesses, or impeachment witnesses, or both. The remaining witness appears to be a late-disclosed affirmative fact witness. Further, the designations do not offer any indication that a single witness will testify solely to rebuttal or impeachment information. Accordingly, the Court finds that the 103 witnesses shall be stricken because they were not disclosed within the deadlines set in § 8(d)(2) of the Scheduling Order, and because Defendant has not sought permission to amend the deadlines or supplement its witness list on a showing of good cause.[5]

### III. Conclusion

IT IS HEREBY **ORDERED** that the Motion [#259] is **GRANTED** to the extent that Defendant was attempting to designate the 103 witnesses under § 8(d)(2) of the Scheduling

---

[5] As noted above, the question of whether Defendant's designations should be considered Rule 26 disclosures and, therefore, whether they were proper under Rule 26(e) is not before the Court and, therefore, not addressed herein.

Order. Accordingly,

IT IS FURTHER **ORDERED** that the 103 new witnesses listed in Defendant's Eighteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) [#259-1], Defendant's Nineteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) [#259-2], and Defendant's Twentieth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) [#259-3] are **STRICKEN** from Defendant's § 8(d)(2) witness list.

Dated: March 25, 2014

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge