IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

and

IRAQ ABADE, *et al.*,

      Plaintiffs-Intervenors,

v.

JBS USA, LLC d/b/a JBS SWIFT & COMPANY,

      Defendant.

---

## DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S ORDER

---

      Defendant JBS USA, LLC ("JBS"), through its attorneys, pursuant to Fed.R.Civ.P.

("Rule") 72(a),[1] respectfully objects to Magistrate Judge Mix's Order (#329) that struck 103 JBS

witnesses.  JBS disclosed these witnesses over a year ago, roughly in the middle of the two years

of discovery in this case, in response to deposition testimony.  The Order struck them because

JBS disclosed them pursuant to Rule 26(e) without seeking permission from the Court.

Magistrate Judge Mix held that § 8(d)(2) of the Scheduling Order  (#128, p. 20) imposed a

requirement to seek leave from the Court, on a showing of good cause, to disclose any witness

after the pre-discovery deadline for disclosing witnesses, effectively eliminating Rule 26(e).

---

[1] This Objection is timely filed (#334).

Although the Order struck these witnesses, it suggested JBS can file a motion seeking to amend the § 8(d)(2) deadline, so that these witnesses can be listed, and JBS will file such a motion. (#329, p.8)("However, if Defendant were able to successfully show that its need for rebuttal witnesses was based on deposition testimony of Plaintiff's witnesses who were deposed shortly before an attempt to supplement the witness list, Response [#269] at 13, that may constitute good cause to permit supplementation. However, Defendant would have to request permission to identify the witnesses and/or extend the deadline through a written motion filed with the Court.").

This Court should sustain JBS's Objection for five reasons. First, at the outset, the Order incorrectly assumed that JBS conceded § 8(d)(2) of the Scheduling Order applied, and so Magistrate Judge Mix did not consider JBS's arguments the supplemental disclosures were permitted by Rule 26(e). Second, this Order was the first time Magistrate Judge Mix interpreted § 8(d)(2) to require the parties to seek leave to supplement witnesses during the deposition phase of the case as well as during pre-discovery, effectively eliminating Rule 26(e). The Order does not take into account how this notice, over two years after the deadline passed, surprised and prejudiced JBS. Third, Magistrate Judge Mix's conclusion that § 8(d)(2) applied is inconsistent with the unique features of this case, and with the fact the EEOC served supplemental witness disclosures before JBS did without complying with § 8(d)(2). Fourth, JBS has an adequate explanation for why these witnesses were not disclosed by the pre-discovery deadline. All the witnesses were reasonably identified in response to deposition testimony – and there have been over 100 depositions in the case – establishing "good cause" if that requirement even applied (and JBS contends it does not). Fifth, if JBS had conceded that § 8(d)(2) applied (which it did

not), Magistrate Judge Mix should have applied the analysis established by the Tenth Circuit applicable to this situation, but she did not.  If Magistrate Judge Mix had correctly applied that analysis, she would not have stricken the witnesses.  The Tenth Circuit has twice ruled that errors applying that analysis require reversal using the same standard of review that this Court applies to objections.

As further explanation, JBS states as follows:

## FACTS

1.      This case is unique in many ways, including § 8(d)(2) of the Scheduling Order, which is the provision at the heart of this dispute.  A detailed explanation of these features and how they impact this dispute is set forth in the attached Declaration of Heather Vickles, attached as Exhibit 1.  In summary, (1) the pattern or practice allegations leading to the Bifurcation Order for two trials; (2) the sheer volume of potential witnesses; (3) the difficulty precisely identifying witnesses given a multi-lingual factory workforce that used common names; (4) the approximately 4 year time lag between the main event in dispute and the depositions[2]; while other relevant events continued to occur up to and after the filing of the Complaint and up through the deposition phase, (5) the paucity of documents with accurate full names of witnesses, all contributed to difficulty identifying all the witnesses by the pre-discovery deadline who would later turn out to have responsive information based on the deposition testimony.  Ex. 1 at ¶¶ 4-10.

---

[2] The critical events were in early September, 2008, but the case was not filed until nearly two years later (#1).  The Bifurcation Order, establishing the rough parameters for Phase I discovery, was about a year later (#116).  The over 100 depositions began in earnest in mid-August, 2012 and continued until March, 2014.  Ex. 1 at ¶ 3; 15, Ex. D to Ex. 1.

EMPLOY/1111758.1

2.      As described more fully in the Declaration, the background for § 8(d)(2) was this Court's Bifurcation Order (#116, p. 17), which stated: "During Phase I discovery, defendant may depose aggrieved employees that plaintiffs identify as those upon whom they will rely to prove their bifurcated pattern or practice claims." JBS therefore requested a Scheduling Order provision requiring the EEOC to identify at the outset which of the hundreds of potential claimants it may call as witnesses in the Phase I trial, so that subsequent discovery could focus on their allegations as that would be developed through the depositions. Ex. 1 at ¶¶ 11-12.

3.      This is what led Magistrate Judge Mix, at the Scheduling Conference, to hand write a staggered schedule for pre-discovery identification of witnesses for *both* sides. After setting these deadlines, she added: "Subsequent amendments may be made only on a showing of good cause, which shall not include lack of diligence." (#128, p. 20 section 8.d.). Ex. 1 at ¶ 13.

4.      In context, then, JBS reasonably understood this process to apply only to the pre-discovery disclosures. There was nothing said at the Scheduling Conference to indicate that this process was designed for anything other than to facilitate pre-discovery witness identification. Nothing was said that this eliminated the use of Rule 26(e) supplementation to disclose witnesses based on information from the depositions that would take place later in the case. Although viewed in isolation the language might support a finding that this limitation extended during the entirety of the case, in light of the context and the totality of the circumstances, JBS reasonably did not believe that was so. Ex. 1 at ¶¶ 13-14, Ex. C to Ex. 1.

5.      Although the § 8(d)(2) witness disclosure deadlines began in November, 2011 and continued until February 2012, depositions did not begin in earnest until mid-August 2012.[3]

---

[3]After a few depositions during February-March, 2012, the parties engaged in mediation.

Depositions took place on a regular basis through March, 2013, and then sporadically through March, 2014. Ex. 1 at ¶ 15, Ex. D to Ex. 1.

6.     In the midst of the depositions, the EEOC served supplemental witness disclosures without seeking leave from the Court under § 8(d)(2), and the Plaintiff-Intervenors served disclosures identifying nearly 400 witnesses. Ex. 1 at ¶ 16, n. 2; Ex. E and K to Ex. 1.

7.     JBS has an adequate explanation why it did not disclose these witnesses by the pre-discovery deadline. Ex. 1 at ¶¶ 21-29. During the depositions leading up to JBS's supplemental disclosures, JBS learned new information from the EEOC's witnesses (and a few JBS witnesses who testified adversely to JBS), including new and inconsistent versions of events, requiring follow-up investigation and identification of responsive witnesses. As described with particularity in the chart attached as Exhibit B to Exhibit 1, these witnesses were identified because of one or more specific reasons, including (1) depositions provided new information about alleged conduct by people beyond that in previously available documents that assisted in identifying witnesses; (2) depositions provided information about new subjects not previously investigated, such as Muslim prayer accommodations at other companies, or events occurring after the filing of the Complaint; (3) depositions revealed new and/or  inconsistent versions of critical events in the case during Ramadan 2008, (4) depositions revealed disputes about, or new information regarding, prior statements given in the case, or (5) depositions revealed new allegations of workplace behavior that varied from previously available documents or concerned events after the filing of the Complaint that were not previously investigated. Ex. 1 at ¶¶ 24-29, Ex. B to Ex. 1.

8.      JBS disclosed most of these new witnesses in February, 2013, and the rest in

March, 2013.  Ex. 1 at ¶¶ 18-20, Ex. F, G, and H to Ex. 1.  JBS asked the EEOC if it wished to

depose any of them, and the EEOC chose not to do so.  Ex. 1 at ¶ 30, Ex. O to Ex. 1

9.      Magistrate Judge Mix properly extended the discovery deadlines for a variety of

reasons.  Depositions continued for a year, until March, 2014, after JBS disclosed these

witnesses.  Ex. 1 at ¶ 15, Ex. D to Ex. 1.  The EEOC could have sought to depose them if it

wanted to do so.

10.     The EEOC will not be surprised or prejudiced by permitting JBS to identify these

new witnesses, because they are responding to deposition testimony, most of which was by the

EEOC's witnesses.  Ex. 1 at ¶¶ 21-29, Ex. B to Ex. 1.  The fact that there is no surprise or

prejudice is reinforced by the fact that the EEOC had the opportunity to, but declined to, depose

any of them, and the EEOC did not file its motion until August, 2013.

11.     Permitting JBS to identify these witnesses would not disrupt the orderly and

efficient trial of the case.  There is no trial date set for Phase I of this case.  The pre-trial

conference is not until December, 2014 (#337).

12.      There is no bad faith or willfulness by JBS in not identifying these witnesses

earlier.  The need for their testimony was not known until the details of specific deposition

testimony and testimony trends became apparent, which is detailed in the attached Declaration

(Ex. 1) with accompanying chart (Ex. B to Ex. 1).  There is no bad faith or willfulness by JBS in

not complying with § 8(d)(2), as JBS did not believe it applied in this context. Ex. 1 at ¶¶ 11-14.

## ARGUMENT

The standard of review for the Magistrate's Order is well established. The Court must determine whether it is "clearly erroneous or contrary to law." Rule 72(a), 28 U.S.C. § 636 (b)(1)(A). The Court should determine, "on the entire evidence, whether there is a definite and firm conviction that a mistake has been committed." *Osei v. Brooks*, 2013 U.S. Dist. LEXIS 38540, *45-46 (D.Colo. Mar. 19, 2013)(Brimmer, J.).

The Order has a number of errors that, individually and collectively, justify sustaining JBS's objection pursuant to this standard of review.

First, the Order misapprehended JBS's position at the outset, which determined the outcome. The Order stated JBS *conceded* § 8(d)(2) of the Scheduling Order applied to this dispute, and therefore *refused to consider* JBS's argument that Rule 26(e) permitted the disclosures. *See* Order at pp. 4-6, notes 2 and 3: "As an initial matter, the Court notes that the three [JBS disclosures] purport to be designations pursuant to [Rule] 26(a)(1). *See* [listing the three disclosures]. However, the *parties both refer* to these designations as covered by the deadlines set in § 8(d)(2) of the Scheduling Order….Accordingly, the Court treats the disclosures at issue as identification of witnesses pursuant to § 8(d)(2) of the Scheduling Order…." (emphasis added); "As noted above, *the parties treat* the challenged disclosures as subject to § 8(d)(2) of the Scheduling Order. Accordingly, the Court *does not address* Defendant's argument that its supplemental disclosures were proper pursuant to [Rule] 26(e)." (emphasis added).

The Order cites as support for this finding: "Response [#269] at 1." Order at 4, n. 4. But page one of JBS's Response *did not* concede § 8(d)(2) applied. Instead, page one referred to the *EEOC's position* on this issue, stating "*The EEOC* argues that Section 8(d)(2) of the Court's

Scheduling Order [Doc. #128] supplanted the witness disclosure rules set forth in [Rule] 26(a) and (e) by requiring the parties to identify **all** of their trial witnesses **at the outset of discovery**." (*italics* emphasis added, bold emphasis in original).

Due to this error, the Court did not consider JBS's position on the key issue before it. This alone justifies sustaining JBS's Objection. *Cf. General Steel Domestic Sales, LLC v. Chumley*, 2014 WL 788015, *1 (D. Colo. Feb. 27, 2014)(Brimmer, J.)(in the context of a motion to amend judgment, noting relief is appropriate, *inter alia*, "where the court has obviously misapprehended a party's position on the facts or the law," and reciting in the same context the "clear error" standard applied to objections in *Osei v. Brooks, supra*); *see also Lewis v. JP Morgan Chase Bank*, 2013 WL 5730576, *2 (D.Colo. Oct. 22, 2013)(Mix, M.J.)(noting a motion to reconsider would be appropriate if the court has misapprehended a party's position).

This leads to the second problem. Because Judge Mix mistakenly believed that JBS conceded § 8(d)(2) applied, she did not take into account the fact that her Order was the first time she informed JBS that § 8(d(2)'s requirement to seek leave applied during the deposition phase of the case, eliminating Rule 26(e). Thus, the Order does not take into account how this notice, two years after the deadline passed, surprised and prejudiced JBS. *See* Rule 60(b)(1)(surprise is grounds for relief from judgment or order).

Third, Magistrate Judge Mix's interpretation is inconsistent with the unique features of this case, and the fact the EEOC itself served supplemental witness disclosures without complying with §8 (d)(2). As discussed in summary above and in more detail in the attached Declaration, this case presented unique difficulties in predicting, before any depositions took place, witnesses who could respond to details or trends from deposition testimony that would

8

take place long after the pre-discovery deadlines passed.  This should have resulted in understanding and support for JBS's position, but Magistrate Judge Mix's Order does not consider this.

Magistrate Judge Mix also did not attach any significance to the fact that the EEOC[4] provided supplemental disclosures just before JBS did, without complying with § 8(d)(2).  This Court applies a "'sauce rule:' what is sauce for the goose is sauce for the gander."  *Potter ex rel. Potter v. Bowman*, 2006 WL 3760267, *4, n.2 (D. Colo. Dec. 18, 2006)(Blackburn, J.). *See also SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201, 1227 (10th Cir. 2009)(applying same rule).  In typical civil cases, opposing parties identify witnesses to respond to the details of the deposition testimony – one of the purposes of depositions is to find out the information the other side will use in order to prepare a response.  Refusing to find "good cause" in these circumstance would in essence be permitting the EEOC to use this technique but not JBS, which not only violates the "sauce rule" but is fundamentally unfair.

Fourth, even if § 8(d)(2) of the Scheduling Order applied (and it should not), creating a "good cause" requirement, JBS should be permitted to list its supplemental witnesses.  As the summary chart Exhibit B attached to Exhibit 1 shows, these witnesses were identified in response to deposition testimony that took place long after the pre-discovery witness disclosure deadline.  "Good cause" "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an *adequate explanation* for any

---

[4] Also, in between the EEOC's supplemental disclosures and JBS's supplemental disclosures, the Plaintiff-intervenors, who were permitted to attend the depositions, identified nearly *400* witnesses, *excluding* rebuttal and impeachment.  If the EEOC and the intervenors were permitted to identify additional witnesses during the depositions, JBS should have been permitted to do so as well. Exhibit K to Exhibit 1.

9

delay." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1205 n. 4 (10th Cir. 2006)(emphasis

added). This Court has held deposition testimony occurring after the deadline is "good cause."

*Lewis v. Denver Fire Dept.*, 2010 WL 3873974, *7 (D. Colo. Sept. 28, 2010)(Brimmer, J.).

Fifth – even if JBS had conceded (and it did not) that § 8(d)(2) of the Scheduling Order

eliminated Rule 26(e) and applies even to witnesses identified in response to deposition

testimony – the Order failed to apply the controlling Tenth Circuit authority applicable to that

situation. That law requires resolving this issue in favor of JBS.

The Tenth Circuit addressed this issue in the context of a decision to exclude a witness

not listed in the pretrial order (which would be much more significant than the situation here, as

here discovery was ongoing and there was no pretrial order at the time of the disclosures). *Burks

v. Okla. Pub. Co.*, 81 F.3d 975, 978-979 (10th Cir.), *cert. denied*, 519 U.S. 931 (1996). In that

situation, there are four factors to consider: "(1) the prejudice or surprise in fact of the party

against whom the excluded witnesses would have testified; (2) the ability of that party to cure the

prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would

disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or

willfulness in failing to comply with the court's order." *Id.*

Since *Burks*, the Tenth Circuit has twice applied this same test in the context of whether

to permit a party to add an expert witness not timely identified. In both cases, the Tenth Circuit

reversed an abuse of discretion district court orders that excluded the evidence, because there

was no immediately upcoming trial date. *Rimbert v. Eli Lilly*, 647 F.3d 1247 (10th Cir. 2011);

*Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997).

EMPLOY/1111758.1

Most recently, in *Rimbert,* the Tenth Circuit reversed a district court order granting summary judgment, and in doing so reversed a ruling denying the plaintiff's motion to amend the scheduling order to add a new expert witness, and remanded the case.  The Court reiterated prior rulings that "inflexibility concerning a scheduling order is undesirable," and an order that results in the exclusion of evidence is a "drastic sanction."  647 F.3d at 1254 (*quoting Summers*).  The "single most important fact" was that there was no impending trial date.  *Id.*  This meant that not only did the third factor weigh in favor of permitting the amendment, but also the first and second factors, because there was prejudice to the other party from permitting the amendment for the new expert.  *Id.* at 1255.  The district court had relied on the additional discovery expenses associated with defending against the new expert as establishing prejudice to the other party, but the Tenth Circuit ruled that reliance was "misplaced," because that is not the type of "prejudice" considered under this factor.  *Id.*  Instead, the relevant prejudice is the inability of the opposing party to fully litigate the case and defend against the new testimony.  *Id.*  Moreover, if any claimed prejudice such as extra expense is caused by the opposing party's own conduct, any claim of unfairness "rings hollow."  *Id.*  As for the fourth factor, the court noted that there was no basis to find bad faith, as the movant had promptly requested relief.  *Id.* at 1255-1256.  The court also noted that it would have been difficult for the party to anticipate earlier the problems that required the new expert. *Id.* at 1256.  Thus, while district courts have discretion in this area, the Tenth Circuit was left with a "definite and firm conviction" that denying the request for a new expert was an abuse of discretion, requiring reversal.  *Id.*  This last expression is the same language this Court has used in expressing the standard of review for an objection under

Rule 72(a).  *Osei v. Brooks*, 2013 U.S. Dist. LEXIS 38540, *45-46 (D.Colo. Mar. 19,

2013)(Brimmer, J.).

In the *Summers* case, the Tenth Circuit also reversed a district court order denying a

motion to grant a continuance to allow a plaintiff to name a new expert.  132 F.3d 599, 604-605

(10th Cir. 1997).  There, the first two factors weighed in favor of permitting amendment because

the plaintiff's need for the expert was caused by the defendant's litigation strategy, the defendant

had its own expert, and there was no prejudice because the defendant could depose the new

expert.  The third factor weighed in favor of amendment because there were still 80 days to trial

and the party had moved promptly for relief.  The fourth factor weighed in favor of amendment

as well, as there was no indication of bad faith by the movant, and in fact the non-movant had

been partially responsible for the situation.

This Court has adopted a lenient approach in disputes such as this, regularly permitting

new witnesses to be designated after deadlines when it would not interfere with an impending

trial date.  *Twitchell v. Hutton,* 2012 WL 2360546 (D.Colo. 2012)(trial date was about six

months away); *Fuchs v. Sanders*, 2008 WL 4372414 (D. Colo. 2008)(permitting new expert

witness, even though there was no excuse for the plaintiff's failure to disclose the witness earlier,

as there were two months left on the discovery schedule, the defendant would not be prejudiced

because it could depose the expert and secure rebuttal experts, there was no trial date, and there

was no basis to find bad faith or willfulness).

Magistrate Judge Mix did not engage in any analysis of the *Burks/Summers* factors (she

did cite *Summers* for the proposition that "total inflexibility is undesirable" in the context of

amending deadlines in the Scheduling Order). (# 329 at p. 7).

12

Application of the *Burks/Summers* factors to this case should have resulted in JBS being permitted to identify the supplemental witnesses.  First, there is no surprise or prejudice to the EEOC if JBS is permitted to list these witnesses, because they are responding to prior deposition testimony, primarily from the EEOC's designated claimants (and a few JBS witnesses who became adverse).  *Rimbert,* 647 F.3d at 1254.  Second, the EEOC had the ability to cure any surprise by seeking to depose these new witnesses, which JBS offered, but the EEOC chose not to, and so any claim of prejudice "rings hollow."  *Id*.  This is particularly true here, as the EEOC did not file its motion until mid-August, even though the bulk of the witnesses were disclosed in February, with the rest in March.  Third, permitting JBS to identify new witnesses would have no impact on the trial, as no trial date has been set, and this is "the single most important fact."  *Id*. Finally, there is no basis to find bad faith or willfulness by JBS.  JBS was responding to deposition testimony, the EEOC (and Plaintiff Intervenors) previously served supplemental disclosures without seeking leave of Court, and the Order was the first time the Court informed JBS that § 8(d)(2) of the Scheduling Order applied in this context.  *Id.*

The Tenth Circuit rule is that errors applying the *Burks/Summers* test satisfy the same high standard of review that applies to objections.  *Rimbert, supra; Summers, supra*.  Therefore, failing to apply it at all must require reversal as well.  This Court should apply these factors, sustain JBS's Objection and permit JBS to use the witnesses it disclosed.

## CONCLUSION

For the reasons set forth above, individually and/or collectively, JBS respectfully requests that the Court sustain JBS's objection to Magistrate Judge Mix's Order, and permit JBS to use the witnesses identified in its supplemental disclosures.

DATED this 25th day of April, 2014.

Respectfully submitted,


*s/ Heather F. Vickles*

W.V. Bernie Siebert
Raymond M. Deeny
Heather Fox Vickles
Andrew W. Volin
SHERMAN & HOWARD L.L.C.
633 17th Street, Suite 3000
Denver, CO  80202
303-297-2900 / Fax:  303-298-0940
Email:  BSiebert@shermanhoward.com
Email:  RDeeny@shermanhoward.com
Email:  HVickles@shermanhoward.com
Email:  AVolin@shermanhoward.com

Attorneys for Defendant JBS USA, LLC

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 25th day of April, 2014, I electronically filed the foregoing **DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S ORDER** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Rita Byrnes Kittle | rita.kittle@eeoc.gov |
| Stephanie Struble | stephanie.struble@eeoc.gov |
| Andrew Winston | andrew.winston@eeoc.gov |
| William Moench | william.moench@eeoc.gov |
| Iris Halpern | iris.halpern@eeoc.gov |

*s/ Clarine R. Kuntz*

EMPLOY/1111758.1