IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

and

IRAQ ABADE, et al.,

      Plaintiffs-Intervenors,

v.

JBS USA, LLC, d/b/a JBS Swift & Company,

      Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Plaintiff EEOC's Motion to Strike Defendant's Improperly Disclosed and Unidentified Witnesses** [#322][1] (the "Motion").  The Motion is referred to the undersigned for disposition [#323]. Defendant filed a Response to the Motion [#327] and  Plaintiff Equal Employment Opportunity Commission ("Plaintiff" or the "EEOC") filed a Reply [#328].  The Motion is now fully briefed and ripe for resolution.  The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below,

_____

    [1]  "[#322]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Order.

the Motion [#322] is **GRANTED in part** and **DENIED in part**.

## I.  Background

### A.    Procedural Background

Defendant owns and operates a meat packing plant in Greeley, Colorado at which a large number of Somali, Muslim, and black persons work.  The EEOC filed this suit alleging that Defendant discriminated against these workers based on their national origin, religion, and ethnicity.  The EEOC brings several pattern or practice claims alleging discriminatory harassment, disparate treatment, denial of religious accommodation, retaliation, and discipline and discharge.  The EEOC also brings individual claims on behalf of charging parties for failure to accommodate religion, retaliation for requesting accommodation, hostile work environment, and discriminatory discipline and discharge. The EEOC's claims are based on Sections 706 and 707 of Title VII of the Civil Rights Act of 1964, as amended (the "Act").  Section 706 of the Act permits the EEOC to sue an employer on behalf of persons aggrieved by the employer's alleged unlawful practice. Section 707 of the Act permits the EEOC to sue employers whom it has reasonable cause to believe are engaged in a pattern or practice of unlawful employment discrimination.  42 U.S.C. § 2000e-5(f)(1); 2000e-6; *see also Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 324 (1980).

The EEOC's pattern or practice religious accommodation claim alleges that Defendant violated workers' rights to religious accommodation in four ways since at least December 22, 2007: (1) in 2008, it denied Muslim workers the ability to pray at or near sundown during the holy month of Ramadan; (2) in 2008, it did not allow Muslim workers

to break their fast after sundown during Ramadan; (3) it denied Muslim workers bathroom breaks and the ability to pray during those bathroom breaks; and (4) it did not provide Muslim workers a space in which to pray, forcing them to pray on bathroom floors. *Compl.* [#1] at ¶¶ 15-18, 23, 30-39; 44-54.  The EEOC also alleges that during Ramadan of 2008, Muslim employees requested that their evening break be moved from 9:15 p.m. to 7:30 p.m. so that they could pray and break their fast within fifteen minutes of sunset. *Id.* at ¶ 29.  As alleged, for two days Defendant accommodated this request, but on the third day, a Friday, the break was moved to 8:00 p.m. *Id.* at ¶¶ 30-31.  On Friday, management stationed employees at the doors to prevent Muslim workers from leaving the facility at 7:30 p.m. and shut off water fountains or tagged them with red tags and yellow tape, preventing the workers from drinking water at the end of their daily fast or washing up for their prayers. *Id.* at ¶ 32.  At 8:00 p.m., management told Muslim employees to leave the facility, but when the employees attempted to re-enter after their breaks, management told them they could not return to work. *Id.* at ¶¶ 37-39.  Plaintiff avers that the following Monday Defendant advised the employees' union that those workers who left the plant had engaged in an unauthorized work stoppage and would be placed on an indefinite suspension. *Id.* at ¶ 40.  It is further alleged that on Tuesday, Defendant decided to allow these workers to return to work with a final written warning, provided they returned that day. *Id.* at ¶ 41.  However, Plaintiff claims that Defendant did not contact each worker to tell him or her about this decision and, therefore, several Muslim employees were terminated for not returning to work on Tuesday. *Id.* at ¶ 42.

The EEOC's pattern or practice hostile work environment claim alleges a variety of forms of harassment against Defendant's Muslim, Somali, and/or black employees. These

employees were allegedly subjected to harassing comments on the basis of their race, national origin, and/or religion. *Id.* at ¶ 19.  Other employees allegedly threw blood, meat, and bones at these employees and called them offensive names.  *Id.* at ¶ 20.  Plaintiff further alleges that Defendant's Muslim employees were harassed when they attempted to pray during scheduled breaks and were discriminatorily denied bathroom breaks.  *Id.* at ¶¶ 20-23.  The bathrooms at Defendant's facility also allegedly bore anti-Muslim, anti-Somali, and anti-black graffiti.  *Id.* at ¶ 21.  In its briefing on its Motion for Bifurcation [#28], the EEOC stated that its theory of Defendant's liability for this harassment is one of employer negligence.  *Reply in Support of Motion for Bifurcation* [#62] at 8.  The EEOC also alleges a retaliation pattern or practice claim, asserting that Muslim workers were retaliated against for requesting religious accommodations.  *Compl.* at ¶¶ 55-59.  It further alleges a discriminatory discipline and discharge claim, alleging that Muslim, Somali, and/or black workers were disciplined or fired because of their religion, national origin, and/or race.[2]  *Id.* at ¶¶ 44-49.

The Intervenors in this lawsuit, who number in excess of two hundred, are former or current workers at Defendant's Greeley plant.  They assert multiple claims against Defendant, including claims based on a pattern or practice of discriminatory treatment because of race, national origin, religion, and/or retaliation, pursuant to 42 U.S.C. § 2000e-2(a).  *See Compl. in Intervention and Jury Demand* [#40] at ¶¶ 61-66; *Am. Compl. in*

---

[2]  The EEOC also appears to bring a disparate treatment pattern or practice claim separate from the foregoing pattern or practice claims. *See Compl.* [#1] ¶ 46.  However, the EEOC fails to allege a separate cause of action for disparate treatment; instead, briefly mentioning "disparate treatment" as a part of the pattern or practice of discriminatory treatment alleged in the first claim for relief.  *Id.*

*Intervention and Jury Demand* [#61] at ¶¶ 156-61; *Compl. in Intervention and Jury Demand* [#132] at ¶¶ 34-39; *Am. Compl. in Intervention and Jury Demand* [#137] at ¶¶ 52-57; *Compl. In Intervention and Jury Demand* [#236] at ¶¶ 51-56.

On August 8, 2011, the District Judge granted in part the EEOC's Motion to Bifurcate the trial, and ordered that the trial will be conducted in two phases. *Order on Motion to Bifurcate* [#116] at 18. During Phase I of the trial, the EEOC will present its claim that Defendant engaged in a pattern or practice of denial of religious accommodation, retaliation, and discipline and discharge. *Id.* During Phase II, the EEOC may present its pattern or practice claim for hostile work environment, pursue individual damages for its pattern or practice claim presented in Phase I, and pursue individual claims for compensatory and punitive damages. *Id.* The individual Intervenors' claims not covered by the EEOC's claims will also be evaluated in Phase II. *Id.* The District Judge further granted the EEOC's request to bifurcate discovery. *Id.* at 17-18.

Subsequently, the Court entered a Scheduling Order governing Phase I. *See generally Phase I Scheduling Order* [#128] (the "Scheduling Order"). The Court has not entered a scheduling order governing Phase II. In the Scheduling Order, the Court modified the language proposed by the parties regarding identification of fact witnesses relating to Phase I. *Id.* at § 8(d)(2). Specifically, the Court wrote:

> [Plaintiff] will identify aggrieved employees for Phase I only by November 15, 2011. [Defendant] will identify Phase I witnesses by December 15, 2011. Either party may amend [its] list up to 60 days thereafter. Subsequent amendments may be made only on a showing of good cause, which shall not include lack of diligence.

*Id.* The Scheduling Order also provided that the parties' disclosure requirements under Fed. R. Civ. P. 26(a)(1) were not changed. *Id.* at § 6(d). The Scheduling Order stated that

the parties' initial Rule 26(a)(1) "disclosures were exchanged on November 15, 2010 by email," and set October 20, 2011 as the deadline for supplemental initial Rule 26(a)(1) disclosures. *Id.* at § 6(c). The Scheduling Order also separately addressed expert witness disclosures. *Id.* at § 9(d). Notably, discovery closed on December 11, 2013[3]; the dispositive motions deadline was March 31, 2014; and a Final Pretrial Conference regarding Phase I is scheduled on December 11, 2014 at 10:00 a.m.

In addition, on March 25, 2014, the Court entered an Order [#329] regarding Plaintiff's Motion to Strike Witnesses [#259] in which the Court was asked to address the witness list disclosure deadlines set in the Scheduling Order. In that Order, the Court noted:

> To the extent Defendant argues that to require it to disclose all Phase I trial witnesses by the deadlines set in § 8(d)(2) of the Scheduling Order would foreclose Defendant from identifying rebuttal and impeachment witnesses, *Response* [#269] at 6, Defendant is incorrect. As noted above, the Scheduling Order allowed the parties to supplement their § 8(d)(2) witness lists up to 60 days after Defendant served its initial list and also allowed the parties to further amend their lists on a showing of good cause. Thus, to the extent Defendant wanted to identify rebuttal or impeachment witnesses in response to Plaintiff's list of "aggrieved employees," it had the option to do so for good cause over an extended period of time.

*Order* [#329] at 8-9. In response, Defendant filed its Motion to Amend Scheduling Order to Permit Listing of Additional Witnesses Previously Disclosed [#341], which is pending before the Court.

### B.    The Motion

In its Motion, Plaintiff asks the Court to strike two of the entries on Defendant's

---

[3]  The Court allowed the parties to take the depositions of specific experts outside of this deadline.

February 13, 2012 Amended List of Phase I Witnesses (the "Amended Witness List") pursuant to Fed. R. Civ. P. 37(c)(1), due to Defendant's alleged failure to comply with Rule 26's disclosure requirements with regard to those two entries.   *Motion* [#322] at 1-3. Specifically, Plaintiff argues that Defendant's disclosure of "Greeley Police Department Officer responding to plant on 9/5/08, 2875 10th Street, Greeley, CO 80634, 970-350-9600" (the "Officer Disclosure") and Defendant's disclosure of "Bill Rupp, Dave Colwell, or other corporate witness familiar with beef operations, 1770 Promontory Circle, Greeley, CO 80634, 970-506-8000" (the "Corporate Disclosure") were insufficient.   *Id.* at 3, 6-8.  Plaintiff argues that the Officer Disclosure was generic, vague, and evasive and "prevented [Plaintiff] from being able to decide who to depose or interview prior to the close of discovery on August 15, 2013."   *Id.* at 6-7.   Plaintiff maintains that, while Defendant provided further discovery relating to the individuals present at the factory on September 5, 2008, the Officer Disclosure "named sixty-one individuals who are either Greeley Police Officers or Weld County Sheriff Deputies" who responded on two different dates.   *Id.* at 7. Therefore, Plaintiff argues that the supplemental disclosure "further obscured the identities" of the potential witnesses.   Similarly, Plaintiff argues that the Corporate Disclosure is generic and "thwarted [Plaintiff's] ability to prepare to examine the[ ] unnamed witnesses at trial."   *Id.*   In support of its position, Plaintiff argues that the factors described in *Woodworkers's Supply, Inc. v. Principal Mut. Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999), support granting the Motion.   *Id.* at 8-9.   Specifically, Plaintiff maintains that it will be prejudiced, such prejudice cannot be cured without re-opening discovery, inclusion of testimony by the unknown witnesses will disrupt trial, and Defendant knowingly and willfully violated Rule 26.   *Id.*

7

In its Response, Defendant argues that its disclosures "fully complied with the letter and spirit of Fed. R. Civ. P. 26(a)(1), as well as the Scheduling Order governing this case." *Response* [#327] at 1.   Defendant further argues that the Motion is untimely and that, as a result, Plaintiff has waived its right to argue for sanctions pursuant to rule 37.  *Id.* at 3-5. Defendant maintains that the Officer Disclosure was sufficient pursuant to Rule 26 and that it produced documents in discovery that included the dates, names, and badge numbers of all police officers who responded to the factory on September 5, 2008.   *Id.* at 5. Defendant also avers that its Amended Witness List [#322-1] referenced the responding officers.  *Id.* at 6.  Defendant further argues that "[e]ven if [Defendant's] disclosures could be considered inadequate, [Plaintiff] cannot demonstrate surprise or prejudice warranting the sanction of striking the witnesses."  *Id.* (citing *Woodworker's Supply*, 170 F.3d at 993). Defendant maintains that Plaintiff cannot claim "surprise regarding who '[Defendant] actually intends to call as trial witnesses'" because the Scheduling Order's requirement that it provide a list of witnesses "was not . . . a requirement that the parties provide a final trial witness list at the very beginning of discovery."  *Id.* at 7-8 (quoting *Motion* [#322] at 7).   It further argues that "[t]he intent of Section 8(d)(2) of the Scheduling Order was merely to formalize the identification of Phase I witnesses in order to implement the Bifurcation Order's deposition parameters."  *Id.* at 8.

With regard to the Corporate Disclosure, Defendant argues that it provided two individuals by name and that such disclosure was sufficient for purposes of Rule 26 and the requirements of the Scheduling Order.  *Id.* at 9.  Defendant also argues that Plaintiff cannot claim surprise or prejudice regarding Mr. Colwell because "he was listed on [Plaintiff's] own initial Rule 26 disclosures."   *Id.* at 10. (emphasis omitted).   Finally,

Defendant "acknowledges that [Plaintiff's] counsel inquired in a December 21, 2012, email about" the witness Defendant intends to call in relation to the Corporate Disclosure. *Id.* Defendant maintains that the email "came right before the holidays and covered a number of other discovery matters as well," and that, as a result, "a response concerning the 'number 61' witness fell through the cracks." *Id.* Finally, Defendant states that, with regard to the Corporate Disclosure, Defendant "has no intention of listing any previously unidentified individual as a trial witness concerning its operations." *Id.* at 11.

In its Reply, Plaintiff argues that the Motion was timely under the circumstances. *Reply* [#328] at 2. Plaintiff maintains that Rule 37 provides for a self-executing sanction that does not require an opposing party to file a motion and that there is, therefore, no time limit for the filing of a motion, like the instant Motion, that seeks the sanction of exclusion. *Id.* at 2-3. Plaintiff also revisits its argument that the disclosures do not comply with Rule 26 because Defendant "did not name the individuals upon whom it intends to rely at trial." *Id.* at 5. Plaintiff maintains that Defendant's supplemental disclosure broadened the Officer Disclosure from only members of the Greeley Police Department to both police officers and employees of the Weld County Sheriff's Office. *Id.* Plaintiff also argues that the Officer Disclosure is vague in the subject matter identified. *Id.* at 6-7. As a result, it maintains that Plaintiff has been prevented from being able to determine who to depose or interview prior to the close of discovery. *Id.* at 7. With regard to the Officer Disclosure, Plaintiff avers that it will be prejudiced and/or surprised if the witnesses are not stricken because Defendant "merely named every responding officer without identifying which officer or officers [Defendant] may actually use to support its defenses." *Id.* at 9 (emphasis omitted). With regard to the Corporate Disclosure, Plaintiff argues that the identification of other corporate

employees without any specificity "did not provide [Plaintiff] with enough specificity to enable it to make intelligent decisions regarding how to efficiently use its limited discovery tools permitted under the Scheduling Order." *Id.*  Finally, Plaintiff maintains that whether or not an individual is listed in its own disclosures, "[e]ach party is [ ] obligated to identify persons who they may use to support their claims or defenses." *Id.* at 10.

## II.  Analysis

### A.   The Distinction Between Scheduling Order § 8(d)(2) Disclosures and Rule 26(a)(1) Disclosures

The Scheduling Order required the parties to identify aggrieved employees and Defendant's Phase I witnesses by specified deadlines and allowed the parties to supplement those lists. *Sched. Order* [#128] § 8(d)(2).  Specifically, the Scheduling Order states:

> [Plaintiff] will identify aggrieved employees for Phase I only by November 15, 2011. [Defendant] will identify Phase I witnesses by December 15, 2011. Either party may amend [its] list up to 60 days thereafter.  Subsequent amendments may be made only on a showing of good cause, which shall not include lack of diligence.

*Id.*  The Scheduling Order also provided that the parties' disclosure requirements under Fed. R. Civ. P. 26(a)(1) were not changed. *Id.* at § 6(d).  The Scheduling Order stated that the parties' initial Rule 26(a)(1) "disclosures were exchanged on November 15, 2010 by email[,]" and set October 20, 2011 as the deadline for supplemental initial Rule 26(a)(1) disclosures. *Id.* at § 6(c).  Therefore, among other things, the parties had two different initial disclosure obligations: (1) the exchange of Plaintiff's list of aggrieved employees and Defendant's Phase I witnesses and (2) the parties' Rule 26(a)(1) initial disclosures.

The Court notes that the Corporate Disclosure was made in Defendant's Amended

Witness List, produced on February 13, 2012, which states that it was disclosed as required by the Scheduling Order and does not reference Rule 26. *Motion, Ex. 1* [#322-1] at 2. Similarly, the Officer Disclosure was initially made in the Amended Witness List and Defendant provided more specific information in its February 7, 2012 Second Supplemental Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1), which makes clear that it was produced pursuant to Fed. R. Civ. P. 26(a)(1).[4] *Motion, Ex. 1* [#322-1] at 4; *Motion, Ex. 3* [#322-3] at 2. This distinction is important. The Court's March 25, 2014 Order [#329] specifically noted that it did not address the Rule 26 standard with regard to the witness designations challenged in Plaintiff's Motion to Strike Witnesses [#259] because "the parties both refer[red] to the[ ] designations as covered by the deadlines set in § 8(d)(2) of the Scheduling Order" and, as a result, the Court treated "the disclosures at issue as identification of witnesses pursuant to § 8(d)(2) of the Scheduling Order and only refer[red] to Rule 26 as needed to offer analogous support regarding disclosures generally." *Order* [#329] 4 n.2.

In contrast, the instant Motion purports to challenge the Officer Disclosure and the Corporate Disclosure pursuant to Rule 26 and, with regard to this Motion, the parties both offer only argument regarding Rule 26's disclosure requirements. It is unclear to the Court

---

[4] Defendant attaches to its Response Defendant's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) [#327-1], in which Defendant included the following disclosure:

> Greeley Police Department Officers responding to plant on 9/5/08, 2875 10th Street, Greeley CO 80634, 970-350-9600. Responding officers have knowledge and information regarding the events of Ramadan 2008 to which they were dispatched and responded, and other subjects relevant to the claims and defenses asserted in this litigation.

*Response, Ex. 1* [#327-1] at 3. Plaintiff does not challenge this Rule 26 disclosure. Instead, Plaintiff moves to strike designations on Defendant's Amended Witness List pursuant to Rule 37.

why the parties believe the designations addressed in the March 25, 2013 Order [#329] were produced pursuant to § 8(d)(2) of the Scheduling Order, but that both the Officer Disclosure and the Corporate Disclosure were produced pursuant to Rule 26.  First, the Defendant's Amended Witness List states that it was produced pursuant to the Scheduling Order.  *Motion, Ex. 1* [#322-1] at 2.  Second, the disclosures addressed in the Court's March 25, 2014 Order appear to be supplements to initial Rule 26 disclosures just like Defendant's February 7, 2012 Second Supplemental Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1), *Motion, Ex. 3* [#322-3] at 2, which contains the language that is attacked in the instant Motion.  It is difficult for the Court to treat the parties' disclosures consistently when the parties themselves treat certain disclosures as being produced pursuant to Rule 26 and others as being produced pursuant to § 8(d)(2) of the Scheduling Order without regard to the rule or document cited in the disclosures themselves.

The instant Motion asks the Court to strike the Officer Disclosure and the Corporate Disclosure that were made in a document that purports to have been produced under § 8(d)(2) of the Scheduling Order.  In this Order, regardless of the basis of the parties' arguments in the Motion, Response, and Reply, the Court treats the challenged disclosures as made as indicated in the documents themselves.  Accordingly, the Court will consider the Amended Witness List [#322-1] as being produced pursuant to § 8(d)(2) of the Scheduling Order and Defendant's Second Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) [#322-3] as being made pursuant to Rule 26(a)(1).

**B.      Section 8(d)(2) of the Scheduling Order**

Section 8(d)(2) of the Scheduling Order required Defendant to identify Phase I witnesses.  *Sched. Order* [#128] § 8(d)(2).  The Scheduling Order did not set specific

12

requirements for witness identification, but did provide a quotation from the Court's Order

on Motion to Bifurcate [#116] to explain the need for identification of the witnesses:

> Plaintiff may depose the witnesses [D]efendant identifies as its Phase I witnesses and any combination of up to 20 non-expert witnesses, including, non-aggrieved Somali, Muslim, or black employees who worked at the Greeley plant during the relevant time period, non-employee witnesses, union, co-worker witnesses, management (corporate and Greeley), and/or Rule 30(b)(6) witnesses.  Additional depositions may be taken upon leave of Court upon a showing of good cause.  Any party may seek leave of Court to depose the affiants of statements submitted in support of or opposition to a dispositive motion.  The scope of deposition questioning may include questioning related to [P]laintiffs' claims of harassment/hostile work environment or individual [P]laintiffs' alleged damages.

*Sched. Order* [#128] § 8(a) (quoting *Order on Motion to Bifurcate* [#116] at 17).  Therefore,

the Court will consider the adequacy of the initial Officer Disclosure and the Corporate

Disclosure in the context of the purpose of requiring the disclosure—specifically, allowing

Plaintiff to depose the named individuals who Defendant intends to call as witnesses.

The Corporate Disclosure states: "Bill Rupp, Dave Colwell, or other corporate

witness familiar with beef operations, 1770 Promontory Circle, Greeley, CO 80634, 970-

506-8000." *Motion, Ex. 1* [#322-1] at 7.  This disclosure provides enough information for

Plaintiff to have been able to depose Bill Rupp and Dave Colwell.  While it also indicates

that Defendant may want to call a different corporate witness, it does not provide enough

information to allow Plaintiff to depose any other corporate witnesses.  However, Defendant

states in its Response that it "has no intention of listing any previously unidentified

individual as a trial witness concerning its operations."   *Response* [#327] at 11.

Accordingly, to the extent the Corporate Disclosure includes a reference to "other corporate

witness[es]," Plaintiff was not prejudiced because it had the opportunity to depose the two

named individuals.

The Officer Disclosure states: "Greeley Police Department Officers responding to plant on 9/5/08, 2875 10th Street, Greeley, CO 80634, 970-350-9600." *Motion, Ex. 1* [#322-1] at 4.  This disclosure does not provide Plaintiff with enough information to determine who specifically it should depose.  The parties offer arguments regarding additional information produced by Defendant that, Defendant maintains, clarifies which of the individuals may be called as witnesses.  However, the rule under which Plaintiff seeks to strike this designation, Fed. R. Civ. P. 37(c), may only be invoked for a party's failure "to provide information or identify a witness as required by Rule 26(a) or (e) . . . ."  Fed. R. Civ. P. 37(c)(1).  Accordingly, the Officer Disclosure that was made pursuant to § 8(d)(2) of the Scheduling Order, cannot serve as a basis for a Rule 37(c) sanction.  Nevertheless, the Court has inherent power to enter sanctions for violations of Court orders. *Jones v. Metro. Life Ins. Co.*, 2010 WL 4055928, at *6 (N.D. Cal. Oct. 15, 2010) ("[B]ased on its inherent powers, a court may strike material from the docket, including portions of a document reflecting procedural impropriety or lack of compliance with court rules or orders."); *cf. Chambers v. Nasco, Inc.*, 501 U.S. 32, 44-45 (1991) (noting that "[a] primary aspect of [a court's] discretion [under its inherent powers] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process" and finding that since outright dismissal of a lawsuit is within the court's discretion, a less severe sanction is also within a court's inherent power).  Defendant was ordered to list its Phase I witnesses in § 8(d)(2) of the Scheduling Order; an identification which does not contain a *witness name* is insufficient especially in light of the purpose of the Phase I witness list.  Accordingly, the Officer Disclosure is stricken.  The Court therefore does not address the parties' additional arguments regarding the Officer Disclosure.

14

### III.  Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#322] is **GRANTED in part** and **DENIED in part**.  The Officer Disclosure is **STRICKEN**.

Dated:  September 9, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

15