IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

IRAQ ABADE, et al.,

    Plaintiffs-Intervenors,

v.

JBS USA, LLC, d/b/a JBS Swift & Company,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on **Plaintiffs-Intervenors' Motion to Quash Subpoena Duces Tecum Directed to Non-Party Cargill, Inc. Pursuant to Fed. R. Civ. P. 45 and for an Amended Protective Order Pursuant to Fed. R. Civ. P. 26(c)** [#276][1] (the "Motion"). On October 10, 2013, Defendant filed a Response [#281]. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to this Court for disposition [#260]. The Court has reviewed the Motion, the Response, the exhibits, the entire case file, and the applicable law, and is fully advised in the premises.

---

[1] "[#276]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

For the reasons set forth below, the Motion [#259] is **GRANTED in part** and **DENIED in part**.

## I.  Background

Defendant owns and operates a meat packing plant in Greeley, Colorado at which a large number of Somali, Muslim, and black persons work.  The EEOC filed this suit alleging that Defendant discriminated against these workers based on their national origin, religion, and ethnicity.  The EEOC brings several pattern or practice claims alleging discriminatory harassment, disparate treatment, denial of religious accommodation, retaliation, and discipline and discharge.  The EEOC also brings individual claims on behalf of charging parties for failure to accommodate religion, retaliation for requesting accommodation, hostile work environment, and discriminatory discipline and discharge.  The EEOC's claims are based on Sections 706 and 707 of Title VII of the Civil Rights Act of 1964, as amended (the "Act").  Section 706 of the Act permits the EEOC to sue an employer on behalf of persons aggrieved by the employer's alleged unlawful practice.  Section 707 of the Act permits the EEOC to sue employers whom it has reasonable cause to believe are engaged in a pattern or practice of unlawful employment discrimination.  42 U.S.C. §§ 2000e-5(f)(1), 2000e-6; *see also Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 324 (1980).

The Intervenors in this lawsuit, who number in excess of two hundred, are former or current workers at Defendant's Greeley plant.  They assert multiple claims against Defendant, including claims based on a pattern or practice of discriminatory treatment because of race, national origin, religion, and/or retaliation, pursuant to 42 U.S.C. § 2000e-

2(a). *See First Am. Compl. in Intervention and Jury Demand* [#286] at ¶¶ 61-71, 77-92 (the "Abdulle Intervenors' Compl."); *Am. Compl. in Intervention and Jury Demand* [#61] at ¶¶ 156-61 (the "Abade Intervenors' Compl."); *Compl. in Intervention and Jury Demand* [#132] at ¶¶ 34-39 (the "Abdi Intervenors' Compl."); *Am. Compl. in Intervention and Jury Demand* [#137] at ¶¶ 52-57 (the "Adan Intervenors' Compl."); *Compl. In Intervention and Jury Demand* [#236] at ¶¶ 51-56 (the "Abdille Intervenors' Compl.").

On August 8, 2011, the Court granted in part the EEOC's Motion to Bifurcate the trial, and ordered that the trial will be conducted in two phases. *Order* [#116] at 18. During Phase I of the trial, the EEOC will present its claim that Defendant engaged in a pattern or practice of denial of religious accommodation, retaliation, and discipline and discharge. *Id*. During Phase II, the EEOC may present its pattern or practice claim for hostile work environment, pursue individual damages for its pattern or practice claim presented in Phase I, and pursue individual claims for compensatory and punitive damages. *Id*. The individual Intervenors' claims not covered by the EEOC's claims will also be evaluated in Phase II. *Id.* The Court also granted the EEOC's request to bifurcate discovery. *Id.* at 17-18.

In the Motion, Intervenors seek to quash a subpoena duces tecum issued by Defendant to Cargill, Inc.[2] Cargill runs a meat packing plant in northern Colorado in which some of the Intervenors have worked or currently work. The subpoena seeks fifteen Intervenors' "complete personnel file[s], including but not limited to, applications for employment; attendance records; performance evaluations; documents concerning

---

[2] In the title of their pleading, Intervenors also request entry of an "amended protective order pursuant to Fed. R. Civ. P. 26(e)." However, because they do not further specify the requested amendment, the Court declines to address this portion of the Motion.

performance issues; promotions, demotions, transfers and/or terminations; and any records regarding workplace injuries or claims for workers [sic] compensation." *Motion, Exh. 1* [#276-1] at 2, 5. Pursuant to the parties' efforts to confer prior to the filing of the Motion, Defendant voluntarily agreed not to seek attendance records and earnings information from former employers. *Motion* [#276] at 3. Intervenors who were employed at Cargill after termination of their employment with Defendant agreed that Cargill may provide dates of employment and earnings information for them. The sole Intervenor who is a current Cargill employee will voluntarily provide dates of employment and damages information. *Id.* No other agreements limiting the scope of the subpoena have been reached.

## I. Analysis

**A.   Standing**

Defendant asserts that Intervenors lack standing to seek to quash the subpoena. *Response* [#281] at 4-5. In this district, a party has no standing to seek to quash a subpoena served on a third party, except as to claims of privilege or on a showing that a privacy issue is implicated. *I'mnaedaft, Ltd. v. The Intelligent Office Sys.,* No. 08-cv-01804-LTB-KLM, 2009 WL 1537975, at *4 (D. Colo. May 29, 2009); *Mona Vie, Inc. v. Amway Corp.*, No. 08-cv-02464-WDM-KLM, 2009 WL 524938, at *2  (D. Colo. Mar. 2, 2009); *Windsor v. Martindale*,  175 F.R.D. 665, 668 (D. Colo. 1997); *Broadcort Capital Corp. v. Flagler*, 149 F.R.D. 626, 628 (D. Colo. 1993). However, many courts have recognized that a party's personal right to information in his or her employment file is sufficient to confer standing to address a subpoena seeking production of the file from a non-party. *See, e.g., Stewart v. Mitchell Transp.,* No. 01-2546-JWL, 2002 WL 1558210, at *2 (D. Kan. Jul. 11, 2002); *Richards v. Convergys Corp.,*  No. 2:05-cv-00790-DAK, 2007 WL 474012, at *1 (D.

Utah Feb. 7, 2007); *Guitron v. Wells Fargo Bank, N.A.*, No. C 10-3461 CW (MEJ), 2011 WL 4345191, at *2 (N.D. Cal. Sept. 13, 2011); *EEOC v. 704 HTL Operating, LLC,* No. 11-845 BB/LFG, 2012 WL 1216142 (D.N.M. Apr. 3, 2012). The Court agrees with the reasoning of the courts that have found that a party has a personal right in his employment records sufficient to confer standing to address a subpoena seeking those records. Moreover, although Intervenors are not technically "parties" to this action, Defendant offers no principled basis for reaching a different result due to Intervenors' lack of status as parties. The Court has already noted that "Title VII grants the person or persons aggrieved by charged discrimination an unconditional right to intervene in a suit brought by the EEOC." *Order on Motions to Dismiss* [#99] at 15 (internal quotations and citations omitted). Denying standing to challenge discovery to which a party could object would unduly limit the "unconditional" right to intervene under Title VII. Because Intervenors claim to be aggrieved by the charged discrimination, properly intervened in this action under Fed. R. Civ. P. 24, and have a personal right in their employment records, the Court finds that they have standing to challenge the subpoena at issue.

**B.     Relevance**

Intervenors assert that Defendant has the burden of showing the relevance of the records sought in the subpoena, and the Court agrees. *Motion* [#276] at 6; *Carbajal v. St. Anthony Central Hosp.,* No. 12-cv-02257-REB-KLM, 2014 WL 3746967, at *2 (D. Colo. July 30, 2014) ("[W]hen relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request."). The relevance of Intervenors' Cargill employment records to their claims of discrimination by Defendant is not readily apparent. Thus, the Court examines whether Defendant has carried its burden of showing that the

employment records are relevant to its defenses, or its higher burden of showing that the records are relevant to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.").

Defendant's overarching reason as to why Intervenors' Cargill employment records are relevant is not independently persuasive. Defendant asserts that because "Intervenors [have] repeatedly praised Cargill's accommodations and expressed their desire for [Defendant] to replicate these accommodations at [its] beef plant . . . the records may show Intervenors' actual experiences with the touted Cargill accommodations and are clearly relevant to JBS's position that proposed similar accommodations are unreasonable and more than a *de minimis* burden [on Defendant]." *Response* [#281] at 2. Although the "touted Cargill accommodations" may indeed be relevant, it is not clear how Intervenors' *employment files* would show that Cargill's religious accommodations would not be reasonable at the JBS plant and/or would be unduly burdensome to JBS. On closer examination, however, the Court concludes that Defendant has carried its burden of showing that documents which may shed light on "Intervenors' actual experiences with the touted Cargill accommodations" are relevant to Defendant's defenses. Because Defendant has established the relevance of most categories of documents sought in the subpoena, they should be produced. The Court discusses each category of documents requested below.

### 1. Requests for and Complaints About Religious Accommodations

Defendant professes to have agreed to narrow its subpoena to, in part, "requests for religious accommodations and complaints" about religious accommodations. *Id.* at 7

n.6.  Whether agreed upon or not, these documents are relevant to several theories underlying Defendant's defenses, including that Intervenors' beliefs are flexible, Intervenors' beliefs do not conflict with work on a meat production assembly line, Intervenors do not have *bona fide* religious beliefs, Intervenors' requests for accommodations are not reasonable, and/or Intervenors' requests for accommodations would create an undue burden on Defendant.  *Id.* at 8-15.

### 2. Workplace Injury Records

Records relating to workplace injuries suffered by the fifteen Intervenors employed at Cargill "may show that a workplace injury at Cargill was related to a decreased number of employees on the line (as other employees spelled off to pray)," thus demonstrating undue burden in providing accommodations.  *Id.* at 15.

### 3. Attendance Records

Intervenors assert that on or about August 8, 2013, Defendant agreed "not to seek attendance records and earnings information from former employers."  *Motion* [#276] at 3.  However, Defendant's Response, filed October 10, 2013, makes no reference to such an agreement and argues that Cargill's attendance records and earnings information are relevant.  *Response* [#281] at 15-16.  Accordingly, the Court examines the relevance of the attendance and earnings records.

The EEOC has retained an expert witness to conduct an analysis of whether Somali Muslim employees were disciplined by Defendant more frequently than other employees.  According to his report, the expert has concluded that being a Somali Muslim is a "significant factor in the number of disciplinary actions [Defendant] takes against an individual."  *Id.,* Exh. C-1 [#281-22] at 7.  Defendant seeks attendance records from Cargill

to show that those employees who were terminated for poor attendance at JBS had similar problems at Cargill, and hence termination of their employment at JBS due to poor attendance was not a pretext for racial or religious discrimination. *Id.* at 16. Defendant further argues that attendance records "might show that Cargill's accommodations caused more absences (as the repetitiveness of the work was higher or the actual length between breaks was more.)" *Id.* The Court finds that these explanations for the relevance of attendance records are plausible, and that the records should therefore be produced.

### 4.   **Employment Applications**

Defendant argues that Intervenors' Cargill employment applications are relevant for several reasons. First, the applications may show requests for a certain shift or a certain area within the plant or a need for a religious accommodation, and Defendant asserts such information is relevant "to JBS's defense that any similar accommodation at JBS would be unreasonable." Second, Defendant contends that the applications are relevant to its after-acquired evidence defense, because Intervenors admitted during their depositions that their JBS employment applications contain incorrect or incomplete information, despite the fact that the application forms state that providing "false information or the omission of information on this application . . . constitutes grounds for termination of employment." *Id.* at 18-19. Finally, Defendant argues that if Intervenors made similar errors on their applications for employment at both JBS and Cargill, "the likelihood of intentional deception increases," and Intervenors' credibility is a viable issue.

Intervenors contend that mistakes on their employment applications were due to language difficulties, errors made by others who helped to fill out applications, or a lack of understanding of the applications. To refute the plausibility of the after-acquired evidence

argument, they cite to the deposition testimony of Defendant's Human Resources manager that she knew of only one employee who had been fired for an application issue in her 25 years with the company. *Motion* [#276] at 19-20.

The fact that Intervenors may be able to satisfactorily explain any mistakes on their employment applications does not render those applications irrelevant. The mere fact that mistakes exist is relevant to Intervenors' credibility. The credibility of individuals who claim employment-related violations of legal rights is at issue in virtually every such case, and this case is no exception. *See, generally, Martensen v. Koch*, ___ F.R.D. ___, 2014 WL 3733768, at *10 (D. Colo. July 29, 2014) (allowing deposition questions relating to party's credibility in case involving employment relationship); *Perkins v. Federal Fruit & Produce, Inc.*, 945 F.Supp.2d 1225, 1276 (D. Colo. 2013) (granting new trial on retaliation claim due to "newly-discovered evidence" relating to employee's credibility). Moreover, repetitive "mistakes" or omissions on an employment application may demonstrate "wrongdoing of such severity that the employee would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Foreman v. Western Freightways, LLC*, 958 F.Supp.2d 1270, 1283 (D. Colo. 2013), citing *McKennon v. Nashville Banner Publ'g,* 513 U.S. 352, 362-63 (1995). Thus, Defendant has shown that the Cargill employment applications are relevant to Intervenors' credibility and to Defendant's after-acquired evidence defense. As such, they are discoverable.

### 5. Discipline and Discharge Documents

Defendant asserts that Intervenors' discipline and discharge documents from Cargill are relevant to show that their terminations from employment at JBS were not pretextual,

but instead the result of bona fide performance issues like poor attendance, misconduct, or poor work performance. *Id.* at 20-21. The Court is aware that an employee's prior work performance may have no bearing on how s/he performs in subsequent employment. However, it is also possible that an employee's work problems may be repetitive. For that reason, the Court finds that discovery of these records may lead to the discovery of admissible evidence, and they are therefore discoverable under Fed. R. Civ. Pro. 26(b)(1). *See Peters v. Baltimore City Bd. of Sch. Comm'r*, No. WMN-13-3114, 2014 WL 4187307, at *5 (D. Md. Aug. 21, 2014) (limiting subpoenas issued to plaintiff's former employers to specific categories of documents, including "performance reviews" and "records reflecting the reasons for and dates of separation of employment," because they were relevant to the employment discrimination lawsuit brought by plaintiff).

### 6. Dates of Employment

Defendant asserts that "shorter employment [of Intervenors with Cargill] might tend to show that the Cargill accommodations were not as utopian as Intervenors assert." *Id.* at 21. Again, because dates of employment will indicate which of the Intervenors were employed by Cargill for relatively short periods of time, and that information may lead to the discovery of admissible evidence, the Court finds that this information is discoverable. *See Peters*, 2014 WL 4187307, at *5.

### 7. Earnings Information Regarding Post-JBS Employment

Defendant asserts that certain Intervenors' earnings information is relevant to their claims for lost wages and emotional distress, as well as the defense of failure to mitigate damages. *Id.* at 22-23. The Court is not persuaded that past earnings information will

shed any light on Intervenors' claims for emotional distress. As to the failure to mitigate defense, the Intervenors who were employed at Cargill after JBS, and the one who is currently employed there, have agreed to provide earnings information. Any further earnings information is not relevant, and may not be provided.

### 8.     Employment File of Current Cargill Employee

Sadi Mohamed Adan is a current employee of Cargill, whose records Defendant seeks in the subpoena. He contends that disclosure of his employment records "may cause disruption in [his] employment relationship." He further contends that Defendant should be required to initially attempt to obtain the evidence directly from him "or through alternative means less likely to cause the plaintiff embarrassment." *Motion* [#276] at 23. Defendant, on the other hand, contends that "any alleged *potential* embarrassment cannot outweigh JBS's showing of relevance." *Response* [#281] at 25. The Court agrees with Defendant in these circumstances. Mr. Adan's conclusory statements that he may be embarrassed by disclosure of his personnel records are insufficient to overcome Defendant's showing of relevance. *Stewart v. Mitchell Transport*, 2002 WL 1558210 at *6 (D. Kan. July 11, 2002).

### III.  Conclusion

For the reasons set forth above, IT IS HEREBY **ORDERED** that the Motion [#276] is **GRANTED** to the extent that the subpoena seeks earnings information regarding each of the fifteen named Cargill employees who were not employed at Cargill after termination of their employment at JBS. Earnings information regarding the remainder of the named employees may be produced.

IT IS FURTHER **ORDERED** that Motion [#276] is **DENIED** to the extent that the subpoena seeks information regarding the fifteen named Cargill employees' requests for and complaints about religious accommodations, workplace injury records, attendance records, employment applications, discipline and discharge documents, and dates of employment.

IT IS FURTHER **ORDERED** that the Motion [#276] is **GRANTED** to the extent that "the complete personnel files" of the named fifteen Cargill employees contain any additional information other than that specified above.

Dated: September 29, 2014

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge