IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

  Plaintiff,

and

IRAQ ABADE, et al.,

  Plaintiffs-Intervenors,

v.

JBS USA, LLC, d/b/a JBS Swift & Company,

  Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

  This matter is before the Court on **Defendant's Motion to Amend Scheduling Order to Permit Listing of Additional Witnesses Previously Disclosed** [#341][1] (the "Motion").  Plaintiff filed a Response [#343] and Defendant filed a Reply [#347] in further support of the Motion.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to the undersigned for disposition [#342].  The Court has reviewed the Motion, the Response, the Reply, the exhibits, the entire case file, and the applicable law, and is fully advised in the premises.  For the reasons set forth below, the

_____

[1] "[#341]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Order.

Motion [#341] is **GRANTED**.

## I.  Background

Defendant owns and operates a meat packing plant in Greeley, Colorado at which a large number of Somali, Muslim, and black persons work.  The EEOC filed this suit alleging that Defendant discriminated against these workers based on their national origin, religion, and ethnicity.  The EEOC brings several pattern or practice claims alleging discriminatory harassment, disparate treatment, denial of religious accommodation, retaliation, and discipline and discharge.  The EEOC also brings individual claims on behalf of charging parties for failure to accommodate religion, retaliation for requesting accommodation, hostile work environment, and discriminatory discipline and discharge. The EEOC's claims are based on Sections 706 and 707 of Title VII of the Civil Rights Act of 1964, as amended (the "Act").  Section 706 of the Act permits the EEOC to sue an employer on behalf of persons aggrieved by the employer's alleged unlawful practice. Section 707 of the Act permits the EEOC to sue employers whom it has reasonable cause to believe are engaged in a pattern or practice of unlawful employment discrimination.  42 U.S.C. §§ 2000e-5(f)(1), 2000e-6; *see also Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 324 (1980).

The Intervenors in this lawsuit, who number in excess of two hundred, are former or current workers at Defendant's Greeley plant.  They assert multiple claims against Defendant, including claims based on a pattern or practice of discriminatory treatment because of race, national origin, religion, and/or retaliation, pursuant to 42 U.S.C. § 2000e-2(a). *See First Am. Compl. in Intervention and Jury Demand* [#286] at ¶¶ 61-71, 77-92 (the

"Abdulle Intervenors' Compl."); *Am. Compl. in Intervention and Jury Demand* [#61] at ¶¶ 156-61 (the "Abade Intervenors' Compl."); *Compl. in Intervention and Jury Demand* [#132] at ¶¶ 34-39 (the "Abdi Intervenors' Compl."); *Am. Compl. in Intervention and Jury Demand* [#137] at ¶¶ 52-57 (the "Adan Intervenors' Compl."); *Compl. In Intervention and Jury Demand* [#236] at ¶¶ 51-56 (the "Abdille Intervenors' Compl.").

On August 8, 2011, the Court granted in part the EEOC's Motion to Bifurcate the trial, and ordered that the trial will be conducted in two phases. *Order* [#116] at 18.  During Phase I of the trial, the EEOC will present its claim that Defendant engaged in a pattern or practice of denial of religious accommodation, retaliation, and discipline and discharge. *Id.* During Phase II, the EEOC may present its pattern or practice claim for hostile work environment, pursue individual damages for its pattern or practice claim presented in Phase I, and pursue individual claims for compensatory and punitive damages. *Id.*  The individual Intervenors' claims not covered by the EEOC's claims will also be evaluated in Phase II. *Id.*  The Court also granted the EEOC's request to bifurcate discovery. *Id.* at 17-18.  The Court determined that Phase I discovery should proceed as follows:

> During Phase I discovery, defendant may depose aggrieved employees that plaintiffs identify as those upon whom they will rely to prove their bifurcated pattern or practice claims.  Defendant may also depose 10 aggrieved employees selected by defendant and defendant may depose any combination of up to 10 of the following additional non-expert witnesses: non-aggrieved Somali, Muslim, or black employees who worked at the Greeley plant during the relevant time period, non-employee witnesses, union, co-worker witnesses, management (corporate and Greeley) and/or Rule 30(b)(6) witnesses.  Plaintiffs may depose the witnesses defendant identifies as its Phase I witnesses and any combination of up to 20 non-expert witnesses, including, non-aggrieved Somali, Muslim, or black employees who worked at the Greeley plant during the relevant time period, non-employee witnesses, union, co-worker witnesses, management (corporate and Greeley), and/or Rule 30(b)(6) witnesses.  Additional depositions may be taken upon leave of Court upon a showing of good cause.  Any party may seek leave of Court to

> depose the affiants of statements submitted in support of or opposition to a dispositive motion. The scope of deposition questioning may include questions related to plaintiffs' claims of harassment/hostile work environment or individual plaintiffs' alleged damages. The assigned magistrate judge may set an appropriate schedule for Phase I depositions and the schedule and parameters of Phase I expert discovery.

*Id.* at 17.

Subsequently, the Court entered a Scheduling Order governing Phase I. *See generally Phase I Scheduling Order* [#128]. The Court has not entered a scheduling order governing Phase II. In the Scheduling Order, the Court modified the language proposed by the parties regarding identification of fact witnesses relating to Phase I. *Id.* at § 8(d)(2). Specifically, the Court wrote:

> [Plaintiff] will identify aggrieved employees for Phase I only by November 15, 2011. [Defendant] will identify Phase I witnesses by December 15, 2011. Either party may amend [its] list up to 60 days thereafter. Subsequent amendments may be made only on a showing of good cause, which shall not include lack of diligence.

*Id.* The Scheduling Order also provided that the parties' disclosure requirements under Fed. R. Civ. P. 26(a)(1) were not changed. *Id.* at § 6(d). The Scheduling Order stated that the parties' initial Rule 26(a)(1) "disclosures were exchanged on November 15, 2010 by email[,]" and set October 20, 2011 as the deadline for supplemental initial Rule 26(a)(1) disclosures. *Id.* at § 6(c). The Scheduling Order also separately addressed expert witness disclosures. *Id.* at § 9(d).

On March 25, 2014, the Court granted Plaintiff's Motion to Strike Witnesses [#259], "to the extent that Defendant was attempting to designate the103 witnesses under § 8(d)(2) of the Scheduling Order." *Order* [#329] at 11-12. The Court struck "the 103 new witnesses listed in Defendant's Eighteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P.

26(a)(1) [#259-1], Defendant's Nineteenth Supplemental Disclosures Pursuant to Fed. R.

Civ. P. 26(a)(1) [#259-2], and Defendant's Twentieth Supplemental Disclosures Pursuant

to Fed. R. Civ. P. 26(a)(1) [#259-3] . . . from Defendant's § 8(d)(2) witness list." *Id.* at 12.

The Court explained its holding as follows:

> [T]he Scheduling Order set deadlines for Plaintiff to disclose the aggrieved employees and for Defendant to identify "Phase I witnesses." *Scheduling Order* [#128] at § 8(d)(2). Defendant is correct that "[t]he intent of Section 8(d)(2) was . . . to formalize the identification of Phase I witnesses in order to implement the Bifurcation Order's deposition parameters." *Response* [#269] at 5. However, Defendant is incorrect that the deadlines set in § 8(d)(2) somehow do not include all of Defendant's fact witnesses pertaining to Phase I. Further, the Scheduling Order provided a mechanism for the parties to modify their witness lists up to 60 days after Defendant's initial identification of its Phase I witnesses and stated that any subsequent amendments of witness lists required a showing of good cause, specifically noting that good cause does not include a lack of diligence. *Scheduling Order* [#128] at § 8(d)(2).
>
> . . .
>
> Notably, Defendant did not seek (and does not seek now) permission to designate the 103 witnesses beyond the Scheduling Order deadlines. Nor does Defendant seek to amend the § 8(d)(2) deadlines to allow disclosure of the 103 additional witnesses. However, the Court will briefly address the question of good cause in order to save the parties and the Court the expenditure of additional resources dealing with this question in subsequent motion practice. In its Response, Defendant notes that "48 of our 103 witnesses . . . are [Defendant's] management personnel, union officials, translators, or Tyson employees already well known to [Plaintiff]. The remaining witnesses consist largely of [Defendant's] supervisors who have been identified in [Plaintiff's] and Plaintiff-Intervenors' own discovery responses and witness disclosures." *Response* [#269] at 14. This admission makes clear that Defendant had knowledge of these 103 potential witnesses and did not include them in its identification of "Phase I witnesses," *Scheduling Order* [#128] at § 8(d)(2), despite that knowledge. While the issue is not before the Court at this time, the Court notes as guidance to the parties that this admission indicates to the Court a lack of diligence in trying to meet the § 8(d)(2) deadlines. However, if Defendant were able to successfully show that its need for rebuttal witnesses was based on deposition testimony of Plaintiff's witnesses who were deposed shortly before an attempt to supplement the witness list, *Response* [#269] at 13, that may

constitute good cause to permit supplementation. However, Defendant would have to request permission to identify the witnesses and/or to extend the deadline through a written motion filed with the Court.

To the extent Defendant argues that to require it to disclose all Phase I trial witnesses by the deadlines set in § 8(d)(2) of the Scheduling Order would foreclose Defendant from identifying rebuttal and impeachment witnesses, *Response* [#269] at 6, Defendant is incorrect. As noted above, the Scheduling Order allowed the parties to supplement their § 8(d)(2) witness lists up to 60 days after Defendant served its initial list and also allowed the parties to further amend their lists on a showing of good cause. Thus, to the extent Defendant wanted to identify rebuttal or impeachment witnesses in response to Plaintiff's list of "aggrieved employees," it had the option to do so for good cause over an extended period of time.

This leads to the second dispute between the parties with regard to the 103 additional witnesses—whether they are rebuttal or impeachment witnesses. It is not possible for the Court to determine if any of the 103 witnesses would testify solely as to rebuttal or impeachment evidence because the disclosures made by Defendant are vague. The vast majority of the witnesses are identified as having "knowledge or information which rebuts and/or impeaches testimony given by Plaintiff's Phase I witnesses" with regard to certain topics. *See, e.g., Defendant's Eighteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)* [#259-1] at 3. Some of the witness identifications provide a bit more detail, but even those still do not provide much clarification. *See, e.g., id.* at 4 (designation of Abel Barajas stating that he has "knowledge or information which rebuts and/or impeaches testimony given by Plaintiff's Phase I witnesses concerning his interaction with employees, supervisory practices, events of September 2008, and accommodation of Muslim employees' prayer practices."). In addition, certain witness designations add clauses identifying the Phase I witnesses whose testimony will be rebutted. *See, e.g., id.* at 4 (designation of Jorge Alvarado). The key point here is that of the 103 newly-designated witnesses, 102 designations state that the person's offered testimony is rebuttal and/or impeachment testimony. Rebuttal testimony and impeachment testimony are two different things.

. . .

Here, 102 of the 103 witnesses disclosed are either late-disclosed rebuttal witnesses, or impeachment witnesses, or both. The remaining witness appears to be a late-disclosed affirmative fact witness. Further, the designations do not offer any indication that a single witness will testify solely to rebuttal or impeachment information. Accordingly, the Court finds that the 103 witnesses shall be stricken because they were not disclosed within the

6

deadlines set in § 8(d)(2) of the Scheduling Order, and because Defendant has not sought permission to amend the deadlines or supplement its witness list on a showing of good cause.

*Order* [#329] at 6-7 (footnote omitted).

In the instant Motion, Defendant asks the Court to amend the Scheduling Order, arguing that there is good cause for the requested amendment.  *Motion* [#341] at 1. Specifically, Defendant maintains that it "did not understand" at the time it disclosed the 103 witnesses stricken in the Court's previous Order "that the Court required [Defendant] to seek leave from the Court to identify witnesses identified after the pre-discovery deadline in § 8(d)(2).[2]"  *Id.* at 1-2.  Defendant offers five arguments in support of the Motion.  First, Defendant argues that the Court "misapprehended [Defendant]'s position at the outset" because the Court treated the disclosures at issue as identification of witnesses made pursuant to § 8(d)(2) of the Scheduling Order, not Fed. R. Civ. P. 26.  *Id.* at 7-8.  Second, Defendant maintains that it was surprised by the Court's Order because the "March 2014 Order was the first time [the Court] informed [Defendant] that § 8(d)(2)'s requirement to seek leave applied during the deposition phase of the case, eliminating Rule 26(e)."  *Id.* at 8.  Defendant notes that pursuant to Fed. R. Civ. P. 60(b)(1), "surprise is a grounds for relief from judgment or order."  *Id.*  However, the Court notes that this is not a motion for reconsideration of a previous order made pursuant to Rule 60.  Third, Defendant argues that "permitting [it] to list the witnesses would be consistent with the unique features of this

---

[2]  Defendant's reference to the § 8(d)(2) deadline as a "pre-discovery" deadline is inaccurate.  The Phase I Scheduling Order was entered on October 2, 2011 [#128].  The deadlines in § 8(d)(2) were set to implement the District Judge's August 8, 2011 Order regarding depositions. The deadlines were set so that written discovery could be served and responses could be received before either party was obligated to identify Phase I Witnesses.  Hence, the deadlines were not "pre-discovery" deadlines, but merely "pre-deposition deadlines."

case, including the fact [that Plaintiff] itself served supplemental witness disclosures without complying with § 8(d)(2)." *Id.* at 9.  Fourth, Defendant avers that there is good cause to amend the Scheduling Order because it was diligent in identifying the 103 witnesses who "were identified in response to deposition testimony that took place long after the pre-discovery witness disclosure deadline." *Id.* at 10.  Finally, Defendant further argues that "controlling Tenth Circuit authority requires permitting [it] to list these witnesses." *Id.* Defendant then discusses a series of cases that it maintains support allowing it to designate additional witnesses even after the deadline imposed by the Court. *Id.* at 10-13. In support of the Motion Defendant offers the Declaration of Heather Vickels, Esq. [#341-1] ("Vickles Decl.") and a variety of attached exhibits, including a chart [#341-3] (the "Chart") purporting to show how each witness was identified during Defendant's investigation into the incidents at issue in this litigation.

In the Response, Plaintiff argues that Defendant fails to show good cause for amendment of the Scheduling Order. *Response* [#343] at 4.  Plaintiff further argues that the evidence provided by Defendant regarding the timing of its collection of information and its stricken disclosures is insufficient to show good cause for four reasons. *Id.* at 5.  First, Plaintiff maintains that the dates "are sporadic" and Defendant "fails to provide a single sound example of how its need for a rebuttal witness was based on deposition testimony that occurred near the time of its supplemental witness disclosures." *Id.* at 5.  Second, Plaintiff avers that there is no evidence linking 55 of the witnesses to deposition testimony. *Id.*  Third, Plaintiff argues that the timing of the disclosures "is highly suspicious" because the disclosures were made close to the discovery deadline. *Id.* at 6.  Fourth, Plaintiff maintains that the Chart "fails to provide any specific information regarding whether

8

[Defendant] first learned about the need for an alleged rebuttal witness through a deposition." *Id.* (emphasis in original).

In the Response, Plaintiff also rebuts Defendant's arguments.  First, Plaintiff applies the factors stated in *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) and argues that the Motion should be denied.  *Id.* at 7-10.  Plaintiff maintains that "the Court . . . correctly found [Defendant] conceded that § 8(d)(2) of the Scheduling Order applies to this dispute." *Id.* at 11.  Plaintiff further argues that Defendant cannot claim it is surprised that the Scheduling Order deadline applied throughout Phase I when the plain language of the Scheduling Order is clear and, even if it was simply a mistake by Defendant, that does not constitute good cause for amending the Scheduling Order.  *Id.* at 11-12.  Plaintiff avers that its disclosures are irrelevant to Defendant's actions but that, even if the Court took Plaintiff's disclosures into account, it "named only four individuals in its supplemental disclosures, not 103, and [it] identified these individuals over two months before what was then the close of discovery . . . ." *Id.* at 12-13.  In addition, Plaintiff distinguishes the Tenth Circuit cases relied on by Defendant.  *Id.* at 14-15.  Finally, Plaintiff argues that the timing of Defendant's designation of the 103 witnesses "suggests bad faith." *Id.* at 13-14.

In the Reply, Defendant revisits the arguments asserted in the Motion.  *Reply* [#347] at 2-8.  In addition, Defendant refutes the arguments made by Plaintiff.  *Id.* at 8-10.  With regard to Plaintiff's arguments, Defendant maintains that *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997), does not hold that identification of a new witness will only be allowed as a result of new information obtained "shortly before" the designation.  *Id.* at 8-9.  Defendant further argues that if the Court did apply such a standard, it is "satisfied by the explanation [Defendant] provided in the Motion and" the Vickles

9

Declaration. *Id.* at 9. Defendant avers that it "was not in a position to know whether and on what issue [the witnesses] would need to be identified for testimony in Phase I until the depositions took place" and that it "was not on notice that it was required to provide piecemeal updates . . . ." *Id.* Defendant further argues that "piecemeal disclosures were not even feasible for many of the witnesses." *Id.* Regarding the timing of its disclosures of the 103 witnesses, Defendant maintains that Plaintiff's argument

ignores

> that discovery: (1) continued in full for another six months; (2) continued in part for another six months after that[;] and (3) [Plaintiff] chose not to pursue any discovery concerning the new witnesses during this time even though [Defendant] invited it to do so.

*Id.* at 10 (emphasis omitted).

## II. Analysis

As the parties are aware, numerous courts have noted, and the undersigned agrees, that a "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Washington v. Arapahoe Cnty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441 (D. Colo. 2000) (citations omitted). Further, the Court has already clearly explained to the parties in its prior Order [#329] that the Scheduling Order requires them to seek permission from the Court to amend their § 8(d)(2) witness lists and such a motion must be based on a showing of good cause. Accordingly, the Court turns to the question of whether Defendant has shown good cause for amendment of the Scheduling Order deadline governing its Phase I witness identifications.

As noted in the Court's prior Order, because Fed. R. Civ. P. 16(b) allows for amendment of scheduling order deadlines "for good cause and with the judge's consent,"

the Court will rely on case law examining this standard to inform its analysis of whether Defendant has shown good cause in this case. *Order* [#329] at 7 ("In considering requests to modify the § 8(d)(2) deadlines or to designate witnesses after the deadlines for good cause shown, the Court would look to the standard applicable to motions filed under Rule 16.").

> Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Colo. Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000) (internal quotation and citation omitted); a*ccord Summers*, 132 F.3d at 604 (holding that "total inflexibility is undesirable" in the context of a motion to adopt a new scheduling order). However, "[t]he fact that a party first learns through discovery of information which may lead to amendment of deadlines set forth in the Scheduling Order constitutes good cause for such amendment pursuant to Rule 16(b)[(4)]." *Riggs v. Johnson*, No. 09-cv-01226-WYD-KLM, 2010 WL 1957110, at *3 (D. Colo. Apr. 27, 2010), *adopted by* 2010 WL 1957099 (D. Colo. May 17, 2010), (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668-69); *see also Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (discussing motion to amend pleading after scheduling order deadline and stating that "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed.").

Through the Vickles Declaration and the Chart, Defendant offers evidence that it "did

not know the details of specific witnesses' testimony [and] could not identify by the § 8(d)(2) deadline every specific person or important subject area that would become significant during the course of the depositions and require responsive witnesses." *Vickles Decl.* [#341-1] ¶ 10. As Ms. Vickles explains:

> As the depositions continued, [Defendant] continued to investigate allegations in testimony, particularly certain inconsistencies that were becoming apparent, or new information about people than what had been provided in previously produced documents.

*Id.* ¶ 18. This resulted in the supplemental witness lists served in February and March 2013. *Id.* ¶¶ 18-19. Defendant further explains that the Chart makes clear that certain of the witnesses

> were identified as a result of new information by one or more individuals about a person sharing their first name . . . . none of these witnesses were identified with an accurate first and last name in the EEOC charges or affidavits by the people designated by the EEOC as Phase I "aggrieved employees," with a few exceptions noted in the [C]hart: Of these people, some involve allegations about post-2008 conduct that had not been previously investigated.

*Id.* ¶ 22; *see e.g., Chart* [#341-3] at 1 (Humberto Adame identified by Iraq Abade on August 28, 2012 as "Humberto" and Iraq Abade's EEOC charge identifies a "Roberto"), 2 (Ashford Bird identified by Jama Muna at an October 4, 2012 deposition, Jama Muna's declaration mentioned "Ashford").

Ms. Vickles also explains that after the parties' § 8(d)(2) witness identifications were made, new topics also became important or increased in importance and that, as a result, Defendant continued to investigate and identify additional witnesses. *Id.* at ¶¶ 24-28. These topics included how other companies accommodated religious prayer breaks, Defendant's "pre-suit internal investigation of the Muslim worker's complaints," and

workplace conduct on the production line.  *Id.*  Ms. Vickles explains:

> there are thousands of potential witnesses to these events. [Defendant[ could not identify before the depositions began which of these potential witnesses would be responsive to the specific testimony that would take place four years later.  Based on the deponents' varied perspectives, which was [sic] unique to each deponent, [Defendant] conducted additional responsive investigation[s].

*Id.* ¶ 28.

The Court finds that Defendant has shown good cause to allow Defendant to amend its Phase I witness list under § 8(d)(2) of the Scheduling Order to allow for identification of the stricken witnesses.  This case is unique in that it involves hundreds of employees at a meat processing plant which, like many such facilities, has high employee turnover.  *See, e.g., Sched. Order* [#128] § 3(c) (the "beef plant employs more than 3500 persons on three shifts").  Further, as Defendant points out, many of the witnesses were only initially identified by a first name, some of which are common names, such as Jorge, Saul, and Oscar.  *See Chart* [#341-3] at 1 (Jorge Alvarado with notation that Defendant's database includes 40 employees named "Jorge"); 2 (Saul Barrera with notation that Defendant's database includes 13 employees named "Saul"); 3 (Oscar Cerna with notation that Defendant's database includes 23 employees named "Oscar").  In addition, while the initial focus was on only the specific events that occurred at Defendant's facility during Ramadan 2008, *see generally Compl.* [#1], the case has expanded to include allegations regarding Defendant's treatment of workers through the present and allegations regarding how "[o]ther meat processors with the same conveyor-line production facilities" accommodate Muslim employees.  *See, e.g., Plaintiff EEOC's Response in Opposition to Defendant's Motion for Summary Judgment [ECF 330]* [#349] at 3-17 ("EEOC's Statement of Additional

Relevant Facts"); *id.* at 13 (fact 80).  Therefore, the amount of information the parties had to sort through during discovery, the changing focuses of Defendant's investigation as it learned more information during discovery, and the sheer complexity of identifying certain witnesses, taken together, provide an adequate explanation of Defendant's inability to meet the § 8(d)(2) deadline and also provide good cause for allowing Defendant to amend its Phase I witness list to allow for identification of the additional witnesses.  *See Riggs*, 2010 WL 1957110, at *3, *adopted by* 2010 WL 1957099, (citing *Pumpco*, 204 F.R.D. at 668-69); *see also Gorsuch, Ltd.*, 771 F.3d at 1240.

The Scheduling Order makes clear that "good cause" does not include "lack of diligence."  *Sched. Order* [#128] § 8(d)(2).  While it is arguable that Defendant was not diligent in seeking leave to amend its § 8(d)(2) witness list because it did not seek permission to amend the witness list until after the Court's March 25, 2014 Order [#329] was entered, Defendant argues that it misunderstood what § 8(d)(2) of the Scheduling Order required.  *Motion* [#341] at 8-9.  Defendant's mistake alone does not establish good cause, however, Defendant acted quickly to file the instant Motion after entry of the Court's prior Order.  *Compare Order* [#329] (entered on March 25, 2014) *with Motion* [#341] (filed on May 7, 2014).  Defendant gathered a great deal of information, which is reflected in the Chart and the Vickles Declaration, in that short time.  The Court, therefore, finds that Defendant acted diligently to seek permission to amend its Phase I witness list after entry of the Court's March 25, 2014 Order.  This, in conjunction with the fact that Defendant discovered new information that resulted in the need to amend its Phase I witness list, leads to the ultimate conclusion that good cause has been shown in this instance.  *See Riggs*, 2010 WL 1957110, at *3, *adopted by* 2010 WL 1957099, (citing *Pumpco*, 204 F.R.D.

14

at 668-69); *see also Gorsuch, Ltd.*, 771 F.3d at 1240.

As noted above, "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party." *Colo. Visionary Acad.*, 194 F.R.D. at 687 (internal quotation and citation omitted). Therefore, to the extent the parties argue about potential prejudice to Plaintiff based on the timing of the challenged witness identifications, those arguments are misplaced. However, the Court notes that, as Defendant argues, the 103 witnesses were disclosed to Plaintiff in February and March 2013 and discovery continued after the disclosures were made, including motions practice related to discovery. *See e.g., Stipulation* [#225] at 1-2 (extending Plaintiff's deadline to respond to written discovery to March 21, 2013); *Defendant's Motion for Leave to Designate Additional Expert Witnesses, or in the Alternative, to Strike Plaintiff's Expert Witness Keith Koontz* [#230]; *Courtroom Minutes/Minute Order* [#244] (telephonic discovery hearing); *Courtroom Minutes/Minute Order* [#246] (telephonic discovery hearing regarding Plaintiff's oral motion for protective order regarding expert deposition); *Courtroom Minutes/Minute* Order [#253] (telephonic discovery hearing regarding Defendant's oral motion to compel production of documents) *Minute Order* [#258] at 1 (granting Plaintiff-Intervenors' Unopposed Motion to Extend Third Party Subpoena Date); *Plaintiff's Motion to Strike Witnesses* [#259]. Further, if upon receipt of the witness disclosures, Plaintiff needed additional time to take discovery, it could have requested that the Court extend discovery-related deadlines. The parties in this case are well aware of how to request extensions of Scheduling Order deadlines. *See, e.g., Plaintiff EEOC's Unopposed Motion for Extension of Time to Designate Rebuttal Experts* [#200]; *Defendant's Unopposed Motion to Amend Scheduling Order to Extend Dispositive Motions Deadline and Re-Set Final Pretrial Conference* [#265]. In addition, the witnesses

15

were not stricken until March 25, 2014.  *See generally Order* [#329].  Accordingly, Plaintiff could have had ample time to conduct further discovery related to the disclosed witnesses if it wished to do so.

### III.  Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#341-1] is **GRANTED**.  The Court finds good cause to allow Defendant to amend its Phase I witness list under § 8(d)(2) of the Scheduling Order.  Accordingly,

IT IS FURTHER **ORDERED** that the 103 witnesses listed in Defendant's Eighteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) [#259-1], Defendant's Nineteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) [#259-2], and Defendant's Twentieth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) [#259-3] that were stricken by the Court's March 25, 2014 Order [#329] are **DEEMED** timely designated on the dates they were served on Plaintiff.

Dated: March 17, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge