IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No.  10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

and

IRAQ ABADE, et al.,

Plaintiffs-Intervenors,

and

MARYAN ABDULLE, et al.,

Plaintiffs-Intervenors,

v.

JBS USA, LLC,
d/b/a JBS Swift & Company,

Defendant.

---

## ORDER

---

This matter is before the Court on the Objection to Magistrate Judge's Order [Docket No. 338] filed by defendant JBS USA, LLC ("JBS") and the Objection Pursuant to Fed.R.Civ.P. 72(a) to Decision of Magistrate Judge to Amend Scheduling Order [ECF 392] to Permit 103 Additional Witnesses [Docket No. 395] filed by plaintiff Equal Opportunity Employment Commission ("EEOC").  The parties' objections are timely filed.

## I. STANDARD OF REVIEW

The subjects of the parties' objections are the magistrate judge's orders on nondispositive matters. *See* Docket Nos. 329, 392. District courts review magistrate judges' orders regarding nondispositive motions under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Under this standard of review, a magistrate judge's finding should not be rejected merely because the Court would have decided the matter differently. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). A district court must affirm a magistrate judge's decision unless "'on the entire evidence[, the district court] is left with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## II. ANALYSIS[1]

On October 27, 2011, the magistrate judge entered the scheduling order. Docket No. 128. Section § 8(d)(2) of the scheduling order states:

> [Plaintiffs] will identify aggrieved employees for Phase I only by November 15, 2011. [Defendant] will identify Phase I witnesses by December 15, 2011. Either party may amend list up to 60 days thereafter. Subsequent amendments may be made only on a showing of good cause, which shall not include lack of diligence.

Docket No. 128 at 20. The scheduling order set the discovery cut-off for September 14, 2012, *id.* at 23, a deadline which was subsequently extended multiple times.

---

[1]The background facts have been set forth elsewhere and will not be restated here except as relevant to resolving the parties' objections. *See, e.g.*, Docket No. 329 at 1-4.

2

On February 13, 2012, JBS provided EEOC with its Amended List of Phase I Witnesses (the "amended witness list"), which listed the names and contact information of 72 individuals. Docket No. 259-4 at 1-7. The first paragraph of the amended witness list states, without citation to the Scheduling Order or other authority, "This witness list . . . does not include witnesses Defendant may use for impeachment or rebuttal." *Id.* at 1.

In February and March of 2013, JBS attempted to disclose 103 additional witnesses (the "additional witnesses") through three supplemental disclosures (the "additional witness disclosures"). *See* Docket No. 259-1, Docket No. 259-2, Docket No. 259-3. EEOC moved to strike JBS's additional witnesses, arguing that the additional witness disclosures violated § 8(d)(2). Docket No. 259. On March 25, 2014, the magistrate judge issued an order (the "March 25, 2014 order") granting EEOC's motion to strike. Docket No. 329 at 12. JBS filed an objection to the March 25, 2014 order. Docket No. 338.

On May 7, 2014, JBS filed the Motion to Amend Scheduling Order to Permit Listing of Additional Witnesses Previously Disclosed (the "motion to amend") [Docket No. 341], arguing that good cause exists to amend the scheduling order to allow JBS to disclose the 103 witnesses stricken by the magistrate judge's March 25, 2014 order. Docket No. 341 at 2. On March 17, 2015, the magistrate judge granted JBS's motion (the "March 17, 2015 order"), concluding that JBS established good cause "to amend its Phase I witness list under § 8(d)(2) of the Scheduling Order to allow for identification of the stricken witnesses." Docket No. 392 at 13. On April 7, 2015, EEOC filed an objection to the March 17, 2015 order. Docket No. 395.

### A.  Docket No. 338

JBS objects to the March 25, 2014 order on five grounds.  First, JBS argues that the magistrate judge misapprehended JBS's position.  Docket No. 338 at 7.  In a footnote, the magistrate judge stated that, although JBS's witness designations were styled as disclosures under Fed. R. Civ. P. 26(a)(1), both parties referred to the designations as covered by § 8(d)(2).  Docket No. 329 at 4 n.2 (citing Docket No. 269 at 1).  As a result, the magistrate judge analyzed JBS's disclosures under § 8(d)(2) and did not address JBS's argument that its supplemental disclosures were proper under Fed. R. Civ. P. 26(e).  *Id.* at 4 n.2, 6 n.3.  There are two aspects to JBS's argument.  One, JBS argues that it did not concede § 8(d)(2)'s applicability and that the first page of its response to EEOC's motion to strike states only that *EEOC* believes that § 8(d)(2) applies, which is contrary to the proposition for which the magistrate judge cited JBS's response.  Docket No. 338 at 8 (citing Docket No. 329 at 4 n.2).  Two, because the magistrate judge erroneously assumed that § 8(d)(2) applied, the magistrate judge erred in failing to consider JBS's arguments that Rule 26 permitted the additional witness disclosures.  Docket No. 348 at 5.  The first aspect of JBS's argument is incredible.  JBS relies on a footnote from the March 25, 2014 order in which the magistrate judge cited to the first page of JBS's response, but fails to account for the fact that a substantial portion of the order was dedicated to addressing JBS's argument that "the deadlines set in § 8(d)(2) . . . do not include all of Defendant's fact witnesses pertaining to Phase I."  Docket No. 329 at 7-9; *see also id.* at 5 ("In its Response, [JBS] argues that the witness disclosure deadlines set in § 8(d)(2) of the Scheduling Order did

not require the parties to 'identify *all trial* witnesses.'" (citing Docket No. 269 at 4 (emphasis in original))).  Thus, although the magistrate judge ultimately rejected JBS's position, the magistrate judge considered JBS's argument that § 8(d)(2) did not apply to its disclosures.  As to the second aspect of JBS's argument, Rule 16 provides that a scheduling order may "modify the timing of disclosures under Rule 26(a) and 26(e)(1)." Fed. R. Civ. P. 16(b)(3)(B)(i).  Thus, if § 8(d)(2) is interpreted as modifying the timing of the parties' Rule 26 disclosures, then JBS's argument that its disclosures were timely under Rule 26 is irrelevant.  For the reasons stated below, the Court finds no error in the magistrate judge's determination that JBS's witness disclosures were governed by § `8(d)(2) and, as a result, finds no clear error in the magistrate judge's decision not to consider JBS's Rule 26 arguments.

Nevertheless, even if the Court were to consider JBS's argument that Rule 26 permitted the additional witness disclosures, such an argument is without merit.  JBS's arguments that the additional witness disclosures are timely pursuant to Rule 26 appear to hinge on whether JBS's witnesses are properly considered impeachment or rebuttal witnesses.  *See* Docket No. 269 at 10.  However, JBS does not challenge the magistrate judge's conclusion that JBS's disclosures do not provide sufficient information to determine if the disclosed witnesses would testify "solely as to rebuttal or impeachment evidence."  Docket No. 329 at 9.  JBS also seems to suggest that the additional witness disclosures were permitted by Rule 26(e)(1).  However, JBS does not, as EEOC argues, establish that the additional witness disclosures are timely under Rule 26(e)(1)(A).  Docket No. 272 at 8.  To the contrary, it appears that, after providing the amended witness list of 72 individuals in February 2012, JBS did not disclose a

5

single additional witness until its Eighteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), which JBS served on EEOC on February 22, 2013.  *See* Docket No. 259-1; Docket No. 259-4.  It is simply not credible to suggest that JBS was not in a position to identify *any* of the 103 additional witnesses in one of its earlier supplemental disclosures.  Thus, JBS fails to provide any basis to conclude that all 103 additional witnesses were disclosed in a timely manner under Rule 26.  *See* Fed. R. Civ. P. 26(e)(1)(A).

Second, JBS argues that the magistrate judge's interpretation of § 8(d)(2) surprised and prejudiced JBS.  Docket No. 338 at 8.  On the issue of surprise, JBS falls short of establishing that no reasonable litigant could have anticipated that the magistrate judge would interpret § 8(d)(2) as applying to all Phase I trial witnesses.  The text of § 8(d)(2) unambiguously requires JBS to "identify Phase I witnesses" and provides that subsequent amendments to the initial witness lists may be made "only on a showing of good cause."  Docket No. 128 at 20.  To the extent JBS argues that § 8(d)(2) was not intended to apply to rebuttal or impeachment witnesses, JBS's interpretation finds no support in the text of § 8(d)(2), which does not explicitly exempt JBS from having to list rebuttal or impeachment witnesses.[2]  JBS's contention that the

---

[2]Although the parties initially appeared to dispute the question of whether § 8(d)(2) applies to impeachment or rebuttal witnesses, the magistrate judge answered this question in the affirmative.  Docket No. 329 at 9.  Absent a vague suggestion that the magistrate judge failed to consider JBS's Rule 26 arguments, JBS's objection makes no distinction between § 8(d)(2)'s applicability to regular witnesses and applicability to impeachment/rebuttal witnesses.  Rather, JBS appears to argue that § 8(d)(2) does not apply to the supplemental disclosure of any witnesses.  Thus, because JBS appears to have abandoned its prior argument that § 8(d)(2) did not apply to impeachment/rebuttal witnesses, the Court has no reason to disturb the magistrate judge's conclusion.  In any event, the magistrate judge's conclusion that § 8(d)(2)

amended witness list "[did] not include witnesses Defendant may use for impeachment or rebuttal," Docket No. 259-4 at 1, is similarly unsupported.

JBS argues that § 8(d)(2) was intended only as a mechanism to "formalize the identification of Phase I witnesses in order to implement the Bifurcation Order's deposition parameters." Docket No. 269 at 5. However, JBS's interpretation of § 8(d)(2) is untenable. If, as JBS claims, § 8(d)(2) does not apply to all trial witnesses, then JBS would have an unlimited ability to disclose additional witnesses, without regard for the other deadlines set forth in the scheduling order and without regard for EEOC's ability to depose such witnesses in advance of the discovery deadline. Such an approach would not, as the bifurcation order contemplates, facilitate depositions of "the witnesses defendant identifies as its Phase I witnesses." *See* Docket No. 116 at 17. Thus, JBS fails to establish that it was reasonably surprised by the magistrate judge's interpretation of § 8(d)(2) or that such an interpretation was clearly erroneous.

On the issue of prejudice, the Court pauses briefly to address JBS's oft-repeated argument that the magistrate judge's interpretation of § 8(d)(2) prevents JBS from supplementing its witness list, eliminates the effect of Rule 26(e), or otherwise runs contrary to JBS's belief that it was permitted to supplement its witness list. *See, e.g.*, Docket No. 348 at 5; Docket No. 269 at 6. JBS's argument is without merit. JBS fails to account for the fact that it can add additional witnesses to its list by showing good cause. *See* Docket No. 128 at 20. Thus, JBS's argument that it is "locked into its final

---

applies to all witnesses appears to subsume JBS's prior argument.

trial witnesses and unable to add any new witnesses identified during depositions," Docket No. 269 at 6, is incorrect and is further belied by the fact that JBS now takes the position that it can show good cause to add additional witnesses. *See* Docket No. 338 at 9; Docket No. 341.

Third, JBS argues that the magistrate judge erred in failing to consider the unique circumstances of this case. JBS argues that one such circumstances is the difficulty of identifying witnesses prior to depositions. Docket No. 338 at 8-9. JBS does not explain why any difficulty in identifying witnesses prior to depositions cannot be addressed by showing good cause as contemplated by § 8(d)(2), why this difficulty is unique to this case, or why JBS failed to recognize this issue until now. Upon review, the Court finds no basis for so concluding. JBS next argues that the magistrate judge erred by not applying what it describes as the "sauce rule" in failing to account for the fact that EEOC disclosed additional witnesses without complying with § 8(d)(2). Docket No. 338 at 9.

On October 17, 2012, EEOC identified five additional witnesses – three officers from the Greeley Police Department, a union steward, and a Muslim Imam. Docket No. 269-4 at 2. JBS did not object to EEOC's disclosure at the time it was made. Thus, the propriety of EEOC's October 17, 2012 supplemental disclosure is not currently before the Court and, moreover, the parties' additional witness disclosures are not comparable. EEOC disclosed five additional witnesses, four months ahead of the then-existing discovery deadline. *See* Docket No. 195 ("Discovery due by 2/1/2013"). JBS attempted to disclose 103 additional witnesses through three supplemental disclosures made on February 22, 2013, Docket No. 259-1; March 6, 2013, Docket No. 259-2; and

8

March 29, 2013, Docket No. 259-3.  At the time JBS filed the February 22, 2013

supplemental disclosure designating 80 additional witnesses, the discovery deadline

was March 15, 2013.  *See* Docket No. 259-1 at 21; Docket No. 205.[3]  It is not credible

to suggest, as JBS does, that EEOC could "cure any surprise by seeking to depose

these new witnesses," but do so before the close of discovery or without significantly

delaying the case.  *See* Docket No. 338 at 13; *see also* Fed. R. Civ. P. 16(b)(4) ("A

schedule may be modified only for good cause and with the judge's consent").  The

Court is not convinced that equitable considerations weigh so heavily in JBS's favor so

as to establish clear error.  This aspect of JBS's objection is overruled.

Fourth, JBS argues that the magistrate judge failed to apply *Burks v. Okla.*

*Publ'g Co.*, 81 F.3d 975 (10th Cir. 1996), which it claims is "controlling Tenth Circuit

authority applicable to [the present] situation."  Docket No. 338 at 10.  JBS also

suggests that the magistrate judge should have applied *Rimbert v. Eli Lilly & Co.*, 647

F.3d 1247 (10th Cir. 2011), and *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599 (10th

Cir. 1997).  *Id.*  Because JBS did not raise this argument before the magistrate judge,

*see generally* Docket No. 269, it is deemed waived.  *See United States v. Garfinkle*,

261 F.3d 1030, 1031 (10th Cir. 2001) (issues "raised for the first time in objections to

the magistrate judge's report are deemed waived" (citing *Marshall v. Chater*, 75 F.3d

1421, 1426 (10th Cir. 1996)));  *see also Thomas v. Arn,* 474 U.S. 140, 148 (1985) ("[t]he

same rationale that prevents a party from raising an issue before a circuit court of

---

[3]The discovery deadline was later extended to August 15, 2013.  Docket No. 223.

appeals that was not raised before the district court applies [to theories raised for the first time in objections to magistrate judge's recommendations].").

For the foregoing reasons, JBS has failed to identify any aspects of the magistrate judge's March 25, 2014 order that are clearly erroneous or contrary to law.[4]

### B.  Docket No. 395

EEOC challenges several aspects of the magistrate judge's ruling that JBS "has shown good cause to allow Defendant to amend its Phase I witness list under § 8(d)(2) of the Scheduling Order to allow for identification of the stricken witnesses."  Docket No. 392 at 13.

As a threshold matter, the parties agree that JBS's motion to amend the scheduling order is governed by Fed. R. Civ. P. 16(b)(4).  However, JBS and EEOC take inconsistent positions regarding which considerations are relevant to analyzing good cause under Rule 16(b)(4).  The magistrate judge considered

> the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.  Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

Docket No. 392 at 11 (quoting *Colo. Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000), and citing *Summers*, 132 F.3d at 604-05).  The magistrate judge also noted that "[t]he fact that a party first learns through discovery of information

---

[4]The Court need not reach EEOC's remaining arguments.  JBS's arguments that it can show good cause to amend the scheduling order to disclose 103 additional witnesses are moot for purposes of JBS's objection, *see* Docket No. 392, and will be considered below in resolving EEOC's objection to the magistrate judge's March 17, 2015 order.

which may lead to amendment of deadlines set forth in the Scheduling Order

constitutes good cause for such amendment pursuant to Rule 16(b)[(4)]."  *Id.*

(quotations omitted).  In its motion to amend, JBS argued that the four factors as set

forth in *Burks*, 81 F.3d at 979 (the "*Burks* factors"),[5] applied to grant it the requested

relief.  Docket No. 343.  In its response brief, EEOC argued for the application of the six

factors set forth in *Smith*, 834 F.2d at 169 (the "*Smith* factors").  Docket No. 343 at 7.  In

its objection, EEOC contends that the magistrate judge erred by not applying the *Burks*

factors, Docket No. 395 at 5, and JBS, not surprisingly, takes the opposite position.

Docket No. 401 at 7.

Rule 16(b)(4)'s good cause standard "requires the movant to show the

'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'"  *Gorsuch,*

*Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)

(quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)).

"Rule 16's good cause requirement may be satisfied, for example, if a [movant] learns

new information through discovery or if the underlying law has changed."  *Id.*  However,

"[c]arelessness is not compatible with a finding of diligence and offers no reason for a

grant of relief.  *Pumpco*, 204 F.R.D. at 668 (quotations omitted).  Although a good

cause inquiry will, in most cases, begin with an inquiry into the movant's diligence, there

may be other relevant considerations.  *See* 6A Charles Alan Wright et al., *Federal*

*Practice & Procedure* § 1522.2 (3d ed. 2015) ("What constitutes good cause sufficient

---

[5]Although the Tenth Circuit appears to have first adopted this four-factor test in *Smith v. Ford Motor Co.*, 626 F.2d 784, 797 (10th Cir. 1980), the Court refers to the four factors as the *Burks* factors in order to avoid confusion with the six-factor test set forth in *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).

to justify the modification of a scheduling order necessarily varies with the

circumstances of each case.").  Where a movant seeks to modify a scheduling order to

designate additional witnesses, the Tenth Circuit applies the *Burks* factors, which are:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Summers*, 132 F.3d at 604-05 (quoting *Burks*, 81 F.3d at 979) (applying *Burks* factors in

determining whether "to exclude a witness not listed in a pretrial order"); *see also*

*Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011) (applying *Burks* factors

in "reviewing the denial of a party's motion for a new scheduling order to name a

previously undisclosed witness").  The Court finds the Tenth Circuit cases applying the

*Burks* factors helpful in determining whether JBS is entitled to relief.[6]

EEOC argues that, when examining JBS's justifications for the untimely

disclosure of each individual witness – as opposed to examining JBS's justifications in

the aggregate –, JBS's showing is insufficient to establish good cause.  Docket No. 395.

The magistrate judge noted that JBS compiled a great deal of information regarding

when and how it learned the identity of the 103 additional witnesses, information which

---

[6]The Court is not convinced that, as EEOC argues, the magistrate judge was required to apply the *Burks* factors.  In *Gorsuch*, the Tenth Circuit cited favorably to *Pumpco*, a case which employed the same Rule 16(b)(4) good cause standard as the magistrate judge.  *See Gorsuch*, 771 F.3d at 1240 (citing *Pumpco*, 204 F.R.D. at 668); *see also Okla. ex rel. Doak v. Acrisure Bus. Outsourcing Servs., LLC*, 529 F. App'x 886, 891 (10th Cir. 2013) (unpublished) (affirming district court's denial of motion to extend scheduling order deadlines without applying *Burks* factors).  However, the Court need not reach EEOC's argument on this issue because the Court resolves EEOC's objection on other grounds.

was reflected in the Declaration of Heather Vickles, Esq. [Docket No. 341-1] and the

Supplemental Phase I Witnesses - Explanation Chart [Docket No. 341-3] (the "chart").

Docket No. 392 at 14.  The magistrate judge concluded that such information, in

conjunction with the fact that JBS "discovered new information that resulted in the need

to amend its Phase I witness list, leads to the ultimate conclusion that good cause has

been shown in this instance." *Id.*  The Court agrees that JBS has compiled a significant

amount of information in an attempt to establish good cause.  In addition to those items

mentioned above, JBS provided a list of the dates each deposition was taken [Docket

No. 341-5] and citations to deposition testimony where the religious accommodation

practices of other companies were mentioned [Docket No. 341-13], where prior

inconsistent statements were identified [Docket No. 341-14], and where witnesses

described different versions of the events of September 5, 2008 [Docket No. 341-15].

However, upon review, the Court finds that JBS's attempt to show good cause does not

withstand scrutiny.

JBS provides five principal justifications for the late disclosure of each additional

witness.  For most witnesses, multiple justifications apply.  JBS's primary argument,

and one it asserts with respect to 36 of the 103 additional witnesses, is that it had

difficulty identifying witnesses by their first and last names.  Docket No. 341-1 at 8.  The

chart identifies such witnesses with the designation "Identification."  Docket No. 341-3

at 1.  JBS asserts that identifying witnesses in this case was difficult due to the large

number of potential witnesses and factors, including the difficulty of identifying

individuals in the plant environment, the language barrier, the fact that plant employees

are often known to other employees only by their first or last name, and the fact that

13

there are several common names among the pool of potential witnesses.  Docket No. 341-1 at 2.  Ms. Vickles states that it was "time consuming and frustrating to try to match deposition testimony about partially or inaccurately identified people to people who might or might not have already been disclosed," but that, through deposition testimony and the primary database of employees, JBS was able to narrow down the names "just before JBS made its supplemental disclosures."  *Id.* at 8, ¶ 23.  For example, with respect to Jorge Alvarado, who JBS's supplemental disclosure lists as a "Supervisor," Docket No. 259-1 at 4, ¶ 4, the chart states that his first or last name was mentioned in the February 16, 2012 deposition of Abdi Bulle and the March 5, 2012 deposition of Abdulkadir Nur, that Mr. Alvarado's full name was mentioned in the August 29, 2012 deposition of Nuho Aden, and that Mr. Alvarado's first or last name was subsequently mentioned in depositions taking place in November 2012 and March 2013.  Docket No. 341-3 at 1.  The chart states that "Jorge" was mentioned in Ms. Aden's affidavit,[7] but not in her charge of discrimination, and that the JBS employee database shows 40 employees with the first name "Jorge."  *Id.*

   The Court finds JBS's arguments unpersuasive.  First, although JBS may be correct that this case presents unique challenges, such challenges were apparent, or should have been, at the outset of this case.  But JBS did not seek relief earlier to account for these challenges or ask the Court earlier to modify or extend the deadline for disclosing its Phase I witnesses.  *Cf. Doak*, 529 F. App'x at 891 (affirming district court's denial of motion to extend scheduling order deadlines in part because

---

   [7]JBS indicates that EEOC produced affidavits from Phase I claimants "[j]ust prior to the pre-discovery deadline for identifying witnesses."  Docket No. 341-1 at 4.

"complications" impeding compliance with scheduling order "should have been evident long before February 2012, when Mr. Doak filed his motion to extend the deadlines"). Second, JBS appears to operate under the assumption that it is entitled to wait until an individual is squarely identified through deposition testimony before investigating whether that individual should be designated as a witness.  The Court is not convinced that such a practice demonstrates diligence.  JBS is required to conduct its own investigation into the identity of potential witnesses, regardless of when or how many depositions have taken place.  EEOC argues, and JBS does not dispute, that some of the identifying information JBS now relies on came from depositions of JBS's own witnesses, which undercuts JBS's argument that such information was previously unavailable to it.  *See* Docket No. 395 at 8.  In addition, many of the additional witnesses JBS claims it could not earlier identify are current or former employees, and most of those are JBS's managers or supervisors.  *See also* Docket No. 269 at 14 (stating that 48 of the 103 witnesses are "JBS management personnel, union officials, translators, or Tyson employees" and that "[t]he remaining witnesses consist largely of JBS supervisors who have been identified in the EEOC's and Plaintiff-Intervenors' own discovery responses and witness disclosures.").[8]  This fact belies JBS's argument that the identity of such individuals was unascertainable or otherwise impossible to narrow

---

[8]Of the 80 additional witnesses disclosed in JBS's Eighteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) [Docket No. 259-1], 40 are listed as current employees, the majority of whom are managers or supervisors, and several other witness are listed as former supervisors.  JBS's Nineteenth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) [Docket No. 259-2] and Twentieth Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) [Docket No. 259-3] do not indicate whether any of the listed witnesses are JBS's current or former employees.

down until just before JBS made the additional witness disclosures.  For example, although the JBS employee database shows 40 employees named "Jorge," Docket No. 341-3 at 1, JBS does not indicate that it attempted to determine which of the 40 employees named "Jorge" are supervisors and which of those supervisors worked with Ms. Aden – the aggrieved employee who mentioned Mr. Alvarado in her affidavit – during the relevant time period, steps which presumably would have narrowed the list of people Ms. Aden could have been referencing in her affidavit.

Third, the timing of JBS's additional disclosures does not demonstrate diligence. JBS's assertion that the "project" of identifying witnesses was not completed until just before JBS provided the additional witness disclosures, Docket No. 341-1 at 8, ¶ 23, suggests that it was not diligent in identifying witnesses earlier in discovery.  For example, Mr. Alvarado's first or last name was mentioned in Ms. Aden's affidavit and in a February 2012 and a March 2012 deposition and his full name was mentioned in an August 2012 deposition, yet JBS asserts that it was unable to identify him until just before its February 22, 2013 disclosure.  Such an assertion suggests that JBS was not acting diligently to identify witnesses throughout discovery.  Moreover, JBS listed 72 witnesses in February 2012 and does not appear to have designated a single additional witness until the February 22, 2013 disclosure, which, by itself, more than doubled the number of JBS's Phase I witnesses.  JBS does not sufficiently explain this delay.  In short, JBS has not shown that difficulty in identifying witnesses is a sufficient justification for the untimely disclosure of those additional witnesses to which the "Identification" designation applies.  *See* Docket No. 341-3 at 1.

JBS argues that, as it continued the process of deposing aggrieved employees, JBS identified new aspects of or differing perspectives on the events of Ramadan 2008, which, according to the chart, is JBS's reason for the untimely designation of 58 of the 103 additional witnesses.  Docket No. 341-1 at 9-10, ¶ 27; Docket No. 341-3; *see also* Docket No. 341-15.  The chart identifies these witnesses with the designation "Ramadan Events."  Docket No. 341-3 at 1.  JBS's argument is vague.  The events of Ramadan 2008 have always been a crucial element of this case and JBS does not clearly explain what new aspects or differing perspectives were unearthed during depositions, or whether these developments were unanticipated.  Absent such a showing, JBS's argument does not establish good cause.  Although JBS contends that depositions of aggrieved employees revealed trends regarding the events of September 5, 2008, half of the depositions upon which JBS relies took place between February 2012 and October 2012.  JBS does not explain why it could not have earlier recognized these trends and earlier identified at least some additional witnesses to testify on this subject, rather than disclosing all additional witnesses near what was then the close of discovery.  Moreover, as noted above, many of the additional witnesses are JBS's current or former supervisors.  JBS does not explain why it could not have, through its own records, earlier identified as potential witnesses those supervisors working at the plant on September 5, 2008.  As a result, JBS has failed to show that it acted diligently in identifying additional witnesses to testify as to the events of Ramadan 2008.

JBS asserts that, based upon the varying perspectives of deponents on "workplace behavior and practices in the production area of the plant, such as the Fabrication or Slaughter area," JBS conducted additional investigation, which,

17

according to the chart, led to the designation of 92 additional witnesses.  Docket No. 341-1 at 10, ¶ 28; Docket No. 341-3.  The chart identifies these witnesses with the designation "Workplace Conduct."  Docket No. 341-3.  JBS's argument as to this particular justification is vague and conclusory.  Workplace behavior and practices at the Greeley plant have been a focus throughout this case and JBS fails to explain what specific issues it uncovered during depositions and why it could not have earlier disclosed at least some of the witnesses designated as workplace conduct witnesses, particularly those individuals who are current or former supervisors in the fabrication and slaughter areas of the plant.

JBS asserts that it uncovered inconsistencies between aggrieved employees' deposition testimony and statements those employees made during JBS's pre-suit internal investigation, which led to further investigation and the identification of responsive witnesses.  Docket No. 341-1 at 9, ¶ 26.  This investigation appears to have led to the discovery of four additional witnesses, who are identified by the designation "Prior Statement Dispute."  *See* Docket No. 341-3 at 13-14.  The deposition testimony that revealed the alleged prior inconsistent statements occurred in March 2012, August 2012, and December 2012.  *See* Docket No. 341-14.  Although JBS does not explain why it could not have disclosed earlier to EEOC those witnesses it would use to impeach deposition testimony given in March and August 2012, JBS has provided sufficiently specific information upon which to conclude that it could not have reasonably anticipated the need for such witnesses prior to taking the listed depositions.  As a result, the Court is satisfied that JBS acted diligently to identify witnesses to address inconsistencies in the aggrieved employees' prior statements.

18

JBS asserts that many deponents testified that they "worked or had worked for other companies, and that those companies (and one in particular) accommodated Muslim prayer beliefs better than JBS," which in turn caused JBS to identify witnesses on this topic.  Docket No. 341-1 at 9, ¶ 25.  Although JBS's argument appears to have merit, JBS identifies but a single witness in this category – Fardusa Council –, to whom EEOC does not object.  *See* Docket No. 341-3 at 3; Docket No. 395 at 13 n.4.  JBS's argument as to this justification is therefore moot.

With the exception of Fardusa Council and witnesses JBS designated as impeachment witnesses, JBS has largely failed to show that it acted diligently to disclose the additional witnesses.  JBS may be correct that it could not have disclosed all of the additional witnesses by the February 2012 deadline, but it is equally clear that JBS could have, in an exercise of diligence, disclosed at least some of the additional 103 witnesses prior to February and March 2012.  *Cf. Gorsuch*, 771 F.3d at 1242 ("[plaintiffs] had no good cause for the lengthy delay between November 17, 2011, and the motion for leave to file a third amended complaint on July 10, 2013.").  JBS's failure to do so, combined with the fact that the additional disclosures took place shortly before the then-existing close of discovery and more than doubled the number of JBS's Phase I witnesses, does not evidence the degree of diligence necessary to provide JBS all of the relief it seeks.

Application of the *Burks* factors does not compel a different conclusion.  With respect to prejudice to EEOC, the type of prejudice that warrants the exclusion of a witness' testimony under the *Burks* factors "is the inability of the opposing party to fully litigate the case and defend against the new testimony."  *Rimbert*, 647 F.3d at 1255.

19

EEOC argues that permitting JBS to designate 103 additional witnesses will necessitate reopening discovery so that EEOC can conduct additional depositions and perhaps designate its own additional witnesses.  Docket No. 343 at 9.  EEOC contends that further delays in bringing this case to trial increase the chances of witnesses' memories fading or the witnesses themselves becoming unavailable.  *Id.*  JBS argues that, because EEOC chose not to depose any of JBS's additional witnesses during discovery, "any further delay or memory fade is attributable to the EEOC's changing positions on this issue."  Docket No. 347 at 5-6.  The Court finds that EEOC would be prejudiced to some degree by the untimely disclosure of JBS's 103 additional witnesses.  EEOC likely conducted a majority of its discovery under the belief that JBS's Phase I witnesses consisted of approximately 70 individuals.  By virtue of the fact that JBS chose to disclose a disproportionate number of additional witnesses at or near the end of discovery, EEOC was deprived of any meaningful opportunity to adjust the scope of its discovery in response to JBS's more-than-doubled witness list.  The Court is not persuaded by JBS's argument that EEOC should have deposed the additional witnesses in the limited time it had before discovery closed.  As evidenced by the filing of its motion to strike the additional witnesses, EEOC had a reasonable belief that the additional witnesses were improperly disclosed.  JBS fails to explain why EEOC was obligated to depose witnesses that EEOC correctly believed would be stricken.  The Court finds that, if JBS is granted the relief it seeks, EEOC would suffer an inability to fully litigate the case and defend against the testimony of the 103 additional witnesses.  *See Rimbert*, 647 F.3d at 1255.  This factor weighs in EEOC's favor.

As to EEOC's ability to cure this prejudice, EEOC implicitly concedes that prejudice flowing from the additional witness disclosures could be cured by reopening discovery to allow EEOC to depose the additional witnesses, Docket No. 343 at 9, and has filed a motion seeking that relief.  *See* Docket No. 399.  However, EEOC also argues that reopening discovery would result in additional time, effort, and expense. Docket No. 343 at 9.[9]  Although "extra expense alone is not the type of prejudice contemplated" by the *Burks* factors, *Rimbert*, 647 F.3d at 1255, deposing the additional witnesses in an effort to cure any prejudice to EEOC would require considerable effort and expense on EEOC's part, some of which could have been prevented had JBS earlier disclosed at least some of its additional witnesses.  Moreover, EEOC argues, and JBS does not dispute, that further delaying the trial increases the chances that witnesses' memories of relevant events will fade or that some witnesses will become unavailable.  Thus, the Court finds that EEOC could cure some, but perhaps not all, of the prejudice that would inure to it if JBS were permitted to disclose the additional witnesses.  This factor weighs slightly in JBS's favor.

As to the disruption in the orderly administration of this case, EEOC argues that permitting the additional witnesses would necessitate the reopening of discovery, which would in turn cause further delay in bringing EEOC's Phase I claims to trial.  Docket No. 343 at 7-8.  JBS asserts its oft-repeated argument that the fact that no trial date has been set in this case is "'the single most important fact'" in favor of granting it the

---

[9]JBS reasons that EEOC is not prejudiced by additional discovery expense because it "is government funded, and chooses which expenses to incur."  Docket No. 347 at 6.  JBS's suggestion that EEOC has unlimited resources with which to litigate this case is inaccurate and irrelevant.

requested relief.  Docket No. 341 at 13 (quoting *Rimbert*, 647 F.3d at 1254).  JBS's argument is unpersuasive.  First, JBS's position that the absence of a trial date is dispositive on the question of whether to permit amendment to a scheduling order is inconsistent with Rule 16(b)(4), which requires that a movant show good cause.  Second, in *Rimbert*, the plaintiff sought leave to disclose a single additional expert witness after defendant mounted a successful *Daubert* challenge to the opinions of plaintiff's only causation expert.  647 F.3d at 1250.  At the time plaintiff made this request, the trial judge had vacated the remaining schedule, including all pre-trial proceedings.  *Id.*  Applying the *Burks* factors, the Tenth Circuit determined that the most important fact was that "there was no longer any impending trial date or pretrial scheduling remaining" and held that plaintiff should be granted leave to disclose his replacement expert witness.  *Id.* at 1254.  Here, JBS seeks to disclose 103 additional witnesses, there is a scheduling order, albeit not a trial date, in place, and discovery has been closed for more than two and one-half years.  Thus, the "single most important fact" upon which *Rimbert* turned is not squarely present in this case.  Third, JBS's argument fails to account for the fact that this case has been pending since 2010, that, after multiple extensions, discovery closed on August 15, 2013, that the dispositive motion deadline has passed, and that, absent the present dispute, the case is ready to proceed to trial.  Reopening discovery to allow EEOC to depose the additional witnesses would further delay trial in a case where pretrial proceedings have already stretched for more than five years.[10]  Thus, this factor weighs in EEOC's favor.

---

[10]EEOC's motion to reopen discovery does not indicate how much time it requires to depose the additional witnesses.  *See* Docket No. 399.  EEOC indicates that

With respect to the fourth *Burks* factor, EEOC argues that the timing of JBS's additional witness disclosures evidences bad faith.  Docket No. 343.  Although the Court lacks sufficient facts to conclude that JBS acted in bad faith, JBS's decision to more than double its list of witnesses shortly before the then-existing discovery deadline evidences, at a minimum, a lack of appreciation for the scheduling order and discovery deadlines.  Moreover, as discussed above, JBS fails to persuasively argue that it had reason to be surprised by the magistrate judge's interpretation of § 8(d)(2) and does not establish that it acted diligently in identifying and disclosing additional witnesses.  Thus, while the Court lacks sufficient facts to definitively conclude that JBS acted wilfully, it appears that JBS's "behavior represents more than simple negligence."  *Cf. Burks*, 81 F.3d at 980.  Upon consideration, the Court finds that the *Burks* factors weigh in favor of EEOC and against granting JBS all of the relief it seeks.

"[A] scheduling order can have an outcome-determinative effect on the case and total inflexibility is undesirable.  A scheduling order which results in the exclusion of evidence is, moreover, a drastic sanction."  *Rimbert*, 647 F.3d at 1254 (quotations and citations omitted).  Although the Court finds that JBS has failed to show good cause to disclose all 103 additional witnesses, the Court recognizes that the effect of denying JBS's motion to amend in its entirety may result in too harsh a sanction on JBS for its

---

JBS has listed 45 of the additional witnesses in a proposed final pretrial order filed by the parties on January 20, 2015.  Docket No. 399 at 3 n.1 (citing Docket No. 387).  However, the magistrate judge vacated the final pretrial conference and extended the deadline for the parties to file a proposed final pretrial order.  Docket Nos. 398, 419, 428, and 434.  EEOC states that, provided that JBS does not list any additional witnesses in the final pretrial order, EEOC will only seek to depose those 45 additional witnesses JBS listed in the January 20, 2015 proposed final pretrial order.  Docket No. 399 at 3 n.1.

failure to comply with the scheduling order.  *See Summers*, 132 F.3d at 604.  However,

neither party has suggested what type of partial relief, if any, is appropriate.  It therefore

falls to the Court to fashion appropriate relief, which, in this case, requires balancing a

variety of considerations.  The prejudice that inures to EEOC from the additional

witness disclosures decreases with the number of additional witnesses JBS is permitted

to disclose, as does any delay that may result from EEOC deposing such witnesses.

However, the fewer witnesses JBS is permitted to disclose, the more likely it becomes

that the Court's ruling would result in the exclusion of a witness central to JBS's case.

*Cf. Rimbert*, 647 F.3d at 1250 (considering whether to "exclud[e] from trial the testimony

of Rimbert's only causation expert"); *In re Urethane Antitrust Litig.*, 2013 WL 4094429,

at *2 (D. Kan. August 13, 2013) ("[l]eaving plaintiffs without an expert would essentially

determine these cases in Dow's favor, and, given the lack of a trial date, refusal to allow

this substitution would constitute an unduly harsh sanction on plaintiffs").  Unfortunately,

the additional witness disclosures, with limited exceptions, do not provide sufficient

information for the Court to determine which witnesses are central to JBS's trial defense

such that their exclusion would have an outcome-determinative effect on this case.

*See, e.g.* Docket No. 259-1 at 3 ("Mr. Abalos has knowledge and information which

rebuts and/or impeaches testimony given by Plaintiff's Phase I witnesses concerning

the events of September 2008 and accommodation of Muslim employees' prayer

practices.").  EEOC indicates that JBS has listed 45 of the additional witnesses in the

parties' January 20, 2015 proposed final pretrial order, which may provide some

suggestion as to which witnesses JBS intends to rely on at trial.  Docket No. 399 at 3

n.1 (citing Docket No. 387); *see also* Docket Nos. 427 and 433.  However, the proposed

final pretrial orders are still subject to amendment and, moreover, do not purport to list those witnesses the parties intend to use for rebuttal or impeachment.  Thus, the proposed final pretrial orders do not appear to be an accurate indication of which witnesses are central to JBS's defense.

Because JBS has not provided sufficient information regarding the importance of each additional witness and has not otherwise suggested what alternative relief may be appropriate, the Court is not in a position to determine which of the 103 witnesses are central to JBS's defense.  In light of JBS's lack of diligence in disclosing additional witnesses, the *Burks* factors, and the fact that the number of additional witnesses is disproportionate to the number of witnesses timely designated in the amended witness list, the Court finds that good cause exists to amend the scheduling order to grant JBS leave to designate 30 additional witnesses of its choosing.  JBS must select the 30 witnesses from the 103 witnesses listed in the additional witness disclosures.[11] Although this remedy is unlikely to completely satisfy either party, the Court finds that, in light of the relevant considerations, it is the most equitable way to resolve the present dispute.[12]

---

[11]Because this order may affect whether EEOC seeks to reopen discovery for the purpose of deposing JBS's additional witnesses and, if so, how much time EEOC requires to conduct such depositions, the Court will deny without prejudice EEOC's Motion to Amend the Scheduling Order to Allow Depositions of Defendant's Recently Added Witnesses [Docket No. 399].

[12]Because the Court found a sufficient basis to revisit the magistrate judge's conclusion regarding good cause, the Court need not reach EEOC's remaining arguments.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that JBS's Objection to Magistrate Judge's Order [Docket No. 338] is **OVERRULED**.  It is further

**ORDERED** that EEOC's Objection Pursuant to Fed.R.Civ.P. 72(a) to Decision of Magistrate Judge to Amend Scheduling Order [ECF 392] to Permit 103 Additional Witnesses [Docket No. 395] is **OVERRULED** in part and **SUSTAINED** in part.  It is further

**ORDERED** that JBS's Motion to Amend Scheduling Order to Permit Listing of Additional Witnesses Previously Disclosed [Docket No. 341] is **GRANTED** in part and **DENIED** in part as indicated in this order.  It is further

**ORDERED** that EEOC's Motion to Amend the Scheduling Order to Allow Depositions of Defendant's Recently Added Witnesses [Docket No. 399] is **DENIED** without prejudice.  It is further

**ORDERED** that, on or before two weeks from the date of this Order, JBS shall disclose to EEOC a list of 30 additional witnesses it seeks to add to its Phase I witness list.  Such witnesses shall be deemed timely designated on the dates they were originally disclosed to EEOC.  Any motion by EEOC to reopen discovery shall be filed within two weeks of JBS's disclosure and shall indicate for how long discovery should be reopened for the limited purpose of deposing JBS's additional witnesses.

DATED March 16, 2016.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge