IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

and

IRAQ ABADE, et al.,

      Plaintiffs-Intervenors,

and

MARYAN ABDULLE, et al.,

      Plaintiffs-Intervenors,

v.

JBS USA, LLC,
d/b/a JBS Swift & Company,

      Defendant.

_____

**ORDER**
_____

      This matter is before the Court on plaintiff's Motion for Sanctions for the Loss or Destruction of Documents Driectly [sic] Relevant to Swift's Allegations of Undue Hardship [Docket No. 518] and Defendant's Motion for Leave to File a Supplement or Sur-reply to the EEOC's Motion for Sanctions for the Loss and Destruction of Documents Directly Relevant to JBS's Allegations of Undue Burden [Docket No. 543].

## I. BACKGROUND

In this employment discrimination case, plaintiff Equal Opportunity Employment Commission ("EEOC") claims that defendant JBS USA, LLC ("JBS") failed to reasonably accommodate its Muslim employees' requests for prayer breaks. *See* Docket No. 490 at 2-3. JBS argues that accommodating such requests would have caused an undue burden on JBS. *Id*. at 5.

JBS operates a beef processing plant in Greeley, Colorado. *EEOC v. JBS USA, LLC*, 115 F. Supp. 3d 1203, 1208 (D. Colo. 2015). During the first week of Ramadan 2008, a dispute between JBS and its Muslim employees over their opportunities to pray at work came to a head. *Id*. at 1212-13. As a result, hundreds of Muslim employees walked off the job. *Id*. On September 10, 2008, JBS fired ninety-six Muslim employees that JBS claims refused to return to work. *Id*. at 1208. These employees worked on a production line of the plant where cattle carcasses are pulled by a variable-speed chain while employees cut off the portions of the carcass that they are responsible for processing. *Id*. at 1209-10. After the mass termination, numerous former employees filed discrimination charges with the EEOC. *Id*. In response, on February 3, 2009, JBS provided the EEOC with a position statement, which claimed that granting prayer breaks to employees would be an undue burden, in part, due to losses resulting from "each minute of production down-time." Docket No. 518-7 at 5. JBS has continued to press its undue burden affirmative defense throughout the case. For example, in its summary judgment motion, JBS argued that production line slowdowns and downtime would have been caused by allowing prayer breaks to Muslim employees. Docket No.

330 at 39-40 ("[T]he result [of scheduling breaks to coincide with prayer times would be] 12 minutes per day of lost production, or additional 'downtime.'"); *JBS USA, LLC*, 115 F. Supp. 3d at 1235-37. JBS intends to present evidence and expert testimony at trial about the impact of unscheduled breaks, Docket No. 490 at 30, ¶ 9, and how granting prayer breaks would have resulted in more than *de minimis* costs for JBS. Docket No. 518-9 at 1-6.

The EEOC seeks sanctions against JBS for JBS's failure to preserve and produce two types of records tracking delays on JBS's production line. The first type of record is a "Down Time Report," which is a handwritten note "for each shift of each day" that identifies the "exact time the [production line] chain stopped, the duration of time (in seconds), and the reason for the stop." Docket No. 518 at 2.[1] The information from the Down Time Reports is entered into a computer and summarized on the second type of record, a "Clipboard" document, which also shows "slowdown minutes" that are informally reported through handwritten notes. *Id*. at 3. A Clipboard provides the "total number of minutes of downtime and slowdown for each shift every day, sometimes with explanations for the interruptions." *Id*.

The EEOC sought discovery from JBS about its undue burden affirmative defense. Relevant here, on November 21, 2012, the EEOC served a production request, referred to herein as "Request 18," that stated:

> 18. Produce all reports or data showing all dates and times the Fabrication lines on any and all shifts were stopped, as well as the speed

---

[1] The facts stated herein are drawn from the record and the exhibits attached to both parties' briefing and are, unless otherwise stated, undisputed.

the Fabrication lines ran, since January 1, 2008. This was testified by Bill Danley as data maintained on the down-time computer.

Docket No. 518-14 at 10, ¶ 18.[2] In response, JBS produced documents that included records showing scheduled breaks,[3] but did not provide or reference the Down Time Reports or Clipboards, which show unplanned downtime and slowdowns. Docket No. 518 at 5.

Discovery for Phase I of this litigation closed on August 15, 2013. But in May, 2016, the assigned magistrate judge reopened discovery for the limited purpose of allowing the EEOC to depose thirty additional witnesses disclosed by JBS. Docket No. 458. Following some of these depositions, the EEOC sent a letter to JBS stating that "we have heard a number of supervisors and managers refer to records in their depositions that are responsive to, in particular, our requests for . . . reports or data showing stops or speeds of the fabrication lines," which the EEOC said had never been produced. Docket No. 518-18 at 3. The EEOC requested to meet and confer and noted that it had requested that JBS supplement its production. *Id*.

---

[2] The EEOC's motion also cites a request for production served November 6, 2012, which sought "all charts, graphs, reports, or other documents that demonstrate any correlation or lack thereof between attendance (number of employees working on the Fabrication floor or any particular line or job) and quality of product, injuries, or yield." Docket No. 518-10 at 8, ¶ 17.

[3] JBS's collective bargaining agreement grants employees two scheduled breaks: one scheduled, paid rest break and a scheduled unpaid meal period. *JBS USA, LLC*, 115 F. Supp. 3d at 1210. All other breaks, including employees returning late from scheduled breaks, will be referred to herein as "unscheduled breaks." *See id*. at 1211 ("Absent regular [scheduled] breaks, employees are allowed to leave the line to get a drink of water or for restroom emergencies.").

JBS initially produced an example Clipboard in August 2016 and then produced more such records in October 2016. Docket No. 518 at 6. The produced records included "about half a dozen Clipboards from 2012, approximately five to six months of Clipboards from 2014, 2015, and 2016." *Id*. JBS represented that "no other records existed, including all those from 2008 to 2011." *Id*.

On October 27, 2016, JBS for the first time produced Down Time Reports, producing one week of October 2016 reports for the A shift. Docket No. 518 at 7. In November 2016, JBS produced the remainder of the Down Time Reports for 2016, Docket No. 518-30 at 1-2, ¶¶ 2-3, and indicated those were "all of the available hand-written downtime reports. All others have been destroyed." Docket No. 518-3 at 1. JBS later testified via Rule 30(b)(6) deposition that the Down Time Reports were shipped to storage each year, but may have been destroyed. Docket No. 518 at 7-8. On June 30, 2017, JBS produced thirty-four Down Time Reports and Clipboards, including thirteen records for September 2-9, 2008. Docket No. 518 at 8; Docket No. 519-6. JBS claims that it located these records by searching JBS's Greeley, Colorado warehouse for "a day," Docket No. 529 at 3, and states that it "reasonably believes that the missing Clipboards and Down Time Reports are in the boxes" stored there. *Id*. at 8.

## II. DISCUSSION

### A. Failure to Supplement Production

Parties are required to supplement their responses to discovery requests "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has

5

not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Rule 37 provides for sanctions for failure to make required disclosures or supplement discovery responses, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).

JBS does not deny the obvious, which is that the Down Time Reports are responsive to Request 18. *See* Docket No. 529 at 5. JBS does, however, deny that the Clipboards are responsive to Request 18, but admits that they show "the average line speed." *Id*., n.1. The Court finds that the Clipboards are responsive to Request 18 in that they show "the speed the Fabrication lines ran."[4] Other than arguing that the Clipboards were not responsive, JBS does not specifically argue against it having a duty to supplement its production with the Down Time Reports and Clipboards pursuant to Fed. R. Civ. P. 26(e). Docket No. 529 at 12-13. Because JBS failed to supplement its production with the responsive records in a timely manner and because JBS has not shown that such failure was "substantially justified or harmless," the Court may impose sanctions pursuant to Fed. R. Civ. P. 37(c)(1), including "appropriate sanctions . . . listed in Rule 37(b)(2)(A)(i)-(vi)."

---

[4] JBS states that the line speed is noted in a different document that was produced, but the EEOC points out that the information is a daily average, rather than separate information for each shift as in the Clipboards. Docket No. 537 at 4. Because the religious accommodation issues in this case predominately concern the prayer times that would occur during the later "B" shift that had more Muslim workers, differences between shifts could themselves be relevant.

### B. Spoliation of Evidence

Spoliation occurs when a party loses or destroys evidence that it had a duty to preserve because it was relevant to proof of an issue at trial in current or anticipated litigation. *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1150 (10th Cir. 2009). "Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236, 1243 (D.N.M. 2016) (internal quotation marks omitted)*; see also Jordan F. Miller Corp. v. Mid-Continent Aircraft Service, Inc.*, 1998 WL 68879, at *7 (10th Cir. Feb. 20, 1998) (unpublished) (upholding dismissal of claims as a sanction for "loss or destruction" of evidence). "A spoliation sanction is proper where: (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015) (internal quotation marks omitted).

#### 1. JBS Had a Duty to Preserve the Records

JBS argues that it did not have a duty to preserve these documents because it "had no way of knowing or anticipating that the EEOC would be interested in knowing the specific time of every instance of every day that the production line stopped for an unplanned or unexpected reason." Docket No. 529 at 8. This argument is unpersuasive. In terms of preserving the documents, instead of allowing them to be warehoused, the argument ignores the fact that JBS asserted an undue burden defense within a year of the September 2008 incident and after charges of

discrimination had been filed against it. Docket No. 518-7 at 5. Thus, JBS had a duty

to preserve documents relevant to the burden posed by the proposed accommodations.

*See Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) ("This obligation to

preserve evidence arises when the party has notice that the evidence is relevant to

litigation . . . as for example when a party should have known that the evidence may be

relevant to future litigation."). JBS should have known that these records were relevant

to its affirmative defense and therefore preserved them in a manner such that they

could be reasonably retrieved if required. Moreover, regardless of whether there was a

duty to preserve the records before the EEOC asked for them, once the EEOC asked

for them, they should have been preserved. The documents are plainly responsive to

Request 18. Request 18 asks for "all reports or data showing all dates and times the

Fabrication lines on any and all shifts were stopped, as well as the speed the

Fabrication lines ran." Docket No. 518-14 at 10, ¶ 18. The Down Time Reports and

Clipboards contain information regarding stoppages and slowdowns of the production

line, as well as the reason for such delays. Thus, JBS should have preserved these

documents as being responsive to Request 18. Fed. R. Civ. P. 26(b), 34(a)(1)(A).

JBS's supposed uncertainty about whether the EEOC wanted highly detailed

information is irrelevant. Therefore, the Court finds that JBS had a duty to preserve the

Clipboards and Down Time Reports.

Despite admitting that it has searched for the reports, but was unable to find

more that a few dozen, JBS claims that the "EEOC has not proven that JBS destroyed

or lost any of the subject records." Docket No. 529 at 14; *see also* Docket No. 518-33

at 27-28, 139:25-140:9 (defense counsel stating "We've been trying to find them. . . .

No one has been able to find them, and we keep looking.").  The EEOC has provided a

statement from JBS's counsel claiming that the Down Time Reports that were not

already produced had been destroyed.  Docket No. 518-3 at 1.  To the extent JBS now

claims that the records were not destroyed but are probably stored somewhere in its

warehouse, it has done so equivocally.[5]

Even if the Court assumes that many or most of the records are in the

warehouse and therefore have not been destroyed, JBS cannot claim that the

documents are not lost.  JBS claims that searching for the records would be unduly

burdensome.  *See* Docket No. 529 at 8.  Searching for these documents now is

burdensome only because JBS failed to preserve and produce the records on an

ongoing basis as they were created.  *See Kozlowski v. Sears, Roebuck & Co.*, 73

F.R.D. 73, 76 (D. Mass. 1976) ("The defendant may not excuse itself from compliance

with Rule 34, Fed.R.Civ.P., by utilizing a system of record-keeping which conceals

rather than discloses relevant records, or makes it unduly difficult to identify or locate

---

[5] For example, JBS's Rule 30(b)(6) deponent testified:

Q Okay.  Do you know what years have been stored off site for the Down
Time Reports?
A No.
Q All right.  Do you know for sure if they're stored or if they're destroyed?
A Not for sure.
Q Okay.  So they might get destroyed also?
A Possibility.
. . .
Q And you don't know if they're stored off site or just annually destroyed?
A Not for sure on any of that.

Docket No. 518-33 at 27, 139:2-19; *see also* Docket No. 529 at 8 ("reasonably
believes").

them, thus rendering the production of the documents an excessively burdensome and costly expedition."). Notably, JBS does not claim that it would have been burdensome to produce the records to the EEOC on an ongoing basis or to separately retain and store the records at the plant. *See* Docket No. 518-33 at 17, 53:10-25 (JBS testimony that it keeps the year's handwritten reports at the plant until the end of the year). Moreover, JBS does not explain how records that it claims would take "hundreds of man hours" to locate now are not lost. Docket No. 529 at 4. The Court finds that the Downtime Reports and Clipboards that were not produced were either lost or destroyed by JBS.

### 2. The EEOC is Prejudiced by the Records' Loss or Destruction

JBS argues that the EEOC has not shown that it was prejudiced because the EEOC cannot show the records are relevant. JBS argues that the records do not show whether any slowdown or stoppage was related to a prayer break because the information they contain "is only as specific as the information known to the person filling out the Down Time Report." Docket No. 529 at 11 (citing Docket No. 518 at 7). And yet, several JBS managers have claimed that prayer breaks caused production delays. *See* Docket No. 518 at 4 (quoting depositions). This is precisely the testimony that the EEOC believes it could rebut through the Down Time Reports and Clipboards. *Id*. at 12. In effect, JBS argues that its managers know that production line stoppages are caused by prayer breaks, but nonetheless claims that Down Time Reports, which state the reason for stoppages and are filled out by those same managers, would not reveal such information. The same contradiction applies with respect to Clipboards, which contain explanations for slowdowns. Such explanation, or the lack of such

explanations, during times of unscheduled prayer breaks would be relevant to JBS's

undue burden defense. The EEOC points out that the detailed information in the Down

Time Reports includes the reason for stoppages, including employees being away from

their positions or being late returning from breaks, and precise time of the stoppages,

which can be correlated with the calendar of Muslim prayer times to determine if the

stoppages correlate with prayer times.[6]  *See, e.g.*, Docket No. 519-1 at 1, 3.  If the

records did reveal a correlation or lack thereof between prayer times and production

line slowdowns or stoppages due to Muslim employees being on unscheduled breaks,

such evidence would make it "more or less probable" that production was reduced by

unscheduled prayer breaks.  Fed. R. Evid. 401(a).

Contemporaneous evidence that unscheduled breaks did cause production

delays is particularly relevant.  Courts are skeptical of employer claims that a proposed

accommodation will result in undue hardship absent proof that the accommodation

does result in actual hardship.  *See Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515,

520 (6th Cir. 1975) ("[W]e are somewhat skeptical of hypothetical hardships that an

employer thinks might be caused by an accommodation."); *Toledo v. Nobel-Sysco, Inc.*,

892 F.2d 1481, 1490 (10th Cir. 1989) (quoting *Draper* and holding "that an employer

who has made no efforts to accommodate the religious beliefs of an employee or

applicant before taking action against him may only prevail if it shows that no

---

[6] The EEOC claims that the Down Time Records that were produced by JBS show only one occasion when an unscheduled break leading to production delay correlates with the Muslim payer times calendar, resulting in only one minute of downtime.  Docket No. 518 at 13 (citing Docket No. 518-1 at 3).  JBS does not dispute this analysis.

accommodation could have been made without undue hardship.").  Records such as

those sought, which potentially show the actual impact of unscheduled employee prayer

breaks, are particularly important to understanding the impact such breaks would have

on production line slowdowns or stoppages because they would provide

contemporaneous records of whether unscheduled breaks led to production downtime.

Accordingly, the Court finds that the EEOC was prejudiced by JBS's spoliation of

evidence.

### C.  Determination of Sanction

In determining the appropriate sanction, courts consider factors that include "(1)

the degree of actual prejudice to the defendant; (2) the amount of interference with the

judicial process; [and] (3) the culpability of the litigant."  *Gates Rubber Co. v. Bando*

*Chem. Indus., Ltd.*, 167 F.R.D. 90, 101 (D. Colo. 1996) (quoting *Ehrenhaus v.*

*Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)).  "The entry of default judgment or the

imposition of adverse inferences require a showing of bad faith."  *Jones*, 809 F.3d at

580 (citations omitted).

The EEOC asks that "(1) JBS be precluded from arguing at trial or presenting

any evidence that allowing prayer breaks causes downtime or slowdowns in production;

(2) JBS be precluded from affirmatively relying at trial on the late-produced documents;

and (3) that the Court draw an adverse inference that the unavailable records would

show no downtime or slowdown attributable to prayer breaks."  Docket No. 518 at 2.

JBS argues that the sanctions sought by the EEOC are inappropriate.  The Court

agrees with JBS that an adverse inference would be inappropriate because the EEOC

has not shown that JBS acted in bad faith.  *See Jones*, 809 F.3d at 580.  Moreover,

JBS has disclaimed any intention of affirmatively relying on the Down Time Reports or

Clipboards.  Docket No. 529 at 12.  However, the Court agrees with the EEOC that JBS

should be precluded from "arguing at trial or presenting any evidence that allowing

prayer breaks causes downtime or slowdowns in production."  Docket No. 518 at 2.

JBS knew that litigation was imminent shortly after the events of Ramadan 2008[7]

and raised an undue hardship defense regarding the discrimination charges within a

year of those events.  Nonetheless, JBS failed to take necessary steps to preserve

reasonable access to the relevant records or prevent their destruction.  *See Jordan F.*

*Miller Corp.*, 1998 WL 68879, at *7.  JBS's neglect of its preservation duties continued

even after the EEOC specifically requested records with the information contained in

the Down Time Reports and Clipboards.  *See id*. (finding that loss of evidence after it

was requested by the opposition warranted sanction).  Despite claiming to still possess

some of the records, JBS failed to supplement its responses.  *See* Fed. R. Civ. P.

26(e).  While these events may not be sufficient to show bad faith, proof of bad faith is

not required to warrant a spoliation sanction or a sanction under Rule 37(c).  *See 103*

*Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006) ("Defendant was not

required to show that plaintiff acted in bad faith in destroying the evidence in order to

prevail on its request for spoliation sanctions.").

---

[7] JBS was under preservation obligations pursuant to regulation as soon as it became aware that charges of discrimination were filed with the EEOC.  *See* 29 C.F.R. § 1602.14.

The Court will bar JBS from presenting evidence, testimony, or argument in its motions, at hearings, or at trial that unscheduled prayer breaks led to production line slowdowns or stoppages. The Court imposes this sanction pursuant to Rule 37(c)(1) as to JBS's failure to preserve and produce the records and under its inherent powers as to spoliation. Fed. R. Civ. P. 37(b)(2)(A)(ii), 37(c)(1)(C); *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1225-26 (10th Cir. 2017) ("District courts have substantial weaponry in their arsenal to shape the appropriate relief for a party's spoliation of evidence." (internal quotation marks omitted)).

The Court finds that this sanction appropriately addresses the prejudice to the EEOC resulting from JBS's spoliation or failure to produce the records and is proportional to JBS's culpability. *See Gates Rubber Co.*, 167 F.R.D. at 106. In particular, this sanction is tailored to the evidence lost, destroyed, or withheld by JBS because it alleviates the prejudice which the EEOC would otherwise suffer, namely, that JBS may present evidence of stoppages through witnesses, but the EEOC would not be able to rebut such testimony with records that would likely prove whether stoppages actually occurred and, perhaps, for what reason. *See* Docket No. 518 at 12-13 ("Without these records, the EEOC is deprived of this evidence to challenge the non-specific testimony offered by JBS managers."). At the same time, JBS's other undue hardship arguments, which are not implicated in the loss or destruction of the records, such as that the proposed accommodations would increase costs, create food safety issues, create personal safety issues, impose burdens on co-workers, or lower

employee morale, will not be substantially hampered by this sanction.  *See* Docket No.

548 at 8-9.[8]

### D. Motion to file a Surreply

The Court will deny JBS's motion to file a surreply because the Court does not

address the argument that JBS claims was new in the EEOC's reply, namely, that "JBS

concealed the existence of the Down Time Reports and Clipboards."  Docket No. 543 at

2, ¶ 2.

## III.  CONCLUSION

Accordingly, it is

**ORDERED** that plaintiff's Motion for Sanctions for the Loss or Destruction of

Documents Driectly [sic] Relevant to Swift's Allegations of Undue Hardship [Docket No.

518] is **GRANTED** in part.  It is further

**ORDERED** that, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii) and 37(c)(1)(C) and

the Court's inherent powers, defendant JBS USA, LLC is barred from presenting

evidence, testimony, or argument in its motions, at hearings, or at trial that unscheduled

prayer breaks led to production line slowdowns or stoppages.  It is further

---

[8] However, to the extent that any of these other undue hardship claims depends,
in whole or in part, on the existence of production line slowdowns or stoppages due to
unscheduled prayer breaks, JBS or its witnesses will need to factor out that aspect of
the hardship resulting from slowdowns or stoppages.  JBS will be able to argue that
accommodations consisting of a mass break would cause downtime or other harms.
*See, e.g.*, Docket No. 529 at 5.

**ORDERED** that Defendant's Motion for Leave to File a Supplement or Sur-reply to the EEOC's Motion for Sanctions for the Loss and Destruction of Documents Directly Relevant to JBS's Allegations of Undue Burden [Docket No. 543] is **DENIED**.

DATED August 4, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge