IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No.  10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

and

IRAQ ABADE, et al.,

      Plaintiffs-Intervenors,

and

MARYAN ABDULLE, et al.,

      Plaintiffs-Intervenors,

v.

JBS USA, LLC,
d/b/a JBS Swift & Company,

      Defendant.

---

## ORDER

---

This matter is before the Court on Plaintiff EEOC's Motion for Reconsideration or, in the Alternative, for Certification Pursuant to 28 U.S.C. § 1292(b) [Docket No. 631] filed on October 30, 2018.  The Equal Employment Opportunity Commission ("EEOC") requests that the Court reconsider its Phase I Findings of Fact and Conclusions of Law ("Phase I Findings") [Docket No. 620], which were entered on September 24, 2018. Defendant JBS USA, LLC, d/b/a JBS Swift & Company ("JBS") responded on

November 20, 2018, Docket No. 643, to which the EEOC replied on December 4, 2018. Docket No. 644.  In the alternative, the EEOC asks the Court to certify to the Tenth Circuit the question of whether an employer's failure to provide a religious accommodation, by itself, may constitute an adverse employment action under Section 703 of Title VII.  Docket No. 631 at 14.  Defendant does not oppose this request. Docket No. 643 at 15.

## I. BACKGROUND

The EEOC initiated this lawsuit against defendant on August 30, 2010, alleging a pattern or practice of discrimination on the basis of race, national origin, and religion, as well as raising claims of retaliation.  Docket No. 1 at 1-2.  On August 8, 2011, the Court issued an order bifurcating the case.  Docket No. 116.  Phase I of the trial was to address three issues: (1) whether defendant engaged in a pattern or practice of unlawfully denying Muslim employees reasonable religious accommodations to pray and break their Ramadan fast from December 2007 through July 2011; (2) whether defendant engaged in a pattern or practice of disciplining employees on the basis of their race, national origin, or religion during Ramadan 2008; and (3) whether defendant engaged in a pattern or practice of retaliating against a group of black, Muslim, Somali employees for engaging in protected activity in opposition to discrimination during Ramadan 2008.  *Id.*  The Court presided over a 16-day trial for Phase I from August 7 to August 31, 2017.  Docket Nos. 577-592.

On September 24, 2018, the Court issued its Phase I Findings.  Docket No. 620. It found that (1) while defendant had denied Muslim employees a reasonable religious accommodation to pray during Ramadan (other than in 2009 and 2010), the EEOC had

not made a requisite showing that any employees suffered a materially adverse employment action as a result of defendant's policy denying unscheduled prayer breaks, *id.* at 82; (2) the EEOC had failed to prove that defendant's disciplinary actions during Ramadan 2008 were motivated by a discriminatory animus, *id.* at 90; and (3) the EEOC had failed to demonstrate that defendant's discipline of employees during Ramadan 2008 was for a retaliatory purpose rather for engaging in a work stoppage. *Id.* at 95. The Court dismissed the EEOC's Phase I pattern or practice claims. *Id.*

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Hatfield v. Bd. of Cty. Comm'rs for Converse Cty.*, 52 F.3d 858, 861 (10th Cir. 1995). Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)). A motion to reconsider may be construed as a motion to amend or alter the judgment under Fed. R. Civ. P. 59(e) or as a motion seeking relief from judgment under Fed. R. Civ. P. 60(b). *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Because a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) must be filed within 28 days after entry of judgment, a motion to reconsider filed outside of that window is analyzed under Rule 60(b). Fed. R. Civ. P. 59(e); *Flores v. Chapdelaine*, No. 12-cv-00065-PAB, 2014 WL 5812120, at *1 (D. Colo. Nov. 7, 2014) (citing *Van Skiver*, 952 F.2d at 1243). Rule 60(b) allows a court to grant relief from an order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990). "A plaintiff must overcome a higher hurdle to obtain relief from a post-judgment motion than on direct appeal from a judgment." *LaFleur v. Teen Help*, 342 F.3d 1145, 1153 (10th Cir. 2003).

Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. *Green v. Fishbone Safety Sols., Ltd.*, 303 F. Supp. 3d 1086, 1091-92 (D. Colo. 2018). Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

### III. ANALYSIS

#### A.  Motion to Reconsider

The EEOC asks the Court to reconsider Phase I Findings on the following bases: (1) the Court did not consider the EEOC's argument that the denial of a religious accommodation is itself an adverse employment action; and (2) the Court overlooked controlling law when it concluded that Fardowsa Ali's suspension was not an adverse employment action.  Docket No. 631 at 1-2.

First, the EEOC argues that the Court failed to consider its argument that the denial of a religious accommodation, standing alone, can constitute an adverse employment action.  However, the Court did consider this argument, noting that the argument had already been rejected by another court in this district.  *See* Docket No. 620 at 57 n.24 ("The *JetStream* court also rejected two additional arguments raised by the EEOC in a motion for reconsideration: (1) that a failure to accommodate is itself an adverse employment action sufficient to support a claim for relief. . . ." (citing *EEOC v. JetStream Ground Servs., Inc.*, No. 13-cv-02340-CMA-KMT, 2016 WL 879625, at *3-*5 (D. Colo. Mar. 2, 2016)).   The Court then stated that it "agree[d] with the *JetStream* court that freestanding religious accommodation claims are not viable" in light of *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028 (2015).  Docket No. 620 at 57. The Court, however, disagrees with JBS that the EEOC's pattern or practice claims are freestanding."  *Id.*  Thus, contrary to the EEOC's assertion, the Court did consider this argument, and, after rejecting it, continued with its adverse employment action analysis

after finding that the EEOC's discrimination claims were not "freestanding."  *Id.*[1]

The EEOC next argues that the Court should grant reconsideration on the issue of whether JBS's suspension of Fardowsa Ali[2] constitutes an adverse employment action.  Docket No. 631 at 11.  In its Phase I Findings, the Court found that Ms. Ali "did not suffer a materially adverse employment action because [her] suspension was remitted and she was paid her wages."  Docket No. 620 at 79 (citing *Espinoza v. Dep't of Corr.*, No. 10-cv-00548-CMA-KLM, 2011 WL 5024826, at *6 (D. Colo. Oct. 21, 2011), *aff'd*, 509 F. App'x 724 (10th Cir. 2013)).  The EEOC claims that this was error, citing *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998), for the proposition that "[a]ctions such as suspensions or terminations are by their very nature adverse, even if subsequently withdrawn."  Docket No. 631 at 11.

In *Roberts*, the Tenth Circuit found that the plaintiff had suffered an adverse employment action when, within a two-year period, he "received twenty warning letters, two suspensions, and one termination" from his employer.  149 F.3d at 1104.  But while

---

[1]The remainder of the EEOC's arguments regarding the adverse-employment-action issue – such as its argument that *JetStream* is inapplicable because it analyzed the issue under 42 U.S.C. § 2000e(j) rather than under § 2000e-2(a)(1), *see* Docket No. 631 at 7 – are arguments that could have been raised earlier, but were not.  *See* Docket Nos. 549, 551, 605 (EEOC declining to raise this argument in its trial brief, proposed findings of fact and conclusions of law, and revised proposed findings of fact and conclusions of law).  As a result, the Court declines to address these arguments. *Servants of Paraclete*, 204 F.3d at 1012 ("It is not appropriate [on a motion to reconsider] to revisit issues already addressed or advance arguments that could have been raised in prior briefing.").

[2]In its Phase I Findings, the Court found that Ms. Ali was suspended without pay as discipline she received for trying to pray.  Docket No. 620 at 43-44.  The Court also found that Ms. Ali was later reinstated, she was paid for the time she was suspended, and her suspension was reduced to a verbal warning.  *Id.* at 44.

6

the Tenth Circuit described suspensions or terminations as "adverse" in nature, even if later withdrawn, the Tenth Circuit did not hold that a suspension is automatically or necessarily an adverse employment action within the meaning of Title VII.  *See id.*

After *Roberts*, the Tenth Circuit discussed the necessary parameters of an adverse employment action in *Hillig v. Rumsfeld*, 381 F.3d 1028 (10th Cir. 2004).  In *Hillig*, the Tenth Circuit reviewed a finding that the plaintiff had not suffered an adverse employment action when her supervisors gave her negative employment evaluations because the plaintiff had not suffered "an actual tangible injury."  *Id.* at 1031.  The Tenth Circuit reversed.  *Id.* at 1035.  It determined that, while an adverse employment action includes those acts that constitute a significant change in employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," the court had "not held that the term 'adverse employment action' is limited to such acts."  *Id.* at 1032-33.  Rather, the Tenth Circuit employs a case-by-case approach to determine whether employer conduct rises to the level of an adverse employment action.  *Id.* at 1033.  The Tenth Circuit did set out, however, the rule that an adverse employment action would not include "those acts that merely have a *de minimis* impact upon an employee's future job opportunities."  *Id.* (citing *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 935 (10th Cir. 2001)).  Thus, "while we require that the 'employer's conduct [] be *materially* adverse to the employee's job status,' . . . we allow a plaintiff to show materiality other than by showing a tangible employment action."  *Id.* (quoting *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003) (alteration marks and emphasis in original)).

A rule that a suspension is always an adverse employment action, regardless of its circumstances or effect, contradicts the Tenth Circuit's directive that the existence of an adverse employment action be determined on a "case-by-case approach." *See Hillig*, 381 F.3d at 1033; *see also Sanchez v. Denver Public Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) ("[W]e take a case-by-case approach, examining the unique factors relevant to the situation at hand."). Using this approach, the Court must determine that the action is material in order to find it actionable. *Hillig*, 381 F.3d at 1033; *cf. Orr. v. City of Albuquerque*, 417 F.3d 1144, 1151 n.7 (10th Cir. 2005) (finding that the district court "correctly" noted that a decision "to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action.") (internal quotation omitted).

Here, the Court found that Ms. Ali's suspension was insufficiently material to be actionable, not only because the suspension was withdrawn, but also because Ms. Ali was paid her wages and suffered no adverse consequence as a result of her temporary suspension. Docket No. 620 at 79. The EEOC made no allegation that Ms. Ali's suspension materially altered her employment status, denied her income to which she was entitled, or otherwise was materially adverse to her current or future employment status. *See* Docket No. 1 (EEOC complaint); *see also* Docket No. 605 at 41, ¶ 149; *id.* at 83, ¶ 353 (EEOC's revised proposed findings of fact and conclusions of law). Thus, the EEOC has failed to show that the Court's decision not to find that Ms. Ali's suspension was automatically an adverse employment action, rather than considering the surrounding circumstances on a case-by-case basis, was clear error so as to justify

8

"extraordinary relief" under Rule 60(b).

Plaintiff has not demonstrated that there is an extraordinary circumstance justifying relief from judgment under Rule 60(b) or that there is a need to correct clear error or manifest injustice. As a result, plaintiff's motion for reconsideration will be denied.

### B.   Motion to Certify

The EEOC, in the alternative, asks the Court to certify to the Tenth Circuit the question of whether an employer's failure to provide a religious accommodation can be, in and of itself, an adverse employment action under Section 703 of Title VII. Docket No. 631 at 14. Defendant does not oppose this request. Docket No. 643 at 15.

Under 28 U.S.C. § 1292(b), a district court may certify an interlocutory order for appeal if (1) "the order involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" on that issue; and (3) certification "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "A district court has discretion in determining whether to certify an order for interlocutory appeal." *Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, No. 09-cv-00858-WJM-MEH, 2011 WL 1882829, at *2 (D. Colo. May 17, 2011). "Only 'exceptional' circumstances warrant interlocutory appeals under § 1292(b)." *Id.* (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996)); *see also Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) ("Unless a litigant can show . . . that the order can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.").

The Court declines to exercise its discretion to certify this issue for interlocutory appeal. The Tenth Circuit recently addressed the issue in a separate, but similar, context – whether the denial of a disability accommodation can itself be an adverse employment action under the Americans With Disabilities Act ("ADA").[3] *See Exby-Stolley v. Bd. of Cty. Comm'rs, Weld Cty., Colo.*, 906 F.3d 900 (10th Cir. 2018). In *Exby-Stolley*, the court rejected the plaintiff's argument that all failures to accommodate constitute adverse employment actions, *id.* at 918,[4] but did court consider whether, in the circumstances before the court, the employer's failure to accommodate could, by itself, constitute an adverse employment action. *Id.* The Court determined that it could not. *Id.*

After issuing its opinion in *Exby-Stolley*, the Tenth Circuit granted rehearing en banc and specifically asked the parties to brief the question of "[w]hether an adverse employment action is a requisite element of a failure-to-accommodate claim under the Americans with Disabilities Act ('ADA'), 42 U.S.C. §§ 12101-213." *Exby-Stolley v. Bd.*

_____

[3]The Tenth Circuit has stated that "[d]ue to the similarities between the ADA and Title VII, we generally interpret those statutes consistently." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 n.11 (10th Cir. 2011). *See also Lanman v. Johnson Cty., Kan.*, 393 F.3d 1151, 1155 (10th Cir. 2004) ("Given these similarities, this court, and many others, have used similar analyses when interpreting the two statutes.").

[4]The Tenth Circuit determined that, while a showing of a failure to accommodate would demonstrate "discriminat[ion] against a qualified individual on the basis of disability," it would not necessarily demonstrate that such discrimination was "in regard to . . . terms, conditions, and privileges of employment," another essential element of an ADA discrimination action. *Id.* at 908. An adverse employment action in the ADA context must be "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a), and the Tenth Circuit found that a failure to accommodate does not necessarily relate to terms and conditions of one's employment. *Exby-Stolley*, 906 F.3d at 911.

*of Cty Comm'rs*, 910 F.3d 1129, 1130 (10th Cir. 2018). Because the Tenth Circuit's en banc decision in *Exby-Stolley* will provide guidance on this issue, and will likely do so sooner than an appeal could be resolved in this case, the Court finds that certification of this issue for appeal would not materially advance the termination of the litigation. Rather, the potential for multiple levels of appeal may prolong the litigation further, which weighs against granting interlocutory review. *See Boughton v. Cotter Corp.*, 10 F.3d 746, 748 (10th Cir. 1993) (courts should consider "the need for efficient judicial administration, the delay caused by interlocutory appeals, and the burden on appellate courts imposed by fragmentary and piecemeal review.") Further, because an interlocutory appeal is not the only way in which the Court's order may be "effectually challenged," certification under 28 U.S.C. § 1292(b) is inappropriate. *Carson*, 450 U.S. at 84. For these reasons, the Court finds that this case is not "exceptional" so as to require interlocutory review and will not exercise its discretion to certify this issue for appeal.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiff EEOC's Motion for Reconsideration or, in the Alternative, for Certification Pursuant to 28 U.S.C. § 1292(b) [Docket No. 631] is **DENIED**.

DATED September 30, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge