**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-02103-PAB-KLM

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**,

      Plaintiff,

and

**IRAQ ABADE**, *et al*.,

      Plaintiffs-Intervenors,

v.

**JBS USA, LLC, d/b/a JBS SWIFT & COMPANY**,

      Defendant.

---

**PLAINTIFF EEOC'S RESPONSE OPPOSING DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)**

---

Almost nine years after JBS answered the EEOC's Complaint, long after the pleadings have been closed, and years after the completion of discovery and a four-week trial in Phase I of this long-pending litigation, JBS has filed a motion to dismiss which fails to satisfy the requirements of Rule 12(c). As discussed further below, JBS's motion should be denied because JBS cannot establish that no material issue of fact remains to be resolved – a requirement of Rule 12(c). It also makes little sense procedurally for the Court to engage in a plausibility determination at this stage of the litigation when the parties have invested substantial resources in discovery and JBS is well-informed about the factual bases of the EEOC's claims.

In addition, JBS's motion to dismiss should be denied because it ignores the EEOC's unique ability to bring class claims without asserting particularized facts for each aggrieved individual. Contrary to JBS's assertions, the EEOC does not stand in the shoes of the aggrieved individuals and "is not merely a proxy for the victims of discrimination." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 326 (1980). Although the EEOC must satisfy Rule 8, it does not need to plead individualized facts in order to do so. Instead, the EEOC provides JBS with fair notice of its claims by describing the class of employees affected by the alleged discrimination and then describing the discriminatory conduct experienced by the members of the class. Because the EEOC has done this for each of its four class claims, JBS's motion should be denied.

Alternatively, if the Court somehow finds the EEOC's claims are deficit, the proper recourse is not dismissal. Instead, under the liberal standard of Rule 15(a)(2), the EEOC should be given leave to amend its Complaint.

## I.      BACKGROUND

The EEOC filed its Complaint on August 30, 2010. ECF No. 1. Several groups of Intervenors filed separate Complaints thereafter. ECF Nos. 40, 61, 132, 137, 236, 263, 504. The EEOC's Complaint pled five claims for relief, including: (1) a pattern or practice of discriminatory treatment; (2) failure to accommodate religious beliefs and practices; (3) retaliation for requesting religious accommodation; (4) an unlawful hostile work environment on the bases of race, national origin, and religion; and (5) discriminatory discipline and discharge. ECF No. 1 at ¶¶ 44–74. All of the EEOC's claims allege unlawful conduct affecting a class of individuals denied employment opportunities. *Id.*

JBS challenged the EEOC's Complaint before the Court ordered bifurcation of some of the EEOC's pattern-or-practice claims. In November 2010, JBS sought dismissal with prejudice of the EEOC's Complaint in its entirety, raising numerous arguments under Rule 12. ECF No. 12. The Court rejected all of JBS's arguments and denied its motion to dismiss. ECF No. 99. On June 23, 2011, JBS then answered the EEOC's Complaint, denying nearly all the EEOC's factual allegations. ECF No. 104 at ¶¶ 8–43. In August 2011, the Court ordered bifurcation of some – but not all – of the EEOC's pattern-or-practice claims, ECF No. 116 at 18, and a scheduling order was later set for discovery and trial on Phase I, ECF No. 128.

Over the course of discovery, JBS obtained extensive information regarding the EEOC's claims and the claims of many Plaintiff Intervenors in this lawsuit. The EEOC and JBS exchanged over 140,000 pages of documents and the parties took over 145 depositions, with JBS taking 61 of those depositions. Nearly all of JBS's depositions were of Charging Parties who also are Plaintiff Intervenors in this case. And while Plaintiff Intervenors were precluded from participating in discovery, they were required to sit for depositions and respond to discovery propounded by JBS. ECF No. 148 at 11–12. After an extensive discovery process, JBS moved for and was denied summary judgment in Phase I. ECF Nos. 330, 418. The EEOC and JBS then engaged in a four-week trial in August 2017 with over 80 witnesses, including the testimony of 28 aggrieved individuals.

## II.    LEGAL STANDARD

A motion for failure to state a claim is analyzed the same whether raised before the close of pleadings, under Rule 12(b)(6), or after, under Rule 12(c). *Park Univ. Enter. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated on other grounds by Magnus, Inc. v. Diamond*

*State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013). In reviewing such a motion, the Court must accept the factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. *Id.*; *Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014). A plaintiff need only plead facts sufficient to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Claims are plausible when the pleadings show "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

After *Iqbal*, the Tenth Circuit made clear that "[t]here is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Thus, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Morse v. Regents of Univ. of Colo.*, 154 F.3d 1124, 1127 (10th Cir. 1998) (quotations omitted). The Tenth Circuit has long recognized "a policy which favors deciding cases on the merits as opposed to dismissing them because of minor technical defects." *Denver & Rio Grande W. R.R. v. Union Pac. R.R.*, 119 F.3d 847, 848 (10th Cir. 1997).

Additionally, "[a] motion for judgment on the pleadings 'should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park*, 442 F.3d at 1244). As a result, a motion under Rule 12(c) "only has

utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 (3d ed. Aug. 2019 Update) (hereinafter "Wright & Miller"). "[I]f the pleadings do not resolve all of the factual issues in the case, proceeding with discovery and potentially a trial on the merits would be more appropriate than an attempt at resolution of the case on a Rule 12(c) motion." *Id.* (citing *Roberts v. Robert V. Rohrman, Inc.*, 909 F. Supp. 545, 552 (N.D. Ill. 1995)). Like dismissal under Rule 12(b)(6), "judgment on the pleadings under Rule 12(c) is a drastic remedy that courts should otherwise use sparingly." *Aberkalns v. Blake*, 633 F. Supp. 2d 1231, 1233 (D. Colo. 2009).

## III.    ARGUMENT

### A. The Court should reject JBS's belated effort to use Rule 12(c) to resolve the case on procedural grounds.

Over eight years after the close of the pleadings and over six years after the dispositive motions deadline, JBS has brought a motion for judgment on the pleadings that does not comport with the underlying policy of Rule 12(c). As previously noted, a Rule 12(c) motion "'should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Colony*, 698 F.3d at 1228 (quoting *Park*, 442 F.3d at 1244). Accordingly, Rule 12(c) is not meant to dispose of cases for technical pleading deficiencies, but only where there are no disputes on material issues of fact. *See Power Motive Corp. v. Mannesmann Demag Corp.*, 617 F. Supp. 1048, 1049 (D. Colo. 1985) ("[A] motion for judgment on the pleadings must be denied unless it appears to a certainty that plaintiffs are entitled to no relief under any state of facts that could be proved in support of its claim.").

Here, JBS denied over 85% of the factual allegations in the EEOC's Complaint. *See* ECF No. 104. In the Complaint, the factual allegations are mostly contained in a section titled "General Allegations." ECF No. 1 at 3. Of the 36 factual allegations in that section, JBS admitted only one allegation and partially admitted four allegations; it denied the remaining 31 factual allegations. ECF No. 104 at ¶¶ 8–43. Under these circumstances, when the vast majority of factual allegations have been denied, JBS cannot establish that no material issue of fact remains to be resolved under Rule 12(c). As this Court is well aware from the Phase I trial, there are a plethora of material factual disputes amongst the parties that remain unresolved as the case proceeds to Phase II.

JBS's real qualm with the EEOC's Complaint appears to be in its level of detail, which is not a legal bar to relief and is not a Rule 12(c) issue. Under the cloak of Rule 12(c), JBS has really filed a motion for more definite statement under Rule 12(e), even though the deadline to file a Rule 12(e) motion passed over nine years ago. Likewise, any pleading ambiguities which JBS complains about now, existed long before JBS filed the present motion. JBS's motion should therefore be denied on the grounds of excessive delay alone. *See* Wright & Miller § 1367 (stating that judge has discretion to deny Rule 12(c) motion filed after excessive delay); *Argo v. Woods*, 399 F. App'x 1, 2 (5th Cir. 2010) (affirming district court's denial of Rule 12(c) motion as untimely under Rule 16(b) when it was filed three months after the dispositive motions deadline); *Riggins v. Walter*, 279 F.3d 422, 427–28 (7th Cir. 1995) (affirming denial of Rule 12(c) motion filed more than 26 months after the pleadings closed and 20 months after the dispositive motions deadline).[1]

---

[1] *See also Hughes v. Z, Inc.*, No. Civ. 04-980-C, 2006 WL 290576, at *1–2 (W.D. Okla. Feb. 6, 2006) (denying Rule 12(c) motion filed 15 months after the pleadings closed and three months after the dispositive motions deadline); *Jones v. Town of Quartzsite*, No. CV-12-2629-PHX-LOA, 2014 WL 12617038, at *2 (D. Ariz. Feb. 24, 2014) (denying Rule 12(c) motion because

Further, given the extensive discovery already completed in this case, the function of notice pleading has been met and the Court should allow the EEOC's claims to proceed on their merits. By its nature, the inquiry invoked on a motion to dismiss – whether a pleading contains sufficient facts to state a claim to relief that is plausible on its face – is "a threshold inquiry, and logic strongly suggests that it occur prior to discovery." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012); *see also* Wright & Miller § 1367 ("Ordinarily, a motion for judgment on the pleadings should be made promptly after the close of the pleadings."). While a complaint may be tested for plausibility at the inception of a suit, "once the parties have invested substantial resources in discovery, a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement." *Grajales*, 682 F.3d at 46.

As explained by the First Circuit in *Grajales*, engaging in a plausibility determination after substantial discovery has taken place "makes little sense" because a court would be forced to "ignor[e] the entire panoply of facts developed during discovery." *Id.* Moreover, "[a]n artificial evaluation of this sort seems especially awkward because one of the main goals of the plausibility standard is the avoidance of unnecessary discovery." *Id.* "Applying the plausibility standard to a complaint after discovery is nearly complete would defeat this core purpose." *Id.*

Courts across the country have adopted the reasoning of *Grajales* to deny Rule 12(c) motions filed in the later stages of litigation. *See, e.g., Perez v. Oak Grove Cinemas, Inc.*, No. 3:13-CV-00728-HZ, 2014 WL 1796674, at *4 (D. Or. May 5, 2014) (denying Rule 12(c) motion when

---

"Defendants excessively delayed filing the motion until [two months] after the [pleadings] amendment deadline had passed"); *Kuvedina, LLC v. Pai*, No. 11–CV–2282, 2013 WL 5097411, at *1 (C.D. Ill. Sept. 12, 2013) (striking motion for judgment on the pleadings when motion was filed two months after dispositive motions deadline and without leave of court).

answer had been filed, there had been preliminary injunction motion practice, and discovery had progressed to include depositions); *Redondo Constr., Co. v. Izquierdo*, 929 F. Supp. 2d 1, 5 (D.P.R. 2012) (holding it was inappropriate to apply the Rule 12(c) plausibility standard in a case that had been litigated for over nine years and the parties had invested substantial resources in discovery); *AM Gen. LLC v. Demmer Corp.*, No. 3:12CV333, 2013 WL 5348484, at *1, *6 (N.D. Ind. Sept. 23, 2013) (denying a Rule 12(c) motion on the grounds that "[m]any of the issues raised by [the defendant] in the current motion are more appropriate for a summary judgment motion, especially considering the amount of discovery that has taken place in this case"); *see also Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010) (expressing concern regarding the appropriateness of a Rule 12(c) motion filed after a preliminary injunction hearing that generated an extensive factual record).

Here, after years of discovery and a four-week trial, JBS can hardly claim that it does not have enough information to have fair notice of the EEOC's claims. JBS deposed 50 aggrieved individuals in Phase I and asked each individual detailed questions about his or her claims and his or her employment with JBS.[2] During the depositions, JBS was not limited in its questioning to Phase I issues but could ask questions "related to plaintiffs' claims of harassment/hostile work environment or individual plaintiffs' alleged damages." ECF No. 116 at 17. JBS also received detailed discovery responses from over 45 Plaintiff Intervenors.

In addition to engaging in substantial discovery with JBS, the EEOC and Plaintiff Intervenors have filed numerous motions, briefs, exhibits, and other submissions, which provide

---

[2] JBS deposed six of these individuals twice. *See* ECF No. 462 at 2 (allowing JBS and the EEOC to depose six witness regarding "events relevant to the claims and defenses in the case which occurred after the date of the previous depositions").

additional details regarding the allegations in the EEOC's Complaint. This includes the EEOC's summary judgment briefing and over 105 attached exhibits as well as over 110 pages of proposed findings of fact submitted by the EEOC after the Phase I trial. ECF Nos. 349, 349-1–107, 605. During trial, the Court heard testimony from over 80 witnesses and received over 140 exhibits into evidence. At this stage of the case, it would be a mechanical, perfunctory exercise for the Court to ignore the facts developed over nearly ten years of litigation and dismiss the EEOC's claims for want of sufficient factual allegations.

Instead of engaging in this superficial exercise, the Court should use its discretion under Rules 12(c) and 12(i) to defer matters of factual sufficiency until trial or summary judgment briefing. When discovery commences for Phase II, JBS will be able to obtain detailed discovery from each aggrieved individual (including any Plaintiff Intervenor) who has not previously been deposed or provided discovery responses. Indeed, JBS itself invited "targeted discovery" in its Phase II briefing and suggested each aggrieved individual be required to specify the claims he or she is asserting, the basic material facts he or she alleges in support of those claims, and the individuals alleged to have engaged in discriminatory conduct.[3] ECF No. 659 at 7. Engaging in targeted discovery, whatever form it may take, is a more efficient way for the parties and the Court to proceed towards resolving the case on its merits and achieving Rule 1's guiding principle of "the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

---

[3] JBS also suggested each aggrieved individual be required to specify their dates of employment, positions held, and line assignments – information already known to JBS.

**B. The EEOC is not required to plead the kind of specific person-by-person facts JBS suggests.**

In arguing for the dismissal of the EEOC's claims under Rule 12(c), JBS improperly approaches the EEOC's lawsuit as a private action comprised of individual claims and ignores well-established case law regarding the nature of claims brought by the EEOC. Contrary to JBS's argument, *see* ECF No. 660 at 4, the EEOC ***does not*** stand in the shoes of the individual employees for whom the EEOC seeks relief. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297–98 (2002). Instead, the EEOC files lawsuits "to vindicate the public interest in preventing employment discrimination" and therefore "is not merely a proxy for the victims of discrimination." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 326 (1980). Stated differently, the EEOC's claims are not derivative of the claims of the employees for whom it seeks relief. *Waffle House*, 534 U.S. at 297–98; *see also EEOC v. United Parcel Serv.*, 860 F.2d 372, 376 (10th Cir. 1988) (holding that a charging party's individual settlement does not deprive the EEOC of standing because of the EEOC's unique role).

While the EEOC's Complaint must satisfy Federal Rule of Civil Procedure 8, the rule does not require what JBS suggests. Under Rule 8, a court must consider only whether the EEOC has provided adequate notice of its claim, not whether the EEOC has described the specific facts relating to each affected aggrieved individual. Indeed, requiring the EEOC to identify each affected individual and describe their particularized facts at the time the agency files suit ignores that the "EEOC has independent standing to sue in its own name, and its authority to seek victim-specific remedies for private individuals is not derivative of the rights of those individuals." *EEOC v. 5042 Holdings Ltd.*, No. 3:09-CV-61, 2010 WL 148085, at *1 (N.D. W. Va. Jan. 11, 2010) (post-*Iqbal*

decision denying defendant's Rule 12(e) motion for a more definite statement of claims, which sought to require the EEOC to identify all sexual harassment victims).

Moreover, requiring the EEOC to describe specific facts for each aggrieved individual when it files suit ignores binding Tenth Circuit authority that the EEOC may use discovery to identify additional aggrieved individuals during litigation. In *EEOC v. St. Louis-San Francisco Railroad Co.*, the Tenth Circuit reversed a district court ruling which prevented the EEOC from using discovery to uncover additional aggrieved individuals, holding that "[a]t the discovery stage, the EEOC should be allowed to seek proof of the effect on other applicants or on potential applicants." 743 F.2d. 739, 744 (10th Cir. 1984). Because the EEOC may identify additional individuals after filing suit, it is logically impossible for its Complaint to plead all specific facts for each person. In line with the Tenth Circuit, the Ninth Circuit has also held unequivocally that the EEOC may seek relief for any aggrieved individual, whether or not she or he filed a charge and whether or not she or he is named in the complaint. *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1204–05 (9th Cir. 2016), *cert. denied sub nom. Geo Grp., Inc. v. EEOC*, 137 S. Ct. 623 (2017); *see also EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 365–66 (4th Cir. 1976) (rejecting argument that new charges would need to be filed for claimants identified in litigation).

Consistent with this approach, courts regularly find it inappropriate to dismiss lawsuits by the EEOC that seek relief for unnamed aggrieved individuals. Because the EEOC does not stand in the shoes of individual employees, "courts generally have allowed complaints with 'class' allegations . . . to move forward, both pre- and post-*Twombly* and *Iqbal*."[4] *EEOC v. United Parcel*

---

[4] A contrary rule would inappropriately hold the EEOC to a higher standard than class actions under Rule 23. *See EEOC v. Fed. Reserve Bank of St. Louis*, 84 F.R.D. 337, 340 (W.D. Tenn. 1979).

*Serv., Inc.*, No. 09-cv-5291, 2013 WL 140604, at *6 (N.D. Ill. Jan. 11, 2013). As the *UPS* court

recognized, "*Iqbal* and *Twombly* do not require plaintiffs, including EEOC, to plead detailed

factual allegations supporting the individual claims of every potential member of a class." *Id.*; *see*

*also EEOC v. U.S. Steel Corp.*, No. 10-1284, 2012 WL 3017869, at *10 (W.D. Pa. July 23, 2012)

(holding "*Iqbal* and *Twombly* do not require the EEOC to name all of the potential class members

in its Amended Complaint"); *EEOC v. Man Mar, Inc.*, No. 09-60761-CIV, 2009 WL 3462217, at

*2 & n.1 (S.D. Fla. Oct. 22, 2009) (holding the "EEOC need not provide a more detailed

description of Claimants in its Complaint," particularly because the defendant may seek

information concerning the additional individuals through discovery); *EEOC v. PMT Corp.*, 40 F.

Supp. 3d 1122, 1129–30 (D. Minn. 2014) (holding the EEOC's discrimination claim met the

plausibility standard "by identifying the time period at issue, the alleged perpetrator of the

discrimination and the alleged discriminatory conduct").

      In making its argument for dismissal, JBS fails to address any of the cases cited above.

Instead, JBS relies almost exclusively on *Cazorla v. Koch Foods of Mississippi, LLC*, No.

3:10cv135-DPJ-FKB, 2013 U.S. Dist. LEXIS 201174 (S.D. Miss. Aug. 28, 2013), an unpublished

decision that has only been cited by one other Mississippi district court. *Cazorla* ignores the weight

of judicial authority recognizing the EEOC's unique enforcement role. In addition, JBS fails to

mention that the *Cazorla* court, after noting "the conflicting authorities on whether the EEOC was

required to plead [particularized facts as to 111 new class members]," ultimately allowed the

EEOC to amend its complaint instead of dismissing its non-pattern-or-practice claims. 2013 U.S.

Dist. LEXIS 201174, at *24–25.

Here, rather than considering whether each aggrieved individual can state a claim for relief, as JBS suggests, the appropriate question is whether the EEOC has pled sufficient facts "to give [JBS] fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quotations omitted). The EEOC meets this standard by filing a complaint "containing allegations and factual statements that clearly put the defendant on notice that the instant action is based on the defendant's alleged discrimination on a particular protected basis against the charging party and other similarly situated employees beginning at a specific point in time." *EEOC v. Farmers Ins. Co.*, 24 F. Supp. 3d 956, 967 (E.D. Cal. 2014) (citing *EEOC v. Pioneer Hotel, Inc.*, No. 2:11-CV-01588-LRH, 2013 WL 3716447, at *3 (D. Nev. July 15, 2013)); *see also EEOC v. Original Honeybaked Ham Co. of Ga.*, 918 F. Supp. 2d 1171, 1180 (D. Colo. 2013) (denying defendant's motion to dismiss because "[i]f the employer understands the nature, extent, location, time period and persons involved in the alleged unlawful conduct, it may be able to reasonably estimate the number and identities of persons who may be impacted").

As described further below, the EEOC's Complaint satisfies the plausibility requirement by providing sufficient facts regarding the scope of the class of employees affected, the time frame of the violations, the facility involved, and the nature of the Title VII violations suffered by the class. Contrary to JBS's suggestion, the EEOC is not required to plead its case as though it were a proxy for the numerous Charging Parties and aggrieved individuals in this case. Instead, having sufficiently pled its class allegations, the EEOC is entitled to seek relief on behalf of both named and unnamed class members.

**C.  The EEOC has adequately pled its claims.**

The EEOC has properly pled all the challenged claims in its Complaint. As noted above, Rule 8 requires a plaintiff to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quotations omitted). To survive a motion to dismiss, a plaintiff need not allege with particularity every element of the *prima facie* case. *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) ("[T]he Rule 12(b)(6) standard doesn't require a plaintiff to 'set forth a prima facie case for each element.'" (quoting *Khalik*, 671 F.3d at 1192–93))); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (holding that to satisfy Rule 8(a)(2), a plaintiff who alleges facts that provide fair notice of the claim need not also allege "specific facts establishing a prima facie case"). Rather, a claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Here, the EEOC is only required to plead facts sufficient to put JBS on notice of the nature of its claims. The EEOC's Complaint does just that for each of its class claims by providing JBS with information regarding the class of employees affected and then describing the alleged conduct experienced by members of the class. Contrary to JBS's suggestion, the EEOC is not required to plead a *prima facie* case for every member of its class. And assuming the truth of the EEOC's factual allegations, as required on a Rule 12(c) motion, *see Park*, 442 F.3d at 1244, the EEOC has given more than enough factual content for the Court "to draw the reasonable inference that [JBS] is liable for the misconduct alleged" in each claim. *See Iqbal*, 556 U.S. at 678.

**1. The EEOC's claim for discriminatory discipline and discharge is not limited to the period before October 2008 and alleges unlawful conduct from "at least September 2008" to the present.**

JBS's argument that the EEOC fails to state a plausible claim for discriminatory discipline and discharge relies on the false assertion that the claim is limited to the suspensions and terminations occurring before October 2008, in connection with Ramadan 2008. *See* ECF No. 660 at 6. Thus, JBS argues that if a specific employee was not discharged in connection with the events of Ramadan 2008, the EEOC cannot assert a discriminatory discharge claim for that employee.

JBS's argument fails because the EEOC's claim is not limited to Ramadan 2008, as JBS asserts. To the contrary, the EEOC's discriminatory discipline and discharge claim extends before and after Ramadan 2008. In the General Allegations section of the Complaint, before the subsection entitled "The Events Relating to Ramadan 2008," the EEOC alleges: "Somali and Muslim employees were disciplined ***and continue to be disciplined*** more harshly than non-Somali and non-Muslim employees, or were disciplined for conduct that others were not." ECF No. 1 at ¶ 25 (emphasis added). By its terms and placement in the Complaint, this allegation includes discriminatory discipline outside the events of Ramadan 2008. Likewise, when summarizing the discriminatory discipline and discharge claim, the EEOC broadly alleges: "Since at least September 2008, Defendant has violated ***and continues to violate*** Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by disciplining and discharging Charging Parties and other aggrieved individuals because of their national origin, religion and/or in retaliation for requesting religious accommodation." *Id.* at ¶ 70 (emphasis added). The continuing language of this allegation shows the EEOC's claim extends beyond the termination and discipline of employees during Ramadan 2008 and includes subsequent discriminatory discipline and discharge as well.

It follows that because the EEOC's claim for discriminatory discipline and discharge is not limited to the events of Ramadan 2008, Charging Parties like the ones mentioned in JBS's motion (Sadiyo Hussein, Ibrahim Iman, Mohamed A. Mohamed, Ahmed Osman, Fardowsa Ali, and Muno Farah) are not precluded from relief under this claim even if they continued working at JBS after September 2008. To be included in this claim, these employees could have experienced discriminatory discipline during Ramadan 2008, but not have been discharged, or they could have experienced discriminatory discipline or discharge after Ramadan 2008. Similarly, because the EEOC alleges discriminatory discipline and discharge occurred at the Greeley facility "[s]ince *at least September 2008*," *id.* (emphasis added), an individual like Charging Party Idris Ali Mohamed could also be entitled to relief if he left the plant before Ramadan 2008. The "at least" language allows for recovery for discriminatory discipline or discharge occurring before September 2008.

JBS can hardly be surprised the EEOC's claim is not limited to Ramadan 2008 because the EEOC submitted expert reports from Dr. Mark McNulty in November 2012 and July 2013 encompassing the period from January 2007 through October 2012. *See* ECF No. 349-16 at 1. Dr. McNulty's reports indicate that employees at the Greeley facility who are black, Somali, and/or Muslim are from 1.8 to 3.2 times (depending on the specific characteristic being considered and the dataset being used) more likely to be discharged for disciplinary reasons than other employees. *Id.* Dr. McNulty also testified regarding these results at the Phase I trial, and he further explained that even if data concerning the terminations from Ramadan 2008 were disregarded, there would still be statistically significant disparities in discharges on the bases of race, national origin, and religion during the period from January 2007 through October 2012. *See* ECF No. 605 at 88–90.

If the EEOC's claim was limited to Ramadan 2008, there would be no need for it to procure such expert analysis.

Finally, to the extent JBS argues the EEOC's entire discriminatory discipline and discharge claim must be dismissed because it does not allege specific facts for each aggrieved individual, this argument fails for the reasons stated in Section B above. The EEOC's Complaint provides JBS with fair notice of the grounds for the claim by describing the class of affected employees (i.e. Somali, Muslim, and black employees) and the nature of the unlawful conduct experienced by class members. Contrary to JBS's suggestion, the claim is not limited to Ramadan 2008, and therefore includes individuals who were disciplined or discharged before or after Ramadan 2008.

### 2. The Court's Phase I Order does not preclude the EEOC's well-pled claim for religious accommodation.

In arguing for dismissal of the EEOC's religious accommodation claim, JBS relies heavily on the Court's Phase I Order (ECF No. 620), which does not preclude the EEOC's claim as JBS suggests. While the Court concluded in its order that an adverse employment action is necessary to a religious accommodation claim, the Phase I trial only addressed whether the EEOC had shown there was a pattern or practice of discrimination and the Court's Phase I Order is similarly limited to that question. *See* ECF No. 620 at 2 (outlining the three pattern-or-practice claims addressed in the Phase I trial); *id.* at 82 (holding the EEOC failed to prove its claim that JBS's policy of denying unscheduled breaks to pray "constituted an unlawful pattern or practice of discrimination"). The Court made no findings and did not preclude relief regarding any aggrieved individual. Accordingly, even assuming the Court continues to apply the reasoning of its Phase I Order, the EEOC and Plaintiff Intervenors may yet show that specific aggrieved individuals were denied religious accommodation and suffered some additional adverse action.

JBS also overstates the law of the case doctrine, as the Court remains free to modify its Phase I Order under Rule 54(b). That rule specifically states that an order adjudicating "fewer than all the claims in an action or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). And even under the law of the case doctrine, "district courts generally remain free to reconsider their earlier interlocutory orders." *Been v. O.K. Indus.,* 495 F.3d 1217, 1225 (10th Cir. 2007); *see also Prairie Band Potawatomi Nation v. Wagnon,* 476 F.3d 818, 823 (10th Cir. 2007) ("[T]he rule [of law of the case] is a flexible one that allows courts to depart from erroneous prior rulings, as the underlying policy of the rule is one of efficiency, not restraint of judicial power.").

This Court has already stated its intent to be guided by the Tenth Circuit's eventual *en banc* decision in *Exby-Stolley v. Board of County Commissioners*, 910 F.3d 1129 (10th Cir. 2018), a case under the Americans with Disabilities Act (ADA), regarding whether denial of religious accommodation is itself an adverse employment action under Title VII. As the Court recognized, *Exby-Stolly* "will likely [clarify this issue] sooner than an appeal could be resolved in this case." ECF No. 653 at 11. Accordingly, if the Tenth Circuit reverses the panel decision in *Exby-Stolley*, this Court can and should reconsider its Phase I Order dismissing the EEOC's pattern-or-practice claim for religious accommodation. *See id.* at 10 n.3 (noting that "[t]he Tenth Circuit has stated that '[d]ue to the similarities between the ADA and Title VII, we generally interpret those statutes consistently'" (quoting *EEOC v. C.R. England, Inc*., 644 F.3d 1028, 1038 n.11 (10th Cir. 2011))); *see also Lanman v. Johnson Cty., Kan*., 393 F.3d 1151, 1155 (10th Cir. 2004) ("Given these

similarities, this court, and many others, have used similar analyses when interpreting [Title VII and the ADA].").

But even if the Court does not reconsider its Phase I Order, the EEOC has already adequately pled its religious accommodation claim. As previously noted, Rule 12(b)(6) does not require a plaintiff to plead with particularity every element of the *prima facie* case. *George*, 833 F.3d at 1247; *see also Swierkiewicz*, 534 U.S. at 511 (holding a plaintiff does not need to allege "specific facts establishing a prima facie case"); *EEOC v. Pitre, Inc.,* 908 F. Supp. 2d 1165, 1175 (D.N.M. 2012) (noting that the Supreme Court's subsequent decision in *Twombly* did not alter its holding in *Swierkiewicz* that a plaintiff need not plead specific facts establishing a *prima facie* case of discrimination). Instead, a plaintiff satisfies the plausibility standard of Rule 8 by alleging facts that provide the defendant with fair notice of the claim. *Erickson*, 551 U.S. at 93.

Here, the EEOC has provided JBS with fair notice of its religious accommodation claim by identifying the class of employees affected, the nature of the religious accommodations denied by JBS, and the time period involved. In its Complaint, the EEOC alleges that since at least December 2007 and continuing to the present, JBS has failed to accommodate the religious practices and beliefs of its Muslim employees at the Greeley plant. ECF No. 1 at ¶ 51. This failure includes, among other things, JBS's denial of Muslim employees' requests to use unscheduled breaks to pray and its refusal to adjust scheduled break times to coincide with prayer times, particularly for the Maghrib prayer during Ramadan 2008. *Id.* at ¶¶ 15–18, 29–31, 51. Even assuming some additional adverse action is an element of the *prima facie* case, which the EEOC disputes, the EEOC does not need to plead this element to state a plausible claim for relief because

it has already given JBS fair notice of its religious accommodation claim. Accordingly, JBS's motion to dismiss should be denied.

### 3.   __The EEOC has adequately pled its retaliation claim.__

JBS's argument that that EEOC's retaliation claim should be dismissed suffers from the same flaws as its previous arguments. Namely, the individualized approach JBS seeks is inconsistent with the pleading standard under Rule 8 and with the EEOC's authority to pursue class-wide relief. JBS once again ignores the obvious – the EEOC is the plaintiff, not the class members, and the EEOC is only required to plead facts sufficient to put JBS on notice of the nature of its class claim.

Here, the EEOC has given JBS fair notice of its retaliation claim. As previously noted, the EEOC alleges in its Complaint that Muslim employees at the Greeley plant requested accommodation for their religious practices and beliefs, including using unscheduled breaks to pray and adjusting scheduled break times to coincide with prayer times. *Id.* at ¶¶ 15–18, 30–31, 51; *see also* ECF No. 620 at 91 (holding that "requesting a reasonable religious accommodation is protected activity under Title VII that may support a retaliation claim"). The EEOC further alleges that since September 2008 and continuing to the present, JBS disciplined and/or terminated Muslim employees in retaliation for their requests for religious accommodation. ECF No. 1 at ¶¶ 40–43, 56; *see also* ECF No. 620 at 81 (holding that, in the retaliation context, even "certain threats of future adverse action can constitute a materially adverse employment action"). These facts, taken as true, are more than sufficient for the Court to draw the reasonable inference that JBS is liable for retaliation.

4. __The EEOC states a plausible claim for hostile work environment.__

JBS's argument for dismissal of the EEOC's hostile work environment claim is similarly flawed because it fails to focus on the Rule 8 standard. Again, JBS argues the elements of proof required to establish a hostile work environment even though there is no requirement during the pleading stage for a plaintiff to allege with particularity every element of its *prima facie* case. *See George*, 833 F.3d at 1247; *Swierkiewicz*, 534 U.S. at 511; *Pitre,* 908 F. Supp. 2d at 1175. Instead, a claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. JBS's arguments about the standard of proof therefore fail to provide a basis to dismiss any of the EEOC's claims, including its claim for hostile work environment.

Moreover, the allegations in the EEOC's Complaint provide more than sufficient facts to state a plausible claim for hostile work environment. In support of this claim, the EEOC first identifies the class of employees who were subject to harassment, namely Muslim, Somali, and black employees. ECF No. 1 at ¶ 14. The EEOC then provides specific examples of the harassing conduct. For instance, the EEOC alleges Muslim employees at the Greeley facility were continually harassed when they tried to pray during scheduled breaks and bathroom breaks. *Id.* at ¶¶ 16–17. Somali and Muslim employees also regularly experienced harassing comments, including being called names such as "Bitch," "Son of a Bitch," "Fucker," and "Bimbo." *Id.* at ¶¶ 19–20. In addition, "[m]anagers, supervisors, and other employees regularly threw blood, meat, and bones at the Somali and Muslim employees" and these employees were subjected to offensive graffiti like "Somalis are disgusting," "Fuck Somalians, Fuck Muslims, Fuck Mohammed," and "Nigger." *Id.* at ¶¶ 20–21. Employees who experienced this harassment were

offended and the harassment "was sufficiently severe or pervasive as to alter the terms and conditions of their employment." *Id.* at ¶¶ 22, 62.

Additionally, the EEOC's Complaint identifies the perpetrators of the harassment and alleges JBS condoned the hostile work environment. In particular, the Complaint alleges that "[m]anagement employees participated in the harassment" of Muslim, Somali, and black employees and that "[m]anagement knew or should have known of the harassment." *Id.* at ¶¶ 63–64. The Complaint also alleges that "[s]ome of the Charging Parties complained about harassment based on religion, race and national origin, but [JBS] failed to correct the hostile work environment." *Id.* at ¶ 24; *see also id.* at ¶ 65 (alleging "[m]anagement employees failed to take appropriate action to prevent or promptly correct the harassment" of Muslim, Somali, and black employees). Altogether, these allegations are more than enough to allow the Court to draw the reasonable inference that JBS is liable for a hostile work environment at the Greeley facility. Accordingly, JBS's motion should be denied.

**D. In any event, JBS's motion does not justify dismissal because the EEOC should be allowed to amend its Complaint if the Court determines the EEOC's claims are somehow deficient.**

At most, JBS's motion boils down to a request for more facts, which as previously discussed, does not constitute a legal bar to relief under Rule 12(c) and does not entitle JBS to dismissal of the EEOC's claims. Instead, the more efficient way for JBS to obtain the additional facts it desires is by advancing the case to Phase II discovery consistent with the parties' Phase II briefs. *See* ECF Nos. 634–35, 638, 657–59. Proceeding to Phase II discovery would also prevent the Court and the parties from going through the unnecessary procedural legwork of further pleadings when notice of the EEOC's claims is already adequate.

Nevertheless, if this Court somehow determines that additional factual allegations are required, the cure is to provide the facts in an amended complaint, not to dismiss the EEOC's claims. Even the non-controlling authorities relied on by JBS in its motion do not support dismissal – both the courts in *Cazorla* and *Dolgencorp* allowed the EEOC to amend its complaints. *Cazorla*, 2013 U.S. Dist. LEXIS 201174, at *24-25; *EEOC v. Dolgencorp, LLC*, No. 3:17-CV-023-MPM-RP, 2017 U.S. Dist. LEXIS 181061, at *6 (N.D. Miss. Nov. 1, 2017).

Under Rule 15, a district court "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits." *Calderon v. Kan. Dept. of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); *see Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) ("The purpose of [Rule 15] is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982))); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts . . . may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test his claim on the merits."). As a matter of policy, "'Rule 15 . . . was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result.'" *Minter*, 451 F.3d at 1207–08 (quoting *United States v. Hougham*, 364 U.S. 310, 316 (1960)).[5]

---

[5] Because the Court has not set a deadline for the amendment of pleadings in Phase II, the EEOC need not also satisfy the "good cause" standard of Rule 16(b). *See* ECF No. 128 at 23 (setting January 31, 2012 as the "Phase I deadline" for amendment of pleadings). Nevertheless, good cause is satisfied here because it would be manifestly unjust to allow JBS to file what amounts to a motion for more definite statement nine years after the deadline and not allow the EEOC to amend its Complaint with additional facts.

Allowing the EEOC to amend its Complaint would not prejudice JBS, but denying leave to amend would substantially and unfairly prejudice the EEOC. After nearly 10 years of litigation, Phase II represents the first opportunity for the EEOC to seek individual relief for persons aggrieved by JBS's discriminatory practices. These aggrieved individuals should not be denied justice simply because JBS filed a belated motion to dismiss over eight years after the close of the pleadings. Thus, if the Court somehow concludes that the EEOC's Complaint is deficient, the EEOC should be given leave to amend its Complaint pursuant to Rule 15(a)(2).[6]

## IV. CONCLUSION

In sum, JBS fails to present any sound legal basis upon which to dismiss the EEOC's class claims. JBS's motion does not comport with the underlying policy of Rule 12(c) because JBS has denied the vast majority of factual allegations in the EEOC's Complaint, and JBS has delayed in bringing its motion until after the parties invested substantial resources in discovery. JBS also fails to acknowledge the long line of cases establishing the EEOC's unique ability to assert class claims without alleging particularized facts for each aggrieved individual. Pursuant to this line of cases and the notice pleading standard of Rule 8, the EEOC has adequately pled its claims for discriminatory discipline and discharge, religious accommodation, retaliation, and hostile work environment. Alternatively, if the Court somehow finds the EEOC's claims are deficient, the EEOC should be given leave to amend its Complaint. For all these reasons, JBS's motion to dismiss should be denied.

---

[6] The EEOC also joins the arguments made in Plaintiff Intervenors' Motion for Leave to File Amended Complaint.

Respectfully submitted this 14th day of April, 2020,

<div style="margin-left: 50%;">

*s/ Laurie Jaeckel*
LAUREN JAECKEL
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
303 East 17th Avenue, Suite 410
Denver, CO 80203
(303) 866-1381
lauren.jaeckel@eeoc.gov

Attorney for Plaintiff EEOC

</div>

## **CERTIFICATE OF SERVICE (CM/ECF)**

I certify that on April 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will electronically serve all attorneys of record.  Under D.C.COLO.LCivR 5.1(d), "[t]he Notice of Electronic Filing (NEF) generated by CM/ECF constitutes a certificate of service."

*s/ Laurie Jaeckel*
Lauren Jaeckel
Trial Attorney