**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-02103-PAB-KLM

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**,

    Plaintiff,

and

**IRAQ ABADE**, *et al*.,

    Plaintiffs-Intervenors,

and

**MARYAN ABDULLE**, *et al.,*

    Plaintiffs-Intervenors,

v.

**JBS USA, LLC, d/b/a JBS SWIFT & COMPANY**,

    Defendant.

---

**PLAINTIFFS-INTERVENORS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS
(Docs. 660, 661, 662, 663, 664, and 665)**

---

Plaintiffs-Intervenors (the "Intervenors"), through their undersigned counsel, hereby respond in opposition to Defendant's Motions for Judgment on the Pleadings of their respective complaints. Docs. 661-665 (collectively, the "Motions to Dismiss"). As set forth in greater detail below, the Intervenors additionally join in the arguments made by the EEOC in its Response, dated April 14, 2020, Doc. 670, in opposition to Defendant's Motion for Judgment on the Pleadings. Doc. 660. In the alternative, if the Court finds that any of the Intervenors' claims are deficient, the

Intervenors respectfully request that they be given leave to amend their respective Complaints, pursuant to Fed. R. Civ. P. 15(a)(2). To this end, certain of the Intervenors have simultaneously filed Motions to Amend their operative Complaints.

1. **BACKGROUND**

The EEOC filed its original Complaint in this matter on August 30, 2010. Doc. 1. The undersigned counsel subsequently filed separate Complaints for the groups of Intervenors they represent, some of which were amended at later dates. Docs. 40, 61, 132, 137, 236, 263, and 504. The EEOC's Complaint pled five claims for relief under Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-3, including: 1) a pattern or practice of discriminatory treatment; 2) failure to accommodate religious beliefs and practices; 3) retaliation for requesting religious accommodation; 4) an unlawful hostile work environment on the basis of race, national origin, and religion; and 5) discriminatory discipline and discharge. Doc. 1 at ¶¶ 44-74.

In addition to the above claims, which are pled identically to the EEOC in each of the Intervenors' operative complaints, the Intervenors separately bring claims for: 1) retaliation for making complaints of discrimination or harassment, under 42 U.S.C. §§ 2000e-3; 2) retaliation for making complaints of discrimination or harassment, under 42 U.S.C. § 1981; 3) discriminatory treatment because of race, under 42 U.S.C. § 1981; 4) an unlawful hostile work environment on the basis of race, under 42 U.S.C. § 1981; 5) discriminatory discipline and discharge, under 42 U.S.C. § 1981; and, for some plaintiffs, 6) interference with and retaliation for exercising rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2617. *See* Doc. 504 at ¶¶ 61-133. The Motions to Dismiss seek the dismissal of certain of these Intervenors' claims for relief, in

addition to the dismissal of the claims that are pled identically in the EEOC's and the Intervenors' respective operative pleadings.

## 2. LEGAL STANDARD

As noted in the EEOC's Response, the standards applied by the Court are the same in assessing a motion under either Fed. R. Civ. P. 12(b)(6) or 12(c). *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006); and *Krontz v. CNG Logistics, LLC*, No. 19-4081-SAC, 2020 U.S. Dist. LEXIS 6565, at *2 (D. Kan. Jan. 15, 2020) (citing *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Rule 12(c) provides that a party may move for judgment on the pleadings after the pleadings are closed, "but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion under Rule 12(c) "should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

In reviewing the Motions to Dismiss, the Court must accept the factual allegations in the Complaints as true, and resolve all reasonable inferences in the plaintiff's favor. *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 700 (10th Cir. 2014). A plaintiff need only plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims are plausible when the pleadings show "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The complaint need not establish their claims, but rather, must state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. The Intervenors need not plead any particular facts in support of their claims,

though "some facts" are required. *Hunt v. Central Consol. School Dist.*, 951 F.Supp.2d 1136, 1174 (D.N.M. 2013) (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Twombly*, 550 U.S. at 555). "The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

In considering whether a complaint meets *Iqbal/Twombly*'s facial plausibility standard, context matters. *Hunt*, 951 F.Supp.2d at 1174 (citing *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010)). "In the employment discrimination context, the Tenth Circuit has suggested that plausibility may require less specific pleadings than in the 42 U.S.C. § 1983 context, 'because in employment discrimination cases where the employers are large corporations, the employee may not know who actually fired her or for what reason.'" *Id.* (quoting *Khalik*, 671 F.3d at 1193).

While the same analytical standards apply to Rule 12(c) and Rule 12(b)(6) motions, the procedural devices are distinct. *Krontz*, 2020 U.S. Dist. LEXIS 6565, at *3. "A motion for judgment on the pleadings […] theoretically is directed towards a determination of the substantive merits of the controversy; thus, courts are unwilling to grant a judgment under Rule 12(c) unless it is clear that the merits of the controversy can be fairly and fully decided in this summary manner." *Id.* (quoting *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1281–82 (D. Kan. 1997); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1369, at 532–33 (2d ed. 1990)). Rule 12(c) motions alleging substantive pleading defects are therefore treated differently than those alleging procedural pleading defects:

> Where the challenge to a claim is substantive, the motion more comports with the usual purpose of a motion under rule 12(c), and judgment in favor of defendant is

> appropriate if the challenge is successful. In that case, plaintiff loses not for failure to plead certain facts, but because the facts that have been alleged, accepted as true for purposes of the motion, nonetheless do not give rise to liability under a recognized cause of action.
>
> If, on the other hand, plaintiff does not state a claim with respect to certain allegations because the procedural pleading requirements of Fed.R.Civ.P. 8(a) have not been met, judgment for defendant is not necessarily the proper result[…]. Rather, the court [may] conclude[] in its discretion that plaintiff should be permitted to cure the procedural deficiencies by filing an amended complaint.

*Id.* at 4 (quoting *Bushnell Corp.*, 973 F. Supp. at 1282).

In the instant case, the Defendant has moved for dismissal under Rule 12(c) on the grounds that the Intervenors have not alleged adequate facts to support their claims[1], rather than that the facts as pled do not give rise to liability under any recognized cause of action. *See* Doc. 665 at 2–3. Like dismissal under Rule 12(b)(6), "judgment on the pleadings under Rule 12(c) is a drastic remedy that courts should otherwise use sparingly." *Aberkalns v. Blake*, 633 F. Supp. 2d 1231, 1233 (D. Colo. 2009). Therefore, it is appropriate to "employ the routine followed with 12(b)(6) motions and grant the plaintiff[-intervenors] an opportunity to seek leave for amending [derivative] complaint to allege additional details" to address deficiencies, if any. *Krontz*, 2020 U.S. Dist. LEXIS 6565, at *6. As more fully set forth in their Motion for Leave to Amend Complaint, filed simultaneously with this response, certain of the Intervenors are requesting that the Court grant leave to file a second amended complaint, consistent with the command of Fed. R. Civ. P. 15(a)(2), that leave of the court to do so shall be given freely, "when justice so requires."

---

[1] Except as to the Intervenors' pattern and practice claims, religious discrimination claims under Section 1981, and religious accommodation claims, which it challenges on legal grounds, and which are addressed below. *See* Sections 3(II), 3(III), and 3(IV), *infra*.

## 3. ARGUMENT

### I. The Intervenors Join in the EEOC Response (Doc. 670)

The Intervenors join in Section III(A) of the EEOC's Response, *see* Doc. 670 at 5-9, and urge the Court to hold that dismissal under Fed. R. Civ. P. 12(c) is not appropriate at this advanced stage of the litigation, and that all of the Intervenors' claims should proceed on their merits. As noted in the EEOC's Response, in Phase 1 of this matter, the Defendant conducted 50 depositions of the Intervenors, the parties exchanged extensive disclosures and discovery responses, and multiple Intervenors testified as witnesses at trial. *Id*.

Even before this discovery was conducted, the Defendant filed a Motion to Dismiss certain of the Intervenors in 2010, *see* Doc. 38, arguing that there were not sufficient facts alleged that Intervenors had exhausted their administrative remedies, challenging whether those Intervenors who had not filed a charge were similarly situated to those who had filed a charge, such that the former group could "piggyback" on the latter's exhaustion of their claims, and that the union was an essential party. As a result of this Motion to Dismiss, the Abade Intervenors amended their Complaint in January 2011. Doc. 52. Defendant did not argue at that time that any of the Intervenors' claims were insufficiently pled. The Motions to Dismiss are just another in a long series of motions filed by the Defendant to avoid reaching the merits of the case, and delay its resolution in order to discourage the Intervenors – a tactic at which the Defendant has been very successful to date.

Notwithstanding the foregoing, the Intervenors have concurrently sought leave to amend their respective Complaints, as explained in greater detail below, to: 1) drop their pattern and practice claims, given the results of the Phase 1 trial; 2) clarify any ambiguity with regard to the

6

particular statutes under which the Intervenors are alleging religious discrimination; and 3) amend their factual allegations to include claims for subsequent retaliation. As part of that process, the Intervenors will supplement their pleadings with additional facts to further illustrate the sufficiency of their claims, and clarify which claims each Intervenor is pursuing.

## II.     The Intervenors Agree to Dismiss Their Pattern and Practice Claims

The Intervenors maintain that their allegations and evidence of the Defendant's pattern and practice of unlawful behavior towards them remain available to prove their claims, *see, e.g., EEOC v. Pitre*, 908 F.Supp.2d 1165 (D.N.M. 2012), as the systemic nature of Defendant's discriminatory and retaliatory conduct is relevant to the factual context of the Intervenors' individual claims. Notwithstanding this position, the Intervenors agree to drop these claims, *see, e.g.*, Doc. 504 at ¶¶ 61-66, and will not assert them in any of their proposed Amended Complaints.

## III.    The Intervenors Are Not Bringing Claims for Religious Discrimination under Section 1981

The Intervenors do not disagree with the Defendant's assertion that Section 1981's prohibition on race and national origin discrimination does not extend to the protected class of religion. *See* Doc. 660 at 4.  Thus, while the Intervenors' Title VII claims, including as to religious discrimination, are adequately pled and not appropriately dismissed, as are their race and national origin discrimination claims under Section 1981, the Intervenors do not assert any claims of religious discrimination pursuant to Section 1981, nor do they intend to do so.

## IV.    The Intervenors' Claims under Title VII and Section 1981 Are Adequately Pled

The Intervenors join in Section III(C)(1) of the EEOC's Response, *see* Doc. 670 at 15-17, and assert that their claims are, by their own terms, not limited only to those "based on discipline and discharges that occurred in connection with the September 2008 walkout." Doc. 665 at 7. The

Intervenors' claims cover the entirety of each of their individual periods of employment, within the statutory limitations period, whether or not that employment concluded in or around September 2008. *See, e.g.,* Doc. 504 at ¶¶ 56-60 (alleging unlawful discriminatory conduct by Defendant that occurred subsequent to 2008).

Furthermore, employment discrimination plaintiffs do not need to establish a prima facie case in their complaints to overcome a motion to dismiss under the Rule 12(b)(6) standard. *Khalik*, 671 F.3d at 1192 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); *Twombly,* 550 U.S. at 570). As set forth in *Swierkiewicz* and affirmed in *Twombly*, the prima facie case is instead a "flexible evidentiary standard" that should not be utilized as a "rigid pleading standard." *See Twombly*, 550 U.S. at 569 (citing *Swierkiewicz*, 534 U.S. at 512). Nonetheless, "the elements of each alleged cause of action help to determine whether Plaintiff[s … have] set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (citing *Swierkiewicz*, 534 U.S. at 515; *Twombly,* 550 U.S. at 570). The elements of the Intervenors' claims are set forth below.

      a. **Discrimination: Discipline and Discharge**

Discrimination based on race and national origin is shown by establishing the prima facie case set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): that the Intervenors (1) are in a protected class, (2) suffered an adverse employment action, and (3) the adverse action occurred under circumstances raising an inference of discrimination. *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005). The standards and burdens are the same for their discrimination claims under Section 1981. *Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir. 1994).

As noted above, the Motions to Dismiss incorrectly state that all of the Intervenors' claims "are based on discipline and discharges that occurred in connection with the September 2008 walkout." *See* Doc. 665 at 7. There is a great deal of actionable misconduct that the Defendant engaged in after that time period that is at issue in this action, and has been set forth in well-pled allegations. *See, e.g.,* Doc. 504 at ¶¶ 56-60. That certain of the Intervenors "do not allege they participated in the walkout, or were disciplined or discharged for the walkout," *id*., does not necessitate their dismissal where, as here, their Complaints recite well-pled allegations of unlawful discrimination, discipline, and discharge that occurred in the years since the September 2008 incident. *Id.*

    b. **Religious Accommodation**

The Intervenors join in Section III(C)(2) of the EEOC's Response, *see* Doc. 670 at 17-20, and urge the Court to hold that the Intervenors' claims for religious accommodation are not precluded, under the law of the case doctrine, by the Court's rulings in its Phase 1 Findings of Facts and Conclusion of Law. *See* Doc. 665 at 5-6. As noted in the EEOC's Response, even under the holdings of the Phase 1 Order, *see* Doc. 620, the EEOC or the Intervenors could make a showing that specific aggrieved individuals were denied religious accommodation, and suffered some additional adverse action. In addition, the Intervenors reiterate that these rulings remain subject to revision under Fed. R. Civ. P. 54(b), or pursuant to an eventual *en banc* ruling of the Court of Appeals, reviewing the panel decision in *Exby-Stolley v. Board of County Commissioners*, 910 F.3d 1129 (10th Cir. 2018).

### c. Retaliation

The Intervenors can establish their retaliation claims by way of the familiar *McDonnell-Douglas* framework, showing "(1) that [he or] [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011). Like Title VII, Section 1981 prohibits retaliation against those who oppose discrimination. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445–46 (2008). The required showing is identical, and thus, "the principles set forth in Title VII retaliation cases apply with equal force" to a 1981 retaliation claim. *Twigg*, 659 F.3d at 998.

The Intervenors need not show that they were subjected to an "ultimate" adverse employment action, but rather, that Defendant took a materially adverse action against them. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–64, 67–68 (2006). An act is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks and citation omitted). The "materially adverse" standard is lower than the showing adverse action showing required for a discrimination claim, and sets a "relatively low bar." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595–96 (6th Cir. 2007).

As set forth in the Intervenors' operative Complaints, they were subjected to harassment, including racial invective and verbal and physical abuse, and disciplined or discharged in retaliation for requesting religious accommodations or complaining about unlawful treatment by co-workers and supervisors. *See, e.g.,* Doc. 504 at ¶¶ 12-31. The Intervenors have provided

individual examples in support of these allegations in their pleadings. *See, e.g.*, *id*. at ¶¶ 59(l)-59(m). In the event that the Court holds that more detailed allegations are warranted, the record of the case is replete with examples, and the Intervenors respectfully request that they be granted leave to amend their Complaints, in order to provide these details.

### d. Hostile Work Environment

Like their discrimination and retaliation claims, the Intervenors' hostile work environment claims are analyzed the same way whether under Title VII and Section 1981. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 (10th Cir. 1997). A claim of hostile work environment harassment is established showing that "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'" *Bloomer v. United Parcel Service, Inc.*, 94 Fed. Appx. 820, 825 (10th Cir. 2004) (quoting *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998)). Severity alone can satisfy the first prong of the inquiry, as with a single serious incident; pervasiveness can also satisfy it, as with "a relentless pattern of lesser harassment that extends over a long period of time." *Tademy v. Union Pacific Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008). While the offensiveness of the work environment is a subjective and objective inquiry, the Intervenors "need not demonstrate psychological harm," nor show that their work "suffered as a result of the harassment." *Walker v. United Parcel Service of America, Inc.*, 76 Fed.Appx. 881, 885 (10th Cir. 2003) (unpublished) (citing *Penry v. Fed. Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (10th Cir. 1998)). Further, there is no requirement that the Intervenors show that they suffered an independent harm in order to make their hostile work environment claims actionable. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993) (noting that, "the very fact that the

discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.").

As set forth in the Intervenors' operative Complaints, they were subjected to racial invective, verbal and physical abuse, and disparate treatment by the Defendant because of their race, national origin, and religion, or in retaliation for their requests for accommodation or complaints of unlawful treatment. *See, e.g.,* Doc. 504 at ¶¶ 12-31. These well-pled allegations include examples of extraordinarily hostile racial invective that was directed at the Intervenors. *Id.* at ¶¶ 23-24. In the event that the Court holds that more detailed allegations are warranted, the record of the case is replete with examples, and the Intervenors respectfully request that they be granted leave to amend their Complaints, in order to provide these details.

## V.  The Intervenors Should Be Given Leave to Amend in the Alternative

As noted in EEOC's Response, *see* Doc. 670 at 22-24, the more efficient way for JBS to obtain the additional facts that it argues are not present in the Complaints is to move forward with the case to Phase 2 discovery, consistent with the parties' proposals. *See* Docs. 634, 635, 638, and 657-659. In the event that the Court nevertheless feels that additional factual allegations are required before this next stage of the litigation occurs, the appropriate course of action would be to seek to include those facts in an amended complaint, rather than dismiss any claims outright. Indeed, the authorities cited by the Defendant in the Motions to Dismiss do not themselves support dismissal without an opportunity to amend. *See Carzorla*, 2013 U.S. Dist. LEXIS 201174, at *24-25; and *EEOC v. Dolgencorp, LLC*, No. 3:17-CV-023-MPM-RP, 2017 U.S. Dist. LEXIS 181061, at *6 (N.D. Miss. Nov. 1, 2017).

Under Rule 15, a district court "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15 (a)(2). "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits." *Calderon v. Kan. Dept. of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); *see Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) ("The purpose of [Rule 15] is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982))); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts . . . may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test his claim on the merits."). As a matter of policy, "Rule 15 . . . was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." *Minter*, 451 F.3d at 1207-08 (quoting *United States v. Hougham*, 364 U.S. 310, 316 (1960)). The Defendant can point to no prejudice that would result from permitting the Intervenors to clarify their claims prior to the commencement of Phase 2; indeed, the interests of justice and all of the parties are served by providing the Intervenors with opportunity to clarify any claims that the Court believes are inadequately pled, before the instant litigation proceeds further.

As such, the Abade and Abdi Intervenors are simultaneously moving to amend their respective Complaints to add additional detail regarding each of the Intervenors.

4. **CONCLUSION**

For the foregoing reasons, the Motions to Dismiss should be denied in their entirety, and the Intervenors' claims permitted to proceed to Phase 2 of this litigation, except where the Intervenors do not dispute the bases for dismissal, as described in Sections 3(II) and 3(III), *supra*.

In the alternative, the Intervenors request that any dismissal be entered without prejudice, and with leave to amend their operative Complaints in this matter.

Dated: April 14, 2020

Respectfully Submitted,

*s/ Diane King*
Diane King, Esq.
King & Greisen, LLP
1670 York St
Denver CO 80206
Phone: (303) 298-9878
Fax: (303) 298-9879
Email: king@kinggreisen.com


*s/ David Lichtenstein*
David Lichtenstein, Esq.
Law Office of David Lichtenstein, LLC
1556 Williams St, Suite 100
Denver CO 80218-1661
Phone: (303) 831-4750
Fax: (303) 863-0835
Email: dave@lichtensteinlaw.com

Counsel for the Abade, Asad Abdi, and Nafiso Abdi Intervenors


*s/ Raja Raghunath*
Raja Raghunath, Esq.
Workplace Rights Project
PO Box 372299
Denver CO 80237
Phone: (720) 808-1231
Fax: (720) 278-7814
Email: raghunathlawfirm@gmail.com

Counsel for the Abdulle Intervenors

15

        *s/ James Chiu*
James Chiu, Esq.
Law Office of James Chiu
1776 Vine St
Denver CO 80206
Phone: (970) 690-0955
Fax: (970) 353-9866
Email: james@chiulawoffice.com

Counsel for the Adan Intervenors