IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

and

IRAQ ABADE, et al.,

      Plaintiffs-Intervenors,

and

MARYAN ABDULLE, et al.,

      Plaintiffs-Intervenors,

v.

JBS USA, LLC,
d/b/a JBS Swift & Company,

      Defendant.

---

**ORDER**

---

This matter is before the Court on defendant JBS USA, LLC d/b/a JBS Swift & Company ("JBS" or "defendant")'s motions for judgment on the pleadings [Docket Nos. 660, 662, 663, and 664] and defendant's motions for partial judgment on the pleadings [Docket Nos. 661 and 665]. The Equal Opportunity Employment Commission ("EEOC") responded to defendant's first motion, which is directed toward the EEOC's complaint,

*see* Docket No. 670, and plaintiffs-intervenors ("intervenors") responded to the remaining five motions.  Docket No. 671.  Defendant replied.  *See* Docket Nos. 680 and 681.

## I.  BACKGROUND

The EEOC initiated this lawsuit against defendant on August 30, 2010, alleging unlawful employment practices on the basis of race, national origin, and religion, as well as raising claims of retaliation.  Docket No. 1 at 1-2.  Since the filing of the EEOC complaint, five groups of intervenors have filed complaints in intervention.  At present, the operative intervenor complaints can be found at Docket No. 61 (filed by the "Abade intervenors"), Docket No. 132 (filed by the "Asad Abdi intervenors"), Docket No. 236 (filed by the "Nafiso Abdi intervenors"), Docket No. 263 (filed by the "Adan intervenors"), and Docket No. 504 (filed by the "Abdulle intervenors").[1]  All intervenors raise substantially similar allegations, which closely mirror the EEOC's claims; specifically, intervenors allege that defendant engaged in unlawful employment practices when it discriminated against intervenors based on their race, national origin, color, or religion, subjected intervenors to harassment based on their race, national origin, color, or religion, failed to accommodate intervenors' religious practices, and retaliated against intervenors for engaging in protected activities.  *See, e.g.*, Docket No. 61 at 1-2.

On August 8, 2011, the Court issued an order bifurcating the case.  Docket No.

---

[1] The parties use these classifications to refer to the intervenor groups.  *See, e.g.*, Docket No. 661; Docket No. 671.  For purposes of consistency, the Court will use these classifications, when necessary, in this order.

116.  Phase I of the trial was to address three issues: (1) whether defendant engaged in a pattern or practice of unlawfully denying Muslim employees reasonable religious accommodations to pray and break their Ramadan fast from December 2007 through July 2011; (2) whether defendant engaged in a pattern or practice of disciplining employees on the basis of their race, national origin, or religion during Ramadan 2008; and (3) whether defendant engaged in a pattern or practice of retaliating against a group of Black, Muslim, Somali employees for engaging in protected activity in opposition to discrimination during Ramadan 2008.  *Id.*  The Court presided over a 16-day trial for Phase I from August 7 to August 31, 2017.  Docket Nos. 577-592.

On September 24, 2018, the Court issued its Phase I Findings.  Docket No. 620. It found that (1) while defendant had denied Muslim employees a reasonable religious accommodation to pray during Ramadan (other than in 2009 and 2010), the EEOC had not made a requisite showing that any employees suffered a materially adverse employment action as a result of defendant's policy denying unscheduled prayer breaks, *id.* at 82; (2) the EEOC had failed to prove that defendant's disciplinary actions during Ramadan 2008 were motivated by a discriminatory animus, *id.* at 90; and (3) the EEOC had failed to demonstrate that defendant's discipline of employees during Ramadan 2008 was for a retaliatory purpose rather for engaging in a work stoppage. *Id.* at 95.  The Court dismissed the EEOC's Phase I pattern or practice claims.  *Id.*  The Court denied the EEOC's motion for reconsideration or for certification of appeal on September 30, 2019.  Docket No. 653.  The Phase II trial, which is set to address the remaining individual claims, Docket No. 116 at 16, has not yet been scheduled.

3

On February 14, 2020, defendant filed six motions for full or partial judgment on the pleadings. Docket Nos. 660, 661, 662, 663, 664, 665. Defendant argues that many of the EEOC's and intervenors' claims should be dismissed for failure to state a claim. *See, e.g.*, Docket No. 662 at 2 ("This Rule 12(c) Motion . . . seeks dismissal of claims asserted by the Asad Abdi Intervenors" because "none of the Asad Abdi Intervenors have stated plausible claims for relief."). Generally, defendant argues that the EEOC's and intervenors' claims should be dismissed for failure to plead individualized allegations as to each aggrieved party. *See, e.g., id.* at 6. The EEOC and intervenors oppose defendant's motions. Docket No. 670; Docket No. 671.

## II.  LEGAL STANDARD

The Court reviews a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) much as it does a motion to dismiss pursuant to Rule 12(b)(6). *See Adams v. Jones*, 577 F. App'x 778, 781-82 (10th Cir. 2014) (unpublished) ("We review a district court's grant of a motion for judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion.") (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006)). The Court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Id.* at 782. To prevail, the moving party must show that "no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). A party may raise arguments that could be made in a motion under Rule 12(b)(6) in a motion under Rule 12(c). Fed.

R. Civ. P. 12(h)(2).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted).

## III.  ANALYSIS

As an initial matter, the EEOC and intervenors argue that defendant's motions are untimely and an improper vehicle to further defendant's arguments. Docket No. 670 at 5; Docket No. 671 at 6. In the alternative, they argue that their claims are

5

sufficiently pled, Docket No. 670 at 14; Docket No. 671 at 7, and state that, should the Court find their complaints deficient, they should be granted leave to amend.  Docket No. 670 at 22; Docket No. 671 at 12.

### A.   The Propriety of a Rule 12(c) Motion

The EEOC and intervenors argue that defendant's motions should be denied because they were filed "[o]ver eight years after the close of the pleadings and over six years after the dispositive motions deadline."  Docket No. 670 at 5.[2]  Defendant disagrees, asserting that the Rule 12(c) motions are timely because "[t]he Court has not yet entered any scheduling orders for Phase II, no discovery has occurred during Phase II, and . . . no [Phase II] trials have been set."  Docket No. 680 at 2.

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Ordinarily, a motion for judgment on the pleadings should be made promptly after the close of the pleadings."
5C Charles Alan Wright et al., Fed. Prac. & Proc. § 1367 (3d ed.).  A district court has discretion to deny a Rule 12(c) motion if a party engages in "excessive delay."  *Id.*

The Court finds that defendant's motions are timely.  While the Court is cognizant of the fact that the Rule 12(c) motions were filed almost ten years after the commencement of this case and several years after the filing of the operative complaints, the Court does not find that the delay in filing these motions is "excessive."

---

[2] Because intervenors adopt the EEOC's arguments, *see* Docket No. 671 at 6, the Court refers to the EEOC brief in considering these arguments.

On August 8, 2011, the Court bifurcated the trial and, in so doing, bifurcated discovery. Docket No. 116 at 16-17. Phase I discovery was limited to matters related to the Phase I pattern or practice claims. *Id.* at 17. The Court ordered that, "[a]fter Phase I, the parties will commence discovery on pattern or practice claims that were not bifurcated, on individual claims for punitive and compensatory damages, and on other non-overlapping discrimination claims." *Id.* Consistent this order, defendant waited until after the end of Phase I to file its motions for judgment on the pleadings.

"Generally, . . . a Rule 12(c) motion is considered timely if it is made early enough not to delay trial or cause prejudice to the non-movant." 5C Charles Alan Wright et al., Fed. Prac. & Proc. § 1367 (3d ed.). The Court finds that neither of these circumstances is present here. Consideration of defendant's motions will not delay the Phase II trial, which has not yet been scheduled. In addition, the EEOC and intervenors do not argue that they will be prejudiced if the Court rules on defendant's motions. Thus, the Court considers defendant's Rule 12(c) motion timely.

In the alternative, the EEOC and intervenors argue that the Rule 12(c) motions are an improper mechanism to further defendant's arguments. Docket No. 670 at 5. They assert that "Rule 12(c) is not meant to dispose of cases for technical pleading deficiencies, but only where there are no disputes on material issues of fact." *Id.* They argue that "the Court should . . . defer matters of factual sufficiency until trial or summary judgment briefing." *Id.* at 9. Defendant responds that Rule 12(c) provides a basis for dismissal of certain claims because a Rule 12(c) motion is analyzed under a Rule 12(b)(6) standard; thus, if the operative complaints do not state sufficient

plausible facts to state a claim for relief, the claims are subject to dismissal.  Docket No. 680 at 6-7.

The Court agrees with defendant insofar as defendant asserts that it is proper for the Court, at this time, to analyze the sufficiency of the operative complaints and remaining claims.  The question before the Court is not whether there are material disputes of fact, but whether – taking all of the claimants' allegations as true – the operative complaints sufficiently state a claim upon which relief can be granted.  *See* Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, and A. Benjamin Spencer, 5C Federal Practice & Procedure Civ. § 1370 ("[A] party moving for a judgment on the pleadings impliedly admits the truth of its adversary's allegations and the falsity of its own assertions that have been denied by that adversary."); *see also id.* at § 1368 ("[A] defendant will not succeed on a motion under Rule 12(c) if there are allegations in the plaintiff's pleadings that, if proved, would permit recovery on his claim.").  Thus, the Court will consider defendant's motions on the merits and determine whether the operative complaints would survive a Rule 12(b)(6) challenge.

Despite defendant's decision to file six separate motions for judgment on the pleadings, the arguments made across the latter five motions are substantially similar, if not identical, differing only with respect to which intervenors' claims are the subject of defendant's arguments.  Thus, the Court will first address the arguments made with respect to the EEOC's complaint; then, the Court will analyze each of the identical arguments made with respect to the intervenors together, with additional delineation for each sub-group of intervenors, if necessary.

### B.   The EEOC Complaint

#### 1.   *Specific, Individualized Allegations*

First, defendant argues that the EEOC's "remaining non-pattern or practice claims" should be dismissed because its complaint contains "no particularized allegations demonstrating that any specific individual has a plausible claim for relief." Docket No. 660 at 2, 5.  Defendant contends that, when the EEOC brings claims on behalf of individuals, the EEOC "stands in the shoes of the individual[s]" and must "plead facts showing that each individual has a plausible claim for relief." *Id.* at 4.  To defendant, this means that the EEOC must allege particularized facts as to each named, potentially aggrieved individual that would entitle each individual to relief.  *Id.* The EEOC disagrees, asserting that it is not required to plead specific claimant-by-claimant facts in order to survive a Rule 12(b)(6) motion to dismiss.  Docket No. 670 at 10.  The EEOC argues that it does not stand in the shoes of the individual claimants or act as a proxy for the individual claimants, but rather acts to "vindicate the public interest in preventing employment discrimination." *Id.* (quoting *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 326 (1980)).  According to the EEOC, all that is required is that its complaint provide notice of its claims to defendant; the EEOC maintains that it has done so.  *Id.*  Thus, the question before the Court is whether the EEOC must allege specific factual allegations as to each potentially aggrieved individual in order to sufficiently state a claim.

There are few cases addressing this issue, and even fewer discussing the issue at length.  Defendant relies on *Cazorla v. Koch Foods of Miss., LLC*, 2013 WL

9

11328253 (S.D. Miss. Aug. 28, 2013), for the proposition that, in order to survive a Rule 12(b)(6) motion, the EEOC must plead particularized facts sufficient to state a claim for each individual named in the complaint.  *See* Docket No. 660 at 4-5.  In *Cazorla*, the court dismissed – with leave to amend – the EEOC's hostile work environment and retaliation claims as to 111 aggrieved individuals on the basis that the EEOC had not pled particularized facts with respect to those individuals.  2013 WL 11328253, at *9. The court noted that, as to those 111 individuals, "[n]o other information [was] provided beyond their names" and a cursory allegation that the individuals were "aggrieved by unlawful discrimination."  *Id.* at *6.  The court concluded that, "absent *any* particularized facts, the [complaint] fail[ed] to state a claim for hostile-work environment or retaliation . . . as to the 111 newly added class members."  *Id.* at *7 (emphasis in original).

The EEOC relies on *E.E.O.C. v. United Parcel Service, Inc.*, 2013 WL 140604 (N.D. Ill. Jan. 11, 2013) ("*UPS*").  In *UPS*, the EEOC's complaint alleged specific facts with respect to two identified charging parties, but did not allege particularized facts for other "unidentified class members,"[3] on whose behalf the complaint had also been

---

[3] Defendant argues that *UPS* and a number of other cases that the EEOC cites which are not discussed in this order are inapplicable because they analyze the sufficiency of the complaint brought on behalf of a "class" of employees.  *See* Docket No 680 at 7-8.  The Court notes that there is

some inconsistency in pertinent decisions with regard to the word 'class.' [C]ourts sometimes casually describe actions of this type as 'class' actions or actions brought by the EEOC on behalf of a 'class' of employees.  Such shorthand is a bit misleading.  Technically, an EEOC enforcement action is not a class action brought in accordance with Fed. R. Civ. P 23.

*E.E.O.C. v. Original Honeybaked Ham Co. of Ga., Inc.*, 918 F. Supp. 2d 1171, 1177 (D.

brought.  *Id.* at *1.  Specifically, the complaint

> identifie[d] the statutes that UPS allegedly violated; the time frame in
> which the alleged violations occurred; the names of two presently
> identified victims; a general description of the class of aggrieved persons;
> the specific claims alleged and their elements as to the charging party
> and the class of aggrieved persons; the types of conduct to which the
> named claimants and the unidentified class were subjected; and the
> remedies being sought.

*Id.* at *6.  The court considered "whether the factual allegations in the first amended

complaint [were] sufficient to raise the possibility of relief above the 'speculative level'

for the unidentified class members."  *Id.* at *5.  Ultimately, the court found that the

allegations were sufficient to permit a reasonable inference that the defendant had

discriminated against the unnamed individuals.  *Id.* at *6 (citing *Iqbal*, 556 U.S. at 678).

The court determined that "*Iqbal* and *Twombly* do not require plaintiffs, including

EEOC, to plead detailed factual allegations supporting the individual claims of every

potential member of a class."  *Id.*  Noting that "the unique role of the EEOC is such that

courts generally have allowed complaints with 'class' allegations comparable to those

asserted [in *UPS*] to move forward, both pre- and post-*Twombly* and *Iqbal*," the court

concluded that the EEOC was not required to plead individualized facts with respect to

every person with a potential claim against the defendant.  *Id.*

---

Colo. 2013).  In fact, the *UPS* court acknowledged as much, stating that, "[a]s EEOC is
not subject to the strictures of Fed. R. Civ. P. 23, . . . the other workers are not
members of a 'class' as the term is typically understood."  2013 WL 140604, at *1 n.1.
The *UPS* court used the term "class" to refer to the unnamed individuals on whose
behalf the EEOC asserted its claims "[a]s a matter of convenience, and in accordance
with the parties' practice."  *Id.*  Thus, to the extent that defendant argues that the cases
relied upon by plaintiff are inapplicable simply because the decisions refer to a group of
aggrieved individuals as a "class," the Court finds the argument unpersuasive.

The Court finds the outcome in *UPS* more convincing than that in *Cazorla*. First, the Court looks to the purpose of an EEOC enforcement action and the role that the EEOC serves in filing such a lawsuit. "When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Gen. Tel. Co.*, 446 U.S. at 326. The Supreme Court has indicated that Congress's purpose in establishing the EEOC's private-action enforcement power under the 1972 amendments to Title VII was to "implement the public interest as well as to bring about more effective enforcement of private rights." *Id.* However, "[t]he amendments did not transfer all private enforcement to the EEOC;" rather, "[t]he EEOC's civil suit was intended to supplement, not replace, the private action." *Id.* In an EEOC enforcement action, "the EEOC [does not] bring claims on behalf of, or stand in the shoes of, individual plaintiffs." *Honeybaked Ham*, 918 F. Supp. 2d at 1177. Rather, "the EEOC brings a claim in its own capacity." *Id.*; *see also In re Bemis Co., Inc.*, 279 F.3d 419, 421 (7th Cir. 2002) ("The EEOC's primary role is that of a law enforcement agency."). Thus, contrary to defendant's assertion, *see* Docket No. 660 at 4,[4] the EEOC does not stand in the shoes of an individual plaintiff and does not necessarily assume the pleading requirements of an individual upon

---

[4] To support its argument that the EEOC must plead individualized facts, defendant cites to the Court's bifurcation order, in which the Court stated that, "[i]n a § 706 case, the EEOC stands in the shoes of the individual who filed the charge, and can only bring claims that the individual could have brought himself." *See* Docket No. 660 at 4; *see also* Docket No. 116 at 8 (Bifurcation Order). The Court used this language to distinguish a Title VII § 706 claim from a Title VII § 707 claim. *Id.* The Court explained that, while § 707 permits the EEOC to bring pattern or practice claims, section 706 permits the EEOC to sue on behalf of individuals. *Id.* The Court's order makes no finding with respect to the EEOC's pleading requirements in a § 706 case.

whose behalf the lawsuit is brought.  *See EEOC v. Gen. Elec. Co.,* 532 F.2d 359, 373 (4th Cir. 1976) (stating that the EEOC's interest in an enforcement action is "broader (in scope) than the interests of the charging parties"); *see also Gen. Tel. Co.*, 446 U.S. at 326 ("[T]he EEOC is not merely a proxy for the victims of discrimination.").

With this in mind, the Court turns to Rule 8 of the Federal Rules of Civil Procedure.  Under this rule, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which "give[s] the defendant fair notice of what *the plaintiff's claim is* and the grounds upon which it rests."  *McNamara v. Brauchler*, 570 F. App'x. 741, 743 (10th Cir. 2014) (unpublished) (emphasis added).  Here, the plaintiff is the EEOC, acting as a civil enforcement agency to vindicate the public interest in preventing employment discrimination, not the individual charging parties upon whose behalf the case has been brought.  Thus, the merits of the EEOC's claims do not depend on the efficacy of any one charging party's potential claim.  See *Honeybaked Ham*, 918 F. Supp. 2d at 1177 ("In an enforcement action, the EEOC brings a claim in its own capacity.  If it prevails on its claim, then it can seek a variety of remedies, including a monetary award for those individuals who were aggrieved by the unlawful conduct.") (quotation omitted); *see also In re Bemis*, 279 F.3d at 421 ("[I]t is merely a detail that [the EEOC] pays over any monetary relief obtained to the victims of the defendant's violation rather than pocketing the money itself and putting them to the bother of suing separately.").  Moreover, if an EEOC enforcement action is intended to supplement, but not replace, a private action, *Gen. Tel. Co.*, 446 U.S. at 326, and if "[i]ndividuals can also intervene to

assert their own claims" in an EEOC enforcement action, *Honeybaked Ham*, 918 F. Supp. 2d at 1176, it would make little sense to hold the EEOC to the individual-specific pleading standard for which defendant advocates, when each aggrieved individual can intervene in the action and pursue his or her own private claims.  The Court finds that the EEOC can give defendant fair notice of its claims, and the grounds upon which they rest, without pleading specific, individualized facts establishing that each charging party is entitled to relief.   *See E.E.O.C. v. Thomas Dodge Corp. of N.Y.*, 524 F. Supp. 2d 227, 234 (E.D.N.Y. 2007) (finding that the EEOC's allegations, substantially similar to those at issue here, were sufficient to state a claim because they contained "[a] clear statement from the plaintiff alleging discrimination by the defendant").

Unlike *Cazorla*, where there were no facts alleged as to the 111 individuals in question besides a conclusory assertion that they were discriminated against, the EEOC has pled sufficient facts to put defendant on notice of its claims.  Similar to *UPS*, the EEOC has alleged the statutes under which its claims are brought, Docket No. 1 at 2, ¶ 3; the time frame in which the discrimination and harassment allegedly occurred, *see, e.g., id.* at 7, ¶ 45; the names of the aggrieved parties, *id.* at 3, ¶ 8; the bases upon which the aggrieved parties were allegedly discriminated, *id.* at 3-4, ¶ 10; the types of conduct to which the aggrieved parties were subjected, *see, e.g., id.* at 4-5, ¶¶ 20-21; and the remedies sought.  *Id.* at 12; *UPS*, 2013 WL 140604, at *6.  The Court finds that these allegations are sufficient to put defendant on notice of the EEOC's claims.  *See E.E.O.C. v. 5042 Holdings Ltd.*, 2010 WL 148085, at *2 (N.D.W. Va. Jan. 11, 2010) (holding that complaint sufficiently stated a claim as to unnamed aggrieved individuals

where the complaint included "1) the statutes defendant allegedly violated; 2) the time frames of the alleged violations; 3) the identity of the alleged perpetrators; 4) the name of one presently identified victim and a description of the class of aggrieved persons; 5) the specific claims alleged and their elements as to [the charging party] and the class of aggrieved persons; 6) the types of defendant conduct to which [the charging party] and the class were subjected; and 7) the remedies being sought"). The Court finds that the EEOC is not required to plead individualized or particularized facts as to each charging party in order to state a claim.

Beyond its overarching specificity argument, defendant makes narrower arguments with respect to the EEOC's discrimination, religious accommodation, and retaliation claims. *See* Docket No. 660 at 6-8. The Court will address these in turn.

### 2. The EEOC's Discriminatory Discipline or Discharge Claim

Defendant argues that the EEOC's discriminatory discipline or discharge claim should be dismissed because it is "based on the suspensions and terminations that occurred in connection with the September 2008 walkout" and because it fails to identify which individuals "were disciplined or discharged for the walkout, or delineate which individuals were employed only before or after the walkout (and who, therefore, could have no claims related to the walkout)." Docket No. 660 at 6. Specifically, defendant points to certain aggrieved individuals who were not discharged in connection to the 2008 walkout and argues that, because these individuals remained employed with defendant after the walkout, the EEOC cannot raise a plausible discrimination claim with respect to these employees. *Id.* at 6-7.

15

The EEOC responds that its discrimination claim is not limited to the 2008 walkout.  Docket No. 670 at 15.  It argues that the allegations in the complaint "show[] the EEOC's claim extends beyond the termination and discipline of employees during Ramadan 2008."  *Id.*  The Court agrees with the EEOC that its discrimination claim is not as narrow as defendant suggests; reading the allegations in the light most favorable to the EEOC, the EEOC has sufficiently alleged discrimination extending beyond the 2008 walkout.  *See, e.g.*, Docket No. 1 at 11, ¶ 70 ("Since *at least* September 2008, Defendant has violated *and continues to violate* . . . Title VII") (emphasis added); *id.*, ¶ 72 ("Somali employees were directed not to come to work and/or were not allowed to return to their shift because of their religion, national origin, and/or because they had requested or needed a religious accommodation."); *id.* at 5, ¶ 23 ("Somali and Muslim employees were discriminatorily denied bathroom breaks."); *id.*, ¶ 25 ("Somali and Muslim employees were disciplined and continue to be disciplined more harshly than non-Somali and non-Muslim employees.").  Thus, the Court rejects defendant's argument that, because certain individuals remained employed with defendant after the walkout, the EEOC fails to state a claim as to those individuals.

With respect to defendant's argument that the discriminatory discipline or discharge claim must be dismissed because "the EEOC has not asserted any individualized allegations establishing a plausible claim for any particular Charging Party or aggrieved individual," Docket No. 660 at 7 (emphasis omitted), the Court has already determined that the EEOC is not required to plead such particularized facts in

16

order to state a claim.  For these reasons, the Court rejects defendant's arguments with respect to the EEOC's discriminatory discipline or discharge claim.  See *EEOC v. FedEx Ground Package Sys., Inc.*, 158 F. Supp. 3d 393, 405 (W.D. Pa. 2016) (finding that the EEOC had sufficiently pled a disability discrimination case on behalf of charging parties and other unnamed individuals when the EEOC alleged, generally, that the aggrieved individuals were qualified and disabled under the ADA, that they were employed by or applicants for employment by defendant, and that they suffered injuries when defendant failed to accommodate their disabilities).

### 3.  The EEOC's Religious Accommodation Claim

Next, defendant argues that the EEOC's claim that the charging parties were denied a religious accommodation ("religious accommodation claim") should be dismissed.  Docket No. 660 at 7.  It invokes the Court's Phase I Findings of Fact and Conclusions of Law ("Phase I Findings"), in which the Court determined that "freestanding" religious accommodation claims – i.e., claims based solely on the denial of a religious accommodation without an accompanying adverse action – are not viable claims.  *See id.*; *see also* Docket No. 620 at 57 (Phase I Findings).  Defendant asserts that the EEOC fails to state a religious accommodation claim  because its complaint "fails to allege which Charging Parties and aggrieved individuals experienced which, if any, adverse employment actions."  Docket No. 660 at 8.  The EEOC asserts that the Court can reconsider its previous order, *see* Docket No. 670 at 18, and, in the alternative, argues that it adequately pled its religious accommodation claim.  *Id.* at 19.

"'[A]n employment discrimination plaintiff need not plead a prima facie case of

discrimination' to survive a motion to dismiss." *Johnston v. Hunter Douglas Window Fashions, Inc.*, 715 F. App'x 827, 830 (10th Cir. 2017) (unpublished) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). "The prima facie case under *McDonnell Douglas*" in employment discrimination cases "is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510. To survive a Rule 12(b)(6) motion, a plaintiff "must satisfy only the simple requirements of Rule 8(a)." *Id.* at 513. With that said, "[w]hile the 12(b)(6) standard does not require that [the plaintiff] establish a prima facie case in [the] complaint, the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim." *Khalik*, 671 F.3d at 1192.

Defendant acknowledges that the EEOC need not plead a prima facie case of its religious accommodation claim, but notes that "the Court dismissed the EEOC's Phase I pattern or practice accommodation claim because the EEOC failed to tie any alleged failures to accommodate to any adverse employment actions," which defendant asserts "rais[es] a substantial question as to whether [the EEOC] will fare any better in Phase II." Docket No. 681 at 8.[5]

The Court disagrees with defendant. Finding that the EEOC had not met its burden of proof after trial is an entirely different, and much higher, standard than determining whether the EEOC has sufficiently pled a religious accommodation claim.

---

[5] This argument is made in defendant's reply to intervenors' response. *See* Docket No. 681 at 8. However, in defendant's reply to the EEOC's response, defendant incorporates its response to intervenors' same argument made by the EEOC. *See* Docket No. 680 at 9-10.

Moreover, the Court declines the EEOC's invitation to reconsider its Phase I Findings of Fact and Conclusions of Law, as it has already denied the EEOC's motion to reconsider.  *See* Docket No. 653.  Instead, the Court finds that its Phase I Findings do not impact the EEOC's pleading standard.  As the Court set out in a previous order, "*Abercrombie*[6] simply restates and interprets the preexisting statutory provisions of Title VII . . ., and does not alter the pleading requirements for such claims in a way relevant to this case."  Docket No. 501 at 2.  Thus, the question before the Court remains whether the EEOC has put defendant on notice of the scope of its religious accommodation claim.

"[A] plaintiff may establish [a prima facie religious accommodation case] by showing that (1) she had a bona fide religious belief that conflicted with an employment requirement; and (2) her need for an accommodation was a motivating factor in the employer's decision to take an adverse employment action against her."  *EEOC v. Jetstream Ground Servs., Inc.*, 134 F. Supp. 3d 1298, 1318 (D. Colo. 2015).  In its complaint, the EEOC alleges that defendant failed to accommodate the charging parties' religious practices or beliefs by denying them opportunities to pray during work and denying their requests to move their scheduled breaks to align with their required prayer times.  Docket No. 1 at 4, ¶¶ 15-18; *id.* at 5-6, ¶¶ 29-31.  The EEOC also alleges that the charging parties were retaliated against for requesting religious accommodations.  *Id.* at 8, ¶ 46.

_____

[6] The Court relied on *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033 (2015), in finding that "freestanding" religious accommodation claims are not viable.  *See* Docket No. 620 at 57.

The Court finds that the EEOC has stated a religious accommodation claim. This is not a case where defendant is unable to determine the scope or nature of the EEOC's claim. *See, e.g.*, *Pretlow v. James*, 2014 WL 3778832, at *3 (W.D. Okla. July 31, 2014) (finding that the plaintiff had failed to state a religious accommodation claim where the complaint "contain[ed] no facts that would support any of the[] elements of a religious accommodation claim"). Instead, the EEOC alleges that the charging parties had a bona fide religious belief, that they requested an accommodation in accordance with that belief, and that they were, at the very least, denied the accommodation. This is sufficient to state a religious accommodation claim.

### 4.   The EEOC's Retaliation and Hostile Work Environment Claims

Finally, defendant argues that the EEOC's retaliation claim and its hostile work environment claim must be dismissed for failure to allege particularized facts for each aggrieved individual. Docket No. 660 at 8-10. For the reasons set forth above, the EEOC is not required to plead particularized facts with respect to each charging party. The Court finds that the EEOC's allegations sufficiently put defendant on notice as to the scope of these claims. For example, the EEOC alleges that the Muslim charging parties had requested a religious accommodation to pray and that they were retaliated against for making this request. Docket No. 1 at 5-6, ¶¶ 29-32. It describes the time frame from which these claims arise and sets out the statute under which the claim is brought. *Id.* at 9, ¶ 56. In addition, the EEOC alleges that Black, Somali, and Muslim employees were subjected to harassment from management, supervisors, and co-workers, describes the type of harassment that these employees faced, *id.* at 4-5,

¶¶ 19-22, and describes the time frame in which this harassment occurred.  *Id.* at 10, ¶ 61.  The EEOC alleges the harassment was based on these individuals' race, national original, and religion.  *Id.* at 4, ¶ 19.  The Court finds that the EEOC has sufficiently pled retaliation and hostile work environment claims.  See *5042 Holdings*, 2010 WL 148085, at *2.

Because the Court finds that the EEOC has adequately pled the claims that defendant challenges, defendant's motion for judgment on the pleadings with respect to the EEOC's complaint [Docket No. 660] will be denied.

### C.  The Intervenor Complaints

#### 1.  Class Action Allegations

First, defendant argues that the intervenors' pattern or practice claims should be dismissed because they are not asserting class action claims.  Docket No. 662 at 3.[7] Specifically, defendant argues that "[o]nly the government or a certified class may assert pattern or practice claims."  *Id.* (citing *Daniels v. UPS*, 701 F.3d 620, 632 (10th Cir. 2012)).  In their response, intervenors state that, while they maintain that evidence of defendant's alleged pattern or practice of unlawful behavior "remain[s] available to [intervenors] to prove their claims" and that defendant's allegedly discriminatory and retaliatory conduct is relevant to the intervenors' individual claims, they "agree to drop these claims."  Docket No. 671 at 7.  The Court construes this as a concession of

---

[7] Citations to identical arguments made across defendant's latter five motions will be made to Docket No. 662 unless otherwise specified.

dismissal of these claims.  Thus, to the extent that defendant seeks dismissal of the intervenors' pattern or practice claims, the motions for judgment on the pleadings are granted.

### 2. Religious Discrimination Under Section 1981

Next, defendant argues that the Abade, Asad Abdi, Nafiso Abdi, and Adan intervenors' claims under 42 U.S.C. § 1981 must be dismissed "because § 1981 does not cover religious-based discrimination or retaliation."  Docket No. 662 at 4; *see also Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971 (10th Cir. 1979) ("Section 1981 does not apply to sex or religious discrimination.").  Thus, defendant asserts that, to the extent that intervenors' claims are based on alleged religious discrimination, they must be dismissed.  Docket No. 662 at 4.  Intervenors respond that they "do not disagree with the Defendant's assertion that Section 1981's prohibition on race and national origin discrimination does not extend to the protected class of religion."  Docket No. 671 at 7.  However, they state that they "do not assert any claims of religious discrimination pursuant to Section 1981, nor do they intend to."  *Id.*  Because intervenors have clarified that they do not raise claims of religious discrimination under § 1981,[8] the Court finds that defendant's argument is moot.

### 3. Intervenors' Discriminatory Discipline or Discharge Claims

Defendant argues that intervenors' discriminatory discipline or discharge claims

---

[8] The Abade, Nafiso Abdi, and Adan intervenors seek to amend their complaints to "clarify any ambiguity with regard to the particular statutes under which [they] are alleging religious discrimination."  Docket No. 671 at 6-7; *see also* Docket Nos. 672, 673, and 678.  These intervenors' motions to amend are currently referred to Magistrate Judge Kristen L. Mix.  *See* Docket Nos. 674, 675, and 679.

should be dismissed.  Docket No. 662 at 6.  Specifically, defendant argues that the Asad Abdi, Nafiso Abdi, and Adan intervenors' discriminatory discipline or discharge claims should be dismissed because their complaints fail to specify which intervenors were discharged or disciplined.  *See, e.g., id.*  In addition, defendant argues that fifteen[9] of the Abade intervenors' discrimination claims should be dismissed because there are no allegations of any discharge or discipline as to these fifteen intervenors. Docket No. 661 at 10.  Finally, defendant argues that (1) four of the Abdulle intervenors' discrimination claims should be dismissed because, according to defendant, their claims are based on consequences of the 2008 walkout and there are no allegations that these four Abdulle intervenors participated in the walkout, Docket No. 665 at 7; (2) two of the Abdulle intervenors' discrimination claims must be limited to just discriminatory discipline rather than discriminatory discharge, *id.*; (3) two of the Abdulle intervenors have failed to state a discrimination claim based on retaliation for requesting a religious accommodation, *id.* at 6; and (4) one of the Abdulle intervenors failed to state a discrimination claim based on engaging in protected activity.  *Id.* at 7-8.

In response, intervenors assert that their discriminatory discipline or discharge claims are not limited to the 2008 walkout.  Docket No. 671 at 7-8.  Rather, they state that their "claims cover the entirety of each of their individual periods of employment,

---

[9] The Court's ruling is limited to the claims of those fifteen Abade intervenors expressly referenced in defendant's motion.  *See* Docket No. 661 at 8 (asserting that intervenors Abdirizak Abdi, Magamed Abdullahi, Mahad Abdulle, Fardowsa Ali, Mohamud Farah, Mohamednoor Farah, Muno Farah, Sadiyo Hussein, Ibrahim Iman, Ali Hussein Karshe, Idris Ali Mohamed, Mohamed A. Mohamed, Qorane Omar, Ahmed Osman, and Hashim Yusek have failed to state a claim).

within the statutory limitations period, whether or not the employment concluded in or around September 2008," *id.* at 8, and that "[t]here is a great deal of actionable misconduct that the Defendant engaged in after that time period that is at issue in this action, and has been set forth in well-pled allegations." *Id.* at 9.  In support, they cite to allegations in the Abdulle intervenors' complaint alleging discriminatory discipline or discharge based on circumstances unrelated to the 2008 walkout.  *See id.*; *see also* Docket No. 504 at 10-20, ¶¶ 56-60.  Intervenors, however, do not direct the Court to any specific allegations in the Abade, Asad Abdi, Nafiso Abdi, or Adan intervenors' complaints that specifically set forth the discriminatory discipline or discharge suffered by each of those intervenors.  *See* Docket No. 671 at 9.

### a.  Abade, Asad Abdi, Nafiso Abdi, and Adan Intervenors

"Under the *McDonnell Douglas* test, a prima facie case of discrimination requires that (1) Plaintiff belong to a protected class; (2) he suffered adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Steele v. Stallion Rockies Ltd*, 106 F. Supp. 3d 1205, 1216-17 (D. Colo. 2015).  "While the 12(b)(6) standard does not require that [a claimant] establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [the claimant] has set forth a plausible claim." *Khalik*, 671 F.3d at 1192.  To sufficiently state a claim of discriminatory discipline or discharge under Rule 12(b)(6), intervenors must plead facts demonstrating that each intervenor suffered from a discriminatory discipline or discharge.  *See In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1215-16 (D. Kan. 2015) ("[I]n

24

the absence of a specific allegation that each and every plaintiff[]" suffered an injury, general allegations that all plaintiffs were injured are insufficient to state a plausible claim for relief); *Carey v. Lawton Corr. Facility*, 2008 WL 200053, at *3 (W.D. Okla. Jan. 24, 2008) (a complaint must "alleg[e] facts which, if true, would entitle *each Plaintiff* to relief") (emphasis added).

While intervenors need not establish a prima facie case at this stage of the litigation, the prima facie elements of a discrimination case are relevant to the Court's inquiry as to whether intervenors have stated a plausible claim. *Khalik*, 671 F.3d at 1192.  Here, an essential element of a discriminatory discipline or discharge claim is that the claimant was, in fact, disciplined or discharged.  *See Kloke v. Buckley Indus., Inc.*, 1996 WL 363032, at *9 (D. Kan. June 28, 1996) (discussing elements of discrimination claim under both Title VII and § 1981).  Intervenors' complaints fail to allege that intervenors were.  First, the intervenors cite to no allegations in the Abade, Asad Abdi, Nafiso Abdi, or Adan intervenors' complaints setting forth facts demonstrating that each individual intervenor suffered discriminatory discipline or discharge.  *See generally* Docket No. 671.  "It is not incumbent on the Court to review" these four complaints "to determine whether some allegation might make out" a discriminatory discharge or discipline claim as to each individual intervenor.  *Airquip, Inc. v. HomeAdvisor, Inc.*, 16-cv-01849-PAB-KLM, 2017 WL 4222618, at *5 (D. Colo. Sept. 21, 2017).  Regardless, these intervenors' complaints do not indicate which individuals were discharged and which received lesser forms of discipline, and they provide no details as to the type of non-discharge discipline intervenors experienced, if

any.  *See, e.g.*, Docket No. 263 at 7, ¶ 32 (alleging that "Plaintiffs/Intervenors were disciplined and continue to be disciplined more harshly than non-Somali and non-Muslim employees, or were disciplined for conduct that others were not," but providing no details as to which intervenors were disciplined or what type of discipline intervenors allegedly received).

The key difference between the EEOC's complaint and intervenors' complaints is that the EEOC's complaint gives defendant sufficient notice of "what the [EEOC's] claim is and the grounds upon which it rests."  *McNamara*, 570 F. App'x. at 743.  In contrast, intervenors here have not specifically alleged any elements of a discriminatory discipline or discharge claim as to any intervenor, so as to determine whether any intervenor can state a plausible claim for relief.  General claims of discipline or discharge are insufficient.  *See Khalik*, 671 F.3d at 1193 ("Plaintiff's general assertions of discrimination and retaliation, without any details whatsoever of events leading up to her termination, are insufficient to survive a motion to dismiss.").  The Court finds that the Abade, Asad Abdi, Nafiso Abdi, and Adan intervenors have not stated a plausible discrimination claim.  To the extent that defendant seeks dismissal of the these intervenors' discriminatory discipline or discharge claims, defendant's motion is granted.

### b.  Abdulle Intervenors

Defendant raises a number of arguments advocating for the dismissal of some Abdulle intervenors' discrimination claims, both in the context of their discrimination arguments and their retaliation arguments.  *See generally* Docket No. 665.  First,

defendant argues that Rahma Arr, Abdirashid Hussein, Faysal Ibrahim, and Abdirasak Issa's fifth and tenth claims, which are discrimination claims, should be dismissed for failure to allege that they participated in or were discharged for the 2008 walkout.  *Id.* at 7.  However, as explained above, the Court agrees with intervenors that their discrimination claims are not limited to conduct associated with the 2008 walkout, as the Abdulle intervenors' complaint alleges that each of the challenged intervenors experienced discriminatory discipline or discharge unrelated to the 2008 walkout.  *See* Docket No. 504 at 10-20, ¶¶ 55-60.  In fact, defendant appears to concede in its reply that these allegations state a plausible disciplinary discharge or discipline claim for the Abdulle intervenors.  *See* Docket No. 681 at 5 ("The problem is that – with the exception of the Abdulle Intervenors' Amended Complaint . . . – none of [the] purported 'actionable misconduct' is identified or alleged by the Intervenors in their complaints."); *see also id.* at n.3 (describing the Abdulle complaint as "the only complaint filed by the Intervenors containing any significant individualized allegations").  Thus, to the extent that defendant seeks to dismiss these four Abdulle intervenors' discriminatory discipline or discharge claims on the basis that they failed to allege discipline or discharge for the 2008 walkout, *see* Docket No. 665 at 7, its motion is denied.[10]

In addition, defendant argues – threaded within its retaliation arguments – that

---

[10] Additionally, defendant asserts that intervenors Maryan Abdulle's and Raawi Sahal's fifth and tenth claims should be dismissed "to the extent [that these claims] are based on being discharged in connection with the walkout."  Docket No. 665 at 7. However, intervenors' fifth and tenth claims are not limited to discharge from the walkout.  *See* Docket No. 504 at 23-24, 28-29.  Thus, the Court sees no reason to grant the piecemeal dismissal that defendant seeks.

Faysal Ibrahim's fifth claim and Rahma Arr's fifth and tenth claims – all discrimination claims – should be dismissed for failure to state a claim. *Id.* at 6, 8. Defendant asserts that these intervenors' "fifth claim[] for relief alleges that JBS disciplined or discharged the Intervenors in retaliation for requesting religious accommodations" and argues that, because these intervenors did not allege that they requested a religious accommodation, or "tie any alleged adverse actions to any requests for accommodations," their fifth claims for relief should be dismissed. *Id.* at 6-7. With respect to Ms. Arr's tenth claim, a discrimination claim, defendant asserts that this claim should be dismissed for failure to allege that Ms. Arr "complained of discrimination or harassment, or engaged in any other protected activity" or suffered retaliation in conjunction with that protected activity. *Id.* at 8. Defendant makes this same argument with respect to Ms. Arr's fifth claim. *See id.*

The Court is not convinced by defendant's arguments. With respect to defendant's argument that Ms. Arr's and Mr. Ibraham's fifth claims for relief must be dismissed for failure to allege that they requested a religious accommodation, the Court notes that the claim is not limited to alleged discipline or discharge based on requesting a religious accommodation; rather, the complaint alleges that these individuals were "disciplin[ed] or discharg[ed] . . . because of their race (Black), color (Black), national origin (Somali), religion (Muslim), and/or in retaliation for requesting religious accommodation and/or in retaliation for engaging in protected activity by complaining about discrimination and/or harassment." Docket No. 504 at 24, ¶ 87. Mr. Ibrahim alleges he was treated worse than his non-Black, non-African, non-Muslim

coworkers.  *See, e.g., id.* at 13-14, ¶ 58.  In addition, Ms. Arr alleges that she was subject to disparate discipline.  *See, e.g., id.* at 10-11, ¶ 56.   Thus, any failure to allege that Ms. Arr or Mr. Ibrahim did not request a religious accommodation is not fatal to these intervenors' fifth claim for relief.

Defendant's alternative argument with respect to Ms. Arr's fifth and tenth claims suffers from the same deficiency.  The Abdulle intervenors' tenth claim for relief contains substantially similar language to their fifth claim for relief, alleging that intervenors were disciplined or discharged based on their race, color, and/or in retaliation for engaging in the protected activity of complaining about discrimination or harassment.  *See id.* at 28, ¶ 121.  Thus, the fact that Ms. Arr did not allege that she complained of harassment or discrimination does not necessitate dismissal of her fifth or tenth claims.  To the extent that defendant seeks dismissal of these claims, its motion is denied.

### 4.  *Intervenors' Retaliation Claims*

#### a.  **Asad Abdi, Nafiso Abdi, and Adan Intervenors**

To state a claim of retaliation under Title VII, a plaintiff must allege that (1) the plaintiff "engaged in protected activity;" (2) the plaintiff "suffered an adverse employment action;" and (3) "there is a causal connection between [the] protected activity and the adverse employment action."  *Davis v. United Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014).  These elements similarly apply to a retaliation claim under § 1981.  *See Muller v. Pearson-Chavez*, 2017 WL 4534840, at *3 (D.N.M. Feb. 7, 2017); *see also Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1265 (10th Cir. 2013)

(quoting *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009) ("[E]lements of § 1981 claim 'are generally identical' to those for a Title VII claim").  Defendant argues that the Asad Abdi, Nafiso Abdi, and Adan intervenors have failed to sufficiently allege "which – if any – of the Intervenors . . . engaged in protected activity," and have not adequately alleged "any facts demonstrating a potential connection between [protected activity] and a materially adverse employment action."  Docket No. 662 at 9.  Intervenors respond that they "have provided individual examples in support of these allegations in their pleadings."  Docket No. 671 at 10-11.  However, intervenors' argument suffers from the same deficiencies as their earlier arguments, namely, that the intervenors cite only to the Abdulle intervenors' complaint for examples of individual allegations.  *See id.*  Intervenors do not cite to any allegations in the Asad Abdi, Nafiso Abdi, or Adan intervenors' complaints plausibly alleging that these intervenors engaged in a protected activity.  Thus, to the extent that defendant seeks dismissal of the Asad Abdi, Nafiso Abdi, or Adan intervenors' retaliation claims, defendant's motion will be granted.

### b.  Abdulle Intervenors

Defendant argues that Mr. Ibrahim's third claim for relief, and Ms. Arr's third, sixth, and seventh claims for relief, which raise claims of retaliation, should be dismissed.  Docket No. 665 at 6-8.  Specifically, defendant asserts that Ms. Arr and Mr. Ibrahim "fail to state a plausible claim for retaliation based on requesting religious accommodations" because intervenors do not "allege they requested religious accommodations, and their allegations do not tie any alleged adverse actions to any requests for accommodations."  *Id.* at 6-7.  Intervenors respond that, generally, the

Abdulle intervenors sufficiently pled that "they were subjected to harassment, including racial[,] invective[,] and verbal and physical abuse, and disciplined or discharged in retaliation for requesting religious accommodations or complaining about unlawful treatment by co-workers and supervisors."  Docket No. 671 at 10.

Unlike Ms. Arr's and Mr. Ibrahim's discrimination claims, these intervenors' retaliation claims are limited to specific alleged bases of retaliation.  Specifically, their third claim alleges retaliation for requesting a religious accommodation, Docket No. 504 at 22, and their sixth and seventh claims allege retaliation for the protected activity of complaining about discrimination or harassment.  *Id.* at 25.  With respect to Mr. Ibrahim, intervenors allege that Mr. Ibrahim was retaliated against for complaining of discrimination, *id.* at 14-15, ¶ 58k, but do not allege that Mr. Ibrahim requested a religious accommodation or that he was retaliated against for requesting such accommodation.  *See id.* at 13, ¶ 58.  This missing allegation is an essential element of a retaliation claim under Title VII or § 1981.  *Davis*, 750 F.3d at 1170.  Thus, intervenors' allegations are presently insufficient to state a claim for Mr. Ibrahim's third claim for relief – retaliation for requesting a religious accommodation.

With respect to Ms. Arr, while the Abdulle intervenors' complaint alleges that she suffered disparate treatment as compared to her non-Somali coworkers, *see* Docket No. 504 at 10-11, ¶ 56, the complaint does not allege that Ms. Arr engaged in protected activity, such as complaining about this disparate treatment or requesting a religious accommodation.  *See id.*  Thus, the allegations are insufficient to state a retaliation claim.  *Davis*, 750 F.3d at 1170.   The Court finds that the Abdulle intervenors have not

sufficiently stated a claim of retaliation as to Mr. Ibrahim's third claim or to Ms. Arr's third, sixth, or seventh claims.  Thus, to the extent that defendant seeks dismissal of these claims, defendant's motion is granted.

### c.  Abade Intervenors

Defendant argues that fifteen Abade intervenors' third and sixth claims for relief – two retaliation claims[11] – should be dismissed.[12]  Docket No. 661 at 11.  Defendant asserts that, for these fifteen intervenors, "the Complaint is devoid of any allegation that they engaged in protected activity or suffered any adverse action."  *Id.*  As set forth above, intervenors have not pointed to any specific citations from the Abade intervenors' complaint demonstrating that these intervenors have alleged that they engaged in protected activity or suffered any adverse action, *see* Docket No. 671 at 10-11, and the Court will not parse through the Abade intervenors' complaint to determine whether each of these fifteen intervenors have alleged that he or she engaged in a protected activity or suffered an adverse employment action.  *Airquip*, 2017 WL 4222618, at *5.  The Court will grant defendant's motion and dismiss the fifteen Abade intervenors' third and sixth claims for relief.

### 5.  Intervenors' Hostile Work Environment Claims

Defendant seeks to dismiss the Abade, Asad Abdi, Nafiso Abdi, and Adan

---

[11] The Abade intervenors' third claim alleges retaliation for requesting religious accommodations, *see* Docket No. 61 at 30, while the sixth claim alleges retaliation for complaining of discrimination or harassment.  *Id.* at 33.

[12] Defendant also argues that the Abade intervenors' ninth claim should be dismissed.  Docket No. 661 at 11.  However, this claim – a discriminatory discharge or discipline claim – has already been addressed and dismissed by the Court.

intervenors' hostile work environment claims on the basis that these intervenors have failed to make individualized allegations stating a plausible claim for relief.  Docket No. 662 at 9.  Specifically, defendant asserts that "[t]here is nothing in the [complaints] . . . that indicates which of [the] harassment allegations may – or may not – apply to any specific Intervenor and his or her claims."  *Id.* at 10.  Intervenors assert that their operative complaints set forth allegations of "racial[,] invective, verbal and physical abuse, and disparate treatment by Defendant," citing the Abdulle intervenors' complaint in support.  Docket No. 671 at 12.  However, defendant does not seek to dismiss any of the Adulle intervenors' hostile work environment claims.  *See* Docket No. 665; *see also* Docket No. 681 at 7.

"The elements of a hostile work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic . . .; and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."  *Asebedo v. Kan. State Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014) (unpublished).  The Tenth Circuit has determined that, because "one of the critical inquires in a hostile environment claim must be the environment," the general atmosphere of a work environment is relevant to a plaintiff's hostile work environment claim.  *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987) ("Evidence of a general work atmosphere . . . – as well as evidence of specific hostility directed toward the plaintiff – is an important factor in evaluating the [hostile work environment] claim.").

Intervenors assert that "there is no requirement that the Intervenors show that they suffered an independent harm in order to make their hostile work environment claims actionable." Docket No. 671 at 11. However, such an assertion contravenes the requirement that a plaintiff demonstrate that "the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Asebedo*, 559 F. App'x at 670.[13]

While intervenors have not cited any allegations in any of their complaints demonstrating that they have sufficiently pled hostile work environment claims, the Court has nevertheless reviewed the intervenors' complaints and finds that they are insufficient to state a claim. Generally, the complaints allege facts that could support a claim that defendant's harassment was pervasive or abusive. *See, e.g.*, Docket No. 236 at 5, ¶ 16 (alleging that intervenors were repeatedly denied the opportunity to pray and ridiculed for praying); *id.* at 6, ¶ 21 (alleging that intervenors were repeatedly targeted with racial slurs and epithets by their co-workers, as well as defendant's management). However, the complaints lack allegations that this harassment altered a term, condition, or privilege of the intervenors' employment. For example, the Abade,

_____

[13] Moreover, the case that intervenors rely on for this proposition, *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), does not concern the specific pleading requirements of a hostile work environment claim. Rather, in *Harris*, the Supreme Court clarified that a plaintiff need not suffer a tangible psychological injury to assert a hostile work environment claim. *Id.* at 21. In the opinion, the Supreme Court indicated that, "even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality." *Id.* at 22. Thus, intervenors have not cited any authority indicating that a plaintiff need not allege that a term, condition, or privilege of plaintiff's employment was altered as a result of a hostile work environment.

Asad Abdi, and Nafiso Abdi intervenors' complaints each allege that "[t]he harassment of Plaintiffs/Intervenors was sufficiently severe and/or pervasive to alter the terms and conditions of their employment," Docket No. 61 at 31, ¶ 174; Docket No. 132 at 15, ¶ 52; Docket No. 236 at 13, ¶ 69, but none of the complaints allege any specific facts detailing how the terms and conditions of these intervenors' employment were altered by the alleged harassment. "[A] formulaic recitation of the elements of a cause of action" is insufficient to state a claim under Rule 12(b)(6), *Twombly*, 550 U.S. at 555, and "a plaintiff must offer specific factual allegations to support each claim." *Lawrence v. Sch. Dist. No. 1*, 11-cv-02789-PAB-KMT, 2013 WL 791436, at *2 (D. Colo. Mar. 4, 2013); *see also Owens v. City of Barnsdall*, 2014 WL 2197798, at *4 (N.D. Okla. May 27, 2014) ("Plaintiff fails to provide any specific information regarding the sex discrimination she allegedly experienced or how such discrimination was sufficiently severe or pervasive to alter the conditions of her employment. Such general allegations do not state a plausible claim for a hostile work environment."). Thus, to the extent defendant argues that the Abade, Asad Abdi, Nafiso Abdi, and Adan intervenors have failed to sufficiently allege a hostile work environment claim, defendant's motion will be granted.

### 6. *Intervenors' Religious Accommodation Claims*

#### a.  Abade, Asad Abdi, Nafiso Abdi, and Adan Intervenors

Defendant argues that the Asad Abdi, Nafiso Abdi, and Adan intervenors, and fifteen of the Abade intervenors, *see* Docket No. 661 at 9, have failed to state a religious accommodation claim.  Docket No. 662 at 7.  Defendant's argument is

identical to its argument with respect to the EEOC's religious accommodation claim, asserting that, based on the Court's earlier ruling that "freestanding" religious accommodation claims are not viable, intervenors have failed to state a claim because they have not identified which intervenors were subject to which actionable conduct. *See id.*; *see also* Docket No. 620 at 57. Defendant asserts that, because these intervenors have not alleged which intervenors experienced an adverse action, and have not tied any alleged adverse actions to requests for a religious accommodation, intervenors have not alleged legally sufficient religious accommodation claims. Docket No. 662 at 8. Intervenors respond that, "even under the holdings of the Phase I order, . . . Intervenors could make a showing that specific aggrieved individuals were denied religious accommodation, and suffered some additional adverse action." Docket No. 671 at 9.[14] However, intervenors do not cite to any allegations, in any of their complaints, to support their argument. *See id.*

The Court is not convinced by intervenors' assertion that they "could" make a showing that some specific individuals were denied a religious accommodation and suffered an accompanying adverse action. A Rule 12(b)(6) motion analyzes whether a plaintiff has made a showing that he or she is entitled to relief, not whether there is some abstract possibility that the plaintiff could, at some future point, make such a showing. *See E.E.O.C. v. Pitre, Inc.*, 908 F. Supp. 2d 1165, 1171 (D.N.M. 2012) ("In

---

[14] Intervenors also "reiterate that [the Phase I Findings] remain subject to revision under Fed. R. Civ. P. 54(b)." Docket No. 671 at 9. Given that the Court has already denied the EEOC's motion for reconsideration, *see* Docket No. 653, the Court declines to revise its earlier order.

considering Rule 12(b)(6) motions, courts must look within the four corners of the complaint, accept all well-pleaded factual allegations as true, and determine if the plaintiff is plausibly entitled to relief."); *see also Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).  Similar to the Court's analysis on intervenors' other claims, the Court finds that these intervenors have failed to state a religious accommodation claim, as they have not identified which intervenors were denied a religious accommodation and subject to an accompanying adverse action. *See, e.g.*, Docket No. 61 at 29-30, ¶¶ 162-166; Docket No. 132 at 13, ¶¶ 40-44; Docket No. 236 at 12, ¶¶ 57-61; Docket No. 263 at 11, ¶¶ 57-61.  Thus, the Court finds that it is appropriate to dismiss these intervenors' religious accommodation claims.

### b.  Abdulle Intervenors

Defendant asserts that two Abdulle intervenors – Ms. Arr and Mr. Ibrahim – have failed to state a religious accommodation claim.  Docket No. 665 at 8.  Defendant argues that neither intervenor alleged that he or she requested a religious accommodation so as to state a claim for an improper denial of a religious accommodation.  *Id.* at 6.  Intervenors do not respond to defendant's argument.  Docket No. 671 at 9.  However, requesting an accommodation is not a necessary element of a religious accommodation claim.  *Jetstream*, 134 F. Supp. 3d at 1317.  "A request for [a religious] accommodation, or the employer's certainty that [a religious] practice [requiring an accommodation] exists, may make it easier to infer motive, but is not a

necessary condition of liability." *Abercrombie.*, 135 S. Ct. at 2033.  For this reason, the

Court rejects defendant's argument that Ms. Arr and Mr. Ibrahim were required to allege

that they requested a religious accommodation in order to state a religious

accommodation claim and will deny defendant's motion to the extent it seeks dismissal

of these claims.  *See* Docket No. 665 at 6.

### 7.   *The Motions to Amend*

Concurrently with filing their responses to defendants' motions, the Abade, Asad

Abdi, and Nafiso Abdi intervenors filed motions to amend their complaints.  *See* Docket

Nos. 672, 673, and 678.  The motions seek leave to amend in the event that the Court

found any of these intervenors' claims insufficient.  *See, e.g.*, Docket No. 672 at 7

("Intervenors respectfully request that, *if the Court does not deny Defendant's Rule

12(c) Motions*[,] . . . the Court grant Intervenors leave to file the proposed Second

Amended Complaint.") (emphasis added).  The motions to amend are currently referred

to Magistrate Judge Kristen L. Mix.  Docket Nos. 674, 675, and 679.  Dismissal of

intervenors' claims will be without prejudice, subject to Magistrate Judge Mix's ruling on

the motions to amend.[15]

---

[15] The Adan intervenors and Adbdulle intervenors have not filed motions to
amend.  *See* Docket No. 671 at 13 ("the Abade and Abdi intervenors are
simultaneously moving to amend their respective complaints to add additional detail
regarding each of the Intervenors.").  While the Asad Abdi intervenors' motion to
amend is signed by counsel for both the Adan intervenors and the Abdulle intervenors,
Docket No. 673 at 7, the proposed amended complaint does not appear to incorporate
claims from the Adan or Abdulle intervenors.  *See* Docket No. 673-2.  However, that
these intervenors have not filed a motion to amend does not necessitate dismissal of
their claims with prejudice, and intervenors assert that they should be granted leave to
amend should the Court find their complaints insufficient.  *See* Docket No. 671 at 12.
While a motion cannot be made in a response, *see* D.C.COLO.LCivR 7.1(d),  the

## IV.  CONCLUSION

For these reasons, it is

**ORDERED** that Defendant's Motion for Judgment on the Pleadings Pursuant to

Fed. R. Civ. P. 12(c) (ECF No. 1) [Docket No. 660] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion for Partial Judgment on the Pleadings

Pursuant to Fed. R. Civ. P. 12(c) (ECF No. 61) [Docket No. 661] is **GRANTED IN PART**

and **DENIED IN PART** as set forth in this order.  It is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings Pursuant to

Fed. R. Civ. P. 12(c) (ECF No. 132) [Docket No. 662] is **GRANTED IN PART** and

**DENIED IN PART** as set forth in this order.  It is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings Pursuant to

Fed. R. Civ. P. 12(c) (ECF No. 236) [Docket No. 663] is **GRANTED IN PART** and

**DENIED IN PART** as set forth in this order.  It is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings Pursuant to

Fed. R. Civ. P. 12(c) (ECF No. 263) [Docket No. 664] is **GRANTED IN PART** and

**DENIED IN PART** as set forth in this order.  It is further

**ORDERED** that Defendant's Motion for Partial Judgment on the Pleadings

Pursuant to Fed. R. Civ. P. 12(c) (ECF No. 504) [Docket No. 665] is **GRANTED IN**

**PART** and **DENIED IN PART** as set forth in this order.  It is further

---

Court's dismissal of the Adan and Abdulle intervenors' claims will also be without
prejudice so as to permit these intervenors to file a motion to amend.

**ORDERED** that intervenors' pattern or practice claims – the Abade intervenors' first claim for relief, the Asad Abdi intervenors' first claim for relief, the Nafiso Abdi intervenors' first claim for relief, the Adan intervenors' first claim for relief, and the Abdulle intervenors' first claim for relief – are **DISMISSED** with prejudice.[16]  It is further

**ORDERED** that, insofar as intervenors' § 1981 discrimination claims – the Abade intervenors' seventh claim for relief, the Asad Abdi intervenors' seventh claim for relief, the Nafiso Abdi intervenors' seventh claim for relief, the Adan intervenors' seventh claim for relief, and the Abdulle intervenors' eighth claim for relief – can be read to assert a pattern or practice claim, the claims are **DISMISSED** with prejudice.  It is further

**ORDERED** that intervenors' discrimination claims – the Abade intervenors'[17] fifth, seventh, and ninth claims for relief, the Asad Abdi intervenors' fifth, seventh, and ninth claims for relief, the Nafiso Abdi intervenors' fifth, seventh, and ninth claims for relief, and the Adan intervenors' fifth, seventh, and ninth claims for relief  – are dismissed without prejudice.[18]  It is further

---

[16] Intervenors agree that they "will not assert [their pattern or practice claims] in any of their proposed Amended Complaints."  Docket No. 671 at 7.

[17] This dismissal is to the fifteen Abade intervenors expressly referenced in defendant's motion only.  *See* Docket No. 661 at 8.

[18] As a general matter, defendant seeks piecemeal dismissal of the majority of the Abade and Abdulle intervenors' claims.  *See, e.g.*, Docket No. 661 at 11-12; Docket No. 665 at 8-9.  Given the number of intervenors and claims in this case and the already complex nature of this case, the Court declines to carve intervenors' claims into viable and not-viable pieces to comply with defendant's request.  The Court will only grant the relief expressly requested and supported in defendant's motions.

**ORDERED** that intervenors' retaliation claims – the Abade intervenors'[19] third and sixth claims for relief, the Asad Abdi intervenors' third and sixth claims for relief, the Nafiso Abdi intervenors' third and sixth claims for relief, the Adan intervenors' third and sixth claims for relief, Ms. Arr's third, sixth, and seventh claims for relief, and Mr. Ibrahim's third claim for relief – are dismissed without prejudice.  It is further

**ORDERED** that intervenors' hostile work environment claims – the Abade intervenors' fourth and eighth claims for relief, the Asad Abdi intervenors' fourth and eighth claims for relief, the Nafiso Abdi intervenors' fourth and eighth claims for relief, and the Adan intervenors' fourth and eighth claims for relief – are dismissed without prejudice.  It is further

**ORDERED** that intervenors' religious accommodation claims – the Abade intervenors'[20] second claim for relief, the Asad Abdi intervenors' second claim for relief, the Nafiso Abdi intervenors' second claim for relief, the Adan intervenors' second claim for relief – are dismissed without prejudice.

DATED August 25, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[19] This dismissal is to the fifteen Abade intervenors expressly referenced in defendant's motion only.  *See* Docket No. 661 at 8.

[20] This dismissal is to the fifteen Abade intervenors expressly referenced in defendant's motion only.  *See* Docket No. 661 at 8.