IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

IRAQ ABADE, et al.,

    Plaintiffs-Intervenors,

v.

JBS USA, LLC, d/b/a JBS Swift & Company,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff-Intervenors Iraq Abade et al.'s (the "Iraq Abade Intervenors") **Motion for Leave to File Second Amend Complaint** [#672],[1] seeking leave to amend their First Amended Complaint [#61]; on Plaintiff-Intervenors Asad Abdi et al.'s (the "Asad Abdi Intervenors") **Motion for Leave to Amend Complaint** [#673], seeking leave to amend their Complaint [#132]; and on Plaintiff-Intervenors Nafiso Abdi et al.'s (the "Nafiso Abdi Intervenors") **Motion for Leave to Amend Complaint** [#678], seeking leave to amend their Complaint [#236] (collectively, the "Motions"). Defendant filed Responses [#682, #683, #687] in opposition to the Motions, and Plaintiff-Intervenors filed Replies

---

[1] "[#672]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

-1-

[#690, #691, #692]. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motions have been referred to the undersigned for disposition. *See* [#674, #675, #678]. The Court has reviewed the Motions, Responses, Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motions [#672, #673, #678] are **GRANTED**.

At the outset, the Court notes that the Motions [#672, #673, #678] were largely filed in response to Defendant's Motions for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) [#661, #662, #663], in which Defendant argued that the claims at issue did not contain sufficiently specific factual details. The Chief Judge granted in part and denied in part these Motions for Judgment [#661, #662, #663]. *Order* [#697]. At that time, he dismissed *with* prejudice the following claims: (1) the Iraq Abade Intervenors' first claim relating to pattern or practice; (2) the Asad Abdi Intervenors' first claim relating to pattern or practice, (3) the Nafiso Abdi Intervenors' first claim relating to pattern or practice, (4) the Iraq Abade Intervenors' seventh claim regarding § 1981 discrimination regarding pattern or practice, (5) the Asad Abdi Intervenors' seventh claim regarding § 1981 discrimination regarding pattern or practice, and (6) the Nafiso Abdi Intervenors' seventh claim regarding § 1981 discrimination regarding pattern or practice. *Id.* at 40.

The Chief Judge also dismissed *without* prejudice the following claims: (1)-(3) the Iraq Abade Intervenors' fifth, seventh, and ninth claims relating to discrimination, (4)-(6) the Asad Abdi Intervenors' fifth, seventh, and ninth claims relating to discrimination, (7)-(9) the Nafiso Abdi Intervenors' fifth, seventh, and ninth claims relating to discrimination; (10)-(11) the Iraq Abade Intervenors' third and sixth claims relating to retaliation; (12)-(13) the Asad Abdi Intervenors' third and sixth claims relating to retaliation; (14)-(15) the Nafiso Abdi

Intervenors' third and sixth claims relating to retaliation; (16)-(17) the Iraq Abade Intervenors' fourth and eighth claims relating to hostile work environment; (18)-(19) the Asad Abdi Intervenors' fourth and eighth claims relating to hostile work environment; (20)-(21) the Nafiso Abdi Intervenors' fourth and eighth claims relating to hostile work environment; (22) the Iraq Abade Intervenors' second claim relating to religious accommodation; (23) the Asad Abdi Intervenors' second claim relating to religious accommodation; and (24) the Nafiso Abdi Intervenors' second claim relating to religious accommodation.  *Id.* at 40-41.

The Court has discretion to grant a party leave to amend its pleadings.  Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  *Id.* (quoting Fed. R. Civ. P. 15(a)(2)).  Potential prejudice to a defendant is the most important factor in considering whether a plaintiff should be permitted to amend its complaint.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).  "Courts typically find prejudice only when the [proposed] amendment unfairly affects the defendants in terms of preparing their defense to [claims asserted in the] amendment."  *Id.* (quotation omitted).

Defendant opposes the present Motions [#672, #673, #678] on the basis of futility, undue delay, and undue prejudice.  The Court notes that the Chief Judge specifically stated that "[d]ismissal of [the majority of] intervenors' claims will be without prejudice, subject to

-3-

Magistrate Judge Mix's ruling on the motions to amend." *Order* [#697] at 38. Dismissal without prejudice is generally appropriate where claims, "upon further investigation and development, could raise substantial issues." *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990). Thus, the Chief Judge has indicated that these claims "could raise substantial issues" if leave to amend is permitted. Nevertheless, he explicitly left open the issue as to whether permission to amend should actually be granted, and therefore the undersigned examines whether amendment should be denied on the basis of futility, undue prejudice, or undue delay.

**A.     Futility**

Defendant's futility arguments are extremely underdeveloped, basically pointing to certain example Intervenors as not having asserted facts sufficient to support certain claims, without any discussion of the elements of or any legal authority regarding such claims. *Response* [#682] at 9-10; *Response* [#683] at 9-10; *Response* [#687] at 9. Given the utter paucity of argument here, the Court cannot find that the Motions should be denied on the basis of futility. In short, Defendant's "futility arguments are better addressed in a Motion to Dismiss." *Godfrey v. United States*, No. 07-cv-02165-MSK-MEH, 2008 WL 80302, at *2 (D. Colo. Jan. 7, 2008).

Accordingly, the Court declines to deny the Motions on the basis of Defendant's futility arguments.

**B.     Undue Prejudice**

The Court divides this discussion into two parts, the first regarding new retaliation claims which is specific to the Asad Abdi Intervenors, and the second regarding all other asserted prejudice, which encompasses Defendant's argument against the proposed

amendments by all Plaintiff-Intervenors.

### 1. New Retaliation Claims

Defendant states that "[e]leven of the Asad Abdi Intervenors, after recently receiving right to sue letters, seek to supplement their Complaint to add new retaliation claims." *Response* [#683] at 10. (citing [#673-2 ¶ 4).[2] Defendant argues that "several of these new retaliation claims are entirely different than the retaliation claims originally pled, which primarily focused on alleged retaliation following requests for prayer accommodations." *Id.*

However, of the eleven Asad Abdi Intervenors who are purportedly seeking to supplement their Complaint with new retaliation claims, Defendant only discusses allegations pertaining to five specific Intervenors.[3] *Id.* (citing [#673-2] ¶¶ 35, 56(f), 77(e), 93(g), 94(e)). These allegations are as follows:

> Ms. Rahma Abdi began working at JBS Swift on approximately May 12, 2008, and was terminated on or about December 18, 2009. Ms. Abdi worked in the Meat Cutter Department moving from the A shift to the B shift under supervisors Mirna Rinzo, Silvia Diaz, and Anna Espinoza. During her employment, she was subjected to various forms of discriminatory treatment including, for example, the following: a. Ms. Abdi asked her supervisors for permission to pray every day. Supervisor Espinoza told Ms. Abdi that her managers told her that prayer breaks were not allowed. Supervisor Diaz allowed Ms. Abdi to pray approximately three times. Supervisor Diaz then told Ms. Abdi that she could not pray anymore because the company did not want employees to take prayer breaks. b. Supervisors treated Ms. Abdi differently than her non-Somali, non-Muslim coworkers in a number of ways. For example, supervisors required Ms. Abdi [to] bring a supervisor with her

---

[2] Defendant actually cites Docket No. 672-2 here, but that appears to be a typographical error, because Docket No. 672-2 is the red-lined proposed amended complaint for the Iraq Abade Intervenors, while Docket No. 673-2 is the red-lined proposed amended complaint for the Asad Adbi Intervenors.

[3] The Court therefore rejects Defendant's generalized and unsupported argument as to the other six unidentified Intervenors, in light of the absence of any specific argument as to them.

> when she went to health services while non-Somali, non-Muslim workers were allowed to go to health services as needed. Likewise, Ms. Abdi was not allowed to use the restroom and faced disciplinary action when she did, while her non-Somali, non-Muslim coworkers were allowed to use the restroom without even asking for permission. On one specific occasion, Ms. Abdi's supervisors allowed the non-Somali, non-Muslim workers to use the restroom before Ms. Abdi. c. Managers frequently sent Ms. Abdi to the office without reason and required her to sign disciplinary documents. When Ms. Abdi refused to sign them, the union representative would sign them without her permission. d. Ms. Abdi suffered regular harassment from both her supervisors and her non-Somali, non-Muslim coworkers. They called her derogatory names like "nigger" and threw meat products at her. When Ms. Abdi complained to management about how she was treated, management told her that if she wanted her job she would have to put up with it. Management also told her she should get used to being called "nigger" and "the black lady." e. Ms. Abdi reported to Supervisor Rinzo that a non-Somali, non-Muslim coworker assaulted her with meat. When Supervisor Rinzo did nothing about this report, Ms. Abdi escalated her complaint to Manager Gilbert. After that report, Ms. Abdi was sent to Human Resources to speak to Matt Lovell. Mr. Lovell told Ms. Abdi that he would speak with her supervisor. The next day, Ms. Adbi was terminated. The non-Somali, non-Muslim employee who assaulted Ms. Abdi was not terminated. f. Aside from the harassment Ms. Abdi suffered personally, she also witnessed and heard of the harassment her Somali Muslim coworkers faced. For example, Ms. Abdi observed the vulgar, racist writing on the bathroom walls. g. Swift paid Ms. Abdi incorrectly for the position she held. When she reported this issue to her supervisor, he told Ms. Abdi, "That is what you are supposed to be paid."

[#673-2] ¶ 35.

> Mr. Ali injured his shoulder while on the job and JBS Health Services told him there was nothing wrong with his shoulder and to return to work. He went to urgent care and was diagnosed with a separated shoulder and told to not use his arm for at least one week and to see a doctor as soon as possible. After giving the note from Urgent Care, Health Services at JBS attempted to have Mr. Ali sign a letter stating that the injury did not occur at work. Mr. Ali refused to sign the letter. Although he returned with a note from a specialist indicating that he needed to continue on light duty, JBS told him he was fine and to return to his position working with knives. He was told that if he could not do that, he was not to return to work until he had a doctor's note. On November 21, 2012, he informed JBS that he could work light duty and would be able to provide a medical note after his appointment on December 6, 2012. He was terminated for "no call, no show." Mr. Ali filed a timely charge of discrimination/retaliation and received a Right to Sue on April 10, 2020.

*Id.* ¶ 56(f).

> Ms. Hassan requested and was granted three (3) months of Family Medical leave to care for a sick relative. Filling out the paperwork the day before she was leaving, she was informed that JBS had changed their policy and would only grant her a 2 ½ month Family Medical Leave. She explained that she made her travel arrangements based on her prior request for a three (3) month leave. She was given the choices of quitting, only going for 2 ½ months or not going at all. Due to scheduled travel arrangements and need to care for a sick family member, she was forced to constructively discharge. Ms. Hassan filed a timely charge of discrimination/retaliation and received a Right to Sue on April 10, 2020.

*Id.* ¶ 77(f).[4]

> Mr. [Mohamed A.] Mohamed was deposed on October 5, 2012. His supervisor was present at his deposition. On or around November 30, 2012 Mr. Mohamed requested that his supervisor not use profanity when speaking with him or when talking to a Somali female coworker. Supervisor Karim met with the Fabrication manager without Mr. Mohamed being present and then directed Mr. Mohamed to go home for the day. When he returned to JBS the following day, he was suspended until December 7, 2012. Before his suspension ended, Mr. Mohamed was fired. Mr. Mohamed filed a timely charge of discrimination/retaliation and received a Right to Sue on April 10, 2020.

*Id.* ¶ 93(g).

> Mr. [Zuleka] Mohamed worked for JBS from July 16, 2007 until he was terminated without explanation on April 23, 2012. He performed his work duties satisfactorily and believes that he was terminated due to the filing of a charge of discrimination in October 2010. Mr. Mohamed filed a timely charge of discrimination/retaliation and received a Right to Sue on April 10, 2020.

*Id.* ¶ 94(e).

Defendant asserts that "supplementation of a complaint should be denied when the new claim is unrelated to the initial action," *Lystn, LLC v. FDA*, No. 19-cv-01943-PAB-KLM, 2020 WL 248962, at *12 (D. Colo. Jan. 16, 2020), that prejudice "occurs when the

---

[4] Defendant cites paragraph 77(e) here, but from the context it appears that this was a typographical error and that Defendant meant paragraph 77(f).

amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues," *Minter*, 451 F.3d at 1208, and that "[w]hen the matters alleged in a supplemental pleading . . . will not promote judicial economy or the speedy disposition of the dispute between the parties, refusal to allow the supplemental pleading is entirely justified," 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1506 (3d ed.). *Response* [#683] at 10-11. While true, the Court finds, for the following reasons, that the proposed amendments should not be denied on this basis under the circumstances of this case.

First, regarding Ms. Rahma Abdi, it is not at all clear to the Court that she is actually asserting a retaliation claim. *See* [#673-2] ¶ 35. Nothing here explicitly states that she is asserting such a claim, and it is obvious from the remainder of the proposed amended complaint that her experienced counsel well know how to clearly state when a retaliation claim is at issue. Rather, this paragraph merely explicitly mentions discriminatory treatment. In addition, although the Court makes no substantive finding on this point, the Court notes that none of the allegations in this paragraph go to an *obvious* retaliation claim, to the extent that the Court could clearly infer that a retaliation claim was intended here.

Second, the allegations regarding Mr. Zuleka Mohamed, specifically that he was fired following his filing of a charge of discrimination, fit squarely into the Asad Abdi Intervenors' Claim Six from their original Complaint [#132], which concerned retaliation for engaging in protected activity, i.e., reporting on purportedly unlawful discrimination. *See* [#673-2] ¶ 94(e).

Third, regarding the allegations by Mr. Ali, Ms. Hassan, Mr. Mohamed A. Mohamed, and Mr. Zuleka Mohamed, all received their right-to-sue letters from the EEOC on April 10,

2020, a mere four days before filing their request to amend their original complaint.[5]  *See* [#673-2] ¶¶ 56(f), 77(e), 93(g), 94(e)).

Fourth, there can be no excessive surprise to Defendant as to the allegations by Mr. Ali, Ms. Hassan, Mr. Mohamed A. Mohamed, and Mr. Zuleka Mohamed, given that the charges of discrimination against the company had been working their way through the EEOC with Defendant's knowledge for some time before the right-to-sue letters were issued.

Fifth, and perhaps most importantly, all five of these Plaintiff-Intervenors clearly mention discrimination claims in relation to these allegations, but, crucially, Defendants have not contested that the discrimination portion of those claims may proceed.  *See Response* [#683] at 10-11.  It would be utterly inefficient to permit the discrimination portions of these allegations to proceed while forcing some or all of the retaliation portions of these claims to be filed in a separate lawsuit, when all are apparently based on the same set of facts.

For these reasons, the Court finds that Defendant would not be *unduly* prejudiced, if at all, by permitting these proposed amendments on the basis that they purportedly assert new retaliation claims.

**2.    Other Prejudice**

The Court also cannot find that otherwise allowing Plaintiff-Intervenors to amend their complaints to clarify their allegations would cause any *undue* prejudice to Defendant. First, except to the limited extent discussed above, Plaintiff-Intervenors are not adding any

---

[5] Although not explicitly made by Defendant, the Court therefore rejects any undue delay argument here, to the extent one can be inferred.

new claims. *See Compls.* [#61, #132, #236]. Second, the new allegations appear to mostly, if not entirely, simply attempt to rectify the issue raised by Defendant in the Motions for Judgment, i.e., that the generalized allegations in the current complaints are insufficient without individualized allegations to adequately state claims. Clarification of claims alone is not enough to show that Plaintiff-Intervenors are attempting to make their claims a moving target—if anything, they are attempting to solidify the "target" of their current claims to make litigating this case simpler. Although Defendant argues that these new allegations "raise a host of new factual issues," Defendant points only to the naming of certain supervisors, managers, and coworkers who may have been involved in any alleged wrongdoing—all information which likely would have otherwise been uncovered during discovery in connection with the current claims. *See, e.g.*, *Response* [#682] at 8-9. None of these persons are named as additional parties to this lawsuit—all are, at most, witnesses. Simply put, the "prejudice" which arguably results from having to defend a lawsuit under the circumstances presented here is simply not deemed to be "undue" prejudice. *See, e.g.*, *Collins v. Ace Mortg. Funding, LLC*, 08-cv-01709-REB-KLM, 2008 WL 4457850, at \*1 (D. Colo. Oct. 1, 2008) ("The ordinary burdens associated with litigating a case do not constitute undue burden."); *see also RMD, LLC v. Nitto Americas, Inc.*, No. 09-2056-JAW-DJW, 2009 WL 10689046, at \*3 n.18 (D. Kan. Nov. 17, 2009) (stating that the "burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading") (quoting *U.S. for & on Behalf of Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989)). In short, Defendant has pointed to no portions of the proposed amended complaints which would cause it *undue* prejudice. *See Minter*, 451 F.3d at 1207.

Finally, the Court notes that a scheduling order has not yet been entered for Phase II of the litigation, which (if necessary) will involve determination of the individual plaintiffs' claims. Thus, Defendant will have adequate time to prepare its defenses and will not be prejudiced by the filing of the proposed amended complaints.

Accordingly, the Court declines to deny the Motions on the basis of Defendant's undue prejudice arguments.

**C.   Undue Delay**

Finally, the Court addresses the issue of undue delay. The Iraq Abade Intervenors filed their Amended Complaint [#61] on January 10, 2011. The Asad Abdi Intervenors filed their Complaint [#132] on November 4, 2011. The Nafiso Abdi Intervenors filed their Complaint [#236] on April 4, 2013. The present Motions [#672, #673, #678] were filed between April 14 and April 23, 2020. Thus, facially, it *appears* that there was excessive delay between the filing of the currently-operative complaints and the filing of the present Motions seeking amendment. However, this superficial conclusion is revealed as inappropriate when several other important considerations are taken into account.

First, Defendant filed Answers [#146, #240] to the operative complaints for the Asad Abdi and Nafiso Abdi Intervenors, without filing any Rule 12(b) or Rule 12(e) motions attacking the sufficiency of the allegations. Defendant did initially file a Motion to Dismiss Amended Complaint in Intervention (Abade, et al.) [#64] pursuant to Fed. R. Civ. P. 12(b)1, 12(b)(6), 12(b)(7), and 19, in response to the Iraq Abade Intervenors' operative complaint, *see* [#61], but it does not appear that any of the arguments made therein directly attacked the sufficiency of the claims on the merits, as opposed to making legal arguments on a

-11-

variety of other bases as to why the complaint should be dismissed.[6] Thus, as Plaintiff-Intervenors argue, it appears that the first "official" notice on the electronic docket that Defendant believed the operative complaints to be insufficiently detailed occurred with the filing of Defendant's Motions for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) [#661, #662, #663], all of which were filed on February 14, 2020 (likely, it seems, in anticipation of the imminent start of Phase II discovery, which will focus more on the individuals' claims). After receiving extensions of time in which to file responses to the Motions for Judgment, Plaintiff-Intervenors filed the present Motions [#672, #673, #678] between April 14 and April 23, 2020, on or around the same time as their responses were due. While it is certainly not Defendant's responsibility to alert Plaintiff-Intervenors to supposed defects in their complaints, this situation does go a long way in explaining the timing of the requests for leave to amend.

Second, as noted above, many Plaintiff-Intervenors received right-to-sue letters from the EEOC on April 10, 2020, and all three of the present Motions seeking to amend at least partially on that basis were filed within two weeks of those letters.

Third, it is clear that at least *some* allegations were developed during Phase I discovery, even if much of what was discovered was already within the knowledge of the Plaintiff-Intervenors. *See, e.g.*, *Response* [#682] at 6-7.

Although Defendant is correct that Plaintiff-Intervenors knew most if not all of these alleged facts long before they requested leave to amend, the Court finds that the other considerations outlined above mitigate that issue. In short, the Court finds that Plaintiff-

---

[6] This Motion to Dismiss [#64] was denied by the Chief Judge, *see Orders* [#99, #115], and Defendant filed an Answer [#106].

Intervenors have stated good cause for amendment because "[i]t is eminently reasonable to allow [them] to . . . amend [their operative complaints] so as to clarify their allegations." *Carriker v. ISS Facility Servs., Inc.*, No. 12-cv-02365-WJM-KLM, 2013 WL 5200254, at *2 (D. Colo. Sept. 16, 2013).

Accordingly, the Court declines to deny the Motions on the basis of Defendant's undue delay arguments.

### D. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motions [#672, #673, #678] are **GRANTED**.

IT IS FURTHER **ORDERED** that the Clerk of the Court shall accept the following documents for filing as of the date of this Order: (1) the Iraq Abade Intervenors' Second Amended Complaint [#672-1], (2) the Asad Abdi Intervenors' Amended Complaint [#673-1], and (3) the Nafiso Abdi Intervenors' Amended Complaint [#678-1].[7]

IT IS FURTHER **ORDERED** that Defendant shall answer or otherwise respond to the amended complaints in accordance with Fed. R. Civ. P. 15(a)(3).

Dated: February 8, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

[7] The Court notes that any claims which the Chief Judge dismissed with prejudice remain dismissed with prejudice, to the extent any of Plaintiff-Intervenors' claims could be construed as such. *Order* [#697] at 40.