## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02103-PAB-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Plaintiff,

and

IRAQ ABADE, et al.,

        Plaintiffs-Intervenors,

v.

JBS USA, LLC, d/b/a JBS SWIFT & COMPANY,

        Defendant.

---

## CONSENT DECREE

---

### I.    RECITALS

**1.**    This matter was instituted by Plaintiff Equal Employment Opportunity Commission ("EEOC"), an agency of the United States government, alleging that Defendant JBS USA, LLC, d/b/a JBS Swift & Company ("JBS"), violated Title VII of the Civil Rights Act of 1964, as amended, by discriminating against Black, Somali, and Muslim individuals by denying Muslim employees reasonable accommodations because of religion, allowing race, ethnic, and religious harassment in the workplace, and disciplining and discharging employees because of their national origin, religion, and/or in retaliation for their requests for religious accommodation.

53295312.1

2.      The EEOC, JBS, and all individuals who have sought and received Court

approval to intervene ("Plaintiff Intervenors"), in the above-captioned matter

(collectively the "Parties"), desiring to settle this action by an appropriate Consent

Decree ("Decree"), agree to the jurisdiction of this Court over the Parties to the Decree

and the subject matter of this action, and they agree to the power of this Court to enter a

Consent Decree enforceable against JBS.

3.      The EEOC and JBS participated in the Court's Phase I trial on August 7, 2017,

through August 31, 2017. On October 30, 2018, the Court entered its Phase I Findings of

Fact and Conclusions of Law (ECF No. 620 "Phase I Findings"). The Phase I Findings

resolved the EEOC's Phase I claims in this case in JBS's favor and the court dismissed

those claims.

4.      As to the issues resolved herein, this Decree is final and binding upon the Parties

to the Decree and all successors and assigns. The EEOC, Plaintiff Intervenors, and JBS

jointly request this Court to adjudge as follows:

THEREFORE, upon the consent of the Parties to this Decree, and upon review by

the Court of these terms, it is ORDERED, ADJUDGED, and DECREED that the

following terms are approved as set forth herein:

## II.      JURISDICTION

5.      This Decree is made and entered into by and between the EEOC, JBS, and all

Plaintiff Intervenors in the above-captioned lawsuit.

6.      The EEOC, JBS, and Plaintiff Intervenors stipulate to the jurisdiction of the Court

over the Parties to this Decree and subject matter of this action and have waived the entry

of further findings of fact and conclusions of law.

7.      The term of this Decree and all obligations hereunder shall be two (2) years

("Term") from the date the Court signs, enters, and/or adopts this Decree (the "Effective

Date"). This Court shall retain jurisdiction of this matter for purposes of compliance,

final disposition of the claims of any Plaintiff Intervenor who cannot be located or fails to

respond, and any disputes that may arise hereunder.

### III.     ISSUES RESOLVED

8.      This Decree resolves all claims alleged in the above-captioned lawsuit, including

all claims asserted by the EEOC and the Plaintiff Intervenors, to include Phase I claims,

Phase II claims, and all claims encompassed in the Charges of Discrimination listed in

Attachment A and Attachment B (to be filed under Level 1 Restriction). This Decree

resolves all claims, all appeals, and all potential appeals.

9.      JBS, together with its officers, managers, and successors, will not interfere with

the relief set forth herein, but shall cooperate in the implementation of this Decree.

### IV.     MONETARY RELIEF

10.     Upon the conditions and terms set forth below, JBS agrees to pay up to

$5,500,000.00 ("Settlement Amount"), as payment to Eligible Participants (as defined

below) for alleged lost wages and benefits, compensatory damages, interest, attorneys'

fees, and costs. The Settlement Amount shall be deposited to a Qualified Settlement Fund

Account, to be established by the Settlement Administrator (as defined below), according

to the following schedule and terms:

>      (a)     Every three (3) months after the notice of settlement is mailed/emailed, the
>              Settlement Administrator will provide a list to JBS, the EEOC, and
>              Plaintiff Intervenors of all Eligible Participants who have executed and
>              submitted a signed Waiver and Release Agreement (Attachment C) as of
>              that date (a "Quarterly List"), along with notice of the total sum of that
>              portion of the Settlement Amount allocated to such Eligible Participants,

plus the amount of associated employer payroll taxes due from JBS on such amounts allocated to lost wages, together the "Quarterly Payment Notice."

(b)    Within ten (10) business days after receiving each Quarterly List and Quarterly Payment Notice from the Settlement Administrator, JBS will submit a deposit ("Quarterly Deposit") in an amount corresponding to the Quarterly Payment Notice to the Qualified Settlement Fund Account.

(c)    Within ten (10) business days after each Quarterly Deposit, the Settlement Administrator will issue payments to all Eligible Participants appearing on the corresponding Quarterly List.

(d)    The process described in paragraphs (a)-(c) above will repeat every 3 months from the date the initial notice of settlement is mailed or emailed until the end of the Term.

(e)    The Settlement Administrator shall notify the Parties when 75% of Plaintiff Intervenor Eligible Participants have returned a signed Waiver and Release Agreement. Within ten (10) business days of such notification from the Settlement Administrator, JBS shall submit the balance of the $5,500,000 Settlement Amount to the Qualified Settlement Fund Account ("Final Deposit"). Should the Final Deposit become due prior to any of the Quarterly Deposits, no further deposits will be due or owing by JBS other than the Final Deposit.

(f)    Should less than 75% of Plaintiff Intervenor Eligible Participants return a signed Waiver and Release Agreement during the Term, a Reduced Final Deposit shall be paid, if necessary, after expiration of the Decree. The Reduced Final Deposit will be calculated as the sum of amounts allocated, per the Allocation List (defined below in Paragraph 18(a)), to all Eligible Participants who returned a signed Waiver and Release Agreement during the Term, plus the amount of associated payroll taxes due from JBS on such amounts allocated to backpay, less the amount of all Quarterly Deposits. After making the Reduced Final Deposit, if owed, under this paragraph, JBS shall have no further obligation or liability whatsoever to deposit any more amounts to the Qualified Settlement Fund Account. Every Eligible Participant who returns a signed Waiver and Release Agreement during the Term will be paid in full the amount allocated to him or her on the Allocation List.

(g)    Notwithstanding (e) and (f), JBS agrees that, upon expiration of this Decree, if more than 75% of Plaintiff Intervenor Eligible Participants have returned a signed Waiver and Release Agreement at the end of the Term, any undistributed balance of the Qualified Settlement Fund Account remaining at the end of the Term will be disbursed at the sole discretion of

the EEOC either (a) equally to Eligible Participants who previously returned a signed Waiver and Release Agreement and were sent a prior payment from the Settlement Amount, or (b) to a charity benefiting Somali refugees living in Colorado as designated by the EEOC.

11.     An "Eligible Participant" is (a) any individual who filed a charge of discrimination listed in Attachment A (which includes all charges used as the basis of the above-captioned lawsuit) or Attachment B (a list of all charges against JBS arising from the Greeley plant and pending with the EEOC as of March 25, 2021; ), (b) any individual identified by the EEOC as an aggrieved individual in the above-captioned lawsuit and listed in Attachment A, (c) any individual named as a Plaintiff Intervenor in the above-captioned lawsuit and listed in Attachment A, or (d) the estate of any Eligible Participant under (a), (b), or (c) who is deceased.

12.     The Settlement Amount includes attorneys' fees and costs, and no Eligible Participant receiving payment from the Settlement Amount will be entitled to receive any additional money for his or her attorneys' fees or costs.

13.     The EEOC, in its sole discretion, will determine how the Settlement Amount will be allocated among all Eligible Participants, and its allocation will be specified in the Allocation List as defined in Paragraph 18(a), below, and/or as specified in Paragraph 23 below, if needed. Allocation of the Settlement Amount among all Eligible Participants listed in Attachment A will be in an equal amount to be determined by the EEOC for damages, with such amount to be divided equally between backpay reportable on an IRS Form W-2 and other damages reportable on an IRS Form 1099-MISC, exclusive of separate allocation amounts for costs and attorneys' fees as applicable. Allocation of the Settlement Amount among Eligible Participants listed in Attachment B will be in an equal amount to be determined by the EEOC for damages, with such amount to be

divided equally between backpay reportable on an IRS Form W-2 and other damages

reportable on an IRS Formn1099-MISC, exclusive of separate allocation amounts for

costs and attorneys' fees as applicable. However, if an Eligible Participant is listed in

both Attachment A and Attachment B, such Eligible Participant will receive the

allocation listed in Attachment A only.

**14.**     Payments from the Qualified Settlement Fund Account will be made in

accordance with the Allocation List, as defined in Paragraph 18(a) below, and the terms

set forth in Paragraphs 10 and/or 22. Payments to Eligible Participants will be allocated

between backpay, reportable on an IRS Form W-2; other damages, including

compensatory damages, reportable on an IRS Form 1099-MISC, box 3; and, if

applicable, attorneys' fees and costs to those individuals represented by Plaintiff

Intervenors' Counsel, paid directly to the law firm and reportable on an IRS Form 1099-

MISC.

**15.**     JBS will not condition the receipt of individual relief upon an Eligible

Participant's agreement to: (a) maintain as confidential the terms of this Decree or the

facts of the case; (b) waive his or her statutory right to file a charge with any federal or

state anti-discrimination agency; or (c) refrain from reapplying for a position at any of

JBS's locations throughout the United States.

**16.**     In addition to the Settlement Amount specified in Paragraph 10 above, JBS shall

be responsible for paying the employer share of payroll taxes for payments from the

Qualified Settlement Fund allocated to backpay and reported on an IRS Form W-2.

**17.**     Within thirty (30) calendar days of the Effective Date of this Decree, JBS will

contract with a third-party settlement administrator, not employed by or associated with

JBS (the "Settlement Administrator"). All fees of the Settlement Administrator will be paid by JBS, including fees and costs for all distributions. The Settlement Administrator will be responsible for the following:

(a)   mailing to each Eligible Participant a Notice of Settlement drafted by the EEOC and/or Plaintiff Intervenors' counsel, and printed in both English and Somali languages;

(b)   using reasonable efforts to obtain updated addresses, telephone numbers, and/or email addresses for Eligible Participants as necessary and re-mailing or emailing any returned mail or returned email;

(c)   receiving, recording, and storing signed Waiver and Release Agreements, and completed IRS Forms W-9 for Plaintiff Intervenors' counsel and counsel representing any individual listed in Attachment B;

(d)   establishing a Qualified Settlement Fund Account into which JBS will deposit the Quarterly Deposits and Final Deposit or Reduced Final Deposit in accordance with the terms set forth in Paragraph 10, above;

(e)   issuing payments from the Qualified Settlement Fund Account to Eligible Participants who sign and return a Waiver and Release Agreement and their attorneys in accordance with the Allocation List and the terms set forth in Paragraphs 10 and/or 22;

(f)   prior to issuing any payment to an Eligible Participant, (i) receiving written approval from the Eligible Participant's counsel or the EEOC to issue payment, and (ii) verifying identity through receipt of copies of the Eligible Participant's government issued photo identification (such as a passport or driver's license) and social security number or Tax Identification Number (if known). For those Eligible Participants who have changed their names, the Settlement Administrator shall also require proof of their previous name and current legal name;

(g)   withholding taxes from any payment designated as backpay;

(h)   calculating the employer's share of payroll taxes and communicating to JBS the amount it owes for the employer's share of payroll taxes;

(i)   remitting all withheld taxes and employer payroll taxes to the appropriate tax authority;

(j)   issuing, preparing, and mailing to any Eligible Participant receiving payment all IRS Forms W-2 and 1099-MISC by January 31 of the

calendar year subsequent to payment from the Qualified Settlement Fund Account;

(k)     communicating as necessary with the EEOC's counsel, Plaintiff Intervenors' Counsel, and JBS's counsel;

(l)     tracking all necessary data regarding contact with individuals receiving payments from the Qualified Settlement Fund Account;

(m)    providing the EEOC's counsel, Plaintiff Intervenors' counsel, and JBS's counsel with a monthly report regarding the administration of the Qualified Settlement Fund, including the names of Eligible Participants who have submitted signed Waiver and Release Agreements, and for whom mail was returned and/or who otherwise have not made contact with the Settlement Administrator;

(n)     providing the EEOC's counsel, Plaintiff Intervenors' counsel, and JBS's counsel with a monthly report of the names of Eligible Participants who have not cashed their checks within thirty (30) days of checks being mailed;

(o)     establishing a telephone hotline which Eligible Participants may call and a website Eligible Participants may access to update the Settlement Administrator regarding his or her current contact information and submit signed Waiver and Release Forms;

(p)     obtaining necessary approval from the EEOC or the Eligible Participant's counsel, as required under Paragraph 17(f);

(q)     issuing the final distribution in conformance with Paragraph 10(g), above, after the end of the Term;

(r)     remailing to all Eligible Participants a Notice of Settlement if provided with a new address or email by the Eligible Participant, the EEOC, or Plaintiff Intervenors' counsel; and

(s)     engaging Somali translators as necessary to assist Eligible Participants who contact the Settlement Administrator.

**18.**     Within ninety (90) calendar days after the Effective Date, the EEOC and Plaintiff

Intervenors' counsel will provide JBS's counsel and the Settlement Administrator the

following documents:

(a)     A list of all Eligible Participants (the "Allocation List") in the form of an Excel spreadsheet, setting forth the name, Social Security Number or Tax

Identification Number (if known), last known mailing address, last known telephone number, last known email if available, whether the Eligible Participant is a Plaintiff Intervenor, amount due for backpay (reportable on an IRS Form W-2), amount due for other damages (reportable on an IRS Form 1099-MISC, Box 3); and amount due for attorneys' fees and costs (reportable on an IRS Form 1099-MISC). Once provided to JBS's counsel and the Settlement Administrator, the amounts due to each Eligible Participant for backpay, other damages, and attorneys' fees and costs as reflected in the Allocation List may not be altered or modified except as described in Paragraph 23.

(b)     A Notice of Settlement, printed in English and Somali, explaining the settlement and process for receiving payment from the Qualified Settlement Fund. The Notice will be prepared by Plaintiffs' counsel and provided to JBS's counsel and the Settlement Administrator for their input and suggestions.

**19.**     Within thirty (30) calendar days after receipt of the Allocation List, the Settlement Administrator will mail, and email if requested by the Eligible Participant, the EEOC, or Plaintiff Intervenors' counsel, the Notice of Settlement (in English and Somali) to each Eligible Participant on the Allocation List, together with a Waiver and Release Agreement (Attachment C, in English and Somali),  and a self-addressed return envelope, addressed to the Settlement Administrator. If emailed, no envelope will be provided but the Eligible Participant will be expected to make arrangements to have the necessary documentation provided to the Settlement Administrator directly or through his or her counsel. Between sixty (60) and ninety (90) days after the mailing/emailing of the Notice of Settlement, the Settlement Administrator will mail/email a reminder postcard to all Eligible Participants who have not submitted an executed Waiver and Release Agreement, with instructions and contact information for the Settlement Administrator (including the hotline telephone number and website).

20.     After approval under paragraph 17(f), each Eligible Participant who executes and submits a Waiver and Release Agreement will become entitled to payment from the Qualified Settlement Fund Account under the terms set forth in Paragraph 10, above. The Waiver and Release Agreement may be signed by a hand-written signature on a hard copy, or electronically through the website to be developed and maintained by the Settlement Administrator. The Eligible Participant shall have the option of receiving a paper check, having funds wired to his or her bank account, or having funds wired to a designated money transfer service . If the Eligible Participant opts for a paper check, the Eligible Participant may elect to have it mailed to a P.O. Box or alternative address or have it delivered to his or her counsel, if applicable. If funds are wired to a bank account or designated money transfer service, the Eligible Participant shall be responsible for all costs and fees charged by the sending or receiving bank or by the money transfer service associated with such transaction, which costs and fees will be deducted from the Eligible Participants' payment prior to distribution by the Settlement Administrator.

21.     If any mail sent to an Eligible Participant is returned as undeliverable, the Settlement Administrator will attempt to find an updated address or email address. If an updated address or email address can be found, the item will be re-mailed or emailed as set forth in Paragraph 17. If an updated address or email address cannot be found, the Settlement Administrator will provide the EEOC's counsel, Plaintiff Intervenors' counsel, and JBS's counsel with the name and any available contact information for the Eligible Participant. EEOC and Plaintiff Intervenors' counsel may then provide any updated mailing, email, or other contact information for Eligible Participants to the Settlement Administrator.

22.    At the end of the Term of this Decree, any remaining balance in the Qualified

Settlement Fund Account will be disbursed in the sole discretion of the EEOC, as

follows:  (a) as to all remaining amounts allocated to Eligible Participants on Attachment

A, the EEOC will determine to either (i) distribute such amounts equally to those Eligible

Participants on Attachment A who were previously sent payments from the Settlement

Fund, or (ii) donate such amounts to a charity benefiting Somali refugees living in

Colorado designated by the EEOC; and (b) as to any remaining amounts allocated to

Eligible Participants on Attachment B, such amounts will be donated to a charity

benefiting Somali refugees living in Colorado designated by the EEOC.

23.    As to any Eligible Participant on Attachment A who cannot be located or fails to

respond before the end of the Term, JBS will seek dismissal with prejudice of their

claims for failure to prosecute after the end of the Term. The EEOC and Plaintiff

Intervenors' counsel will not oppose such efforts. As to any Eligible Participant on

Attachment B who cannot be located or fails to respond before the end of the Term, the

EEOC will issue a Notice of Right to Sue to such individual. The EEOC further agrees

that it will take no further investigatory or enforcement action in relation to any charge

listed in Attachment B. As to all Eligible Participants on Attachments A or B who cannot

be located or fail to respond before the end of the Term, all counsel agree to comply with

their obligations under Formal Ethics Opinion 128 (Ethical Duties of Lawyer Who

Cannot Contact Client).

## V.    OTHER INDIVIDUAL RELIEF

24.    Within thirty (30) days after the Effective Date, JBS shall ensure that its records

reflect that individuals listed in the Allocation List are eligible for rehire. All inquiries by

any prospective employer shall be directed to The Work Number, 1-800-660-3399,

Employer Code 14950. Pursuant to JBS's standard practice, information provided by The

Work Number is limited to dates of employment.

## VI.    EQUITABLE RELIEF

**25.    Scope.**  The terms of this Decree shall apply to JBS's beef processing facility in

Greeley, Colorado.

**26.**    JBS, its officers, managers, and successors, will fully comply with all obligations

under Title VII, including without limitation: (a) using all reasonable, good faith efforts

to prevent and promptly correct any discriminatory, retaliatory, and/or harassing conduct

based on race, color, national origin, or religion; (b) providing Muslim employees

reasonable accommodations for their sincerely held religious beliefs and practices; and

(c) ensuring that Black, Somali, and Muslim employees are free from unlawful

discrimination and retaliation. JBS agrees it will not retaliate in any manner against

individuals identified as witnesses in this action, individuals who assisted in the

investigations giving rise to this action, or individuals who assisted in the investigation of

charges of discrimination otherwise resolved through this Decree.

**27.    Policy Review**

Within ninety (90) days after the Effective Date, JBS shall review its existing

EEO policies and other related policies, and revise them, if necessary, to conform with

the law and this Agreement. Upon completion of the policy review, any revised policies

shall be published to employees.

The written EEO policies must include at a minimum:

Page 12

(a)   A strong and clear commitment to preventing unlawful race, color, national origin, or religious discrimination and retaliation.

(b)   A clear and simple definition of retaliation and discrimination (including harassment, disparate treatment, and denial of religious accommodation) based on race, color, national origin, and/or religion.

(c)   A statement that retaliation and discrimination based on race, color, national origin, or religion are prohibited and will not be tolerated.

(d)   A clear and simple definition of religious accommodation, to include examples of what is considered a religious accommodation, as well as a description of JBS's accommodation process. Such description should identify the appropriate individuals by position and/or title who are authorized to receive a request, either oral or written, for religious accommodation from the employee. If there are individuals in a different office, such as a centralized or home office, who handle religious accommodation requests, the person's name, position and/or title, and contact information, including telephone number, must be provided.

(e)   Specify the role of production managers and supervisors who may receive and process requests from employees for religious accommodation. The policy must provide guidance on how to process an oral or written request for religious accommodation, and the process must include the requesting employee's participation as appropriate to the particular request. This provision is intended to include requests for accommodation made during the hiring process.

Page 13

(f)     A clear and strong encouragement of persons who believe they have been discriminated or retaliated against to report such concerns through appropriate channels.

(g)     The identification (including telephone numbers) of specific positions to whom employees can report, orally or in writing, any allegations of discrimination, harassment, or retaliation.

(h)     An assurance that JBS will investigate oral and written allegations of unlawful discrimination promptly, fairly, reasonably, and effectively, using appropriate investigators; that JBS will create a record documenting any oral reports; that JBS will maintain documentation of all investigations and the results thereof; and that appropriate corrective action will be taken by JBS when warranted.

(i)     A description of the consequences, up to and including termination, that will be imposed upon violators of JBS's anti-discrimination policies.

(j)     A promise of maximum feasible confidentiality for persons who report unlawful discrimination, harassment, and/or retaliation, or who participate in an investigation into allegations of discrimination, harassment and/or retaliation.

(k)     An assurance of no retaliation against persons who report unlawful discrimination, harassment and/or retaliation, or who provide information as witnesses to or regarding allegations of unlawful discrimination, harassment or retaliation.

(I)    Translation of all EEO policies into any language used as a primary language by more than twenty percent (20%) of JBS's production employees at the facility.

(m)    Interpreter services will continue to be made available upon request for those who are not a large enough portion of the production workforce to be provided policy translations.

28.   **Communication**

(a)    For any employee whose primary language is not English, JBS agrees to continue to provide translators upon request for trainings, disciplinary meetings, and any meetings concerning requests for religious accommodations, or complaints of discrimination or retaliation.

(b)    JBS agrees to maintain its 24-hour "Ethics Line" hotline for receiving reports of discrimination, electronically or by telephone, and will identify a specific agent or hierarchy of agents who are to receive, document, and investigate complaints received through the hotline.

(c)    The EEO policies shall be posted at JBS's Greeley, Colorado facility, in locations frequented by employees, including outside of the Human Resource offices and in the access tunnel. Any policies revised under Paragraph 27 ("Policy Review") shall be distributed to each current employee within 120 days after the Effective Date of this Decree. These policies, once revised, shall be distributed to all new employees when hired. JBS shall make these written policies available in alternative formats including but not limited to translations into languages used as a

primary language by twenty percent (20%) or more of JBS's production employee population at the facility.

**29.     Investigation and Resolution of Employee Complaints**

JBS agrees that it is committed to the prompt, fair, reasonable, and effective investigation of employee complaints of discrimination (including complaints of harassment, retaliation, or denial of religious accommodation). JBS shall take immediate appropriate corrective action when warranted, and will use its best efforts to eradicate discrimination.

**30.     Training**

For a period of at least two years from the Effective Date of this Decree, JBS shall continue to provide EEO training for all its employees. Under this provision, employees will be trained at a minimum in the following areas: (a) JBS's policy and procedures for reporting alleged discrimination; (b) understanding the kind of conduct which may constitute unlawful discrimination or harassment; (c) the penalties for engaging in discriminatory behavior; (d) JBS's non-retaliation policy; and (d) JBS's procedures for handling accommodation requests. Training under this Paragraph may include JBS's existing EEO training programs. The training will be conducted as follows:

(a)     Non-Managerial Employees:  JBS will provide non-managerial employees at least 30 minutes of training annually, through each employee's required annual computer-based training plan. Training will include the following topics:  discrimination, including religious discrimination, an employer's duty to reasonably accommodate an employee's sincerely held religious beliefs, and procedures for requesting religious accommodation, hostile

work environment, and the process for reporting perceived discrimination or harassment.

(b)   <u>Managerial and Supervisory Employees:</u>   JBS will require all supervisors and managers to receive at least one (1) hour of training annually, through each employee's required annual computer-based training plan, regarding Title VII and other federal anti-discrimination laws. Thirty minutes of the training must directly address religious accommodation and discrimination; hostile work environment; and race, color, and national origin discrimination.  Additionally, JBS will require employees newly hired or promoted into a managerial or supervisory position to complete the requisite thirty minutes of race, color, national origin, hostile work environment, and religious discrimination training within thirty (30) days of being hired or promoted. JBS shall further designate a portion of training for the instruction of managerial and supervisory employees in the proper methods of receiving, handling, and investigating (where applicable) allegations of discrimination. JBS shall emphasize with managerial and supervisory employees that, because of their position of power, such employees must be particularly vigilant not to discriminate, either consciously or because they rely on subconscious stereotypes; that they must be sensitive to how their actions or words might be perceived by subordinate employees; and that they must avoid the temptation to retaliate if a complaint is made, or might be made, against them.

(c) <u>First-Level Managerial and Supervisory Employees:</u> In addition to the one (1) hour of EEO training provided under the prior paragraph, as part of all training for first-level managerial and supervisory employees, they shall be advised of their responsibilities as JBS managers and supervisors to prevent workplace discrimination, including but not limited to how to identify potential race, color, national origin, or religious discrimination, as well as their obligations to refer requests for religious accommodation and/or reports about potential discrimination to the appropriate person or department within JBS's organizational structure.  At least a portion of this training will focus on religious accommodation.

(d) <u>Human Resource Employees:</u> JBS will require all individuals who work in an exempt human resource capacity to receive at least two (2) hours of training annually regarding Title VII and other federal anti-discrimination laws. One (1) of the two (2) hours must directly address religious discrimination and accommodation. Additionally, JBS will require employees newly hired or promoted into a human resource position to complete one (1) hour of general EEO training within sixty (60) days of being hired or promoted into a human resource position. JBS shall further designate at least one (1) hour of training to the instruction of human resources employees in the proper methods of receiving, handling, and investigating (where applicable) allegations of discrimination, including the proper procedures for documenting and preserving evidence, archiving the company's investigation of complaints; appropriate methods for

ameliorating discrimination and documenting any remedial measures taken. If the human resources employee is a person who JBS has named as an agent for receiving, responding to, or investigating complaints of discrimination, in addition to the two (2) hours of general EEO trainings required by this paragraph, JBS shall designate an additional one (1) hour of training annually on instructing the employee in accepted professional standards for receiving and investigating complaints of discrimination, whether oral or in writing, and for eliminating and ameliorating violations of anti-discrimination law.

(e)   <u>Training the Trainers:</u>  Management or Human Resources employees who are designated by JBS as trainers will be provided at least one (1) additional hour of training on the subjects of the training and the proper methods of delivering the training.

JBS agrees that the first such training session for each employee group identified above will take place within one hundred eighty (180) days after the Effective Date of this Decree. JBS agrees it shall use its best efforts to ensure that all personnel attend the appropriate training sessions.

**31.    Religious Accommodations**

JBS shall continue to provide one or more clean, quiet, and appropriate locations other than a bathroom for its employees to use for observation of their religious tenets, such as daily prayers. Employees may also continue to use locker rooms or any other non-production location within the facility that does not pose a safety risk, for observation of their religious practices.

Consistent with current guidelines, employees may utilize approved unscheduled breaks to pray. Requests for prayer breaks shall be handled in accordance with current guidelines for unscheduled breaks.

Nothing in this agreement precludes requests for other forms of religious accommodation. JBS shall consider all individual employee requests for religious accommodation, and such requests will be addressed through an interactive process to identify an appropriate accommodation that does not impose an undue hardship on JBS's operations.

**32.    Diversity Committee**

In accordance with terms of the applicable collective bargaining agreement, JBS will continue its support of the existing Diversity Committee. JBS agrees to provide information about and promotion of the existing Diversity Committee to the workforce in English, Somali, Spanish and other languages used as a primary language by twenty percent (20%) or more of the production employee population of the facility.

**33.    Notice Posting**

Within five (5) business days after the Effective Date of this Decree, JBS shall post in English, Somali, Spanish and other languages used as a primary language by twenty percent (20%) or more of the production employee population at the facility the Notice attached as Attachment D to this Decree. The Notice shall be posted in areas frequented by production employees, including outside of the HR offices and in the entry tunnel. The Notice shall be the same type and style as set forth in Attachment D.  The Notice shall remain posted for a period of one (1) year. If the Notice becomes defaced or

illegible, JBS will replace it with a clean copy within five (5) business days of the discovery or reporting of the defacement or illegibility.

## VII.   REPORTING

**34.**     Within thirty (30) calendar days after the Effective Date, JBS will report to the EEOC that the notice has been posted, as required under Paragraph 33.

**35.**     Within 120 calendar days after the Effective Date, JBS will report to the EEOC that the notice remains posted, as required under Paragraph 33, and that the policy review and distribution required under Paragraph 27, have been completed.

**36.**     JBS will submit two annual reports to the EEOC detailing the training sessions conducted under Paragraph 30 during the reporting periods. Each report shall be due within thirty (30) days after completion of the one-year reporting period.

## VIII.   ENFORCEMENT OF DECREE

**37.**     If the EEOC believes that Defendant has violated any provision of the Decree, before filing an enforcement action, the EEOC will engage in informal efforts to resolve the alleged violation. All communications under this provision will be via electronic mail, served on counsel for the Parties at the email addresses reflected below.

## IX.   EEOC AUTHORITY

**38.**     With respect to matters or charges outside the scope of this Decree, this Decree shall in no way limit the powers of the Commission to seek to eliminate employment practices or acts made unlawful by any of the statutes over which the EEOC has enforcement authority, and do not arise out of the claims asserted in the lawsuit, or any Charge of Discrimination listed in Attachments A and B.

## X.     COSTS AND ATTORNEYS' FEES

**39.**     Each party shall be responsible for and shall pay his, her, or its own costs and

attorneys' fees.

## XI.     NOTICE

**40.**     Unless otherwise indicated, any notice, report, or communication required under

the provisions of this Decree shall be sent via email as follows:

Nathan Foster
Senior Trial Attorney
EEOC DENVER FIELD OFFICE
nathan.foster@eeoc.gov

Heather Fox Vickles, Esq.
SHERMAN & HOWARD, LLC
hvickles@shermanhoward.com
Counsel for JBS USA, LLC

Diane King, Esq.
KING GREISEN, LLC
king@kinggreisen.com

Todd McNamara, Esq.
18TH AVENUE LAW, LLC
tjm@18thavelaw.com

David Lichtenstein, Esq.
LAW OFFICE OF DAVID LICHTENSTEIN, LLC
dave@lichtensteinlaw.com

James Chiu
LAW OFFICE OF JAMES CHIU
james@chiulawoffice.com

## XII.    SIGNATURES

The Parties to this Decree agree to the entry of this Decree subject to final

approval by the Court.

SO ORDERED this __8th__ day of __June_____, 2021.

BY THE COURT:

Honorable Philip A. Brimmer

**BY CONSENT:**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

By: _Mary O'Neill_
    Mary Jo O'Neill
    Regional Attorney

Date: _____

JBS USA, LLC D/B/A JBS SWIFT &
COMPANY

By: _____
Tim Schellpeper
President, JBS USA Fed Beef Division

Date: _5. 18. 2021_

The Parties agree that the below signatures of counsel representing the various Plaintiff-
Intervenors, as reflected in Attachment A and some Charging Parties in Attachment B, is
sufficient for execution of this Agreement.

_____
Diane King
KING GREISEN, LLC

Date: _05/19/2021_

_____
Todd McNamara, Esq.
18TH AVENUE LAW, LLC

Date: _May 19, 2021_

_____
David Lichtenstein, Esq.
LAW OFFICE OF DAVID LICHTENSTEIN

Date: _5 - 19 - 2021_

_____
James Chiu
LAW OFFICE OF JAMES CHIU

Date: _5/19/21_

APPROVED AS TO FORM:

Nathan Foster
Trial Attorney
EEOC DENVER FIELD OFFICE
950 17th St., Suite 300
Denver, CO 80202

Attorney for Plaintiff EEOC

Heather Fox Vickles, Esq.
SHERMAN & HOWARD, LLC
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202

Attorney for Defendant JBS

Counsel representing Plaintiff-Intervenors as listed on Attachments A and B:

Diane King
KING GREISEN, LLC
1670 York Street
Denver, CO 80206

David Lichtenstein, Esq.
LAW OFFICE OF DAVID LICHTENSTEIN, LLC
1556 Williams St., Suite 100
Denver, CO 80218-1661

Todd McNamara, Esq.
18TH AVENUE LAW, LLC
1888 Sherman Street, Suite 370
Denver, CO 80218

James Chiu
LAW OFFICE OF JAMES CHIU
1776 Vine Street
Denver, CO 80206

Page 24

**ATTACHMENT A**

**(A List of All Individuals who filed Charges of Discrimination Giving Rise to the Litigation, all named aggrieved individuals, and all named Plaintiff Intervenors)**

**ATTACHMENT B**

**[A List of the Charges pending with the EEOC as of March 25, 2021 and Commissioner's
Charge No 541-2008-03274, – to be Filed under Level 1 Restriction]**

**ATTACHMENT C**

**Waiver and Release Agreement**

In consideration for at least $_____ paid to me by JBS USA, LLC, in connection with the resolution of the lawsuit captioned *EEOC v. JBS USA, LLC d/b/a JBS Swift & Co,* Case No. 10-cv-02103-PAB-KLM filed in the U.S. District Court for the District of Colorado ("EEOC Lawsuit"), I, _____, [INSERT NAME AND ALL A/K/A'S AS REFLECTED IN ATTACHMENTS A AND B] waive my right to recover for any and all claims asserted in the EEOC Lawsuit, [and any and all claims asserted, or which could have been asserted, in my EEOC Charge No. _____], and arising prior to the date of this Agreement, against JBS USA, LLC or any of its parent, subsidiary, or associated entities as well as their respective successors, assigns, officers, directors, employees, and agents.

Date: _____

Printed Name: _____

Signature: _____

27

**ATTACHMENT D**

**NOTICE**

The following notice is being posted pursuant to the terms of the Consent Decree reached between the Parties in *EEOC et al. v. JBS USA. LLC d/b/a JBS Swift & Company* filed in the United States District Court for the District of Colorado, Civil Action No. 10-cv-02103-PAB-KLM.

Management of JBS Swift & Company wishes to emphasize the company's fundamental policy of providing equal employment opportunity in all of its operation and in all areas of employment practices. JBS Swift seeks to ensure that there shall be no discrimination against any employee or applicant for employment on the grounds of race, color, religion, sex, pregnancy, national origin, age or disability. This policy extends to insurance benefits and all other terms, conditions and privileges of employment.

Pursuant to Title VII, it is unlawful for an employer to discriminate based upon the religion, color, race, or national origin of an applicant or employee. Further, it is unlawful for any employer to retaliate against an employee because he or she has requested reasonable accommodation for religion, opposed discriminatory employment practices, or because he or she has filed a charge of discrimination with any municipal, state or federal equal employment opportunity agency, or because he or she has participated in an investigation of a charge of discrimination.

JBS respects the right of its employees and applicants for employment to work in an environment free from discrimination. Accordingly, JBS reaffirms its commitment to complying with the strictures of Title VII, in that it is our policy to prohibit all discrimination based on religion, color, race, or national origin.

Any employee who believes that he/she has suffered discrimination on the basis of age, race, color, religion, sex, pregnancy, national origin, or disability, has the right to contact the EEOC directly at 1-800-669-4000 and/or the Colorado Civil Rights Division at (303) 894-2997. In compliance with federal law, no official at JBS will retaliate against an employee who makes an internal complaint of discrimination or who contacts the EEOC or its state counterpart.

This Notice shall remain posted for the term of one (1) year.

JBS USA, LLC d/b/a JBS Swift & Company

By: _____

Date: _____

28